**U.S. Department of Justice**
Office of Justice Programs
*Bureau of Justice Statistics*

October 2018, NCJ 252121

# Criminal Victimization, 2016: Revised

Rachel E. Morgan, Ph.D., and Grace Kena, *BJS Statisticians*

**B**ased on revised estimates from the National Crime Victimization Survey (NCVS), the number of U.S. residents age 12 or older who had experienced one or more violent criminal victimizations during the prior 6 months increased from 2.7 million in 2015 to 2.9 million in 2016.[1] The revised official estimates presented in this report replace previously released 2016 estimates that did not permit year-to-year comparisons. (See page 3.)

From 2015 to 2016, there was an increase in violent criminal victimizations against males and also against persons in their mid-20s to mid-30s. Among males, the rate of violent victimization increased from 15.9 per 1,000 males age 12 or older to 19.6 (figure 1). Among persons ages 25 to 34, violent victimizations increased from 21.8 per 1,000 persons to 28.4. By crime type, the rate of aggravated assault increased, while the rate of rape or sexual assault decreased.

[1]In this report, significance is reported at both 90% and 95% confidence levels. See figures and tables for testing on specific findings.

**Bulletin**



**FIGURE 1**
**Rate of violent victimization, 2015 and 2016**

Note: See appendix table 1 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Per 1,000 persons within the group.
[b]Per 1,000 persons age 12 or older.
[c]Includes aggravated and simple assault.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## HIGHLIGHTS

- The rate of violent victimization against males increased from 2015 to 2016, rising from 15.9 to 19.6 per 1,000 males age 12 or older.

- From 2015 to 2016, the rate of aggravated assault against males age 12 or older rose from 2.7 to 4.2 per 1,000.

- The rate of violent victimization against persons ages 25 to 34 rose from 21.8 per 1,000 persons to 28.4 per 1,000 from 2015 to 2016, and the rate for females in this age group rose from 24.6 to 33.4 per 1,000.

- From 2015 to 2016, the number of persons experiencing one or more violent victimizations increased from 2.7 million to 2.9 million.

- Among U.S. households, the property crime rate increased from 2015 to 2016, rising from 110.7 to 118.6 victimizations per 1,000 households.

- From 2015 to 2016, the rate of rape or sexual assault declined from 1.6 to 1.1 victimizations per 1,000 persons age 12 or older, and from 2.7 to 1.8 among females age 12 or older.



The NCVS is a self-reported survey that is administered from January to December. Respondents are asked about the number and characteristics of crimes they have experienced during the prior 6 months. Crimes are classified by the year of the survey and not by the year of the crime. Victimization is the basic unit of analysis used in most of this report. Each victimization represents one person or one household affected by a crime. For personal crimes, the number of victimizations is the number of victims of that crime. Each crime against a household is counted as having a single victim—the affected household. From 1993 to 2016, the rate of violent victimizations declined from 79.8 to 19.7 per 1,000 persons age 12 or older, a drop of 75% (figure 2).

## Changes in the violent crime rate were detected for various crimes, but not overall

There was no statistically significant change in the rate of overall violent crime from 2015 (18.6 victimizations per 1,000 persons age 12 or older) to 2016 (19.7 per 1,000) (table 1). There was also no statistically significant difference in the rate of serious violence, which excludes simple assault, from 2015 (6.8 per 1,000) to 2016 (6.6 per 1,000).



**FIGURE 2**
**Rate of violent victimization, 1993–2016**

Rate per 1,000 persons age 12 or older

Note: Estimates include 95% confidence intervals. See appendix table 2 for estimates and standard errors. Estimates for 2006 should not be compared to other years. (See *Criminal Victimization, 2007* (NCJ 224390, BJS web, December 2008) for information on changes in the 2006 National Crime Victimization Survey.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2015 Public-Use File and 2016 revised Public-Use File.

**TABLE 1**
**Violent victimization, by type of crime, 2015 and 2016**

| Type of crime | 2015* Number | 2015* Rate per 1,000[b] | Original 2016[a] Number | Original 2016[a] Rate per 1,000[b] | Revised 2016 Number | Revised 2016 Rate per 1,000[b] |
|---|---|---|---|---|---|---|
| Violent crime[c] | 5,006,620 | 18.6 | 5,749,330 | 21.1 | 5,353,820 | 19.7 |
| Rape or sexual assault[d] | 431,840 | 1.6 | 323,450 | 1.2 | 298,410 † | 1.1 † |
| Robbery | 578,580 | 2.1 | 500,680 | 1.8 | 458,810 | 1.7 |
| Assault | 3,996,200 | 14.8 | 4,925,200 | 18.1 | 4,596,600 ‡ | 16.9 ‡ |
| Aggravated assault | 816,760 | 3.0 | 1,084,340 | 4.0 | 1,040,580 ‡ | 3.8 ‡ |
| Simple assault | 3,179,440 | 11.8 | 3,840,860 | 14.1 | 3,556,020 | 13.1 |
| Domestic violence[e] | 1,094,660 | 4.1 | 1,109,610 | 4.1 | 1,068,120 | 3.9 |
| Intimate partner violence[f] | 806,050 | 3.0 | 597,740 | 2.2 | 597,200 ‡ | 2.2 ‡ |
| Stranger violence | 1,821,310 | 6.8 | 2,232,260 | 8.2 | 2,082,410 | 7.7 |
| Violent crime involving injury | 1,303,290 | 4.8 | 1,366,250 | 5.0 | 1,220,640 | 4.5 |
| Serious violent crime[g] | 1,827,170 | 6.8 | 1,908,470 | 7.0 | 1,797,790 | 6.6 |
| Serious domestic violence[e] | 460,450 | 1.7 | 402,430 | 1.5 | 359,740 | 1.3 |
| Serious intimate partner violence[f] | 333,210 | 1.2 | 272,380 | 1.0 | 265,770 | 1.0 |
| Serious stranger violence | 690,550 | 2.6 | 789,370 | 2.9 | 780,580 | 2.9 |
| Serious violent crime involving a weapon | 977,840 | 3.6 | 1,267,810 | 4.7 | 1,203,020 | 4.4 |
| Serious violent crime involving injury | 658,040 | 2.4 | 746,850 | 2.7 | 668,230 | 2.5 |

Note: Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Other violent crime categories in this table, including domestic violence and violent crime involving injury, are not mutually exclusive from these classifications. Total population age 12 or older was 269,526,470 in 2015 and 272,204,190 in 2016. Details may not sum to totals due to rounding. See appendix table 3 for standard errors.
*Comparison year. Estimates for 2015 are compared to revised estimates for 2016 only.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Estimates released on December 7, 2017 in *Criminal Victimization, 2016* (NCJ 251150).
[b]Rate is per 1,000 persons age 12 or older.
[c]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.
[d]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.
[e]Includes victimization committed by intimate partners and family members.
[f]Includes victimization committed by current or former spouses, boyfriends, or girlfriends.
[g]In the NCVS, serious violent crime includes all violent crime except simple assault.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

# National Crime Victimization Survey revised 2016 estimates

From 2015 to 2016, the National Crime Victimization Survey (NCVS) sample size increased by 41% (from 95,760 to 134,690 households interviewed) to facilitate the ability to produce state- and local-level victimization estimates for the largest 22 states. At the same time, the sample was adjusted to reflect the U.S. population counts in the 2010 decennial census (rather than being based on the 2000 decennial census, as was the case for the 2006 through the 2015 NCVS).

In *Criminal Victimization*, *2016* (NCJ 251150, BJS web, December 2017), BJS concluded that the 2016 NCVS victimization rates could not be compared to 2015 or any prior year. We observed that "a comparison of the 2015 and 2016 victimization estimates showed that the violent and property crimes had increased" but that "it was not possible to isolate … the degree to which the change in rates from 2015 to 2016 resulted from the sample redesign rather than real changes in U.S. victimization levels." Subsequently, we worked to develop a viable solution that would permit comparisons between the 2016 NCVS and other years.

## The challenge

The NCVS is a panel survey, in which the same households are interviewed every 6 months over a 3½-year period. While all NCVS respondents are asked to report incidents having occurred only in the prior 6 months, respondents in the second through seventh interviews have the benefit of using the previous interview as a benchmark event. Respondents in the first interview, however, lack this specific reference point. This often results in an increase in "telescoping," whereby interviewees include crimes from outside of the reference period (in this case, from further back in time). Due to these concerns, for most of the NCVS's history (1973 to 2005), results from the first interview were not used. The first interview was treated as a "bounding interview," bounding the timeframe of reporting. Due to cost constraints, BJS began using the first interview in 2006. For more information on this change, see *Criminal Victimization*, *2006* (NCJ 219413, BJS web, December 2007).[2]

In 2016, because of the large increase in the sample size and the switch to the U.S. Census Bureau's 2010 decennial census population counts, a considerable number of new households were added to the NCVS

sample and administered first-time interviews. This posed a formidable challenge for making comparisons between the 2016 NCVS and prior years. In most years, about a seventh (14%) of the sample (as there are seven waves of interviews) is made up of first-time interviewees. In the first half of 2016, a *majority* (53%) of those interviewed were first-time interviewees, more than triple the historical norm. In addition, these first-time interviewees were more likely to be interviewed by new Census field representatives (interviewers), adding another factor that further complicated comparisons between 2016 and prior years. These first-time interviewees were also from a somewhat different set of U.S. counties and had a somewhat different composition of demographic characteristics than under the prior sample design.

## The solution

To address the challenges posed by the historically large number of first-time interviews conducted in the first half of 2016, BJS subsequently developed a methodology to make the sample design for the first half of 2016 mirror the 2015 sample design, while maintaining the 2016 sample design for the second half of 2016 in the first half of the year. The goal was to construct a nationally representative sample that would reduce the impact of the large number of first-time interviews. With each half of the 2016 sample being nationally representative, the two halves could be blended into one nationally representative sample for the year. This process was undertaken using data from the NCVS public-use file.

## Revised 2016 NCVS data file

To create the revised data file, every NCVS interview conducted in the first half of 2016 from households that were also included in the 2015 sample (that is, those in continuing counties) was used, with the exception of households on their first or seventh interviews. That is, all interviews conducted in the first half of 2016 that were a household's second to sixth interviews were included. Those households could be identified as having been included in the 2015 sample using the NCVS public-use file. Some households that were interviewed in the second half of 2015 were not included in the 2016 sample and hence were not interviewed in 2016. In such instances, the 2015 survey results from these households were carried forward into the first half of 2016 so that the composition of households for the first half of 2016 would reflect the nationally representative 2015 sample.

---

[2]To account for using these first interviews, BJS and the U.S. Census Bureau (the data collection agent for the NCVS) began to implement a bounding adjustment in 2007. For more information, see *National Crime Victimization Survey, Technical Documentation* (NCJ 247252, BJS web, September 2014).

*Continued on next page*

# National Crime Victimization Survey revised 2016 estimates (continued)

Using the public-use file, there is no way to identify which first-time interviews conducted in the first half of 2016 were in continuing counties, or which seventh interviews conducted in the second half of 2015 were in continuing counties. This is because any household interviewed for the first time in 2016 was not interviewed in 2015 (whether or not its county was included in the 2015 sample), and any household interviewed for the seventh time in 2015 was not interviewed in 2016 (whether or not its county was included in the 2016 sample), as its seventh interview was its final one. Because these first or seventh interviews could not be definitively identified as having been in continuing counties using the public-use data, data for all first and seventh interviews in the second half of 2015 were carried forward to the first half of 2016. In sum, the first half of 2016 retains as many 2016 interviews as possible and includes 2015 interviews where necessary, mostly as first or seventh interviews.

The first half of 2016, revised in this manner, was then combined with the second half of 2016, which was not revised. (The second half of 2016 used the 2016 sample design and kept all household interviews conducted in the second half of 2016.) After weights were applied, 23% of the combined revised 2016 data come from 2015 (47% from the first half of 2016, 0% from the second half).

The large number of first-time interviews in 2016, which inhibited year-to-year comparisons, was thereby avoided. We effectively used those first-time interviews as bounding interviews, as we did prior to 2006. The result is revised criminal victimization estimates that are nationally representative for 2016 and can be compared with prior and future years.

