

# NEW ORLEANS POLICE DEPARTMENT OPERATIONS MANUAL

## CHAPTER: 42.19

### TITLE: CHILD ABUSE

**EFFECTIVE:** 3/12/2017
**REVISED:** Replaces Policy and Procedure 330

**PURPOSE**

The purpose of this policy is to establish requirements for NOPD members who respond to reports of child abuse and neglect. The Child Abuse Unit shall investigate all abuse and sexually related incidents involving victims under the age of 17 years at the time the incident is reported, including the following signals:

- 29 (death);
- 30 (homicide) at the behest of the Criminal Investigations Division Commander;
- 42 (first-degree rape);
- 42-B (oral sexual battery);
- 42-M (first-degree rape, male victim);
- 42-U (unfounded first-degree rape);
- 43 (second-degree rape);
- 43-B (sexual battery);
- 43-M (second degree rape, male victim);
- 43-MB (misdemeanor sexual battery);
- 43-U (unfounded second-degree rape);
- 46-C (Trafficking of Children for Sexual Purposes);
- 80 (carnal knowledge of a juvenile);
- 81 (indecent behavior);
- 81-S (sexting);
- 89 (crime against nature);
- 92 (contributing to the delinquency of a juvenile);
- 93 (cruelty to a juvenile);
- 283 (video voyeurism); and
- 27 (attempted crime) related to any of the above signals.

Absent exigent circumstances, officers **shall not** interview the child victim or child witnesses. See **Interviewing Children** for more information.

If a Child Abuse detective is not available to respond to the incident, a Special Victims Section supervisor shall direct a Sex Crimes detective to respond to the incident. All detectives shall handle child abuse investigations according to the **Child Abuse Unit Standard Operating Guidelines**.

Officers may utilize the procedures outlined within this chapter when responding to cases of

abuse, neglect, maltreatment, or sexually related incidents involving developmentally disabled victims 17 years of age and older according to the procedures outlined in this Chapter.

Refer to **Chapter 42.2 – Sexual Assault** for guidance on handling sexual incidents involving victims 17 years of age and older at the time the incident is reported.

**DEFINITIONS**
Definitions relevant to this Chapter include:

**Abuse**—Any one of the following acts that seriously endanger the physical, mental, or emotional health and safety of a child:
      (a) The infliction of physical or mental injury upon a child by any person;
      (b) The attempted infliction of physical or mental injury upon a child by any person;
      (c) Allowing, as a result of inadequate supervision, the affliction or attempted infliction of physical or mental injury upon a child by any person;
      (d) The exploitation or overwork of a child by any person; or
      (e) The involvement of a child in any sexual activity constituting a crime under the laws of this state.

**Child**—A person under 17 years of age who, prior to juvenile proceedings, has not been judicially emancipated or emancipated by marriage (La. Ch.C. art.728; definition changed from 18 to 17 years for purposes of this Chapter).

**Commercial Sexual Exploitation of Children (CSEC),** also known as **Domestic Minor Sex Trafficking (DMST)**—To recruit, harbor, transport, provide, sell, purchase, receive, isolate, entice, obtain, or maintain the use of a person under the age of eighteen years for the purpose of engaging in commercial sexual activity. Commercial sex act means any sexual act performed or conducted when any thing of value has been given, promised, or received by any person. Refer to La. R.S. 14:46.3.

**Developmental disability**—A severe chronic disability that can be cognitive or physical or both. Developmental disabilities appear before the age of 22 and are likely to be lifelong. Some developmental disabilities are largely physical issues, such as cerebral palsy or epilepsy. Some individuals may have a condition that includes a physical and intellectual disability, for example Down syndrome or fetal alcohol syndrome. Refer to La. R.S. 28:451.2(12) for the state definition.

**Misdemeanor sexual battery**—The intentional touching of the breasts or buttocks of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the intentional touching of the breasts or buttocks of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when the offender acts without the consent of the victim (La. R.S. 14:43.1.1). Misdemeanor sexual batteries are classified under Signal 43-MB.

**Neglect**—The refusal or unreasonable failure of a parent or caretaker to supply a child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child. Neglect includes prenatal neglect.

