UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYNE UPTON, Individually and on behalf of her minor daughter, G.H. | CIVIL ACTION |
| VERSUS | 21-407 |
| RODNEY VICKNAIR, ET AL. | SECTION: "J" (4) |

## ORDER & REASONS

Before the Court is a *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 15)** filed by Defendants Shaun Ferguson and the City of New Orleans (collectively, the "City Defendants"). Plaintiff Rayne Upton opposes the motion (Rec. Doc. 19). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part**, as explained herein.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from the alleged sexual assault and rape of Plaintiff's minor child, G.H., by Defendant Rodney Vicknair, who was then an officer with the New Orleans Police Department ("NOPD"). In May 2020, G.H., who was fourteen at the time, was subject to a sexual assault. Vicknair was dispatched to the scene and tasked with accompanying her to the hospital for a forensic evaluation. That night, Vicknair began grooming G.H. and, over the next several months, he repeatedly visited her at her house and sexually assaulted her, as well as raping her on two occasions.

Days before the second rape occurred, the Office of the Independent Police Monitor ("OIPM") was alerted that Officer Vicknair's conduct toward G.H. was "inappropriate."[1] OIPM notified NOPD, and NOPD investigated. Then, on September 25, 2020, the NOPD Public Integrity Bureau ("PIB") received a public complaint regarding Officer Vicknair's sexual misconduct with G.H. The PIB conducted a preliminary investigation and charged Vicknair with sexual battery, indecent behavior with a juvenile, and malfeasance in office. Vicknair was fired from NOPD.

Vicknair joined NOPD in 2007 and had received several complaints prior to this ordeal. In 2009, the PIB received a complaint about Vicknair from a woman who claimed that Vicknair had stopped her unnecessarily in a grocery store parking lot. According to the complaint, Vicknair ran the woman's license plate number, which determined she was not wanted, and then used her personal information to call her over to his vehicle by name. Vicknair was charged with inaccurately recording information on his daily activity sheet and suspended for five days. Based on this incident, Vicknair's performance evaluations commending him for conducting many vehicle stops, and a study linking vehicle stops with police harassment of female drivers, Plaintiff contends that "a large number of these frequent traffic and pedestrian stops were used by Officer Vicknair to attempt to meet women for the purpose of sexual gratification" and that he "engaged in a pattern of using his police authority and NOPD-provided tools to seek sexual gratification with a member of the public."[2]

---

[1] (Rec. Doc. 1, at 21).
[2] *Id.* at 14.

As relevant here, Plaintiff brings claims under 42 U.S.C. § 1983 and 18 U.S.C. § 2255 as well as state law tort claims against Ferguson, in his individual and official capacities, and the City of New Orleans. The City Defendants then filed the instant motion to dismiss.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### I.   INDIVIDUAL CAPACITY CLAIM AGAINST FERGUSON

The City Defendants first move to dismiss Plaintiff's § 1983 claim against Ferguson in his individual capacity, contending that she has failed to allege that Ferguson personally did anything intentionally or recklessly to deprive G.H. of her rights under the Fourth, Fifth, and Fourteenth Amendments. Plaintiff fails to address this argument in her opposition to Defendants' motion. Accordingly, this claim will be dismissed.

### II.   MUNICIPAL LIABILITY CLAIM

Plaintiff's claim against Ferguson in his official capacity is a claim for municipal liability. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted). The policy may consist of (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by" a policymaker; (2) "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy"; and (3) "a final decisionmaker's adoption of a course of action tailored to a particular situation

and not intended to control decisions in later situations." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (internal quotation marks and citations omitted).

The failure to train municipal employees may also constitute a policy, but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable policy if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. To state a claim for municipal liability for failure to train, a plaintiff must allege (1) "a decision by a decisionmaker that amounts to a policy" (2) that was "so deliberately indifferent to the rights of the citizens that the [municipality] fairly can be said to be culpable for the injury," and (3) "sufficient causation between the specific policy decision and the resulting constitutional injury." *Brown*, 219 F.3d at 457.

The City Defendants contend that Plaintiff has failed to allege a specific policy, custom, or practice that was the driving force behind Vicknair's rape of G.H. They assert that Plaintiff has failed to allege any facts showing that any practice was sufficiently widespread to constitute a custom, and that her allegations of failure to train are barebones and do not identify a specific failure to train.

Plaintiff contends that the following policies caused the deprivation of G.H.'s rights:

1. Permitting an untrained male patrol officer, with a history of prior complaints, to bond with a child abuse victim and sexual assault survivor.

