# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CITY DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR RECONSIDERATION

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants"), through undersigned counsel, file this opposition to Plaintiff's Motion for Reconsideration (Doc. 66) (the "Motion").

Plaintiff fails to establish that reconsideration is warranted. The "report" upon which she bases her Motion is biased, unreliable, and derived from information that has been publicly available *prior* to the filing of Plaintiff's Original Complaint and the deadline in which to file amended pleadings. In addition, Plaintiff fails to show good cause to reopen and extend the deadline to amend pleadings, which expired on September 10, 2021. Finally, her proposed First Amended Complaint ("Amended Complaint") would be futile and cause irreparable prejudice to the City Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2021, Plaintiff filed her Complaint claiming damages arising from the "alleged sexual assault and rape of Plaintiff's minor child, G.H., by Defendant Rodney Vicknair, who was then an officer with the New Orleans Police Department ("NOPD")."[1] On April 26, 2021,

---

[1] Doc. 36, p. 1.

the City Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) (the "Motion to Dismiss").[2] On June 25, 2021, this Court granted the Motion to Dismiss, in part, dismissing Plaintiff's § 1983 claim for municipal liability against the City Defendants *with prejudice*.[3] However, the Court retained supplemental jurisdiction over Plaintiff's state law claims against the City Defendants.[4]

Following the Court's issuance of its Order on the City Defendants' Motion to Dismiss and the City Defendants' filing of their Answer, on August 12, 2021, this Court issued a Scheduling Order which provided, among other things, that "[a]mendments to pleadings . . . shall be filed no later than **SEPTEMBER 10, 2021**."[5] On April 13, 2022, a scheduling conference was held to discuss new trial and pre-trial dates.[6] On April 14, 2022, the Court issued a second Scheduling Order which unequivocally stated that "[a]mendments to pleadings . . . shall NOT be filed."[7]

On November 16, 2022, Defendant Vicknair entered a plea of guilty to charges of "Deprivation of Rights Under Color of Law" in a criminal proceeding pending in the United States District Court Eastern District of Louisiana based on conduct that forms the basis of Plaintiff's Complaint in the instant case.[8] Sentencing for Defendant Vicknair is scheduled for March 8, 2023.[9]

On December 7, 2022, Plaintiff filed a Joint Motion to Continue Trial, Pre-Trial Dates, and Discovery Deadline ("Motion to Continue") that were set forth in the second Scheduling Order because Plaintiff was barred from obtaining discovery from the U.S. Department of Justice relating

---

[2] Doc. 15.
[3] Doc. 36, pp. 9, 13.
[4] *Id*., p. 12.
[5] Doc. 40 (emphasis in original).
[6] See Doc. 62 (Order setting scheduling conference).
[7] Doc. 63.
[8] See *USA v. Vicknair*, No. 22-212 (E.D. La.), Doc. 23.
[9] *Id*., Doc. 26.

to Defendant Vicknair's criminal case until after sentencing.[10] On December 19, 2022, this Court granted the Motion to Continue and issued an Order stating that "[a]ll pre-trial and trial dates shall be taken off calendar, and a scheduling conference shall be held to pick new dates."[11]

On January 5, 2023, Plaintiff filed the instant Motion for Reconsideration seeking to reverse the Court's ruling dismissing Plaintiff's claim of municipal liability against the City Defendants with prejudice.[12] In addition, Plaintiff advises that she desires to seek leave to amend her Complaint to revive her § 1983 claim for municipal liability against the City Defendants.[13]

## LAW AND ARGUMENT

### A. NO GROUNDS EXIST TO REVERSE THE COURT'S ORDER DISMISSING PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS WITH PREJUDICE

A district court may reconsider, rescind, or modify an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b) for cause that the court deems to be sufficient.[14] However, the court's discretion should be "exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays."[15]

"The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment."[16] Under Rule 59(e), four factors are relevant:

---

[10] *Upton v. Vicknair*, Doc. 64.
[11] Doc. 65.
[12] Doc. 66.
[13] According to conversations with Plaintiff's counsel, Plaintiff anticipates filing a motion for summary judgment against Defendant Vicknair after the criminal case is resolved. Resolution of the claims against Defendant Vicknair may provide reason for the Court to reevaluate the basis for federal jurisdiction against the City Defendants. See Doc. 36, p. 12 ("Plaintiff contends that . . . supplemental jurisdiction is proper here because Plaintiff maintains federal claims against Vicknair. The Court agrees with Plaintiff.").
[14] *Castrillo v. Am. Home Mortg. Servicing, Inc*., No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (quoting *Melancon v. Texaco, Inc*., 659 F.2d 551, 553 (5th Cir. 1981)).
[15] *Id*. (citing 18b Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 4478.1 (2d ed. 2002)).
[16] *Hoffman v. Bailey*, No. 13-5153, 2015 WL 9315785, at *7 (E.D. La. Dec. 23, 2015).

