1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4    UNITED STATES OF AMERICA        *      Docket 22-CR-212
                                     *
5    versus                          *      Section I
                                     *
6    RODNEY VICKNAIR                  *      March 8, 2023
     * * * * * * * * * * * * * * * *

7

8                   SENTENCING HEARING BEFORE
9              THE HONORABLE LANCE M. AFRICK
                 UNITED STATES DISTRICT JUDGE
10

11   Appearances:

12
     For the United States        U.S. Attorney's Office
13   of America:                  BY:  TRACEY N. KNIGHT, ESQ.
                                   650 Poydras Street, Suite 1600
14                                 New Orleans, Louisiana 70130

15   For the United States        Department of Justice
     of America:                  BY:   FARA GOLD, ESQ.
16                                 950 Pennsylvania Avenue NW
                                   4CON-7th Floor
17                                 Washington, DC 20530

18   For Rodney Vicknair:         Townsend M. Myers, APLC
                                   BY:  TOWNSEND M. MYERS, ESQ.
19                                 4907 Magazine Street
                                   New Orleans, Louisiana 70115
20
     Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
21                                 500 Poydras Street, Room B-275
                                   New Orleans, Louisiana 70130
22                                 (504) 589-7778

23

24
     Proceedings recorded by mechanical stenography using
25   computer-aided transcription software.

<u>**PROCEEDINGS**</u>

**(March 8, 2023)**

**THE COURT:**  Thank you.  Good afternoon.

Let's call the first case.

**THE DEPUTY CLERK:**  Criminal matter 22-212,

*United States of America v. Rodney Vicknair.*  This matter is

set for sentencing.  Counsel, please make your appearance for

the record.

**MS. GOLD:**  Good afternoon, Your Honor.  Fara Gold on

behalf of the United States, and I'm here with AUSA Tracey

Knight.

**MR. MYERS:**  Good afternoon, Your Honor.  Townsend

Myers.  I'm appearing on behalf of and with Rodney Vicknair.

**THE COURT:**  Thank you.  Mr. Vicknair, are you able to

come to the podium?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  For the record, I have read all the

motions and all the memoranda and attachments filed by both

sides.  The U.S. Attorney's Office, the United States

Department of Justice Civil Rights Division, and the defendant

have agreed that a specific sentence of imprisonment of

84 months, pursuant to Rule 11(c)(1)(C), is the appropriate

disposition of this case.  If the Court were to accept that

agreement, it would be bound to impose a sentence of

imprisonment of 84 months.

02:01

1          I have ruled on the objections.  Are there any

2 other objections to the presentence report that either the

3 defense or the government would like to note for the Court?

4          **MS. GOLD:**  No, Your Honor.  Thank you.

5          **MR. MYERS:**  No, Your Honor.

6          **THE COURT:**  Have you and your client had an

7 opportunity to read the presentence report?

8          **MR. MYERS:**  We have, Your Honor.

9          **THE COURT:**  Any modifications or comments or anything

10 else that you or your client would like to make to it?

11          **MR. MYERS:**  Nothing other than what I have already

12 addressed in writing, Your Honor.

13          **THE COURT:**  Thank you.  As I find it uncontested, I

14 therefore adopt it as my own.

15          I understand the victim is present.  Is that

16 correct?

17          **MS. GOLD:**  She is, Your Honor, as is her mother.

18          **THE COURT:**  Well, I would like to hear what the

19 victim has to say.  She need not state her name.  I know she

20 was a minor when this occurred.  If she would like to speak to

21 the Court and address her position with respect to this

22 proposed plea agreement --

23          **MS. GOLD:**  Yes, Your Honor.  She is here.

24          **THE COURT:**  The option is that you can state on her

25 behalf if she wants you to.  That's her choice.