## Data limitations

While the 2016 revised data file allows for comparisons of national NCVS estimates between years, data users should be aware of some limitations of this file. Any estimates of change from 2015 to 2016 are based on 77% of the combined 2016 sample, as the 23% of results carried over from 2015 by definition did not change.

Due to the potential bias inherent in this approach, data users are cautioned not to assume crimes are unchanged if the revised file shows no significant difference from 2015 to 2016. If the revised file *does* detect significant change, then data users may conclude that crime significantly changed from 2015 to 2016. This assumes that any crime changes between 2015 and 2016 within the portion of the overall 2016 sample that was measured in 2016 were in the same direction as changes within the portion of the overall 2016 sample that was not measured in 2016. However, for example, if there was an increase within the portion that was measured in 2016 and a decrease in the portion that was not, then it is possible that the overall revised 2016 estimate would show a significant change when, in fact, no change occurred.

In addition, the methods used to produce this file introduce additional non-sampling errors that should be considered when making conclusions from the file. (See *Methodology* for more information on the revised 2016 NCVS data file.)

From 2015 to 2016, assaults increased from 14.8 to 16.9 victimizations per 1,000 persons. Aggravated assaults rose from 3.0 to 3.8 victimizations per 1,000 persons. Rape or sexual assault declined from 1.6 to 1.1 victimizations per 1,000 persons. Intimate partner violence also declined from 3.0 to 2.2 per 1,000 persons.

## Property crime increased from 2015 to 2016

Based on the 2016 survey, households in the U.S. experienced an estimated 15.8 million property victimizations (table 2). From 2015 to 2016, the overall property crime rate, which includes household burglary, motor vehicle theft, and other theft, increased from 110.7 to 118.6 victimizations per 1,000 households. An increase in other theft (from 84.4 to 90.3 per 1,000 households) accounted for most of the increase in property crime.

## 44% of violent victimizations were reported to police in 2016

The NCVS allows for examination of crimes reported and not reported to police.[3] The survey includes questions on the reasons a crime was not reported to police. Victims may not report a victimization for a variety of reasons, including fear of reprisal or getting the offender in trouble, believing that police would not or could not do anything to help, and believing the crime to be a personal issue or too trivial to report. Police notification may come from the victim, a third party (including witnesses, other victims, household members, or other officials, such as school officials or workplace managers), or police at the scene of the incident. Police notification may occur during or immediately following a criminal incident or at a later date.

[3]Includes municipal police departments, sheriffs' offices, or other state or local law enforcement agencies.

**TABLE 2**
**Property victimization, by type of crime, 2015 and 2016**

| Type of property crime | 2015* | | Original 2016[a] | | Revised 2016 | |
|---|---|---|---|---|---|---|
| | Number | Rate per 1,000[b] | Number | Rate per 1,000[b] | Number | Rate per 1,000[b] |
| Total | 14,611,040 | 110.7 | 15,917,430 | 119.4 | 15,815,310 † | 118.6 † |
| Burglary | 2,904,570 | 22.0 | 3,291,490 | 24.7 | 3,160,450 | 23.7 |
| Motor vehicle theft | 564,160 | 4.3 | 585,500 | 4.4 | 618,330 | 4.6 |
| Other theft[c] | 11,142,310 | 84.4 | 12,040,440 | 90.3 | 12,036,530 † | 90.3 † |

Note: Details may not sum to totals due to rounding. Total number of households was 131,962,260 in 2015 and 133,365,270 in 2016. See appendix table 4 for standard errors.
*Comparison year. Estimates for 2015 are compared to revised estimates for 2016 only.
†Significant difference from comparison year at the 95% confidence level.
[a]Estimates released on December 7, 2017 in *Criminal Victimization, 2016* (NCJ 251150).
[b]Rate is per 1,000 households.
[c]Other taking or attempted unlawful taking of property or cash without personal contact with the victim.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

# Differences in rates of reporting to police in the UCR and NCVS

For 2016, the Federal Bureau of Investigation's (FBI) Uniform Crime Reporting (UCR) program reported that 3.9 serious violent crimes per 1,000 persons and 24.5 property crimes per 1,000 persons were known to law enforcement (table 3).[4] Based on the National Crime Victimization Survey (NCVS) conducted by the Bureau of Justice Statistics (BJS), 3.5 serious violent crimes per 1,000 persons age 12 or older and 41.7 property crimes per 1,000 households were reported to law enforcement during this same year.

Because the NCVS and UCR measure an overlapping, but not identical, set of offenses and use different approaches in measuring them, complete congruity is not expected between estimates from these two sources. Restricting the NCVS to serious violence reported to police keeps the measures as similar as possible. However, significant methodological and definitional differences remain between how serious violent crimes are measured in the NCVS and the UCR:

- The UCR includes homicide and commercial crimes, while the NCVS excludes these crime types.

- The UCR excludes sexual assault, which the NCVS includes.[5]

- The UCR defines burglary as the unlawful entry or attempted entry of a structure to commit a felony or theft. The NCVS uses a broader definition, defining burglary as the unlawful or forcible entry or attempted entry of a permanent residence, other residence (e.g., a hotel room or vacation home), or other structure (e.g., a garage or shed) by a person who had no legal right to be there.

- NCVS estimates are based on interviews with a nationally representative sample of persons in U.S. households. UCR estimates are based on counts of crimes reported by law enforcement agencies and are weighted to compensate for incomplete reporting.

- The NCVS does not measure crimes against children age 11 or younger. Also, it does not measure persons who are homeless or who live in institutions (e.g., nursing homes and correctional institutions) or on military bases.

- NCVS and UCR property crime rates are calculated differently. UCR property crime rates are per capita (number of crimes per 100,000 persons), whereas the NCVS rates for these crimes are per household (number of crimes per 1,000 households), so the NCVS rates are higher. Moreover, because the number of households may not grow at the same rate each year as the total population, trend data for rates of property crimes measured by the two programs may not be entirely comparable.

Taken together, these two measures of crime provide a more comprehensive picture of crime in the United States. For additional information about the differences between the two measures, see *The Nation's Two Crime Measures* (NCJ 246832, BJS web, September 2014).

## TABLE 3
### Rate of crime reported to police in the Uniform Crime Reporting Program and National Crime Victimization Survey, 2016

| Type of crime | UCR rate per 1,000 residents[a] | NCVS rate per 1,000 persons age 12 or older |
|---|---|---|
| Serious violent crime[b] | 3.9 | 3.5 |
| Murder | 0.1 | ~ |
| Rape[c] | 0.4 | 0.3 |
| Robbery | 1.0 | 1.0 |
| Aggravated assault | 2.5 | 2.3 |
| | UCR rate per 1,000 residents[a] | NCVS rate per 1,000 households |
| Property crime | 24.5 | 41.7 |
| Burglary | 4.7 | 11.6 |
| Motor vehicle theft | 2.4 | 3.4 |

Note: National Crime Victimization Survey (NCVS) estimates are based on the revised 2016 data file. See appendix table 5 for standard errors. NCVS and UCR crime rates are calculated differently. UCR crime rates are normally reported per 100,000 persons but were recalculated for this report to align with the reporting of NCVS crime rates.

~Not applicable.

[a]Includes crimes against persons age 11 or younger, persons who are homeless, persons who are institutionalized, and crimes against commercial establishments. These populations are out of sample for the NCVS.

[b]In addition to rape, robbery, and aggravated assault, the NCVS includes sexual assault.

[c]The NCVS estimate includes sexual assault. See *Methodology* for details on the measurement of rape or sexual assault in the NCVS. The UCR estimate is based on the revised definition of rape.

Sources: Bureau of Justice Statistics, National Crime Victimization Survey, 2016 revised Public-Use File; and FBI, *Crime in the United States, 2016*, https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-pages/tables/table-1.

---

[4]In this report, UCR rates are calculated per 1,000 persons within the U.S. resident population. NCVS violent crime rates are calculated per 1,000 persons age 12 or older, and NCVS property crime rates are calculated per 1,000 households.

[5]Sexual assaults include attacks or attempted attacks generally involving unwanted sexual contact between the victim and offender that may involve force.

Based on the 2016 survey, less than half (44%) of violent victimizations were reported to police, which was not statistically different from 2015 (47%) **(table 4)**. There was also no statistically significant change in the percentage of serious violent victimizations reported to police from 2015 (55%) to 2016 (53%), nor in the percentage of property victimizations reported to police (35% in both years).

From 2015 to 2016, there were no statistically significant differences in rates of overall violent crime or serious violent crime reported to police. Based on the 2016 survey, 8.6 violent victimizations and 3.5 serious violent victimizations per 1,000 persons were reported to police. From 2015 to 2016, the rate of rape or sexual assault reported to police declined from 0.5 victimizations per 1,000 persons to 0.3 per 1,000. The rate of intimate partner violence reported to police declined from 1.6 to 1.1 per 1,000.

From 2015 to 2016, the rate of overall property crime reported to police increased from 38.3 victimizations per 1,000 households to 41.7 per 1,000 households. There were no statistically significant changes between the two years in the rates of reporting to police for household burglary, motor vehicle theft, and other theft.

---

**TABLE 4**
**Percent and rate of victimizations reported to police, by type of crime, 2015 and 2016**

| Type of crime | Percent reported | | Victimization rate reported per 1,000[a] | |
|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 |
| **Violent crime[b]** | 46.5% | 43.9% | 8.6 | 8.6 |
| Rape or sexual assault[c] | 32.5 | 23.2 | 0.5 | 0.3 † |
| Robbery | 61.9 | 57.0 | 1.3 | 1.0 |
| Assault | 45.8 | 43.9 | 6.8 | 7.4 |
| Aggravated assault | 61.9 | 59.8 | 1.9 | 2.3 |
| Simple assault | 41.7 | 39.3 | 4.9 | 5.1 |
| Domestic violence[d] | 57.7 | 52.2 | 2.3 | 2.0 |
| Intimate partner violence[e] | 54.1 | 49.0 | 1.6 | 1.1 ‡ |
| Stranger violence | 42.1 | 43.6 | 2.8 | 3.3 |
| Violent crime involving injury | 57.0 | 48.0 ‡ | 2.8 | 2.2 |
| **Serious violent crime[f]** | 54.9% | 53.0% | 3.7 | 3.5 |
| Serious domestic violence[d] | 60.8 | 52.5 | 1.0 | 0.7 |
| Serious intimate partner violence[e] | 49.6 | 47.1 | 0.6 | 0.5 |
| Serious stranger violence | 54.3 | 55.7 | 1.4 | 1.6 |
| Serious violent crime involving a weapon | 56.3 | 60.8 | 2.0 | 2.7 |
| Serious violent crime involving injury | 59.0 | 53.4 | 1.4 | 1.3 |
| **Property crime** | 34.6% | 35.2% | 38.3 | 41.7 ‡ |
| Household burglary | 50.8 | 49.0 | 11.2 | 11.6 |
| Motor vehicle theft | 69.0 | 73.2 | 3.0 | 3.4 |
| Other theft[g] | 28.6 | 29.6 | 24.1 | 26.7 |

Note: Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Other violent crime categories in this table, including domestic violence and violent crime involving injury, are not mutually exclusive from these classifications. See appendix table 6 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Rates are per 1,000 persons age 12 or older for violent crime or per 1,000 households for property crime.
[b]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.
[c]See *Methodology* for details on the measurement of rape and sexual assault in the NCVS.
[d]Includes victimization committed by intimate partners and family members.
[e]Includes victimization committed by current or former spouses, boyfriends, or girlfriends.
[f]In the NCVS, serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault.
[g]The taking or attempted unlawful taking of property or cash without personal contact with the victim.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## Increases in violent crime rates were detected for various demographic groups

From 2015 to 2016, the rate of violent victimizations committed against males increased from 15.9 per 1,000 males age 12 or older to 19.6 (table 5). There was no statistically significant change in the rate of violent victimizations committed against females. The rate of violent crime against persons ages 25 to 34 increased from 21.8 victimizations per 1,000 to 28.4 per 1,000. No other age groups experienced a statistically significant change in rates of violent crime from 2015 to 2016. In addition, there were no statistically significant changes in the violent crime rate by race and Hispanic origin or by household income during this period.