**Protective custody**—Taking a child into custody without a court order based on reasonable grounds to believe that the child's surroundings are such as to endanger the child's welfare and immediate removal appears to be necessary for the child's protection (La. Ch.C. art. 621).

**POLICY STATEMENT**

1.      The first responding officer is the initial source of information for the remainder of the

investigative team and makes decisions that can deeply affect the investigation and the victim, setting the tone for the entirety of a case. This policy is intended to guide responding officers when responding to reports of child abuse, child neglect, maltreatment, and sexual-related incidents, including the commercial sexual exploitation of children.

**COMMUNICATIONS SERVICES RESPONSIBILITIES**

2. Communications Services shall dispatch a Child Abuse detective, or a Sex Crimes detective at the direction of a Special Victims Section supervisor, to the location of the victim.

3. For child abuse calls as defined in this Chapter, Communications Services shall dispatch a patrol officer for Code 2 calls for service. Communications Services shall not dispatch a patrol officer to a Code 1 call for service unless otherwise requested by the detective.

4. When a complainant reports child abuse, communications personnel shall follow standard emergency response that includes evaluating and properly prioritizing the call, securing medical assistance, inquiring about a suspect's current location, and obtaining detailed information to identify the suspect. Information about the child's relationship with the victim, weapon use, and history of violence also shall be obtained.

5. To ensure critical evidence is not lost, Communications Services personnel shall:

    (a) Ask whether the victim has bathed, douched, urinated, or made other physical changes and advise against doing so;
    (b) Ask the reporting person to use a clean jar to collect urine should the victim have to urinate;
    (c) Let the reporting person know that other evidence may still be identified and recovered so the crime should still be reported if the victim has bathed or made other physical changes;
    (d) Preserve the communications tape and printout for the investigation; and
    (e) Explain to the reporting person that these questions will not delay an officer's response to the caller's location.

**RESPONSIBILITY OF THE PATROL OFFICER**

6. The patrol officer's responsibility is to:

    (a) Provide an emergency response, including attending to medical needs;
    (b) Inquire about the identity and location of the suspect;
    (c) Preserve evidence;
    (d) Request a Child Abuse detective if one is not already on scene; and
    (e) Communicate observations to the responding detective.

7. If an officer responds to a scene that may involve child abuse but was not dispatched under a child abuse signal and no Child Abuse Unit detective is on scene, the officer shall immediately notify the Child Abuse Unit.

8. The following sections of this chapter provide greater detail on the officer's responsibilities when responding to a child abuse incident.

**INITIAL RESPONSE**

9. As part of the initial response, patrol officers shall:

- (a) Make contact with the reporting person as soon as possible to address safety concerns and summon emergency medical assistance if needed;
- (b) Evaluate the scene for people, vehicles, or objects involved as well as possible threats;
- (c) Relay all vital information to responding officers, supervisors, and detectives, including any possible language barriers; and
- (d) When appropriate and necessary, patrol officers shall begin a search for the suspect and temporarily detain or arrest the suspect as appropriate based on evidence of probable cause. If the suspect is detained, wait for the Child Abuse detective to interrogate the suspect. Patrol officers shall not interrogate the suspect.

**MANDATORY NOTIFICATIONS**

10. Members who believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall notify the Child Abuse Unit (La. Ch.C. arts. 609-610).

**MAJOR CRIME SCENE OFFICER STATEMENT**

11. All officers and supervisors on scene shall complete a Major Crime Scene Officer Statement (Form 188) and provide it to investigating detectives.

12. The statement should include a written narrative of all observations, including observations of the crime scene and any statements taken from individuals interviewed at the scene. As accurately as possible, officers shall use the interviewee's own words. Officers shall record observations of the crime scene, including the suspect's demeanor and the victim's demeanor, and document any injuries or disheveled clothing.

13. **For privacy reasons, under no circumstances should officers complete a report in the Electronic Police Reporting System for a possible child abuse incident**. If an officer responds to a call with a non-child abuse signal and encounters elements of child abuse, he/she should not reference the alleged child abuse in an EPR report in any way. See **Victim Confidentiality** for more information.

**INTERVIEWING CHILDREN**

14. The officer **shall not** interview the child victim or child witnesses. In exigent circumstances after consulting a Special Victims Section supervisor, only the minimum information necessary to stabilize the situation and secure evidence may be obtained from a child.