2. Failing to adequately staff their department with sufficient female patrol officers, Victim Advocates, and Sex Crime detectives.

3. Failing to dispatch a Sexual Assault Response Team to the scene of a sexual assault.

4. Failing to provide sexual assault survivors with a Victim Advocate during interactions with law enforcement.

5. Failing to properly supervise and monitor male officers interacting with minor and female sexual assault survivors.

6. Failing to properly screen, during the hiring process, and supervise thereafter, male officers to eliminate sexually predatory and abusive behavior towards vulnerable populations.

7. Inadequately training, supervising and disciplining officers at NOPD responsible for responding [to] the scene of a sexual assault and interacting with survivors of sexual assault.

8. Inadequately training officers to report or recognize other officers' activities involving grooming and sexual abuse of child abuse victims and sexual assault survivors.

9. Failing to have in place, or failing to follow, a policy or procedure to prevent officers from grooming and sexually abusing child abuse victims and sexual assault survivors.

10. Retaining Defendant, Rodney Vicknair, when they knew or should have known of Vicknair's propensity to abuse his position of authority as an NOPD officer to interact with women for sexual gratification.

11. Allowing Defendant Rodney Vicknair to remain on active duty even after his inappropriate conduct with G.H. was reported to NOPD.[3]

---

[3] (Rec. Doc. 1, at 24-25).

Policy One is unavailing because Plaintiff fails to allege that Ferguson (the policymaker) was aware of Vicknair's interactions with G.H. prior to the complaints being filed or that he chose to follow that course of action. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Valle*, 613 F.3d at 541 (requiring actual or constructive knowledge).

Policy Two is conclusory and therefore insufficient to establish municipal liability because Plaintiff has failed to plead any facts to support this allegation. Additionally, the Court finds this allegation implausible, as it requires the Court to assume that any male officer, detective, or victim advocate would have engaged in the same alleged conduct as Vicknair in order to establish causation.

Policies Three and Four do not actually allege policies, but rather failure to adhere to stated policies, and therefore are insufficient to establish municipal liability absent an allegation that the policies were ignored so often as to constitute a custom or that Ferguson made or ratified the decision to not follow the policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) ("[Formal] policies, rather than the subordinate's departures from them, are the act of the municipality.").

Policies Five through Eight raise various allegations of failure to train or supervise. However, Plaintiff fails to allege a pattern of similar constitutional

violations or any other facts that would place the City Defendants on notice that their training and supervision practices are deficient. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted).

Finally, Policies Nine through Eleven fail to plausibly allege deliberate indifference. With respect to Policy Nine, Plaintiff has not alleged a pattern of such sexual abuse by NOPD officers and "[t]here is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the [City was] deliberately indifferent" in light of the "criminal prohibition on sexual assault." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014) (affirming dismissal for failure to state a claim); *accord Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915, 917 (11th Cir. 2012) ("The City was entitled to rely on [the police officer's] common sense not to commit statutory rape, so its alleged failure to train him not to commit statutory rape does not show deliberate indifference to the rights of its inhabitants."); *Marsh v. Phelps County*, 902 F.3d 745, 753 (8th Cir. 2018). Regarding Policy Ten, the 2009 parking lot incident is simply too different from Vicknair's alleged conduct with G.H. to put the City Defendants on notice that retaining Vicknair would lead to the constitutional

violation at issue here. *See Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation at issue here, they could not have put [the defendant] on notice that specific training was necessary to avoid this constitutional violation.").

Policy Eleven is insufficient without additional details on the contents of the first complaint against Vicknair (the one made before his second rape of G.H.). According to Plaintiff, the complaint stated that "Vicknair's conduct toward G.H. was inappropriate."[4] However, Vicknair's conduct during the 2009 parking lot incident was also described as "inappropriate,"[5] yet there is a vast degree of difference in his conduct in the two incidents. Thus, absent additional details about the first complaint that would make Vicknair's second rape of G.H. "a known or obvious consequence of" failing to remove him from service, *Connick*, 563 U.S. at 61, Plaintiff has failed to adequately allege deliberate indifference.

In light of the foregoing, Plaintiff has failed to state a claim for municipal liability against the City Defendants, and this claim will be dismissed.

### III.   CIVIL REMEDY FOR PERSONAL INJURIES (18 U.S.C. § 2255)

The City Defendants next seek dismissal of Plaintiff's claim under 18 U.S.C. § 2255,[6] which provides a civil remedy to any person who was a victim as a minor of

---

[4] (Rec. Doc. 1, at 21).