"(1) whether the motion is necessary to correct a manifest error of law or fact upon which the judgement is based; (2) whether the movant presents newly discovered unavailable evidence; (3) whether the motion is necessary in order to prevent manifest injustice; or (4) whether the motion is justified by an intervening change in controlling law."[17] Reconsideration is an extraordinary remedy "that should be used sparingly" and only when the motion is able to "clearly establish" that reconsideration is warranted.[18]

In her Motion, Plaintiff tacitly suggests that the Court made a manifest error of law and/or fact. Plaintiff contends that footnote 10 of the Order implied that the Court would consider a motion for leave to amend the complaint, but nevertheless dismissed Plaintiff's claims under § 1983 with prejudice.[19] Plaintiff is incorrect.

Footnote 10 of the Order relates only to Plaintiff's state law claims, not the § 1983 municipal liability claims. This is evident by looking at the text to which Footnote 10 is appended "the motion will be denied as to Plaintiff's state law claims."[20] In addition, the footnote 10 cites page 10 of Plaintiff's memorandum, where Plaintiff says, "Alternatively, this Court should grant Plaintiff leave to amend to add factual allegations supporting Defendants' liability for negligent hiring."[21] Thus, contrary to Plaintiff's contention in the Motion, nothing in the footnote 10 of Order indicates that the Court invited Plaintiff to seek leave to amend her Complaint with respect to municipal liability claims under § 1983 or mistakenly dismissed Plaintiff's § 1983 claims with prejudice. This Court's dismissal of Plaintiff's § 1983 claims with prejudice was intentional, well-reasoned, and supported by fact and law.

---

[17] *Hoffman*, *8 (citing *Castrillo*, supra at *4).
[18] *Id*.
[19] Doc. 66-1, p. 3.
[20] Doc. 36, page 12.
[21] Doc. 19, p. 10.

Additionally, Plaintiff claims that she has found "new pattern and practice evidence" in the form of a "report recently released by several of New Orleans' most active social justice organizations," which call themselves as the "Umbrella Coalition."[22] This "report" (hereinafter referred to as the "Umbrella Coalition factsheet") is available on the internet and states that it is a "factsheet" summarizing information gleaned from NOPD's Public Integrity Bureau ("PIB") annual reports from 2014 to 2020 relating to complaints against NOPD police officers.[23]

The NOPD PIB annual reports from 2014 to 2018 were available to Plaintiff since *prior to* filing of her Original Complaint.[24] The reports from 2019 and 2020 were also available to the Plaintiff *before* the time that the deadline for amendments to pleadings passed.[25] As such, the Umbrella Coalition factsheet contains no newly discovered evidence, but is instead a rehashed editorialization of old evidence that Plaintiff ignored or failed to present until the present Motion. Because the information contained in the Umbrella Coalition factsheet was available to Plaintiff within sufficient time to include it in her Original Complaint and/or prior to the deadline to file amended pleadings, the Umbrella Coalition factsheet cannot support Plaintiff's extraordinary request to reverse the Court's Order.[26]

---

[22] Doc. 66-1, p. 3.

[23] See Doc. 66-6, footnote 2 ("Under the consent decree, NOPD's Public Integrity Bureau (PIB) began publishing annual reports on misconduct allegations against NOPD officers in 2014. . . . This factsheet reviews complaints from 2014-2020."). The Umbrella Coalition factsheet is accessible on the internet at *e.g.*, https://copwatchnola.wordpress.com/data/, accessed January 24, 2023.

[24] The NOPD Public Integrity Bureau Annual Reports from 2014 to 2020 are available online at https://nola.gov/nopd/nopd-consent-decree/. Last accessed, January 24, 2023. The 2014 report, accessible by hyperlink from the webpage, states that it was published on April 8, 2015. The 2015 report, also accessible by hyperlink, states that it was published on April 1, 2016. The reports from 2017 to 2018 do not state a publication date, but clearly were published before the 2019 report, which was published on January 25, 2021. See footnote 24.

[25] *Id.* The NOPD website states that publication date of the 2019 report was posted online on January 25, 2021, and the 2020 report was posted online on August 5, 2021.

[26] See *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004) (in the context of Rule 59(e), expert medical information was available to plaintiff prior to judgment on motion for summary judgment and therefore did not support a motion for reconsideration as newly discovered evidence).

In addition, there would be no manifest injustice to denying Plaintiff's Motion because this Court's decision to dismiss Plaintiff's municipal liability claims with prejudice was correct.[27] Finally, there has been no intervening change of law. For these reasons, Plaintiff has failed to show cause under Federal Rule of Civil Procedure 54(b) for the Court to reconsider and change its Order dismissing the municipal liability claims against the City Defendants with prejudice.

## B.   PLAINTIFF CANNOT SHOW GOOD CAUSE TO EXTEND THE DEADLINE FOR AMENDMENTS TO PLEADINGS.

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."[28] Thus, where a party seeks to amend a complaint after the deadline to amend pleadings has passed, the party must show "good cause," meaning that the party must "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[29] In this regard, the court considers: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[30] The Court has "broad discretion to preserve the integrity and purpose of the pretrial order."[31]

There has been no change to the Court's Scheduling Order, issued on April 14, 2022, which ordered that amendments to pleadings "shall NOT be filed."[32] The most recent Order of the Court, which granted the Motion to Continue on December 19, 2022, moved the trial date and upcoming

---

[27] See *infra*, p. 10-11 (under the section entitled Futility of Amendment).

[28] Fed. R. Civ. P. 16(b)(4).

[29] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F. 3d 541, 546 (5th Cir. 2003) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) which was quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990).

[30] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F. 3d 541, 546 (5th Cir. 2003) (citing *S&W Enterprises*, 315 F. 3d 533, 536 (2003)) (likely failure of additional counterclaims factor in upholding denial of leave to amend).

[31] *S&W Enterprises*, 315 F. 3d at 535.

[32] Doc. 63. This Order followed a Scheduling Order issued on August 12, 2021, which established a deadline for filing amended pleadings of September 10, 2021. Doc. 40.

pre-trial dates in order to accommodate Plaintiff's desire to obtain discovery regarding Defendant Vicknair's criminal case.[33] Nothing in that Order indicated that the expired deadline for amendments to pleadings was revived.

Because amendments to pleadings are barred by the Court's Order, Plaintiff must show good cause pursuant to Rule 16(b)(4) to permit her to amend to her Complaint. However, Plaintiff has failed to show good cause because every one of the relevant factors discussed in *S&W Enterprises*, *supra*, weighs against Plaintiff.

First, Plaintiff provides no reason why she did not utilize the NOPD PIB annual reports, as summarized in the Umbrella Coalition factsheet, when she filed her Complaint or at any time before the deadline for amending pleadings passed. Again, the NOPD annual reports were available to Plaintiff well within the time to incorporate into the Original Complaint and a timely amended complaint. Second, the Umbrella Coalition factsheet is unimportant because it is facially biased and unreliable. The Umbrella Coalition factsheet, according to its own terms, derives its information from previously published NOPD reports. The Umbrella Coalition authors are anonymous, but identify as "social activists," who have an obvious pro-plaintiff / anti-police agenda. The content is sensationalistic, and merely consists of a series of inflammatory headlines followed by misleading statistics.[34] Further, the report is not reliable given the anonymity of the writers and questionable methodology. Finally, as to the third and fourth factors listed by the court in *S&W Enterprises*, the City Defendants would be prejudiced due to the extremely inflammatory nature of the allegations sought to be revived against the City Defendants and the disproportionate expense that would accrue with  having to proceed with an unnecessary expansion of discovery

---

[33] Doc. 65. See Doc. 64 (Motion to Continue, citing the need to obtain "evidence in the possession of the Department of Justice" relating to the criminal case involving Defendant Vicknair).

[34] See Doc. 66-6 ("Police Sexual Violence in New Orleans," dated November 2022, attributed to the "Umbrella Coalition.").

while Plaintiff conducts a fishing expedition regarding an unfounded theory of a pattern of sexual violence by NOPD officers.

For these reasons, good cause does not exist for the Court to reopen the period for with parties to amend their pleadings. The Motion for Reconsideration should therefore be denied.

### C.  PLAINTIFF FAILS TO ESTABLISH A BASIS UNDER RULE 15 TO GRANT LEAVE TO AMEND THE COMPLAINT.

Even assuming this Court determines that Plaintiff has met the independent requirements of Rules 59(e) and 16(b)(4), the Court must still satisfy Federal Rule of Civil Procedure 15(a), which provides that leave to amend pleadings "should be freely give[n] when justice so requires."[35] Under this standard, relevant factors include "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment."[36] A proposed amendment is futile if it would be subject to a Rule 12(b)(6) motion to dismiss for failing to state a claim for which relief can be granted.[37] Plaintiff's request for leave to amend should be denied because of undue delay, prejudice, and futility.  The same arguments outlined above also support dismissal of her proposed Amended Complaint.

---

[35] See *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d at 536 ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.").

[36] *Rosenzweig v. Azurix Corp.*, 332 F. 3d 854, 864 (5th Cir. 2003) (punctuation omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Jones v. Robinson Prop. Grp., LP*, 427 F. 3d 987, 994 (5th Cir. 2005) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F. 2d 594, 598 (5th Cir. 1981)). *Ackerson v. Bean Dredging LLC*, 589 F. 3d 196, 208 (5th Cir. 2009); *Castrillo v. Am. Home Mortgage Servicing, Inc.*, 670 F. Supp. 2d 516, 522 (E.D. La. 2009) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F. 3d 863, 872–73 (5th Cir. 2000))

[37] *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F. 3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss."); *Briggs v. Mississippi*, 331 F. 3d 499, 508 (5th Cir. 2003); *see also Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 430-31 (E.D. La. 2010).

### 1. Undue delay.

As indicated earlier, Plaintiff was aware or should have been aware by the exercise of reasonable diligence of the multiple annual reports published by the NOPD from 2014 to 2020. To the extent that Plaintiff failed to utilize this information, Plaintiff's decision was deliberate and the delay was not excusable.[38] For example, in *S&W Enterprises v. SouthTrust Bank of Alabama*, the Fifth Circuit upheld the denial of leave to amend because "the same facts were known to S&W from the time of its original complaint to the time it moved for leave to amend."[39] Similarly, in the instant case, the facts contained in NOPD's annual reports has been available to Plaintiff from the genesis of this lawsuit as well the deadline to amend pleadings, but Plaintiff ignored the information until the instant Motion.

### 2. Prejudice to the City Defendants.

Further, revival of Plaintiff's municipal liability claim will dramatically increase the scope of discovery and motion practice in this case. If she is granted leave to amend her complaint, Plaintiff will seek extensive documentation concerning the discipline history of every NOPD officer related to complaints of unwanted physical contact – all of which was previously available to her. The burden to respond to such discovery would be much more onerous to the City Defendants than the current scope of discovery, which relates only to state law claims relating to Defendant Vicknair. In addition, Plaintiff's proposed amended petition will require additional motions practice, including a new motion to dismiss. These additional litigation burdens are

---

[38] See *Rosenzweig*, 332 F.3d at 865 (plaintiffs failed to exercise diligence where facts were available to them prior to motion to dismiss and court therefore did not abuse discretion in denying motion for leave to amend complaint); *Squyres v. Heico Companies, L.L.C.*, 782 F. 3d 224, 238 (5th Cir. 2015); *E.E.O.C. v. Serv. Temps Inc.*, 679 F. 3d 323, 334 (5th Cir. 2012) ("[A party's] knowledge, or at least its reasonable suspicion, accents its inability to explain the delay.").

[39] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, NA, 315 F. 3d at 536.

recognized by the Fifth Circuit as being the type of prejudice that may preclude leave to amend a complaint and no continuance would cure such prejudice.[40]

### 3. Futility of Amendment.

In addition, Plaintiff's proposed Amended Complaint would be futile. Plaintiff's Original Complaint contains many (unfounded) allegations of pattern and practice by the NOPD with respect to police sexual violence.[41] For example, among other things, the Original Complaint alleged that the City Defendants maintained "written and unwritten policies, customs, patterns, and practices" that included:

- Failing to properly screen, during the hiring process, and supervise thereafter, male officers to eliminate sexually predatory and abusive behavior towards vulnerable populations;[42]

- Inadequately training officers to report or recognize other officers' activities involving grooming and sexual abuse of child abuse victims and sexual assault survivors;[43] and

- Failing to have in place, or failing to follow, a policy or procedure to prevent officers from grooming and sexually abusing child abuse victims and sexual assault survivors.[44]

The Court, in dismissing Plaintiff's claim of municipal liability, reasoned that Plaintiff failed to allege a pattern of similar constitutional violations or "any other facts that would place

---

[40] See *Ward v. CNH Am., L.L.C., Ind.*, 534 F. App'x 240, 242 (5th Cir. 2013) (per curium, not designated for publication) (affirming denial of leave to amend complaint due to the prejudice to other parties from additional discovery and motion practice); *Santacruz v. Allstate Texas Lloyd's, Inc*., 590 F. App'x 384, 389 (5th Cir. 2014) (upholding denial of leave filed four months after deadline after finding prejudice in part due to reopened discovery, despite importance of plaintiff's claim); *Texas Indigenous Council v. Simpkins*, 544 F. App'x 418, 421 (5th Cir. 2013) (finding prejudice where plaintiff moved to amend after the close of discovery because defendants would be "forced to defend against a new claim and basis for recovery so late in the litigation"); *Bennett v. Consol. Gravity Drainage Dist. No. 1*, No. 15-30649, 2016 WL 2865351, at *3 (5th Cir. May 16, 2016) (finding prejudice from reopened discovery).

[41] Doc. 1.

[42] *Id*., ¶ 115(6).

[43] *Id*., ¶ 115(8).

[44] *Id*., ¶ 115(9).

the City Defendants on notice that their training and supervision practices are deficient."[45] The Court noted, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[46] In addition, the Court reasoned that "Plaintiff has not alleged a pattern of such sexual abuse by NOPD officers and '[t]here is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the City was deliberately indifferent' in light of the 'criminal prohibition on sexual assault.'"[47] Therefore, dismissal was proper.

The First Amended Complaint, like the Original Complaint, fails to allege any deficiency in training and supervision or any facts sufficient to prove that the City Defendants had notice of a deficiency. Further, Plaintiff's inclusion of statistics derived from the biased Umbrella Coalition factsheet does not show deliberate indifference by the City Defendants.[48] Cherry-picking statistics, as Plaintiff does here, does not support a claim of municipal liability under § 1983 because no pattern can be shown "without some link between that statistic and specific instances where such a response resulted in constitutional violations."[49] Plaintiff fails to link any statistics to any specific instance of a constitutional violation. Complaints and investigations, without more, do not provide any evidence of constitutional violations.

The statistics proffered by Plaintiff, presented without a reasonable context of the NOPD's actual supervision and training of its officers, fail to demonstrate any deficiency on the part of

---

[45] Doc. 36, pp. 7-8.
[46] *Id.*, p. 8 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011).
[47] *Id.* (quoting *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014) (additional citations omitted).
[48] Doc. 66-4, ¶ 144; see *id*, ¶¶ 134-141 (relating to complaints made against NOPD officers).
[49] *Valle v. City of Houston*, 613 F. 3d 536, 548 (5th Cir. 2010); *see also Snyder v. Trepagnier*, 142 F. 3d 791, 797 (5th Cir. 1998) (rejecting the use of "assorted policy papers and reports . . . many of which were excluded as hearsay").

NOPD, let alone deliberate indifference. The City Defendants, in training and supervising their officers, cannot be faulted for relying on the judicially-recognized common sense and shared moral sense of adults not to commit sexual assaults generally shared by members of society.[50] Plaintiff's conclusory allegations and unconnected statistics fail to make it plausible that NOPD officers "regularly engage in a pattern of police sexual violence".[51]

The municipal liability claim asserted in Plaintiff's proposed Amended Complaint is subject to dismissal for failure to state a claim. It is futile and provides no grounds to grant leave for Plaintiff to amend he complaint.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Plaintiff's Motion for Reconsideration.

---

[50] See *Sherman v. Irwin*, 2018 WL 3632360 (E.D. La. 7/31/18), (in granting a 12(b)(6) motion to dismiss municipal liability claims, finding that nonconsensual sexual behavior by police officer was "almost assuredly the result of the officer's severe personal shortcomings and not the result of a failure to train").

[51] Doc. 66-4, ¶133. See *Quinn v. Guerrero*, No. 4:09CV166, 2016 WL 4529959, at *11 (E.D. Tex. Aug 28, 2016) ("Without more specific factual allegations regarding the existence and enforcement of a 'code of silence' or prevalent recklessness within the McKinney police department and without more specific factual allegations stating how this code was the moving force behind any alleged violation of his rights, Plaintiff's conclusory allegations regarding the "code of silence" are simply not enough to state a claim under Section 1983").

Respectfully submitted,


/s/ *James M. Roquemore*_____
JAMES M. ROQUEMORE (LSB #40035)
Deputy City Attorney
RENEE E. GOUDEAU (LSB #33157)
Deputy City Attorney
CORWIN ST. RAYMOND (LSB #31330)
Chief Deputy City Attorney
DONESIA D. TURNER (LSB #23338)
City Attorney
1300 Perdido Street
City Hall – Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Fax: (504) 658-9868
james.roquemore@nola.gov
regoudeau@nola.gov
cmstraymond@nola.gov
donesia.turner@nola.gov

*Attorneys for Defendants, City of New Orleans and*
*Shaun Ferguson, Superintendent of the New Orleans*
*Police Department*