02:02

1          **MS. GOLD:**  Thank you, Your Honor.  We spoke earlier
2    today, and I think she wants to come up and address Your Honor.
3          **THE COURT:**  Let me hear from her, please.
4          **MR. MYERS:**  Shall we have a seat?
5          **THE COURT:**  Please.
6               Ma'am, thank you for coming.  You need not state
7    your name for the record.
8               Welcome.  Is there something you would like to
9    say to the Court?
10         **THE VICTIM:**  Yes.
11         **THE COURT:**  Okay.  Do you understand that there's an
12   agreement between the government and the defense that an
13   84-month sentence of imprisonment is an appropriate disposition
14   of this case, but I have not yet decided whether I'm going to
15   accept that?  As part of this process, I would like to hear
16   what you have to say about it.
17              Don't be nervous.  Just take a deep breath,
18   speak into the microphone, and take your time.
19         **MS. GOLD:**  Your Honor, she wrote something for you
20   she would like to read, if that's okay.
21         **THE COURT:**  Sure.  Of course.  I just need you to
22   speak up so I can hear you.
23         **THE VICTIM:**  There's a girl in a room.  She turns out
24   the light.  A shadow appears to torment what's in sight.  To
25   her, he appears as a helping hand, but little does she know he

02:03

1 had other plans.  He tears her down and makes her suffer, yet

2 she comes out ten times tougher.  Now every night the light

3 stays on, scared he will return.  She hopes he has had a change

4 in heart and that he has learned.  Some days are for reminders,

5 so she walks out of the house wearing her blinders.  Now she is

6 back in her room there to stay, glad the shadow is far, far

7 away.

8          THE COURT:  Is that all you would like to say, ma'am?

9          THE VICTIM:  (Nods head.)

10          THE COURT:  Anything further?

11          MS. GOLD:  Yes, Your Honor.  I was just going to

12 follow up with her, if that's okay, about the agreed upon

13 sentence.

14             I won't use your first name.  I know that I call

15 you by your first name.  Can you just tell the judge.  We

16 discussed the seven-year resolution, correct?

17          THE VICTIM:  (Nods head.)

18          MS. GOLD:  If you are comfortable, can you tell the

19 judge how you feel about that.

20          THE VICTIM:  I'm comfortable with the sentence.  It's

21 my amount of time for my healing that will take a while, but

22 with that I'm comfortable with.

23          THE COURT:  All right.  Look, I want to thank you for

24 having the strength and fortitude to appear today.  The fact

25 that a City of New Orleans police officer engaged in this type

02:04

1   of brazen and outrageous conduct agreed to in the factual basis
2   causes all of us pain and sorrow.
3                I hope you understand, however, my concern is
4   not only to fashion a sentence that takes into consideration
5   what happened to you, but the Court is also obligated to
6   fashion a sentence that protects other children from sexual
7   assault type behavior once the defendant is released and that
8   others would be so deterred.  I hope you understand that.
9            THE VICTIM:  (Nods head.)
10           THE COURT:  Thank you so much for coming, you and
11  your mom.
12           THE VICTIM:  Thank you.
13           THE COURT:  Y'all can come back up here if you like.
14           MS. GOLD:  Your Honor, if I may, the victim's mom is
15  here also, and she wanted to address the Court.
16           THE COURT:  No problem.
17           MS. GOLD:  Okay.
18           THE COURT:  Glad to hear from her.
19           MS. GOLD:  Yes.  Thank you.
20           THE COURT:  Ma'am, you need not state your name, as I
21  assume you have the same last name as your daughter.
22           THE VICTIM'S MOTHER:  Yes, sir.
23           THE COURT:  You can just address the Court as your
24  child's mom.
25           THE VICTIM'S MOTHER:  Okay.  Yes, sir.

02:05

1     **MS. GOLD:**  She also wrote something for Your Honor.

2     THE COURT:  Your daughter was so articulate --

3     THE VICTIM'S MOTHER:  Thank you.

4     THE COURT:  -- especially for a young lady her age.

5     I'm so impressed by --

6     THE VICTIM'S MOTHER:  Me too.

7     THE COURT:  -- how she articulated what she did to

8     the Court, honestly.  God bless her.

9     THE VICTIM'S MOTHER:  She is an amazing, amazing

10    girl.

11    THE COURT:  She absolutely is.

12    THE VICTIM'S MOTHER:  I'm very proud of her.

13    THE COURT:  She absolutely is.

14    THE VICTIM'S MOTHER:  Thank you for that.

15    THE COURT:  I can't imagine your pain as a mom, so

16    tell me what you have to say.

17    THE VICTIM'S MOTHER:  I want to share some stories

18    about the life of my daughter.

19    I'm sorry.

20    THE COURT:  No, no, take your time.  I have all the

21    time in the world.

22    THE VICTIM'S MOTHER:  There are stories that I want

23    everyone to know.

24    I'm sorry.  My hands are shaking.

25    THE COURT:  No, no.  Please, take your time.  Do you

02:06   1   need some water?

2              THE VICTIM'S MOTHER:  I'm okay.

3              THE COURT:  Just take a deep breath.  Just talk to

4   me.  You don't have to worry about anybody else being here.

5              THE VICTIM'S MOTHER:  My thoughts and feelings,

6   finding out that I was pregnant and then finding out that I was

7   having a daughter, it was the most exhilarating time of my

8   life.  I knew that it was going to be my last pregnancy, and I

9   had already had two boys.  I was filled with excitement and joy

10   from this unexpected surprise that I knew then and I know now

11   was nothing other than a gift from God to have been able to

12   have gotten pregnant.

13              I remember praying:  "Ten fingers, ten toes,

14   Lord, healthy baby, but if you could find it in your God-given

15   infinite wisdom and heart, please, Lord, let me have a little

16   girl.  I just want a little girl."  God granted me that.  He

17   blessed me with having a daughter.

18              The pregnancy was very, very difficult.  I went

19   into preterm labor four months in and was put on bedrest and

20   she came a month early.  The first year of her life was

21   countless, innumerable medical issues.  I don't even know how I

22   got sleep the first year of her life.  It's a miracle that she

23   is alive today and in this courtroom.  It's a miracle after

24   what she survived that first year.

25              Now I want to say some things about what

02:08

1  happened almost three years ago that brought us all to where we

2  are right now today, how I felt about police before this.

3              I pretty much viewed all law enforcement the way

4  that I saw my granddaddy.  He was a lieutenant with the

5  Baton Rouge Sheriff's Office for 25-plus years and served in

6  the Air Force for 25 years, and I was in awe of him.  He was

7  very honest, very fair, but very firm in regards to his job.

8  He was literally the epitome of what you think of when you hear

9  "protect and serve."

10             By "protect" I mean keeping our best interests

11  safe, and by "protect" I mean guarding our rights.  By "serve"

12  I mean caring for us as citizens and human beings and being

13  guided by that instinct to care.  By "serve" I mean being

14  accountable for the decisions and the actions taken on our

15  behalf.

16             Obviously, Officer Rodney Vicknair violated all

17  of those standards that are included in the "protect and

18  serve."  What I had before was a certain innocence and blind

19  trust in law enforcement.  This allowed me to let down my

20  guard.  Maybe this innocence was naive, maybe this blind trust

21  was unwise, but they were feelings that were natural and

22  instinctive before his violation of my daughter.

23             I have lost that innocence.  Trust is no longer

24  assumed.  Earning it is much more difficult, virtually

25  impossible now.  In my wildest dreams, the innocent hopes and

02:11

1    dreams I had for my daughter's life in spite of all the medical

2    issues that plagued my pregnancy, in spite of her coming a

3    month early, in spite of all the medical issues that she

4    survived that first year of her life to be able to be here,

5    never once -- never once -- did I dream that my daughter and I

6    would be dealing with a lifetime of damage from the aftermath

7    of her being sexually assaulted by a police officer, a job I

8    used to hold with such high regard and felt was such an honor

9    to have.

10               I would like to address him directly if it's

11   okay.

12          **THE COURT:**  Of course.

13          **THE VICTIM'S MOTHER:**  I trusted you.  I trusted you.

14   From the moment that you stepped foot in our home to when you

15   drove us to Children's Hospital to have a rape kit done and you

16   stayed there over 2 1/2 hours until you were called to go back

17   out into the field, somewhere in between that first step in our

18   home and when you got called out, you had already started the

19   grooming process with my daughter.  You had already decided

20   that she was going to be your next victim.

21               I want you to know that this whole experience

22   has definitely tested my faith and has strengthened my faith.

23   I do forgive you; but not for you, for me.  I don't know what

24   you're thinking about what I'm saying right now, and you may be

25   rolling your eyes in the back of your head to yourself.  I do

02:12

1    know that these words one night, many nights, will come back to

2    you when you are in your jail cell staring at the ceiling, and

3    I hope for your sake -- and I mean this -- if you don't know

4    God, I pray that you will open your heart to God because you

5    are going to need Him.

6                    That's all I have, Your Honor.

7                    THE COURT:  Thank you.  You and your daughter are in

8    our prayers.

9                    THE VICTIM'S MOTHER:  I'm sorry?

10                   THE COURT:  You and your daughter are in our prayers.

11                   THE VICTIM'S MOTHER:  Oh, thank you.  Thank you very

12   much.

13                   MS. GOLD:  Your Honor, can I follow up with just one

14   question?

15                   We talked about the plea offer and the

16   alternative of going to trial.  Can you please just tell the

17   judge your thoughts about that.

18                   THE VICTIM'S MOTHER:  Yes.  So my thoughts are that,

19   of course, as a mother, as her mother, nothing short of a

20   lifetime in jail feels sufficient.  However, where we are at

21   right now with the case I believe is very much in the best

22   interest of her.  I believe that to go through a trial would

23   absolutely crush and devastate her, and I feel like justice

24   with this is being served.

25                   THE COURT:  Especially after hearing what you and

02:14

1   your daughter have had to say, I need to mention again to you

2   what I said to your daughter.  I believe you're strong, as

3   evidenced by what you just said, and I believe your daughter is

4   strong as well.

5               **THE VICTIM'S MOTHER:**  Thank you.

6               **THE COURT:**  I want you to understand that my concern

7   is not only to fashion a sentence that takes into consideration

8   what happened to you, but I'm also obligated to fashion a

9   sentence that protects other children from sexual assault type

10  behavior --

11              **THE VICTIM'S MOTHER:**  I agree.

12              **THE COURT:**  -- once he is released.

13              **THE VICTIM'S MOTHER:**  I agree.

14              **THE COURT:**  I know you agree with that.

15              **THE VICTIM'S MOTHER:**  Absolutely.

16              **THE COURT:**  That is the challenge.  Your daughter

17  spoke about the fact that the defendant did not give her the

18  helping hand that she needed when she was at a terrible time in

19  her life but the light stays on.  No matter what she has to do

20  in connection with this case or in life, I believe, after

21  hearing her and hearing you, the light is going to stay on.

22                   The other thing I wanted to say to you that --

23  of course, watching you cry like that is very upsetting.  Your

24  young child was not the only victim in this case.  You suffer

25  as well.  I understand that.  You couldn't protect your child,

02:15  1    and I'm sure there's a certain amount of guilt about that.

2              THE VICTIM'S MOTHER:  Yes.

3              THE COURT:  I'm here to tell you that you don't need

4    to carry that guilt on your back --

5              THE VICTIM'S MOTHER:  I carry it with me every day.

6              THE COURT:  I understand.  I understand.  I hope you

7    get some help with respect to that because there's nothing that

8    you did --

9              THE VICTIM'S MOTHER:  I actually have my therapist in

10   the courtroom with me.

11             THE COURT:  Well, thank goodness for that, because

12   there's nothing that you did would justify carrying that guilt

13   on your back.

14             THE VICTIM'S MOTHER:  Thank you.

15             THE COURT:  I don't want you to get upset with me,

16   but there's a lot going on up here that I've thought about in

17   connection with this case.  No matter what I decide to do, I

18   know that you and your daughter are going to survive and be

19   strong.  You can do it and she can do it.  Through life.

20             THE VICTIM'S MOTHER:  Amen.

21             THE COURT:  God bless.

22             THE VICTIM'S MOTHER:  Thank you very much.

23             THE COURT:  You can come back up here if you like.

24             Again, I have read all the memoranda and all the

25   motions.  I am extremely familiar with this case.  I have gone

02:16

1    over the presentence report and everything else more than half

2    a dozen times.  Is there anything else that y'all would like to

3    say with respect to whether or not the Court should accept the

4    11(c)(1)(C) plea?

5            **MS. GOLD:**  Yes, Your Honor.  The United States would

6    urge you to accept it.  We understand the horrific nature of

7    it.  Obviously, there's nothing that mitigates it, particularly

8    because this is a law enforcement officer who was tasked with

9    helping a victim get through a crime.  As Your Honor saw in our

10   sentencing memo, there's kind or two sides to the reason why we

11   made the plea offer we did.

12           **THE COURT:**  There's what?  I'm sorry.

13           **MS. GOLD:**  Two sides or two layers as to why we made

14   the offer we did.  The first is just the practical reality of

15   the statute itself in that should the jury find that the sexual

16   assault occurred but for whatever reason not the kidnapping

17   enhancement, then we would be left with a misdemeanor.

18   Thankfully, Congress has rectified that and the law is

19   different now, but that's a reality we needed to consider.

20           The other thing is the victim is doing well

21   right now.  I'm personally heartened to see how well she did

22   today in court.  She lives out of state.  She has a job.  She

23   is doing well.  You know, I have done this for a very long

24   time -- I know not as long as Your Honor -- but have gotten

25   victims through trial.  No doubt if she needed to, we can get

02:18

1   her there, but this is a law enforcement officer who has taken

2   responsibility, accepted his consequences, and is going to go

3   to prison for a period of time.

4           I don't know that there's any amount of time

5   that would make any of us necessarily feel comfortable.  In

6   terms of the victim herself, what I hope that she finds comfort

7   in and any other sexual assault victims, particularly at the

8   hands of government actors or law enforcement, is that even

9   when they believe their credibility might be questioned, they

10  report it.  We took it seriously.  We investigated it.  We

11  believe her.  The defendant has pleaded guilty.

12          We can't give her a time machine and undo it,

13  but with this sentence our goal was to vindicate our

14  constitutional rights, make sure the defendant was held

15  accountable.  Although it is a sentence that is way below the

16  guidelines sentence, it is still years in prison for a law

17  enforcement officer convicted of an offense involving sexual

18  assault, and he will never again have the opportunity to be in

19  that position of authority.  We do urge you to accept the

20  agreed sentence and sentence him accordingly.

21          **THE COURT:**  Mr. Myers.

22          **MR. MYERS:**  Your Honor, I would just reurge what I

23  urged in my written memorandum to the Court.  This is not an

24  abstract number.  This is a number that was arrived at after

25  extensive review of the law, of the facts of this case, of the

02:19

1   needs of the parties.  As the government has indicated, I

2   believe it is appropriate.  Mr. Vicknair does stand before you

3   having accepted responsibility for this.  I would urge you, for

4   all of the reasons that the government cited and those that I

5   cited in my written memorandum, to accept this plea offer as

6   being just under the circumstances.

7              **THE COURT:**  Thank you.  Unless there's anything else,

8   I'm ready to rule with respect to the 11(c)(1)(C) proposed plea

9   before the Court.

10             The Court has previously determined that

11  defendant's base offense level is 43.  The sentencing guideline

12  recommendation is life.  The statutory penalty is any term of

13  years or for life if the kidnapping is applicable to the

14  underlying crime.

15             Let's start with the standard for 11(c)(1)(C),

16  and I'm citing to the case of *U.S. v. Smith*, which is at

17  417 F.3d 483:

18             "Rule 11 of the Federal Rules of Criminal

19  Procedure provides that the district court may accept or reject

20  a plea agreement.  Rule 11 does not limit a district court's

21  discretion in rejecting a plea agreement.  A district court may

22  properly reject a plea agreement based on the court's belief

23  that the defendant would receive too light of a sentence.

24  Under the guidelines, a court is counseled to reject the plea

25  agreement if it determines that accepting the plea agreement

02:20

1    will undermine the statutory purposes of sentencing or the

2    sentencing guidelines."

3              I look to Sentencing Guideline § 6B1.2(c):  "In

4    the case of a plea agreement that includes a specific sentence

5    (Rule 11(c)(1)(C)), the court may accept the agreement if the

6    court is satisfied either that:  (1) the agreed sentence is

7    within the applicable guideline range; or (2)(A) the agreed

8    sentence is outside the applicable guideline range for

9    justifiable reasons; and (B) those reasons are set forth with

10   specificity in the statement of reasons form."

11             The government has concerns which it believes

12   warrants an 84-month sentence.  We all know that with good

13   time, assuming he behaved himself, the sentence would be less

14   than 84 months.  According to the government, based on the

15   statutory language of 18 U.S.C. § 242 on the date this offense

16   was committed, if the government was unable to prove beyond a

17   reasonable doubt that a kidnapping occurred, but only that

18   defendant violated the victim's right to bodily integrity,

19   defendant would only be convicted of a misdemeanor.  If the

20   jury found that a kidnapping had occurred, the maximum

21   statutory sentence could be up to life.

22             I have previously ruled on the objections.  I

23   noted with respect to what is a kidnapping, just so everybody

24   understands, the Fifth Circuit has held that in the context of

25   § 242, "kidnapping" is defined according to its generic

02:22

1   contemporary meaning.  Either asportation or confinement will

2   suffice as the *actus reus* of the crime.  That's *U.S. v. Guidry*,

3   456 F.3d 493 at 509 through 511, Fifth Circuit 2006.

4   In *Guidry*, the Fifth Circuit affirmed a § 242

5   conviction where the district court had defined "kidnapping"

6   for purposes of that statute as an act in which an individual

7   forcibly holds, detains, or carries away an alleged victim

8   against his will.  The conduct that constituted kidnapping was

9   locking the doors so that the victim could not leave, leaning

10  over toward her causing her to fear for her physical safety,

11  and confining her against her will.

12  The Court notes that the factual basis contains

13  all the elements necessary to prove a violation of the victim's

14  right to bodily integrity as well as kidnapping as defined by

15  law.  The government has previously represented to the Court

16  that the victim stands by those facts articulated in the

17  factual basis.

18  Now, both the government and the defense counsel

19  have also considered the defendant's medical condition prior to

20  entering into the plea agreement.  Among other things,

21  defendant has had three heart attacks, multiple heart

22  procedures, a stroke, he suffers from hypertension.  Among

23  other things, he has deep vein thrombosis, he uses a BiPAP

24  machine, and he takes numerous medications.

25  The government and defendant have also asked

02:23

1    this Court to consider the victim's concerns and the reasons

2    why she hopes to move forward without a trial in this case.

3                    Countervailing those considerations, the Court

4    notes that defendant's conduct was egregious and aggravated

5    considering defendant's overall conduct.  How could a then

6    54-year-old police officer, in uniform, exploit a young child

7    who at the time of their initial contact was 14 years old and

8    who had just been victimized as a result of a sexual assault,

9    as stated in the factual basis submitted by both sides.  The

10   defendant and victim met when this young girl was being

11   transported by defendant to a hospital to undergo a forensic

12   exam following a sexual assault.

13                    In defendant's capacity as a police officer, he

14   engaged in conduct designed to gain the victim's trust

15   including continuing to communicate with the victim in person,

16   by telephone, and social media.  He received sexually explicit

17   photographs of the victim.  At some point he touched her

18   breasts under her shirt as well her buttocks.  He had the

19   victim enter his police car, lock the doors, confine the victim

20   against her will -- all that in the factual basis -- and

21   touched her genitals under her clothing.

22                    When interviewed by NOPD detectives, he lied and

23   denied any sexual contact with the victim.  I guess he was

24   thinking:  Who is going to believe a 14- or 15-year-old over

25   me, a New Orleans police officer?  He did admit that he told

02:25    1    the victim that she had a nice ass and a nice body.

2                Defendant exploited this child.  The power

3    dynamic between the victim and the defendant was certainly

4    known to the defendant.  He saw how vulnerable she was.  In

5    essence, she was sexual assaulted a second time by the

6    defendant.

7                Defendant violated the law and his oath to

8    protect and to serve.  He served himself, not this young,

9    trusting child.  She was looking for safe passage after being

10   traumatized, and he had an evil motive.

11               The recommended sentence is 84 months, and the

12   government states that such sentence will serve its interest.

13   I don't believe that to be the case.  As stated, the statutory

14   maximum if convicted of the civil rights violation and the

15   kidnapping enhancement is up to life.  The sentencing guideline

16   is life.  Notably, there is no sexual offender registration

17   required as a result of a conviction on this offense.

18               The Court understands defendant's medical

19   issues, but his mental health issues also need to be addressed

20   and are of great concern to the Court.  The Bureau of Prisons

21   can address his medical and mental health needs at a Bureau of

22   Prisons medical facility.

23               Balancing both sides of the coin, the

24   11(c)(1)(C) plea agreement is rejected.  84 months does not

25   adequately reflect the seriousness of his actual offense

02:26

1    behavior.   An 84-month sentence would be too light of a

2    sentence.   It would undermine the statutory purposes of

3    sentencing or the sentencing guidelines.   The agreed upon

4    sentence is outside of the applicable guideline range for

5    nonjustifiable reasons.   An 84-month sentence would not be

6    analogous to the cases cited by counsel considering the

7    horrendous facts presented in this case.

8              We move on to 11(c)(5) of the Federal Rules of

9    Criminal Procedure.   It says if a court rejects a plea

10   agreement containing provisions of the type specified in

11   Rule 11(c)(1)(C), as applicable here, the court must do the

12   following on the record and in open court or for good cause

13   in camera.

14             I'm informing the parties that the Court rejects

15   the plea agreement.   I'm advising the defendant personally that

16   the Court is not required to follow the plea agreement, and I'm

17   giving you an opportunity to withdraw your plea.   I'm advising

18   you personally that if the plea is not withdrawn, I will

19   dispose of the case less favorably toward the defendant than

20   the plea agreement contemplated.   Similar language is found in

21   Guideline 6B1.3 of the United States Sentencing Guidelines.

22             That's where we are right now.   My question to

23   you, sir, is:   Do you wish to proceed with sentencing or would

24   you like to withdraw your plea?

25             **MR. MYERS:**   Your Honor, I think I'm going to need

02:28  1    some time to discuss that with Mr. Vicknair.

2              THE COURT:  Understood.

3                   Do we have a trial date?

4              THE DEPUTY CLERK:  No.  It was canceled upon entering

5    of a plea of guilty.

6              THE COURT:  We are going to do this in open court,

7    obviously.  Monday, March 13, at 9:00, we will be back here to

8    see how you want to proceed.

9                   Do you understand what I just indicated to you

10   regarding the consequences of the Court rejecting the

11   11(c)(1)(C) plea, Mr. Vicknair?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  We will be back here then, and you can

14   advise me how you wish to proceed.

15                  Of course, if the victim and her mother would

16   like to be here on Monday, we certainly welcome you to be

17   present as well.

18                  (Off the record.)

19             THE COURT:  We have a Civil District Court judge

20   using my room on Monday.  We will do Tuesday, March 14, at

21   8:30.

22                  Now, the defendant is still on bond.  I'm going

23   to amend the conditions of his bond now that I'm much more

24   familiar with the case and the arguments.  He is going to be

25   placed on home incarceration.

02:29

1          I know you have significant medical issues that

2     need to be addressed.  You're restricted to 24-hour-a-day

3     lockdown at your residence except for medical necessities,

4     court appearances, or other activities specifically approved by

5     the Court.  Substance abuse treatment, mental health treatment,

6     court appearances, and court-ordered obligations, all

7     activities must be approved in advance by U.S. Probation, with

8     the exception of medical emergencies.

9               Is there anything else that we need to do today?

10          **MR. MYERS:**  No, Your Honor.

11          **THE COURT:**  Is there any objection to him remaining

12     on bond with that modified bond?

13          **MS. GOLD:**  No, Your Honor.

14          (Off the record.)

15          **THE COURT:**  There's no problem getting approval to be

16     here.  I'm stating that.  You certainly can leave the house to

17     do that.

18               Anything further?  Thank you.

19                              *  *  *

20

21

22

23

24

25

1                              <u>**CERTIFICATE**</u>

2              I, Toni Doyle Tusa, CCR, FCRR, Official Court

3    Reporter for the United States District Court, Eastern District

4    of Louisiana, certify that the foregoing is a true and correct

5    transcript, to the best of my ability and understanding, from

6    the record of proceedings in the above-entitled matter.

7

8

9                              _/s/ Toni Doyle Tusa_
                              Toni Doyle Tusa, CCR, FCRR
10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25