The rate of violent crime for widowed persons increased from 8.5 victimizations per 1,000 persons to 13.4 per 1,000 from 2015 to 2016. For separated persons, the rate of violent crime increased from 39.5 victimizations per 1,000 to 66.4 per 1,000.

**TABLE 5**
**Rate of violent victimization, by demographic characteristics of victims, 2015 and 2016**

| Victim demographic characteristic | Rate per 1,000[a] | | |
|---|---|---|---|
| | 2015* | Original 2016[b] | Revised 2016 |
| Total | 18.6 | 21.1 | 19.7 |
| **Sex** | | | |
| Male | 15.9 | 21.4 | 19.6 ‡ |
| Female | 21.1 | 20.8 | 19.7 |
| **Race/Hispanic origin[c]** | | | |
| White | 17.4 | 20.5 | 19.6 |
| Black | 22.6 | 24.1 | 22.3 |
| Hispanic | 16.8 | 20.2 | 18.2 |
| Other[d] | 25.7 | 23.0 | 19.0 |
| **Age** | | | |
| 12–17 | 31.3 | 30.9 | 25.1 |
| 18–24 | 25.1 | 30.9 | 29.6 |
| 25–34 | 21.8 | 31.8 | 28.4 ‡ |
| 35–49 | 22.6 | 22.9 | 22.3 |
| 50–64 | 14.2 | 16.1 | 15.0 |
| 65 or older | 5.2 | 4.4 | 5.3 |
| **Marital status** | | | |
| Never married | 26.2 | 29.8 | 27.6 |
| Married | 9.9 | 12.4 | 11.0 |
| Widowed | 8.5 | 10.7 | 13.4 ‡ |
| Divorced | 35.3 | 30.1 | 28.5 |
| Separated | 39.5 | 67.5 | 66.4 † |
| **Household income** | | | |
| Less than $10,000 | 39.2 | 35.8 | 34.5 |
| $10,000–$14,999 | 27.7 | 35.6 | 30.8 |
| $15,000–$24,999 | 25.9 | 32.9 | 30.6 |
| $25,000–$34,999 | 16.3 | 21.0 | 19.4 |
| $35,000–$49,999 | 20.5 | 20.4 | 19.2 |
| $50,000–$74,999 | 16.3 | 17.6 | 15.4 |
| $75,000 or more | 12.8 | 15.7 | 15.2 |

Note: Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder. See appendix table 7 for standard errors.
*Comparison year. Estimates for 2015 are compared to revised estimates for 2016 only.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Rates are per 1,000 persons age 12 or older.
[b]Estimates released on December 7, 2017 in *Criminal Victimization, 2016* (NCJ 251150).
[c]White, black, and other race categories exclude persons of Hispanic or Latino origin.
[d]Includes Asians, Native Hawaiians, and Other Pacific Islanders; American Indians and Alaska Natives; and persons of two or more races.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use File and 2016 revised Public-Use File.

## Aggravated assaults against males increased from 2.7 to 4.2 per 1,000

From 2015 to 2016, violent crime patterns differed for males and females (table 6). The rate of rape or sexual assault for women declined from 2.7 victimizations per 1,000 females age 12 or older to 1.8; there was no statistically significant difference in this rate for males. Similarly, the rate of robbery against females decreased, but there was no statistically significant change for males.

The rates of aggravated assault and overall assault against males rose from 2015 to 2016. The rate of aggravated assault against males increased from 2.7 to 4.2 per 1,000, and the overall assault rate against males increased from 13.3 to 17.2 per 1,000. Assault rates against females did not show any significant change.

Overall, rates of violent victimization varied for males and females of different age groups from 2015 to 2016. For example, the violent victimization rate against men age 18 and older increased from 14.4 victimizations per 1,000 to 18.2 per 1,000 (table 7). This was fueled by increases in violent victimization against men ages 35 to 49 and men age 65 and older. There was no statistically significant change in the overall rate of violent victimization against females; however, the rate of violent victimization increased for females ages 25 to 34 and decreased for females ages 12 to 17.

**TABLE 6**
**Violent victimization, by type of crime and sex of victim, 2015 and 2016**

| Type of crime | Rate per 1,000 males | | Rate per 1,000 females | |
|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 |
| Violent crime | 15.9 | 19.6 ‡ | 21.1 | 19.7 |
| Rape or sexual assault[a] | 0.5 | 0.3 | 2.7 | 1.8 ‡ |
| Robbery | 2.2 | 2.0 | 2.1 | 1.4 ‡ |
| Total assault | 13.3 | 17.2 † | 16.3 | 16.5 |
| Aggravated assault | 2.7 | 4.2 † | 3.3 | 3.5 |
| Simple assault | 10.5 | 13.0 ‡ | 13.0 | 13.1 |

Note: Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey is based on interviews with victims and cannot measure murder. Rates are per 1,000 persons age 12 or older. See appendix table 8 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**TABLE 7**
**Violent victimization, by sex and age of victim, 2015 and 2016**

| Age of victim | Rate per 1,000 males | | Rate per 1,000 females | |
|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 |
| Total | 15.9 | 19.6‡ | 21.1 | 19.7 |
| Age | | | | |
| 12–17 | 30.1 | 32.5 | 32.5 | 17.4 † |
| 18 or older | 14.4 | 18.2 ‡ | 20.0 | 19.9 |
| 18–24 | 23.3 | 29.7 | 27.0 | 29.5 |
| 25–34 | 19.0 | 23.4 | 24.6 | 33.4 ‡ |
| 35–49 | 16.4 | 22.4 ‡ | 28.6 | 22.2 |
| 50–64 | 12.3 | 13.1 | 16.0 | 16.8 |
| 65 or older | 3.2 | 6.3 † | 6.7 | 4.5 |

Note: Rates are for persons age 12 or older. Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey is based on interviews with victims and cannot measure murder. See appendix table 9 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**Among most demographic groups, no changes in the total rate of serious violent crime were detected from 2015 to 2016**

From 2015 to 2016, the rate of serious violent victimizations committed against persons in households that earned $15,000 to $24,999 increased from 8.2 victimizations per 1,000 to 13.5 per 1,000 (table 8). There were no other statistically significant changes in the rates of serious violent crime by victims' sex, race and Hispanic origin, age, marital status, or household income.

### TABLE 8
**Rate of serious violent victimization, by demographic characteristics of victims, 2015 and 2016**

| Victim demographic characteristic | Rate per 1,000[a] | |
|---|---|---|
| | 2015* | 2016 |
| **Total** | 6.8 | 6.6 |
| **Sex** | | |
| Male | 5.4 | 6.6 |
| Female | 8.1 | 6.6 |
| **Race/Hispanic origin[b]** | | |
| White | 6.0 | 6.0 |
| Black | 8.4 | 7.1 |
| Hispanic | 7.1 | 7.9 |
| Other[c] | 10.4 | 7.7 |
| **Age** | | |
| 12–17 | 7.8 | 5.9 |
| 18–24 | 10.7 | 11.9 |
| 25–34 | 9.3 | 12.5 |
| 35–49 | 7.8 | 6.3 |
| 50–64 | 5.7 | 4.7 |
| 65 or older | 1.5 | 1.1 |
| **Marital status** | | |
| Never married | 9.4 | 9.8 |
| Married | 3.5 | 3.0 |
| Widowed | 2.9 | 2.3 |
| Divorced | 13.0 | 12.2 |
| Separated | 20.6 | 18.7 |
| **Household income** | | |
| Less than $10,000 | 17.7 | 15.1 |
| $10,000–$14,999 | 12.0 | 10.0 |
| $15,000–$24,999 | 8.2 | 13.5 † |
| $25,000–$34,999 | 5.5 | 6.0 |
| $35,000–$49,999 | 7.1 | 6.6 |
| $50,000–$74,999 | 5.9 | 5.0 |
| $75,000 or more | 4.5 | 3.9 |

Note: In the National Crime Victimization Survey serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault. See appendix table 10 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
[a]Rates are per 1,000 persons age 12 or older for violent crime.
[b]White, black, and other race categories exclude persons of Hispanic or Latino origin.
[c]Includes Asians, Native Hawaiians, and Other Pacific Islanders; American Indians and Alaska Natives; and persons of two or more races.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

### Prevalence of crime

Bureau of Justice Statistics (BJS) reports based on National Crime Victimization Survey (NCVS) data typically present victimization rates, which measure the extent to which violent and property victimizations occur in a specified population during a specific time. Victimization rates are used for most of this report. For crimes affecting persons, NCVS victimization rates are estimated by dividing the number of victimizations that occur during a specified time (T) by the population at risk for those victimizations and multiplying the rate by 1,000.

$$\text{Victimization rate}_T = \frac{\text{Number of victimizations experienced by a specified population}_T}{\text{Number of persons in the specified population}_T} \times 1{,}000$$

Estimates of a population's risk for criminal victimization may also be examined with prevalence rates. Like victimization rates, prevalence rates describe the level of victimization but are based on the number of unique persons (or households) in the population experiencing at least one victimization during a specified time. The key distinction between a victimization and prevalence rate is whether the numerator consists of the number of victimizations or victims. For example, a person who experienced two robberies on separate occasions within the past year would be counted twice in the victimization rate but once in the prevalence rate. Prevalence rates are estimated by dividing the number of victims in the specified population by the total number of persons in the population and multiplying the rate by 100, yielding the percentage of the population victimized at least once in a period.

$$\text{Prevalence rate}_T = \frac{\text{Number of victims in a specified population}_T}{\text{Number of persons in the specified population}_T} \times 100$$

When victimization and prevalence rates are produced for household crimes, such as burglary, numerators and denominators are adjusted to reflect households rather than persons. The following section presents prevalence rates by type of crime and certain demographic characteristics. (For further information about measuring prevalence in the NCVS, see *Measuring the Prevalence of Crime with the National Crime Victimization Survey*, NCJ 241656, BJS web, September 2013.)

**The prevalence rate of assault among persons age 12 or older increased from 2015 to 2016**

From 2015 to 2016, the number of persons who reported that they had experienced one or more violent victimizations during the prior 6 months increased from 2.7 to 2.9 million; however, there was no statistically significant change in the prevalence rate, which captures the percentage of persons affected (table 9). (The number of victims may have increased, in part, due to the 1% increase in population age 12 or older.) During this same time period, there was an increase in the prevalence rate of assault, from 0.8% to 0.9%. The prevalence rate increased from 0.4% to 0.5% for stranger violence and decreased from 0.3% to 0.2% for violent crime involving injury.

Based on the 2016 survey, an estimated 0.4% of all persons age 12 or older (1.1 million persons) experienced at least one serious violent victimization. This was not significantly different from a year earlier. From 2015 to 2016, the prevalence rate of serious violent crime involving a weapon increased from 0.2% to 0.3%.

The 2016 survey found that 7.4% of all households (9.8 million) experienced one or more property victimizations. From 2015 to 2016, the prevalence rate of household burglary decreased from 1.6% to 1.5%. No statistically significant changes occurred in the prevalence rates of motor vehicle theft or other theft from 2015 to 2016.

### TABLE 9
### Number of victims and prevalence rate, by type of crime, 2015 and 2016

| Type of crime | Number of victims[a] | | | Prevalence rate[b] | | |
|---|---|---|---|---|---|---|
| | 2015* | Original 2016[c] | Revised 2016 | 2015* | Original 2016[c] | Revised 2016 |
| Violent crime[d] | 2,650,670 | 3,629,180 | 2,882,320 ‡ | 0.98% | 1.33% | 1.06% |
| Rape or sexual assault[e] | 204,060 | 205,680 | 162,940 | 0.08 | 0.08 | 0.06 |
| Robbery | 375,280 | 417,190 | 312,310 | 0.14 | 0.15 | 0.11 |
| Assault | 2,175,520 | 3,136,760 | 2,497,500 † | 0.81 | 1.15 | 0.92 † |
| Aggravated assault | 560,720 | 784,600 | 680,770 † | 0.21 | 0.29 | 0.25 ‡ |
| Simple assault | 1,690,150 | 2,450,840 | 1,903,860 † | 0.63 | 0.90 | 0.70 ‡ |
| Domestic violence[f] | 493,310 | 630,720 | 514,350 | 0.18 | 0.23 | 0.19 |
| Intimate partner violence[g] | 310,090 | 309,030 | 273,890 | 0.12 | 0.11 | 0.10 |
| Stranger violence | 1,117,340 | 1,588,430 | 1,276,710 ‡ | 0.41 | 0.58 | 0.47 ‡ |
| Violent crime involving injury | 778,300 | 864,900 | 663,920 ‡ | 0.29 | 0.32 | 0.24 ‡ |
| Serious violent crime[h] | 1,099,400 | 1,354,370 | 1,123,190 | 0.41% | 0.50% | 0.41% |
| Serious domestic violence[f] | 212,690 | 246,360 | 183,230 | 0.08 | 0.09 | 0.07 |
| Serious intimate partner violence[g] | 141,530 | 146,310 | 120,760 | 0.05 | 0.05 | 0.04 |
| Serious stranger violence | 479,870 | 627,310 | 561,410 | 0.18 | 0.23 | 0.21 |
| Serious violent crime involving a weapon | 644,370 | 896,350 | 767,320 † | 0.24 | 0.33 | 0.28 ‡ |
| Serious violent crime involving injury | 399,360 | 509,680 | 395,300 | 0.15 | 0.19 | 0.15 |
| Property crime | 10,030,500 | 11,715,650 | 9,825,060 | 7.60% | 8.79% | 7.37% |
| Household burglary | 2,175,380 | 2,569,980 | 2,037,320 | 1.65 | 1.93 | 1.53 ‡ |
| Motor vehicle theft | 465,650 | 546,180 | 470,880 | 0.35 | 0.41 | 0.35 |
| Other theft[i] | 7,941,030 | 9,323,510 | 7,803,350 | 6.02 | 7.00 | 5.85 |

Note: Violent crime classifications include rape or sexual assault, robbery, aggravated assault, and simple assault. Other violent crime categories in this table, including domestic violence and violent crime involving injury, are not mutually exclusive from these classifications. Details may not sum to totals because a person or household may experience multiple types of crime. Total population age 12 or older was 269,526,470 in 2015 and 272,204,190 in 2016. Total number of households was 131,962,260 in 2015 and 133,365,270 in 2016. See appendix table 11 for standard errors.
*Comparison year. Estimates for 2015 are compared to revised estimates for 2016 only.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Number of persons age 12 or older who experienced at least one victimization during the year for violent crime, and number of households that experienced at least one victimization during the year for property crime.
[b]Percentage of persons age 12 or older who experienced at least one victimization during the year for violent crime, and percentage of households that experienced at least one victimization during the year for property crime.
[c]Estimates released on December 7, 2017 in *Criminal Victimization, 2016* (NCJ 251150).
[d]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.
[e]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.
[f]Includes victimization committed by intimate partners and family members.
[g]Includes victimization committed by current or former spouses, boyfriends, or girlfriends.
[h]In the NCVS, serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault.
[i]The taking or attempted unlawful taking of property or cash without personal contact with the victim.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

## Prevalence of violent crime against males increased from 0.9% to 1.1%

In 2016, an estimated 1.1% of males (1.5 million) and 1.0% of females (1.4 million) had experienced one or more violent victimizations during the prior 6 months (table 10). From 2015 to 2016, the prevalence rate for males increased from 0.9% to 1.1%. There was no statistically significant change in the prevalence rate for females.

There was also no statistically significant change in the prevalence of violent crime by race and Hispanic origin. From 2015 to 2016, the prevalence rate of violent crime decreased for persons ages 12 to 17, from 1.6% to 1.3%. The prevalence rate for persons ages 25 to 34 increased,

from 1.1% to 1.6%. There were no statistically significant changes in the prevalence of violent crime for any other age group during this period.

From 2015 to 2016, the prevalence rate of violent crime increased for never-married (from 1.4% to 1.5%) and separated (from 1.6% to 2.4%) persons. For persons who were married, widowed, or divorced, no statistically significant change was detected in the prevalence of violent crime during this period.

## Other revised estimates

Appendix tables 13-20 are revised versions of tables originally published in *Criminal Victimization, 2016* (NCJ 251150, BJS web, December 2017).

### TABLE 10
**Prevalence of violent crime, by demographic characteristics of victims, 2015 and 2016**

| Victim demographic characteristic | Number of victims[a] | | Prevalence rate[b] | |
|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 |
| Total | 2,650,670 | 2,882,320 ‡ | 0.98% | 1.06% |
| **Sex** | | | | |
| Male | 1,227,870 | 1,514,130 † | 0.94% | 1.14% † |
| Female | 1,422,800 | 1,368,190 | 1.03 | 0.98 |
| **Race/Hispanic origin[c]** | | | | |
| White | 1,667,090 | 1,785,680 | 0.96% | 1.03% |
| Black | 394,770 | 377,950 | 1.19 | 1.12 |
| Hispanic | 400,720 | 488,700 | 0.93 | 1.10 |
| Other[d] | 188,090 | 229,990 | 0.94 | 1.08 |
| **Age** | | | | |
| 12–17 | 407,850 | 313,470 † | 1.64% | 1.25% † |
| 18–24 | 445,760 | 461,300 | 1.46 | 1.52 |
| 25–34 | 476,630 | 689,590 † | 1.09 | 1.56 † |
| 35–49 | 686,330 | 706,000 | 1.13 | 1.15 |
| 50–64 | 497,800 | 541,330 | 0.79 | 0.85 |
| 65 or older | 136,250 | 170,640 | 0.29 | 0.36 |
| **Marital status** | | | | |
| Never married | 1,343,010 | 1,422,600 | 1.44% | 1.49% † |
| Married | 692,470 | 827,920 † | 0.54 | 0.65 |
| Widowed | 92,330 | 88,310 | 0.62 | 0.59 |
| Divorced | 428,830 | 408,710 | 1.58 | 1.50 |
| Separated | 84,370 | 119,150 ‡ | 1.65 | 2.37 ‡ |

Note: Details may not sum to totals due to rounding. Total population age 12 or older was 269,526,470 in 2015 and 272,204,190 in 2016. See appendix table 12 for standard errors.
*Comparison year.
†Significant change from comparison group at the 95% confidence level.
‡Significant difference from comparison group at the 90% confidence level.
[a]Number of persons age 12 or older who experienced at least one victimization during the year for violent crime.
[b]Percentage of persons age 12 or older who experienced at least one victimization during the year for violent crime.
[c]White, black, and other race categories exclude persons of Hispanic or Latino origin.
[d]Includes Asians, Native Hawaiians, and Other Pacific Islanders; American Indians and Alaska Natives; and persons of two or more races.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

# Methodology

## Survey coverage

The National Crime Victimization Survey (NCVS) is an annual data collection conducted by the U.S. Census Bureau for the Bureau of Justice Statistics (BJS). The NCVS is a self-report survey that is administered from January to December. Respondents are asked about the number and characteristics of crimes they have experienced during the prior 6 months. In this report, crimes are classified by the year of the survey and not by the year of the crime.

The NCVS collects information on crimes against persons age 12 or older from a nationally representative sample of U.S. households. It collects information on nonfatal personal crimes (rape or sexual assault, robbery, and aggravated and simple assault) and household property crimes (burglary, motor vehicle theft, and other theft). The survey collects data on crimes both reported and not reported to police. In addition to providing annual level and change estimates on criminal victimization, the NCVS is the primary source of information on the nature of criminal victimization incidents.

Survey respondents provide information about themselves (including age, sex, race and Hispanic origin, marital status, education level, and income) and whether they experienced a victimization. For each victimization incident, respondents report information about the offender (including age, sex, race and Hispanic origin, and victim-offender relationship), characteristics of the crime (including time and place of occurrence, use of weapons, nature of injury, and economic consequences), whether the crime was reported to police, reasons the crime was or was not reported, and victim experiences with the criminal justice system.

The NCVS is administered to persons age 12 or older from a nationally representative sample of households in the United States. The NCVS defines a household as a group of persons who all reside at a sampled address. Persons are considered household members when the sampled address is their usual place of residence at the time of the interview and when they have no usual place of residence elsewhere. Once selected, households remain in the sample for 3½ years, and eligible persons in these households are interviewed every 6 months, either in person or over the phone, for a total of seven interviews.

First interviews are typically conducted in person with subsequent interviews conducted either in person or by phone. New households rotate into the sample on an ongoing basis to replace outgoing households that have been in the sample for the 3½-year period. The sample includes persons living in group quarters, such as dormitories, rooming houses, and religious group dwellings, and excludes persons living on military bases and in institutional settings such as correctional or hospital facilities.

## Non-response and weighting adjustments

The 2016 revised data file includes 117,990 household interviews. A sample of 50,167 household interviews represented the first half of 2016 and 67,823 interviews were completed in the second half of 2016. Overall, 78% of eligible households completed an interview. Within participating households, 84,304 persons completed an interview representing the first half of 2016, and 111,882 persons completed an interview in the second half of 2016. The revised 2016 file contains 196,186 person interviews, representing an 84% response rate among eligible persons from responding households.

Victimizations that occurred outside of the United States were excluded from this report. In 2016, less than 1% of the unweighted victimizations occurred outside of the United States.

Except where otherwise stated, estimates for 2016 in this report use data from the revised 2016 NCVS data files. These data are weighted to produce annual estimates of victimization for persons age 12 or older living in U.S. households. Because the NCVS relies on a sample rather than a census of the entire U.S. population, weights are designed to adjust to known population totals and compensate for survey non-response and other aspects of the complex sample design.

NCVS data files include person, household, and victimization weights. Person weights provide an estimate of the population represented by each person in the sample. Household weights provide an estimate of the U.S. household population represented by each household in the sample. After proper adjustment, both household and person weights are also typically used to form the denominator in calculations of crime rates.

Victimization weights used in the analyses in this report account for the number of persons victimized during an incident and for high-frequency repeat victimizations

(i.e., series victimizations). Series victimizations are similar in type but occur with such frequency that a victim is unable to recall each individual event or describe each event in detail. Survey procedures allow NCVS interviewers to identify and classify these similar victimizations as series victimizations and to collect detailed information on only the most recent incident in the series.

The weighting counts series victimizations as the actual number of victimizations reported by the victim, up to a maximum of 10. Doing so produces more reliable estimates of crime levels than only counting such victimizations once, while the cap at 10 minimizes the effect of extreme outliers on rates. According to the revised 2016 data, capped series incidents accounted for 1.5% of all victimizations and 3.5% of all violent victimizations. Additional information on the enumeration of series victimizations is detailed in the report *Methods for Counting High-Frequency Repeat Victimizations in the National Crime Victimization Survey* (NCJ 237308, BJS web, April 2012).

### Standard error computations

When national estimates are derived from a sample, as with the NCVS, caution must be used when comparing one estimate to another or when comparing estimates over time. Although one estimate may be larger than another, estimates based on a sample have some degree of sampling error. The sampling error of an estimate depends on several factors, including the amount of variation in the responses and the size of the sample. When the sampling error around an estimate is taken into account, estimates that appear different may not be statistically different.

One measure of the sampling error associated with an estimate is the standard error. The standard error may vary from one estimate to the next. Generally, an estimate with a small standard error provides a more reliable approximation of the true value than an estimate with a larger standard error. Estimates with relatively large standard errors are associated with less precision and reliability and should be interpreted with caution.

Generalized variance function (GVF) parameters and direct variance estimation methods were used to generate standard errors for each point estimate (e.g., counts, percentages, and rates) in this report. To generate standard errors around victimization estimates from the NCVS, the U.S. Census Bureau produces GVF parameters for BJS. To generate standard errors around prevalence

estimates, BJS used direct variance estimation methods. The GVFs and direct variance estimation methods take into account aspects of the NCVS complex sample design and represent the curve fitted to a selection of individual standard errors based on the Balanced Repeated Replication (BRR) technique.

BJS conducted statistical tests to determine whether differences in estimated numbers, percentages, and rates in this report were statistically significant once sampling error was taken into account. Using statistical analysis programs developed specifically for the NCVS, all comparisons in the text were tested for significance. The primary test procedure was the Student's t-statistic, which tests the difference between two sample estimates. Findings described in this report as higher, lower, or different passed a test at the 0.05 level of statistical significance (95% confidence level) or at the 0.10 level of significance (90% confidence level). Readers should reference figures and tables in this report for testing on specific findings. Caution is required when comparing estimates not explicitly discussed in this report.

Readers may use the estimates and standard errors of the estimates provided in this report to generate a confidence interval around the estimate as a measure of the margin of error. The following example illustrates how standard errors may be used to generate confidence intervals:

> Based on the revised 2016 NCVS, in 2016 the violent victimization rate among persons age 12 or older was 19.7 per 1,000 persons (see table 1). Using the GVFs, BJS determined that the estimated victimization rate has a standard error of 0.95 (see appendix table 3). A confidence interval around the estimate is generated by multiplying the standard error by ± 1.96 (the t-score of a normal, two-tailed distribution that excludes 2.5% at either end of the distribution). Therefore, the 95% confidence interval around the 19.7 estimate from 2016 is 19.7 ± (0.95 x 1.96) or (17.80 to 21.54). In other words, if BJS used the same sampling method to select different samples and computed an interval estimate for each sample, it would expect the true population parameter (rate of violent victimization) to fall within the interval estimates 95% of the time.

For this report, BJS also calculated a coefficient of variation (CV) for all estimates, representing the ratio of the standard error to the estimate. CVs provide another measure of reliability and a means for comparing the precision of estimates across measures with differing levels or metrics.

### Revised 2016 NCVS data file creation

Working with the U.S. Census Bureau, BJS devised a methodology for creating the revised 2016 NCVS data file to allow for comparisons between 2016 data and prior (and future) data years. BJS requested that the U.S. Census Bureau create a 2016 revised file using public-use data that included—

- outgoing county interviews from July to December 2015

- continuing county interviews from January to June 2016

- all interviews (continuing and new counties) from July to December 2016.[6]

The outgoing 2015 interviews were used to replace the new 2016 interviews in the first half of 2016, which were most affected by the 2016 sample redesign. The first step in creating the file was to identify the sample interviews to include from 2015 and 2016.

---

[6]Tersine, Jr., A. G. (July 3, 2018). *National Crime Victimization Survey 2016 Bridge File Methodology, Limitations, and Estimates.* Memorandum from the U.S. Census Bureau to BJS.

### Interview identification

Identifying NCVS interviews requires information about which sample counties are continuing, new, and outgoing, and can generally be determined as follows:

- continuing includes interviews in both the 2015 and 2016 samples

- new includes interviews in 2016 but not 2015

- outgoing includes interviews in 2015 but not 2016.

County status is not on the public-use file, so in some situations this logic cannot identify the status of an interview.

The revised 2016 NCVS data file includes 2015 in-scope sample interviews in 2016 (table 11). The resulting file blends the 2015 and 2016 NCVS interviews as follows:

- outgoing county interviews in time-in-sample two through six from July to December 2015

- continuing county interviews in time-in-sample two through six from January to June 2016

- all interviews from time-in-sample one and seven from July to December 2015

- all interviews (continuing and new counties) from July to December 2016.

---

## TABLE 11
**Completed unweighted 2015 and 2016 National Crime Victimization Survey household interviews used to create revised 2016 data file, by county status**

| Time in sample | Household interviews used for the revised first half of 2016 | | | | Household interviews used in the revised 2016 file | | | Unweighted percent of household interviews in revised 2016 file from 2015 |
| | Second half of 2015 | | | First half of 2016 | First half of 2016 | Second half of 2016 | Total | |
| | Continuing | Outgoing | Unknown* | Continuing | | | | |
|---|---|---|---|---|---|---|---|---|
| Total | 6,678 | 10,286 | 6,338 | 26,865 | 50,167 | 67,823 | 117,990 | 20% |
| 1 | 6,678 | 1,794 | ~ | ~ | 8,472 | 11,120 | 19,592 | 43% |
| 2 | ~ | 1,891 | ~ | 6,573 | 8,464 | 11,030 | 19,494 | 10 |
| 3 | ~ | 1,693 | ~ | 6,616 | 8,309 | 10,379 | 18,688 | 9 |
| 4 | ~ | 1,667 | ~ | 4,501 | 6,168 | 10,297 | 16,465 | 10 |
| 5 | ~ | 1,630 | ~ | 4,635 | 6,265 | 8,340 | 14,605 | 11 |
| 6 | ~ | 1,611 | ~ | 4,540 | 6,151 | 8,366 | 14,517 | 11 |
| 7 | ~ | ~ | 6,338 | ~ | 6,338 | 8,291 | 14,629 | 43 |

Note: The information in this table was produced using the 2015 and 2016 National Crime Victimization Survey public-use files. Due to the limited data on these files, the classification of counties (such as continuing and outgoing) does not always match the internal data.
*Indicates cases where there was not enough data on the public-use file to determine any status.
~Not applicable.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

## Weight assignments

The weights on the 2016 revised file were produced using data that are not available on the public-use file. First, new sampling base weights were set for all interviews that represent the first half of 2016. Then, weighting adjustments were applied to the combined interviews using the same methods as in the original 2016 national NCVS. Finally, the updated bounding and time-in-sample adjustments were applied. (See section on *Changes to the NCVS bounding and time-in-sample adjustments for the revised 2016 file* for more information.)

All interviews that represent the first half of 2016 require 2000 design base weights to ensure full national coverage in the sample while solely using 2000 design areas. Some 2010 design sample began interviewing in the 2015 NCVS, but all sample interviews in 2015 had 2000 design base weights for this reason. The only difference between the 2000 and 2010 design base weights is the primary sampling unit (PSU) probability of selection, which differs across designs for counties that are non self-representing (NSR). So the sampling base weights change accordingly.

The base weight was set to the 2000 design value from the 2015 NCVS for all interviews that represent January to June 2016. All interviews that represent July to December 2016 maintained their 2010 design sampling base weight.

To create final and replicate 2016 weights, the same methods and population controls used for the original 2016 NCVS public-use file were applied with two modifications:

1. Sample design elements using the sample design for the 2000 Census were applied for the first half of 2016 (rather than those for the 2010 design).

2. New bounding and time-in-sample adjustment factors were applied. (See section on *Changes to the NCVS bounding and time-in-sample adjustments for the revised 2016 file* for more information.)

## Data limitations

The purpose of the NCVS 2016 revised file is to allow data users to make comparisons across data years using a nationally representative sample. The 2016 revised file is a nationally representative sample. It is made up of the combination of two different nationally representative samples. However, there are some limitations that data users should consider when using the file.

When analyzing estimates of change between 2015 and 2016, data users should understand the amount and nature of overlap in response data between 2015 and the revised 2016. Normally when comparing NCVS estimates from two consecutive years, like 2015 to 2016, the correlation coefficient accounts for sample units (households and persons) that are included in both years because they are interviewed in both years. On the revised file, not only are the same units on the 2016 revised file and the 2015 public-use file, but the same NCVS interviews (and crimes reported during those interviews) are on both files. This results in higher 2015-to-2016 correlation coefficients.

BJS examined 2015 and 2016 victimization rates separately for new and continuing sample counties and found no significant differences between the two years for continuing counties. Estimates from the 2016 revised file that find no significant differences between 2015 and 2016 will be consistent with those results. However, if there is a significant change in crimes within non-continuing areas, the estimates from this revised file could be biased.

## Bias

The NCVS crime estimates are weighted sums of all crimes reported during the period of interest. If the same interviews (and their crimes) are included in the estimates being compared (2015 and 2016), then they essentially cancel each other out when calculating the difference between the two estimates. Therefore, it is expected that the change in crime within the replaced areas in the first half of the 2016 revised file will be almost zero. There are small differences due to the new weighting adjustments applied to the cases on the revised file.

Any estimates of change from 2015 to 2016 are based on 77% of the combined 2016 sample, as the 23% of the data carried over from 2015 by definition did not change. This introduces the possibility of bias in the 2015-to-2016 change estimates.

Due to the potential bias inherent in this approach, data users are cautioned not to assume crimes are unchanged if the revised file shows no significant difference from 2015 to 2016. If the revised file does detect significant changes, then data users may conclude that crime significantly changed from 2015 to 2016. This assumes that any crime changes between 2015 and 2016 within the portion of the overall 2016 sample that was measured in 2016 were in the same direction as changes within the

portion of the overall 2016 sample that was not measured in 2016. However, for example, if there was an increase within the portion that was measured in 2016 and a decrease in the portion that was not, then it is possible that the overall revised 2016 estimate would show a significant change when, in fact, no change occurred.

For all estimates using the 2016 revised file, the potential bias will likely affect some population domains more than others.

The percentage of household interviews taken from the second half of 2015 varies across domains (table 12). For rural areas, 90% of the household interviews representing the first half of 2016 are from 2015. In other areas (principal cities and suburban areas within MSAs), the percentage is 39%. Although some variations are observed across household income levels, race of household respondents and housing tenure, the differences are not as extreme. When combined with the second half of 2016, the variations across domains are even less pronounced.

Data users should consider the proportion of 2015 data that is included for a domain estimate when making conclusions about that domain.

### Case identification error

Cases on the 2016 revised file were identified using methods that any data user can apply using the 2015 and 2016 public-use files. This approach did not perfectly identify sample cases within continuing, new, and outgoing counties. Some cases from January to June 2016 in continuing counties were excluded from the file because they could not be distinguished from interviews in new counties. Other cases from July to December 2015 in continuing counties were included on the file because they could not be distinguished from interviews in outgoing counties.

This is not a large number of cases, and the weighting adjustments ensure that all weights sum to known population controls for the cases identified. However, it is a source of coverage error in the 2016 NCVS revised data file.

### High variance

The 2016 revised file contains a combination of 2000 design and 2010 design weights. The 2000 design base weights came from a sample that was stratified by census division, so sampled NSR counties could represent non-sampled counties in different states within the same division. The 2000 design sample was also self-weighting, so every sample unit had the same base weight.

The 2010 design sample was stratified by state, to allow for state-level NCVS estimates, so sampled NSR counties only represent other counties within the same state. Also, some counties that were NSR in the 2000 design became self-representing (SR) in the 2010 design. These changes in representation changed the base weights for 2000 design sample within continuing counties from the fixed 2000 design value to new 2010 design values with a wider range.

**TABLE 12**
**Unweighted and weighted distribution of revised file household interviews from 2015 and 2016**

| Domain | Unweighted distribution | | | | Weighted distribution | | | |
|---|---|---|---|---|---|---|---|---|
| | Representing January–June | | Full file | | Representing January–June | | Full file | |
| | From 2015 | From 2016 | From 2015 | From 2016 | From 2015 | From 2016 | From 2015 | From 2016 |
| Total | 46% | 54% | 20% | 80% | 47% | 53% | 23% | 77% |
| Principal city of MSA (urban)* | 39% | 61% | 17% | 83% | 39% | 61% | 20% | 80% |
| Balance of MSA (suburban)* | 39 | 61 | 17 | 83 | 39 | 61 | 20 | 80 |
| Outside MSA (rural)* | 90 | 10 | 35 | 65 | 90 | 10 | 45 | 55 |
| Household income $25,000 or less | 52 | 48 | 22 | 78 | 52 | 48 | 26 | 74 |
| Household income $25,000–$49,999 | 48 | 52 | 21 | 79 | 48 | 52 | 25 | 75 |
| Household income $50,000 or more | 43 | 57 | 18 | 82 | 44 | 56 | 21 | 79 |
| Reference person black-only | 42 | 58 | 18 | 82 | 42 | 58 | 21 | 79 |
| Reference person white-only | 48 | 52 | 20 | 80 | 48 | 52 | 24 | 76 |
| Reference person other race(s) | 38 | 62 | 17 | 83 | 38 | 62 | 19 | 81 |
| Housing tenure = own | 47 | 53 | 20 | 80 | 48 | 52 | 24 | 76 |
| Housing tenure = rent | 45 | 55 | 19 | 81 | 44 | 56 | 22 | 78 |
| Housing tenure = occupy free | 60 | 40 | 26 | 74 | 61 | 39 | 29 | 71 |

*MSA refers to the Standard Metropolitan Statistical Area principal city status of the respondent's household as defined by the U.S. Census Bureau. For more information on MSA status, see https://www.census.gov/programs-surveys/metro-micro/about.html.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

The 2016 NCVS weighting adjustments were similar to the 2015 weighting adjustments, so most differences in the weights from the 2000 design to the 2010 design are due to the change in base weights. However, this difference between the first half and second half of the revised file adds variability to the weights and an increase to the variance of estimates from the revised file.

### High 2015-2016 correlation

Correlation coefficients for the variance of year-to-year estimate comparisons are generally calculated because the NCVS samples for two consecutive years have repeated interviews from the same households and persons. Correlations between 2015 and the 2016 revised file were calculated in the same way, with higher correlations observed due to the overlap.

When comparing the NCVS estimates from two different years, a variance of the difference as a function of the variance of the two estimates and the correlation coefficient is calculated. Higher correlation coefficients generally produce lower variances of the difference between the estimates, and these lower variances will result in smaller differences testing as significant.

### Changes to the NCVS bounding and time-in-sample adjustments for the revised 2016 file

BJS began to use results from NCVS respondents' first interviews in 2006 in response to an NCVS sample size reduction necessitated by budget cuts. To account for including these interviews that were thought to inflate the estimates, BJS and the U.S. Census Bureau implemented a bounding adjustment in 2007. (See *National Crime Victimization Survey revised 2016 estimates* textbox for more information.) The bounding weighting adjustment was made up of incident weights designed to ensure that the weighted number of time-in-sample one incidents was similar to the number reported in time-in-sample two through seven. The adjustment factor for time-in-sample one incidents was calculated monthly using data from the prior 12 months and unbounded victimization weights. The formula was—

$$\text{Bounding adjustment factor} = \frac{\text{average weighted crime rate in time-in-sample 2-7}}{\text{crime rate in weighted time-in-sample 1}}$$

Additionally, based on research indicating that crime reporting can vary depending on the interview, or time-in-sample, for a respondent, BJS and the U.S. Census Bureau also used a time-in-sample

adjustment. This adjustment factor was designed to correct for any bias in the NCVS estimates that can occur when a large portion of the sample is on a particular time-in-sample rather than being evenly distributed across all seven time-in-sample groups. Typically, the NCVS sample is distributed evenly across the seven interview waves, but in years when a sample redesign or reduction occurs, the distribution across interview waves changes. The adjustment was calculated quarterly using data from the prior four quarters and was only applied when the actual time-in-sample was not the same as the scheduled time-in-sample. In the first half of 2016, this factor was applied to all new county cases with a scheduled time-in-sample other than one. The formula was—

$$\text{Time-in-sample adjustment factor} = \frac{\text{weighted crime rate for scheduled time-in-sample}}{\text{weighted crime rate for actual time-in-sample}}$$

Data from the NCVS sample are adjusted, or weighted, to produce annual estimates of crime experienced by the U.S. population age 12 or older. Both the bounding and time-in-sample adjustments are part of the overall NCVS weighting structure. (See *National Crime Victimization Survey, 2016 Technical Documentation* (NCJ 251442, BJS web, December 2017) for more information on weighting in the NCVS.)

Informed by research conducted by the U.S. Census Bureau and RTI International on contract, BJS implemented modifications to the bounding and time-in-sample adjustments along with the development of the revised 2016 file. BJS now uses the following methods for these weighting adjustments:

1. Bounding adjustment: Set a static bounding adjustment factor for all cases beginning in 2016 as the average bounding adjustment factor from 2013 to 2015.

2. Time-in-sample adjustment: Generate monthly time-in-sample factors using the previous 24 months of data.

3. Both adjustments: Include series crimes to align with the inclusion of these crimes in the victimization estimates.

### NCVS measurement of rape and sexual assault

The NCVS uses a two-stage measurement approach in the screening and classification of criminal victimization, including rape and sexual assault. In the first stage of screening, survey respondents are administered a series of "short-cue" screening questions designed to help

respondents think about different experiences they may have had during the reference period. (See NCVS-1 at https://www.bjs.gov/content/pub/pdf/ncvs15_bsq.pdf.)

This design improves respondent recall of events, particularly for incidents that may not immediately come to mind as crimes, such as those committed by family members and acquaintances. Respondents who answer affirmatively to any of the short-cue screening items are subsequently administered a crime incident report (CIR) designed to classify incidents into specific crime types (see NCVS-2 at https://www.bjs.gov/content/pub/pdf/ncvs15_cir.pdf).

**First stage of measurement**. Two short-cue screening questions are specifically designed to target sexual violence:

1. Other than any incidents already mentioned, has anyone attacked or threatened you in any of these ways—

(a) with any weapon, such as a gun or knife

(b) with anything like a baseball bat, frying pan, scissors, or stick

(c) by something thrown, such as a rock or bottle

(d) by grabbing, punching, or choking

(e) any rape, attempted rape, or other types of sexual attack

(f) any face-to-face threats.

(g) any attack or threat or use of force by anyone at all? Please mention it even if you are not certain it was a crime.

2. Incidents involving forced or unwanted sexual acts are often difficult to talk about. Other than any incidents already mentioned, have you been forced or coerced to engage in unwanted sexual activity by—

(a) someone you did not know

(b) a casual acquaintance

(c) someone you know well?

Respondents may screen into a CIR if they respond affirmatively to another short-cue screening question. For instance, a separate screening question cues respondents to think of attacks or threats that took place in specific locations, such as at home, work, or school. A respondent who recalled a sexual victimization that occurred at home, work, or school and answered affirmatively would

be administered a CIR even if they did not respond affirmatively to the screening question targeting sexual violence.

**Second stage of measurement**. The CIR is used to collect information on the attributes of each incident. The key attributes of sexual violence that are used to classify a victimization as a rape or sexual assault are the type of attack and physical injury suffered. Victims are asked if "the offender hit you, knock[ed] you down, or actually attack[ed] you in any way;" if "the offender TR[IED] to attack you;" or if "the offender THREATEN[ED] you with harm in any way?" The survey participant is classified as a victim of rape or sexual assault if he or she responds affirmatively to one of these three questions and then responds that the completed, attempted, or threatened attack was—

- rape

- attempted rape

- sexual assault other than rape or attempted rape

- verbal threat of rape

- verbal threat of sexual assault other than rape

- unwanted sexual contact with force (e.g., grabbing, fondling)

- unwanted sexual contact without force (e.g., grabbing, fondling).

If the victim selects one of these response options to describe the attack, he or she is also classified as a victim of rape or sexual assault if the injuries suffered as a result of the incident are described as:

- rape

- attempted rape

- sexual assault other than rape or attempted rape.

**Coercion**. Although the CIR does not ask respondents if psychological coercion was used, one screening question targeted to rape and sexual violence asks respondents if force or coercion was used to initiate unwanted sexual activity.

The final classification of incidents by the CIR results in the following definitions of rape and sexual assault used in the NCVS:

**Rape**. Coerced or forced sexual intercourse. Forced sexual intercourse means vaginal, anal, or oral penetration by the offender(s). This category could include incidents where the penetration was from a foreign object such as a bottle. Includes attempted rapes,

**Classification of rape and sexual assault in the National Crime Victimization Survey**

| Measures | Elements of sexual violence |
| --- | --- |
| Completed rape | Type of attack = rape |
| | Type of injury = rape |
| Attempted rape | Type of attack = attempted rape |
| | Type of injury = attempted rape |
| | Type of threat = verbal threat of rape with weapon |
| Sexual assault | Type of attack = sexual assault other than rape or attempted rape |
| | Type of injury = sexual assault other than rape or attempted rape |
| | Type of attempted attack/threat = unwanted sexual contact with or without force |
| | Type of attempted attack/threat = verbal threat of sexual assault other than rape |

Note: Victim is determined to be present in all measures of rape and sexual assault.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2016.

male and female victims, and both heterosexual and same-sex rape. Attempted rape includes verbal threats of rape.

**Sexual assault**. A wide range of victimizations, separate from rape or attempted rape. These crimes include attacks or attempted attacks generally involving unwanted sexual contact between the victim and offender. Sexual assaults may or may not involve force and include such things as grabbing or fondling. Sexual assault also includes verbal threats.

### Comparison of NCVS estimates of rape and sexual assault to other survey estimates

During the past several decades, a number of other surveys have also been used to study rape and sexual assault in the general population. BJS estimates of rape and sexual assault from the NCVS have typically been lower than estimates derived from other federal and private surveys. However, the NCVS methodology and definitions of rape and sexual assault differ from many of these surveys in important ways that contribute to the variation in estimates of the prevalence and incidence of these victimizations. Additional information about differences in self-report estimates of rape and sexual assault is available on the BJS website. BJS continues an active research program on the collection of rape and sexual assault data in an effort to improve the quality and accuracy of these estimates.

A strength of the NCVS is its capacity to be used to make comparisons between population subgroups and over time. Methodological differences between the NCVS and the other surveys should not impact NCVS comparisons between groups or in trends over time.

## APPENDIX TABLE 1
**Estimates and standard errors for figure 1: Rate of violent victimization, 2015 and 2016**

|  | Rates per 1,000 | | Standard errors | |
|---|---|---|---|---|
|  | 2015* | 2016 | 2015 | 2016 |
| **Demographics** | | | | |
| Males | 15.9 | 19.6 ‡ | 1.57 | 1.47 |
| Persons ages 25–34 | 21.8 | 28.4 ‡ | 2.70 | 2.62 |
| **Type of crime** | | | | |
| Rape or sexual assault | 1.6 | 1.1 † | 0.24 | 0.15 |
| Assault[a] | 14.8 | 16.9 ‡ | 1.00 | 0.86 |
| Aggravated assault | 3.0 | 3.8 ‡ | 0.36 | 0.33 |

[a]Includes aggravated and simple assault.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## APPENDIX TABLE 2
**Estimates and standard errors for figure 2: Rate of violent victimization, 1993–2016**

| Year | Rate per 1,000 persons age 12 or older | Standard errors | 95% confidence interval | |
|---|---|---|---|---|
|  |  |  | Lower bound | Upper bound |
| 1993 | 79.8 | 2.93 | 74.02 | 85.51 |
| 1994 | 80.0 | 2.72 | 74.70 | 85.37 |
| 1995 | 70.7 | 2.41 | 65.96 | 75.40 |
| 1996 | 64.7 | 2.63 | 59.56 | 69.88 |
| 1997 | 61.1 | 2.78 | 55.61 | 66.52 |
| 1998 | 54.1 | 2.61 | 49.01 | 59.26 |
| 1999 | 47.2 | 2.34 | 42.61 | 51.80 |
| 2000 | 37.5 | 1.98 | 33.60 | 41.38 |
| 2001 | 32.6 | 1.67 | 29.35 | 35.88 |
| 2002 | 32.1 | 2.07 | 28.01 | 36.11 |
| 2003 | 32.1 | 1.68 | 28.79 | 35.39 |
| 2004 | 27.8 | 1.34 | 25.19 | 30.46 |
| 2005 | 28.4 | 1.63 | 25.21 | 31.62 |
| 2006* | 34.1 | 1.87 | 30.44 | 37.76 |
| 2007 | 27.2 | 1.55 | 24.18 | 30.26 |
| 2008 | 25.3 | 1.60 | 22.21 | 28.49 |
| 2009 | 22.3 | 1.31 | 19.74 | 24.88 |
| 2010 | 19.3 | 1.44 | 16.46 | 22.11 |
| 2011 | 22.6 | 1.38 | 19.86 | 25.28 |
| 2012 | 26.1 | 1.20 | 23.77 | 28.46 |
| 2013 | 23.2 | 1.62 | 20.00 | 26.34 |
| 2014 | 20.1 | 1.22 | 17.70 | 22.50 |
| 2015 | 18.6 | 1.16 | 16.31 | 20.85 |
| 2016 | 19.7 | 0.95 | 17.80 | 21.54 |

*Estimates for 2006 should not be compared to other years. See *Criminal Victimization, 2007* (NCJ 224390, BJS web, December 2008) for information on changes in the 2006 National Crime Victimization Survey.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 3**
**Standard errors for table 1: Violent victimization, by type of crime, 2015 and 2016**

| Type of crime | 2015 | | Original 2016 | | Revised 2016 | |
|---|---|---|---|---|---|---|
| | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 |
| **Violent crime** | 312,236 | 1.16 | 258,919 | 0.95 | 259,442 | 0.95 |
| Rape or sexual assault | 64,514 | 0.24 | 41,162 | 0.15 | 41,819 | 0.15 |
| Robbery | 77,405 | 0.29 | 53,841 | 0.20 | 54,278 | 0.20 |
| Assault | 269,261 | 1.00 | 233,961 | 0.86 | 234,929 | 0.86 |
| Aggravated assault | 96,202 | 0.36 | 87,571 | 0.32 | 90,320 | 0.33 |
| Simple assault | 231,742 | 0.86 | 198,788 | 0.73 | 198,811 | 0.73 |
| Domestic violence | 134,994 | 0.50 | 109,468 | 0.40 | 108,702 | 0.40 |
| Intimate partner violence | 109,654 | 0.41 | 71,779 | 0.26 | 73,566 | 0.27 |
| Stranger violence | 191,191 | 0.71 | 177,138 | 0.65 | 171,101 | 0.63 |
| Violent crime involving injury | 152,053 | 0.56 | 126,288 | 0.46 | 118,979 | 0.44 |
| **Serious violent crime** | 161,399 | 0.60 | 125,986 | 0.46 | 127,938 | 0.47 |
| Serious domestic violence | 75,243 | 0.28 | 54,970 | 0.20 | 52,613 | 0.19 |
| Serious intimate partner violence | 60,700 | 0.23 | 42,377 | 0.16 | 43,186 | 0.16 |
| Serious stranger violence | 98,768 | 0.37 | 86,719 | 0.32 | 87,999 | 0.32 |
| Serious violent crime involving a weapon | 125,014 | 0.46 | 119,959 | 0.44 | 117,825 | 0.43 |
| Serious violent crime involving injury | 95,608 | 0.35 | 83,508 | 0.31 | 79,298 | 0.29 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

**APPENDIX TABLE 4**
**Standard errors for table 2: Property victimization, by type of crime, 2015 and 2016**

| Type of property crime | 2015 | | Original 2016 | | Revised 2016 | |
|---|---|---|---|---|---|---|
| | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 |
| Total | 349,177 | 2.65 | 292,273 | 2.19 | 332,513 | 2.49 |
| Burglary | 136,398 | 1.03 | 126,041 | 0.95 | 139,529 | 1.05 |
| Motor vehicle theft | 52,752 | 0.40 | 49,782 | 0.37 | 57,592 | 0.43 |
| Other theft | 299,739 | 2.27 | 253,147 | 1.90 | 288,470 | 2.16 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

**APPENDIX TABLE 5**
**Standard errors for table 3: Rate of crime reported to police in the Uniform Crime Reporting Program and National Crime Victimization Survey, 2016**

| Type of crime | NCVS rate per 1,000 persons age 12 or older |
|---|---|
| Serious violent crime | 0.37 |
| Rape | 0.07 |
| Robbery | 0.16 |
| Aggravated assault | 0.28 |
| | NCVS rate per 1,000 households |
| Property crime | 1.43 |
| Burglary | 0.70 |
| Motor vehicle theft | 0.35 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2016 revised Public-Use File.

**APPENDIX TABLE 6**
**Standard errors for table 4: Percent and rate of victimizations reported to police, by type of crime, 2015 and 2016**

| Type of crime | Percent reported | | Victimization rate reported per 1,000 | |
|---|---|---|---|---|
| | 2015 | 2016 | 2015 | 2016 |
| Violent crime | 2.79% | 2.22% | 0.84 | 0.68 |
| Rape or sexual assault | 5.90 | 5.03 | 0.13 | 0.07 |
| Robbery | 5.75 | 5.28 | 0.24 | 0.16 |
| Assault | 2.99 | 2.32 | 0.71 | 0.62 |
| Aggravated assault | 5.08 | 3.89 | 0.30 | 0.28 |
| Simple assault | 3.15 | 2.45 | 0.57 | 0.48 |
| Domestic violence | 4.64 | 3.88 | 0.34 | 0.26 |
| Intimate partner violence | 5.18 | 4.78 | 0.27 | 0.17 |
| Stranger violence | 3.79 | 3.01 | 0.39 | 0.36 |
| Violent crime involving injury | 4.38 | 3.68 | 0.38 | 0.27 |
| Serious violent crime | 3.91% | 3.24% | 0.47 | 0.37 |
| Serious domestic violence | 6.28 | 5.82 | 0.20 | 0.13 |
| Serious intimate partner violence | 7.17 | 6.51 | 0.14 | 0.10 |
| Serious stranger violence | 5.48 | 4.34 | 0.24 | 0.22 |
| Serious violent crime involving a weapon | 4.84 | 3.69 | 0.31 | 0.31 |
| Serious violent crime involving injury | 5.54 | 4.60 | 0.25 | 0.19 |
| Property crime | 0.99% | 0.96% | 1.43 | 1.43 |
| Household burglary | 2.02 | 1.99 | 0.69 | 0.70 |
| Motor vehicle theft | 3.84 | 3.70 | 0.32 | 0.35 |
| Other theft | 1.03 | 1.02 | 1.09 | 1.14 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 7**
**Standard errors for table 5: Rate of violent victimization, by demographic characteristics of victims, 2015 and 2016**

| Victim demographic characteristic | Rate per 1,000 | | |
|---|---|---|---|
| | 2015 | Original 2016 | Revised 2016 |
| Total | 1.16 | 0.95 | 0.95 |
| **Sex** | | | |
| Male | 1.57 | 1.54 | 1.47 |
| Female | 1.87 | 1.49 | 1.45 |
| **Race/Hispanic origin** | | | |
| White | 1.54 | 1.39 | 1.36 |
| Black | 3.02 | 2.51 | 2.44 |
| Hispanic | 2.28 | 2.05 | 1.96 |
| Other | 3.86 | 2.81 | 2.57 |
| **Age** | | | |
| 12–17 | 4.08 | 3.23 | 2.90 |
| 18–24 | 3.31 | 3.04 | 3.03 |
| 25–34 | 2.70 | 2.76 | 2.62 |
| 35–49 | 2.49 | 2.02 | 2.02 |
| 50–64 | 1.82 | 1.58 | 1.54 |
| 65 or older | 1.04 | 0.74 | 0.87 |
| **Marital status** | | | |
| Never married | 2.43 | 2.12 | 2.03 |
| Married | 1.15 | 1.08 | 1.01 |
| Widowed | 2.13 | 1.94 | 2.33 |
| Divorced | 4.28 | 3.11 | 3.06 |
| Separated | 8.01 | 8.83 | 9.08 |
| **Household income** | | | |
| Less than $10,000 | 5.48 | 4.10 | 4.17 |
| $10,000–$14,999 | 4.62 | 4.40 | 4.13 |
| $15,000–$24,999 | 3.55 | 3.27 | 3.21 |
| $25,000–$34,999 | 2.44 | 2.40 | 2.30 |
| $35,000–$49,999 | 2.65 | 2.10 | 2.07 |
| $50,000–$74,999 | 2.16 | 1.83 | 1.71 |
| $75,000 or more | 1.52 | 1.37 | 1.36 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015-2016 Public-Use Files and 2016 revised Public-Use File.

**APPENDIX TABLE 8**
**Standard errors for table 6: Violent victimization, by type of crime and sex of victim, 2015 and 2016**

| Type of crime | Rate per 1,000 males | | Rate per 1,000 females | |
|---|---|---|---|---|
| | 2015 | 2016 | 2015 | 2016 |
| Violent crime | 1.57 | 1.47 | 1.87 | 1.45 |
| Rape or sexual assault | 0.16 | 0.11 | 0.47 | 0.30 |
| Robbery | 0.41 | 0.33 | 0.40 | 0.25 |
| Total assault | 1.39 | 1.35 | 1.57 | 1.29 |
| Aggravated assault | 0.48 | 0.53 | 0.54 | 0.45 |
| Simple assault | 1.19 | 1.12 | 1.35 | 1.10 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 9**
**Standard errors for table 7: Violent victimization, by sex and age of victim, 2015 and 2016**

| | Rate per 1,000 males | | Rate per 1,000 females | |
|---|---|---|---|---|
| Age of victim | 2015 | 2016 | 2015 | 2016 |
| Total | 1.57 | 1.47 | 1.87 | 1.45 |
| 12–17 | 4.96 | 4.28 | 5.27 | 2.95 |
| 18 or older | 1.51 | 1.44 | 1.85 | 1.50 |
| 18–24 | 3.95 | 3.80 | 4.36 | 3.81 |
| 25–34 | 3.09 | 2.89 | 3.65 | 3.62 |
| 35–49 | 2.53 | 2.54 | 3.59 | 2.50 |
| 50–64 | 2.09 | 1.79 | 2.43 | 2.06 |
| 65 or older | 1.04 | 1.29 | 1.51 | 0.97 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 10**
**Standard errors for table 8: Rate of serious violent victimization, by demographic characteristics of victims, 2015 and 2016**

| | Rate per 1,000 | |
|---|---|---|
| Victim demographic characteristic | 2015 | 2016 |
| Total | 0.60 | 0.47 |
| **Sex** | | |
| Male | 0.76 | 0.71 |
| Female | 0.98 | 0.70 |
| **Race/Hispanic origin** | | |
| White | 0.74 | 0.61 |
| Black | 1.59 | 1.17 |
| Hispanic | 1.31 | 1.15 |
| Other | 2.17 | 1.46 |
| **Age** | | |
| 12–17 | 1.68 | 1.17 |
| 18–24 | 1.91 | 1.69 |
| 25–34 | 1.55 | 1.54 |
| 35–49 | 1.24 | 0.88 |
| 50–64 | 0.99 | 0.73 |
| 65 or older | 0.48 | 0.32 |
| **Marital status** | | |
| Never married | 1.22 | 1.03 |
| Married | 0.57 | 0.43 |
| Widowed | 1.12 | 0.81 |
| Divorced | 2.26 | 1.79 |
| Separated | 5.41 | 4.28 |
| **Household income** | | |
| Less than $10,000 | 3.33 | 2.48 |
| $10,000–$14,999 | 2.74 | 2.07 |
| $15,000–$24,999 | 1.70 | 1.91 |
| $25,000–$34,999 | 1.21 | 1.09 |
| $35,000–$49,999 | 1.33 | 1.04 |
| $50,000–$74,999 | 1.12 | 0.83 |
| $75,000 or more | 0.76 | 0.55 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 11**
**Standard errors for table 9: Number of victims and prevalence rate, by type of crime, 2015 and 2016**

| Type of crime | Number of victims | | | Prevalence rate | | |
|---|---|---|---|---|---|---|
| | 2015 | Original 2016 | Revised 2016 | 2015 | Original 2016 | Revised 2016 |
| **Violent crime** | 114,796 | 122,001 | 98,610 | 0.041% | 0.041% | 0.036% |
| Rape or sexual assault | 27,828 | 21,108 | 22,990 | 0.010 | 0.008 | 0.008 |
| Robbery | 36,761 | 36,301 | 28,206 | 0.014 | 0.013 | 0.010 |
| Assault | 103,323 | 110,135 | 92,481 | 0.037 | 0.038 | 0.034 |
| Aggravated assault | 42,526 | 48,323 | 50,020 | 0.016 | 0.017 | 0.018 |
| Simple assault | 88,692 | 94,766 | 78,887 | 0.032 | 0.033 | 0.029 |
| Domestic violence | 42,869 | 45,445 | 35,899 | 0.016 | 0.016 | 0.013 |
| Intimate partner violence | 35,432 | 25,199 | 25,976 | 0.013 | 0.009 | 0.010 |
| Stranger violence | 67,100 | 64,622 | 65,338 | 0.025 | 0.023 | 0.024 |
| Violent crime involving injury | 55,136 | 50,207 | 48,732 | 0.020 | 0.018 | 0.018 |
| **Serious violent crime** | 60,663 | 65,413 | 59,666 | 0.023% | 0.023% | 0.022% |
| Serious domestic violence | 27,102 | 24,984 | 20,952 | 0.010 | 0.009 | 0.008 |
| Serious intimate partner violence | 20,437 | 21,071 | 17,610 | 0.008 | 0.008 | 0.007 |
| Serious stranger violence | 38,517 | 41,679 | 42,521 | 0.014 | 0.015 | 0.016 |
| Serious violent crime involving a weapon | 41,979 | 55,285 | 50,710 | 0.016 | 0.020 | 0.019 |
| Serious violent crime involving injury | 36,972 | 40,026 | 40,753 | 0.014 | 0.015 | 0.015 |
| **Property crime** | 243,226 | 221,150 | 188,207 | 0.166% | 0.146% | 0.141% |
| Household burglary | 88,850 | 75,840 | 64,413 | 0.065 | 0.056 | 0.048 |
| Motor vehicle theft | 37,158 | 38,186 | 37,809 | 0.028 | 0.029 | 0.028 |
| Other theft | 206,731 | 187,580 | 160,814 | 0.144 | 0.124 | 0.120 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015–2016 Public-Use Files and 2016 revised Public-Use File.

**APPENDIX TABLE 12**
**Standard errors for table 10: Prevalence of violent crime, by demographic characteristics of victims, 2015 and 2016**

| Victim demographic characteristic | Number of victims | | Prevalence rate | |
|---|---|---|---|---|
| | 2015 | 2016 | 2015 | 2016 |
| **Total** | 114,796 | 98,610 | 0.041% | 0.036% |
| **Sex** | | | | |
| Male | 73,258 | 69,568 | 0.056% | 0.053% |
| Female | 76,416 | 63,121 | 0.053 | 0.045 |
| **Race/Hispanic origin** | | | | |
| White | 89,404 | 68,491 | 0.049% | 0.039% |
| Black | 41,050 | 33,953 | 0.121 | 0.101 |
| Hispanic | 41,842 | 49,641 | 0.085 | 0.108 |
| Other | 25,170 | 28,243 | 0.125 | 0.131 |
| **Age** | | | | |
| 12–17 | 37,288 | 33,013 | 0.141% | 0.132% |
| 18–24 | 44,460 | 38,603 | 0.144 | 0.127 |
| 25–34 | 39,818 | 47,256 | 0.089 | 0.107 |
| 35–49 | 49,210 | 41,698 | 0.080 | 0.068 |
| 50–64 | 39,308 | 34,644 | 0.062 | 0.055 |
| 65 or older | 20,567 | 21,991 | 0.044 | 0.046 |
| **Marital status** | | | | |
| Never married | 82,175 | 74,103 | 0.085% | 0.078% |
| Married | 46,990 | 45,252 | 0.036 | 0.036 |
| Widowed | 16,233 | 15,558 | 0.110 | 0.104 |
| Divorced | 36,696 | 30,684 | 0.134 | 0.113 |
| Separated | 14,078 | 17,755 | 0.274 | 0.351 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## APPENDIX TABLE 13
### Firearm violence, 2015 and 2016

| | 2015* | 2016 |
|---|---|---|
| Firearm incidents | 260,200 | 414,440 † |
| Firearm victimizations | 284,910 | 486,590 † |
| Rate of firearm violence[a] | 1.1 | 1.8 † |
| Percent of firearm victimizations reported to the police | 76.5% | 64.6% |

Note: Includes violent incidents and victimizations in which the offender had, showed, or used a firearm. An incident is a specific criminal act involving one or more victims or victimizations, while a victimization refers to each person or household involved in the incident. See appendix table 14 for standard errors.

*Comparison year.

†Significant difference from comparison year at the 95% confidence level.

[a]Per 1,000 persons age 12 or older.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## APPENDIX TABLE 16
### Standard errors for appendix table 15: Percent of violent victimizations in which victims received assistance from a victim service agency, by type of crime, 2015 and 2016

| Type of crime | 2015 | 2016 |
|---|---|---|
| **Violent crime** | 1.32% | 1.08% |
| Serious violent crime | 2.41 | 1.90 |
| Simple assault | 1.22 | 1.10 |
| **Intimate partner violence** | 3.67% | 3.61% |
| **Violent crime involving injury** | 2.95% | 2.24% |
| **Violent crime involving weapon** | 3.09% | 3.09% |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## APPENDIX TABLE 14
### Standard errors for appendix table 13: Firearm violence, 2015 and 2016

| | | | 95% confidence interval | | | |
|---|---|---|---|---|---|---|
| | Standard errors | | 2015 | | 2016 | |
| | 2015 | 2016 | Lower bound | Upper bound | Lower bound | Upper bound |
| Firearm incidents | 51,588 | 57,744 | 159,091 | 361,315 | 301,260 | 527,616 |
| Firearm victimizations | 54,750 | 64,204 | 177,600 | 392,220 | 360,750 | 612,432 |
| Rate of firearm violence | 0.20 | 0.24 | 0.66 | 1.46 | 1.33 | 2.25 |
| Percent of firearm victimizations reported to the police | 6.64% | 5.03% | 63.45% | 89.48% | 48.82% | 72.12% |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

## APPENDIX TABLE 15
### Percent of violent victimizations in which victims received assistance from a victim service agency, by type of crime, 2015 and 2016

| Type of crime | 2015* | 2016 |
|---|---|---|
| **Violent crime[a]** | 9.1% | 9.3% |
| Serious violent crime[b] | 14.4 | 12.9 |
| Simple assault | 6.0 | 7.5 |
| **Intimate partner violence[c]** | 18.3% | 20.4% |
| **Violent crime involving injury** | 16.9% | 13.4% |
| **Violent crime involving a weapon** | 15.0% | 12.4% |

Note: See appendix table 16 for standard errors.

*Comparison year.

[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.

[b]In the NCVS, serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault.

[c]Includes victimization committed by current or former spouses, boyfriends, or girlfriends.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 17**

**Rate of victimization, by type of crime and household location, 2015 and 2016**

| Household location | Violent crime[a] | | Serious violent crime[b] | | Property crime[c] | |
|---|---|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 | 2015* | 2016 |
| Total | 18.6 | 19.7 | 6.8 | 6.6 | 110.7 | 118.6 † |
| Region | | | | | | |
| Northeast | 17.1 | 16.6 | 5.1 | 4.6 | 81.6 | 81.8 |
| Midwest | 19.6 | 24.4 ‡ | 7.5 | 8.1 | 105.0 | 113.9 † |
| South | 16.9 | 14.1 | 5.8 | 5.7 | 107.6 | 113.2 |
| West | 21.3 | 26.2 ‡ | 8.8 | 8.1 | 144.7 | 161.3 † |
| Location of residence | | | | | | |
| Urban | 22.7 | 28.4 † | 8.6 | 10.3 | 135.4 | 146.6 † |
| Suburban | 17.3 | 15.5 | 6.3 | 4.9 | 98.4 | 99.4 |
| Rural | 14.0 | 14.5 | 4.2 | 3.9 | 95.7 | 119.1 † |

Note: Victimization rates are per 1,000 persons age 12 or older for violent crime and per 1,000 households for property crime. See appendix table 18 for standard errors.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.
[b]In the NCVS, serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault.
[c]Includes household burglary, motor vehicle theft, and other theft.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 18**

**Standard errors for appendix table 17: Rate of victimization, by type of crime and household location, 2015 and 2016**

| Household location | Violent crime | | Serious violent crime | | Property crime | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2015 | 2016 | 2015 | 2016 |
| Total | 1.16 | 0.95 | 0.60 | 0.47 | 2.65 | 2.49 |
| Region | | | | | | |
| Northeast | 2.24 | 1.79 | 1.02 | 0.78 | 4.23 | 4.26 |
| Midwest | 2.27 | 2.15 | 1.21 | 1.05 | 4.38 | 4.59 |
| South | 1.79 | 1.29 | 0.88 | 0.71 | 3.72 | 3.75 |
| West | 2.38 | 2.22 | 1.33 | 1.03 | 5.22 | 5.48 |
| Location of residence | | | | | | |
| Urban | 2.23 | 2.10 | 1.17 | 1.07 | 4.32 | 4.42 |
| Suburban | 1.63 | 1.23 | 0.83 | 0.57 | 3.17 | 3.12 |
| Rural | 2.08 | 1.76 | 0.77 | 0.77 | 4.90 | 5.59 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 19**

**Percent of victimizations reported to police, by type of crime and household location, 2015 and 2016**

| Household location | Violent crime[a] | | Serious violent crime[b] | | Property crime[c] | |
|---|---|---|---|---|---|---|
| | 2015* | 2016 | 2015* | 2016 | 2015* | 2016 |
| **Total** | 46.5% | 43.9% | 54.9% | 53.0% | 34.6% | 35.2% |
| **Region** | | | | | | |
| Northeast | 47.5% | 49.0% | 50.6% | 46.1% | 31.1% | 33.8% |
| Midwest | 45.2 | 38.6 | 57.9 | 56.2 | 35.6 | 31.9 ‡ |
| South | 49.7 | 48.6 | 58.3 | 57.5 | 37.0 | 39.7 ‡ |
| West | 43.2 | 42.0 | 51.0 | 48.0 | 32.3 | 32.7 |
| **Location of residence** | | | | | | |
| Urban | 51.6% | 43.8% ‡ | 61.0% | 53.6% | 34.4% | 34.3% |
| Suburban | 43.5 | 44.5 | 48.7 | 51.5 | 34.7 | 36.1 |
| Rural | 40.9 | 42.0 | 60.0 | 55.8 | 34.3 | 34.9 |

Note: See appendix table 20 for standard errors.
*Comparison year.
‡Significant difference from comparison year at the 90% confidence level.
[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims and cannot measure murder.
[b]In the NCVS, serious violent crime is a subset of violent crime and includes rape or sexual assault, robbery, and aggravated assault.
[c]Includes household burglary, motor vehicle theft, and other theft.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.

**APPENDIX TABLE 20**

**Standard errors for appendix table 19: Percent of victimizations reported to police, by type of crime and household location, 2015 and 2016**

| Household location | Violent crime | | Serious violent crime | | Property crime | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2015 | 2016 | 2015 | 2016 |
| **Total** | 2.42% | 1.88% | 3.54% | 2.89% | 1.00% | 0.95% |
| **Region** | | | | | | |
| Northeast | 5.11% | 4.28% | 8.07% | 6.97% | 2.19% | 2.31% |
| Midwest | 4.44 | 3.30 | 6.35 | 5.17 | 2.28 | 1.77 |
| South | 4.03 | 3.50 | 5.86 | 4.85 | 1.50 | 1.51 |
| West | 4.22 | 3.22 | 5.91 | 5.04 | 1.57 | 1.54 |
| **Location of residence** | | | | | | |
| Urban | 3.77% | 2.80% | 5.20% | 4.06% | 1.38% | 1.35% |
| Suburban | 3.47 | 2.97 | 4.99 | 4.51 | 1.35 | 1.37 |
| Rural | 5.73 | 4.77 | 9.30 | 8.18 | 2.25 | 2.15 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2015 Public-Use File and 2016 revised Public-Use File.



The Bureau of Justice Statistics of the U.S. Department of Justice is the principal federal agency responsible for measuring crime, criminal victimization, criminal offenders, victims of crime, correlates of crime, and the operation of criminal and civil justice systems at the federal, state, tribal, and local levels. BJS collects, analyzes, and disseminates reliable statistics on crime and justice systems in the United States, supports improvements to state and local criminal justice information systems, and participates with national and international organizations to develop and recommend national standards for justice statistics. Jeffrey H. Anderson is the director.

This report was written by Rachel E. Morgan and Grace Kena. Jennifer L. Truman contributed to and verified the report. The NCVS team at the U.S. Census Bureau also contributed to the report.

Eric Hendrixson and Jill Thomas edited the report. Carrie Epps, Tina Dorsey, and Morgan Young produced the report.

October 2018, NCJ 252121





NCJ252121

**Office of Justice Programs**
**Building Solutions • Supporting Communities • Advancing Justice**
**www.ojp.usdoj.gov**