15. If the victim chooses to tell his or her story, express sympathy and document the statements in the Major Crime Scene Officer Statement.

**INTERVIEWING ADULTS**

16. Officers shall inquire with adults on scene as to the location and identity of the suspect.

17. Absent exigent circumstances, officers shall not interview adult suspects and witnesses. If a detective requests that an officer interview adult suspects or witnesses under exigent circumstances, the officer shall document the statements in a Major Crime Scene Officer Statement, and the detective shall document the exigent circumstance in a supplemental report.

18. Officers shall ensure that the child victim is not present and cannot hear the interview with the adult.

19. When interviewing adults, officers should address:

    (a) **The allegation:** "Please tell me **exactly** what the child said to you, what you saw, and how you found out about this. What else do you know or think about this?"
    (b) **First disclosure:** "Who did the child tell first? What were the circumstances?"
    (c) **Corroboration:** "Do you know of any children or adults who might know something about this?"
    (d) **Suspect's history:** "Do you know if anything like this has ever happened before with the alleged perpetrator?"
    (e) **Need for a medical exam:** If the incident may have happened in the last 72 hours or the child is currently injured, the child may need immediate medical evaluation.  See **Addressing Medical Needs.**

**SUSPECT INTERVIEWS**

20. Suspects should be interviewed only by the detective but can be detained by the responding officer.

21. If a suspect discloses any information, that information shall be documented in the Major Crime Scene Officer Statement and communicated to the detective.

**ADDRESSING MEDICAL NEEDS**

22. Obtain medical care in emergency cases or at the direction of the detective.

23. A case is considered an emergency if the victim is injured, complaining of injury, or if there has been physical contact with the alleged perpetrator in the past 72 hours.

24. Consult with the detective about addressing medical needs other than in emergency situations.

**SIGNS OF DRUG-FACILITATED SEXUAL ASSAULT**

25. Officers should be aware that the signs of drug-facilitated sexual assault could include:

    (a) The victim reports being under the influence of a drug during the abuse;
    (b) The victim experiences vaginal soreness or other signs of abuse and cannot remember a part or the entirety of the incident;
    (c) The victim reports becoming heavily intoxicated very rapidly;
    (d) The victim reports symptoms of amnesia; and/or
    (e) The victim may exhibit symptoms of intoxication if still under the influence of rape-facilitating drugs.

**SIGNS OF COMMERCIAL SEXUAL EXPLOITATION OF CHILDREN**

26. Officers should immediately notify the Child Abuse Unit if they suspect a child could be a victim of commercial sexual exploitation. Officers should be aware that the signs of commercial sexual exploitation of children could include:

    (a) Child has run away from home;

      (b) Inappropriate dress, including overtly sexual clothing or oversized clothing;
      (c) Child has unexplained bruises or injuries;
      (d) Child is in possession of large amounts of money, more than one cell phone, hotel keys;
      (e) Child has an older boyfriend, girlfriend, friend or relative more than 5 years older than the child;
      (f) The child is not enrolled in school or is missing large amounts of school;
      (g) The child has fake identification or someone else is in control of their identification; or
      (h) The child was arrested or spotted in an area known for prostitution, such as an adult entertainment venue, strip club, massage parlor, x-rated video shop, known area of town and/or hotel.

27. In accordance with La. R.S. 14:46.3, no victim of Trafficking shall be prosecuted for unlawful acts committed as a direct result of being trafficked. Consent of a minor is not a defense and shall not be relevant to the investigation. No victim of trafficking shall be arrested, investigated, or referenced in terms of La. R.S. 14:82 Prostitution.

**PRESERVING EVIDENCE**

28. Officers shall protect the integrity of evidence and request assistance or direction from a Child Abuse detective regarding the collection or preservation of evidence. Officers should secure the crime scene to ensure that evidence is not lost, changed, or contaminated.

29. Evidence should be handled by as few people as possible.

30. Absent exigent circumstances, officers and detectives shall not collect evidence. Crime Scene Technicians shall collect evidence under the direction of a Child Abuse Unit detective.

31. If anyone reports the presence of possible physical evidence, make sure that it is collected. Examples of physical evidence include but are not limited to clothing worn by the victim, drawings, writings, tape recordings, videos, e-mails, or text messages made by the victim regarding the allegation, bed sheets, used condoms, or evidence collected by an emergency department professional.

32. If a drug-facilitated sexual assault is suspected, officers shall preserve drinks to allow a crime lab to test for the presence of drugs and, in consultation with the assigned Child Abuse detective, expedite the forensic exam before any drugs leave the victim's system, if the victim's custodians agree to the exam.

**PROTECTIVE CUSTODY**

33. An officer may take a child into temporary protective custody without a court order if there are reasonable grounds to believe that the child's surroundings endanger his/her welfare and immediate removal appears necessary (La. Ch.C. art. 621).

34. Whenever feasible, officers shall consult with the Child Abuse Unit prior to taking a child into protective custody in a child abuse related case. If prior notification is not feasible, officers shall contact the Child Abuse Unit promptly after taking a child into protective custody.

35. Prior to taking a child into temporary protective custody, the officer should take reasonable steps to deliver the child to another parent or legal guardian who is not

involved in the actions which precipitated taking the child into temporary protective custody.  The detective **shall** receive permission from a Special Victims Section supervisor and DCFS before delivering the child to another parent or legal guardian.

36. The officer must complete a separate face sheet in the EPR system with the Signal 78 - Protective Custody.  The original signal of the call shall not be changed to Signal 78 - Protective Custody. The officer shall contact the detective to determine the appropriate destination for the individual.

## OFFICER RESPONSIBILITIES FOR DRUG-ENDANGERED CHILDREN

37. Officers responding to a drug lab or other narcotics crime scene where a child is present or where a child resides should:

    (a) Document the environmental, medical, social, and other conditions of the child using photography as appropriate, and
    (b) Notify a Special Victims Section supervisor.

## SUPPORTING THE CHILD VICTIM

38. If the officer encounters the child, the officer should state, "What happened is not your fault.  I'm sorry this happened to you, and none of this is your fault.  I'm going to call a special team to help you."

39. Officers shall demonstrate support in all interactions with the victim and encourage adults on scene to:
    (a) Support the victim and the investigation;
    (b) Avoid discussing the incident in front of the victim;
    (c) If the child brings up the incident, listen without questioning and document exactly what the child says; and
    (d) Not blame the child or make the child feel guilty with questions such as "why didn't you tell when it happened."

## VICTIM CONFIDENTIALITY

40. Throughout the investigation of the case, officers and detectives shall protect the confidentiality of the victim's information to the maximum extent possible by law and policy. Officers shall not publicly disclose the name, address, or identity of child abuse victims.

41. Strategies to protect victim confidentiality include:

    (a) Not using a victim's address or name on police radio, whenever feasible. If an officer's unit does not have an MDT, phone contact between Communications Services and responding officers or detectives is preferred to contact over police radio.
    (b) Responding officers shall document their response fully on a Major Crime Scene Officer's Statement Form (Form 188).  The name of any child abuse victim shall not be disseminated or published in an initial police report.

## BODY WORN CAMERAS

42. Officers shall use body cameras in accordance with **Chapter 41.3.10 – Body Worn Cameras.**

43. NOPD shall not publicly release footage of child sexual assault cases (La. R.S. 46:1844).

## CHANGING THE SIGNAL AND DISPOSITION

44. Responding officers **shall not** change the signal or give a disposition for any call for service with a signal covered by this Chapter.  Only the Special Victims Section may change the signal or give a disposition in accordance with the **Child Abuse Unit Standard Operating Guidelines**.

## TRANSFERRING THE CASE TO A DETECTIVE

45. A victim of child abuse may bond with the first officer with whom he or she comes into contact after the incident. To help the child victim become comfortable speaking with other members, the officer shall explain the role of the different members of the child abuse response team and help with transitions through introductions to other members involved in the investigation.

## PATROL SUPERVISOR

46. Patrol supervisors shall respond to the scene if requested.

47. Patrol supervisors **shall not** change the signal or give a disposition for any call for service with a signal covered by this Chapter. Only the Special Victims Section may change the signal or give a disposition in accordance with the **Child Abuse Unit Standard Operating Guidelines**.

48. Special Victims Section supervisors will communicate to patrol supervisors regarding any training needs for officers under their supervision.