[5] *See id.* at 13.

[6] "Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2255(a).

certain sexual abuse crimes. They contend that the statute does not provide a cause of action against anyone other than a violator of the enumerated criminal statutes.

Plaintiff contends that respondeat superior liability applies to § 2255, relying on *Doe v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337 (S.D. Fla. 2012). However, that case is easily distinguishable because it relied on a maritime law principle imposing strict liability on cruise lines for a crew member's assault of a passenger. *See id.* at 1339 (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 892, 904-13 (11th Cir. 2004)). Plaintiff further contends that vicarious liability applies because § 2255 is a civil restitution statute.

Admittedly, there is little caselaw interpreting this provision.[7] While some courts have found that secondary liability may attach under 18 U.S.C. § 2255, they did so with respect to aiding and abetting rather than vicarious liability. *See Doe v. Liberatore*, 478 F.Supp.2d 742, 756 (M.D. Pa. 2007).[8] However, other courts have rejected this conclusion based on the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994), which held that a private plaintiff did not have a cause of action for aiding and abetting under section 10(b) of the Securities Exchange Act of 1934. *See Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 281 (D. Conn. 2013); *Doe v. Hansen*, No. 16-CV-546, 2018 WL 2223679, at *5-6 (E.D. Mo. May 15, 2018).

---

[7] Research is made more difficult by the frequency with which it is confused with 28 U.S.C. § 2255, the habeas corpus statute for federal prisoners.
[8] *See also Doe v. Schneider*, No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013) (relying on *Liberatore*); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011) (same).

In *Central Bank*, the Supreme Court focused on the absence of explicit language creating secondary liability to reach its conclusion. 511 U.S. at 185 ("[I]t is not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose § 10(b) aiding and abetting liability."). "The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." *Id.* at 184.

Further, the legislative history suggests that a plaintiff would only have a cause of action against "those found guilty of a violation" of one of the specified statutes. *Smith v. Husband*, 376 F.Supp.2d 603, 611 (E.D. Va. 2005) (quoting 132 CONG. REC. E3242-02 (daily ed. Sept. 23, 1986) (statement of Rep. Bill Green)).[9]

Based on the foregoing, the Court agrees that a claim under § 2255 is limited to a "defendant [who] committed the acts described in any of the listed offenses." *Id.* at 613. Because Plaintiff does not allege that the City Defendants violated any of the enumerated statutes, this claim will be dismissed.

## IV.    STATE LAW CLAIMS

Finally, the City Defendants seek dismissal of Plaintiff's state law claims for lack of supplemental jurisdiction because all of Plaintiff's federal claims have been dismissed. Plaintiff contends that the City Defendants misread the statute and that

---

[9] "For purposes of this section, violations are to be determined by a preponderance of the evidence. Successful plaintiffs are entitled to recover the cost of the suit, including a reasonable attorney's fee, from those found guilty of a violation." 132 CONG. REC. E3242-02 (daily ed. Sept. 23, 1986) (statement of Rep. Bill Green).

supplemental jurisdiction is proper here because Plaintiff maintains federal claims against Vicknair.

The Court agrees with Plaintiff. Supplemental jurisdiction extends to "all other claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy," including "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if, inter alia, the court "has dismissed *all claims* over which it has original jurisdiction." § 1367(c) (emphasis added). As Plaintiff points out, the Court has not dismissed all claims that confer original jurisdiction because Plaintiff maintains § 1983 and § 2255 claims against Vicknair. Plaintiff's state law claims against the City Defendants are clearly sufficiently related to Plaintiff's federal claims against Vicknair as to support supplemental jurisdiction because they "'derive from a common nucleus of operative fact,'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)), and the City Defendants do not argue otherwise. Further, retaining jurisdiction over these claims promotes judicial economy, convenience, and fairness to the parties by allowing Plaintiff to press all her claims in one proceeding, rather than two, and by respecting Plaintiff's choice of forum. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Accordingly, the motion will be denied as to Plaintiff's state law claims.[10]

---

[10] Because Plaintiff seeks leave to amend her complaint only in the alternative, the Court is not considering that request here. (*See* Rec. Doc. 19, at 10).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the City Defendants' *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 15)** is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiff's claims under § 1983 and § 2255 against the City Defendants, and these claims are **DISMISSED WITH PREJUDICE** for failure to state a claim. The motion is **DENIED** as to Plaintiff's state law claims.

New Orleans, Louisiana, this 25th day of June, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE