UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**RESPONSE AND OPPOSITION OF DEFENDANTS SHAUN FERGUSON AND THE CITY OF NEW ORLEANS TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT RODNEY VICKNAIR**

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants"), through undersigned counsel, file this response and opposition to Plaintiff's Motion for Partial Summary Judgment Against Defendant Rodney Vicknair (Doc. 87) (the "Motion").

## INTRODUCTION

Ostensibly, Plaintiff seeks no relief against the City Defendants in the Motion.[1] However, if this Court's decision is adverse to co-defendant Rodney Vicknair ("Mr. Vicknair"), Plaintiff will likely argue that the City Defendants are precluded from litigating whether a constitutional violation occurred, which is a fundamental element of at least two claims brought against the City Defendants.[2] The Defendants oppose the Motion because the alleged constitutional violation in

---

[1] Doc. 87-1, p.1 (Plaintiff . . . moves for partial summary judgment against defendant Rodney Vicknair . . . [b]ecause Defendant Vicknair pleaded guilty to 18 U.S.C. § 242 (Deprivation of rights under color of law) for his sexual abuse of G.H." See *USA v. Rodney Vicknair*, 22-212, Doc. 24 (E.D. La., 11/16/2022).

[2] Doc. 79, p. 26 (First Cause of Action – Civil Rights Violations Against all Defendants; and Second Cause of Action – Municipal Liability for Police Misconduct (*Monell* Claim). See, *e.g*., *Mitchell v. City of New Orleans*, 2016 WL 3127168, \*9 (E.D. La. 6/3/2016) (municipality was precluded by collateral estoppel from disputing the "constitutional violation" in a *Monell* claim against it, where police officer was convicted of causing the death of a victim while depriving him of his civil rights by use of excess force in violation of 18 U.S.C. § 242).

1

this case does not match what was asserted by the United States Department of Justice in Mr. Vicknair's prior criminal case. Summary judgment is therefore *not* appropriate.

As an initial matter, the City Defendants deny that Mr. Vicknair violated G.H.'s constitutional rights when he committed any of the acts described in the Factual Basis to his guilty plea. The Factual Basis contains no facts to support a finding that Mr. Vicknair acted under color of law when he met with G.H on the night when he is said to have sexually assaulted G.H.[3] There are no facts alleged that Mr. Vicknair was on-duty, in uniform, driving an NOPD vehicle, carrying a weapon or handcuffs, or otherwise acting in furtherance of NOPD business.[4] Therefore, although some of Mr. Vicknair's conduct may have been wrongful, he did not violate any constitutional rights. And he certainly did not act on behalf of NOPD while performing any of the inappropriate actions alleged against him. Accordingly, the City Defendants are not liable for any civil rights violation under 42 U.S.C. § 1983.

Any attempt by Plaintiff to offensively use collateral estoppel in this case should be rejected for several reasons. First, the factual issues alleged by Plaintiff in the instant lawsuit are not the same as those cited in the Factual Basis. Plaintiff's Amended Complaint states that Mr. Vicknair raped G.H. multiple times while on-duty, in his police vehicle, in uniform and armed.[5] None of the foregoing facts are contained in the Factual Basis. Second, Mr. Vicknair's criminal case was not fully and vigorously litigated. He pleaded guilty two months after the Bill of

---

[3] See Doc. 87-3 Factual Basis for Vicknair's guilty plea in *USA v. Rodney Vicknair*, 22-212, Doc. 23 (E.D. La., 11/16/2022) (the "Factual Basis").

[4] See Exhibit 1, Video recording of G.H. on September 25, 2020, by Forensic Interviewer at Children's Hospital Child Advocacy Center ("G.H. Forensic Interview"), time stamp 9:45 – 12:40 (G.H. describes the sexual assault), 29:30 – 30:10 and 39:15-39:40 (stating that Vicknair never touched her while inside of a NOPD police vehicle). See also Exhibit 2 (Vicknair Deposition), 28:23-33:5; Exhibit 3, Affidavit of Sgt. Lawrence Jones ("Jones Affidavit"), ¶¶ 8; and Exhibit 8, Affidavit of Kimera Dufeal ("Dufeal Affidavit"), ¶ 7-8. See also Doc. 87-3, p.1-2 ("On the night of September 23, 2020, Vicknair . . . told her to come outside and get into ***his vehicle***") (emphasis added).

[5] Doc. 87-1, p. 1; Doc. 79, ¶¶ 5-8, 95, 97, 98, 174, 175 and 191.

Information was filed and took no action to litigate his criminal case. Third, Plaintiff's claims of the rape of G.H., which underpin her claim of a deprivation of rights and the state law claims, are much broader and not necessary to the criminal charges described in the Factual Basis. The Factual Basis uses the phrase "sexual act," which, under Louisiana law, is not sufficient to allege or support an allegation of rape. Finally, the special issue of Mr. Vicknair's serious and likely terminal health problems, including an undiagnosed brain tumor that surely existed at the time of his plea, likely impaired his judgment and ability to meaningfully participate in the defense of his criminal case.

For these reasons collateral estoppel is not appropriate, and Plaintiff's Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

From 2007 to September 25, 2020, Mr. Vicknair worked for the New Orleans Police Department ("NOPD") as a police officer.[6] On May 26, 2020, Mr. Vicknair and two other NOPD officers responded to a call at G.H.'s residence because G.H., a 14 year-old girl, had been sexually assaulted by a 17 year-old male overnight visitor to G.H.'s residence.[7] As part of that call, Mr. Vicknair and his partner, also an NOPD officer, transported G.H. and her mother to Children's Hospital for an interview and evaluation.[8]

On June 3, 2020, Mr. Vicknair again responded to G.H.'s residence. On this occasion, Plaintiff, G.H.'s mother, called NOPD and reported that G.H. had a "knife to [her own] throat,"

---

[6] Exhibit 2 (Vicknair Deposition), pp. 64:19-22, 65:6-9.
[7] Exhibit 5, (NOPD Incident Report E-32154-20, May 26, 2020), CNO 380; Exhibit 6, NOPD trip sheets of NOPD officers of First District, 2nd Platoon ("Trip Sheets"), CNO 735-738; Exhibit 7, Orleans Parish Communication District records relating to G.H.'s address. ("OPCD records"), CNO 3411 ("Problem-15yr old female sts 17yr old male tried to rape her, and also having problems w/ her mother . . .").
[8] Exhibit 5, CNO 379; Exhibit 6 (Trip Sheet), CNO 735.

was "irate [and] cursing and yelling," was "having [a] mental breakdown," and was "reportedly violent."[9] There is no allegation that Mr. Vicknair did anything improper on this occasion.

Over the next four months, Mr. Vicknair developed an inappropriate relationship with G.H. This relationship entailed social media and telephone communications of a sexual nature, G.H.'s transmittal of sexual pictures to Mr. Vicknair's telephone, and on and off-duty visits to G.H.'s residence at various times, while G.H.'s mother was present or nearby.[10] According to both G.H. and Mr. Vicknair, no sexual activity occurred during this period.[11]

On September 21, 2020, G.H.'s counselor relayed concerns of G.H.'s mother regarding Mr. Vicknair's relationship with G.H. to NOPD.[12] G.H.'s mother was primarily concerned about three incidents: (1) Mr. Vicknair shouted "nice ass" at G.H. while she was jogging; (2) Mr. Vicknair showed up at G.H.'s residence unannounced at night, entered G.H.'s bedroom with the mother, and stared at G.H.'s breast when G.H. was awakened; and (3) Mr. Vicknair took a picture with G.H in which he was hugging G.H. from behind.[13]

On Wednesday, September 23, 2020, at around 11:00 a.m., G.H.'s counselor reported to NOPD that G.H. had had "sex with a 45 year-old man" named "Jim."[14] However, the counselor later requested to cancel the report because G.H. had "threatened self-harm if anything happened to the suspect." The counselor did not "want [G.H.] to know officers were contacted."[15]

---

[9] Exhibit OPCD records, CNO 3392-3393.
[10] Exhibit 1 (G.H. Forensic Interview), time stamp 14:25 – 15:15, 15:35 – 18:15, 18:44 – 20:29, 27:05 – 27:55, 28:10- 29:15.
[11] Exhibit 1 (G.H. Forensic Interview), time stamp 12:50-13:10, 14:05-18:15, 29:30-30:10.
[12] Exhibit 3 (Jones Affidavit), ¶ 5.
[13] Exhibit 3 (Jones Affidavit), ¶ 6.
[14] Exhibit 7 (OPCD records), CNO 3398-3399.
[15] *Id*.

4

On the same date, soon after 11:00 p.m. on September 23, 2020, according to the Factual Basis, Mr. Vicknair "engaged in a sexual act with [G.H.] without her consent."[16] At the time Mr.Vicknair encountered G.H. on the night of September 23, 2020, Vicknair was off-duty, out of uniform, and had driven his personal vehicle to G.H's residence.[17] G.H. reported Mr.Vicknair's actions to her counselor on Friday September 25, 2020. In a forensic interview at Children's Hospital on that date, G.H. reported that Mr. Vicknair put his finger inside her vagina twice while she was in Mr. Vicknair's truck.[18]

After NOPD received the report of Mr. Vicknair's alleged sexual assault, on Friday, September 25, 2020, Vicknair was interviewed by NOPD, arrested, and suspended from employment.[19] Mr. Vicknair resigned from NOPD effective January 13, 2021.[20]

On February 24, 2021, Plaintiff filed her Original Complaint seeking damages.[21] On February 16, 2023, Plaintiff filed a First Amended Complaint asserting claims of civil rights violations against all defendants, a claim of "Municipal Liability for Police Misconduct (*Monell* Claim)" against the City Defendants, and various state law claims against all defendants.[22]

---

[16] Doc. 87-3, p. 2.
[17] Exhibit 6 (NOPD trip sheets - Rodney Vicknair dated September 23, 2020), CNO 3305 (reporting his shift completion as 11:00 a.m.); Exhibit 1 (Forensic Interview of G.H.), time stamp 9:45 - 10:15; Exhibit 2 (Vicknair Deposition), 28:23-29:2.
[18] Exhibit 3 (Jones Affidavit), ¶ 8.
[19] Ex. 3, ¶ 8 (Jones Affidavit); Exhibit 2 (Vicknair Deposition), pp. 66:1-68:5.
[20] Exhibit 2, p. 65:6-9.
[21] Doc. 1.
[22] Doc. 79, p. 26 (First Cause of Action – Civil Rights Violations); p. 26 (Second Cause of Action – Municipal Liability for Police Misconduct (*Monell* Claim)); p. 29 (Third Cause of Action – State Torts of Assault and Battery); p. 30 (Fourth Cause of Action – State Torts of Negligence and Negligent Infliction of Emotional Distress); p. 32 (Fifth Cause of Action – State Tort of Intentional Infliction of Emotional Distress); p. 32 (Sixth Cause of action – State Tort of False Imprisonment); p. 33 (Seventh Cause of Action – Negligent Hiring and Failure to Train); p. 35 (Eighth Cause of Action – Vicarious Liability)p. 36 (Ninth Cause of Action – Indemnity); p. 37 (Tenth Cause of Action – Punitive Damages Pursuant to La. Civ. Code Art. 2315.7; p. 37 (Eleventh Cause of Action – Punitive Damages Pursuant to La. Civ.. Code Art. 2315.3; p. 38 (Twelfth Cause of Action – Liquidated and Punitive Damages Pursuant to 18 U.S.C. § 2255 (Civil Remedy for Personal Injuries)).

Meanwhile, on September 22, 2022, Mr. Vicknair was charged in federal court with violating 18 U.C. § 242, a criminal statute.[23] On November 16, 2022, Mr. Vicknair entered a plea of guilty and, on March 14, 2023, he was sentenced.[24]

On May 19, 2023, Plaintiff filed the instant Motion.[25]

## LAW AND ARGUMENT

Offensive use of collateral estoppel, also known as "issue preclusion," occurs when a plaintiff seeks to foreclose a defendant "from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party."[26] The use of offensive collateral estoppel requires that a plaintiff prove four elements: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine."[27]

A prior criminal conviction may support a claim of collateral estoppel, but only so far as the issues were essential to the verdict.[28] However, when a conviction is not based on "special findings" and "does not indicate which of means charged in the indictment were found to have been used in effectuating the [crime]," a court must undertake to determine what factual findings were necessary to support the criminal conviction.[29] In addition, Courts recognize that when a defendant had "little incentive to defend vigorously" and nevertheless pleaded guilty, a special

---

[23] *USA v. Rodney Vicknair*, 22-212 (E.D. La. 9/22/2022) Doc. 1.
[24] *USA v. Rodney Vicknair*, 22-212 (E.D. La. 11/16/2022, 3/14/2023) Docs. 24, 48.
[25] Doc. 87-1, p. 7.
[26] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 356 n.4 (1979).
[27] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998).
[28] *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951) (criminal jury verdict).
[29] *Id.*, 340 U.S. at 571 ("It is the task of the trial judge to make clear to the jury the issues that were determined against the defendant in the prior suit, and to limit to those issues the effect of that judgment as evidence in the present action").

circumstance exists to make the use of offensive collateral estoppel is appropriate.[30] Courts have "broad discretion" to determine when offensive collateral applies.[31]

As is shown below, Plaintiff cannot satisfy any of the necessary elements set forth by Supreme Court precedent to warrant application of the doctrine of collateral estoppel in this case.

1. **The factual and legal differences between the prior criminal case and this § 1983 civil complaint bar the use of Mr. Vicknair's guilty plea or the Factual Basis**.

Factually and legally, Plaintiff's civil action is different from Mr. Vicknair's criminal case. In the civil case, Plaintiff alleges that Mr. Vicknair deprived G.H. of her constitutional rights by raping her multiple times while Mr. Vicknair was on-duty as a police officer, in uniform, armed, and in his police vehicle. Among other things, Plaintiff alleges:

> On the first night that Officer Vicknair met G.H., he began grooming her.[32]
>
> Over the next few months, he repeatedly returned to her house in his uniform and NOPD vehicle.[33]
>
> And during those visits, in uniform and in an NOPD vehicle, Officer Vicknair repeatedly sexually assaulted the minor child G.H. One of those times, he raped her.[34]
>
> Then, days after NOPD was warned of Officer Vicknair's inappropriate behavior, Officer Vicknair raped G.H. a second time.[35]
>
> On two occasions, Officer Vicknair attacked and raped G.H. By inserting his fingers into her vagina while in his police vehicle. On one occasion, Officer Vicknair locked the doors of the police vehicle. After the attack, Officer Vicknair took G.H's underwear, and told her she could not have them back because he was keeping them. After letting G.H. out of the police vehicle, Officer Vicknair followed G.H. back into her home where he asked Plaintiff to take

---

[30] *Parklane Hosiery*, 439 U.S. at 330-31.
[31] *Id.* at 331.
[32] Doc. 79, ¶ 5.
[33] *Id.*, ¶ 6.
[34] *Id.*, ¶ 7.
[35] *Id.*, ¶ 8.

7

>a picture of him and G.H together. While the picture was taken, Officer Vicknair touched G.H's shoulders and body.[36]
>
>Days before the second rape occurred, the Office of the Independent Police Monitor (OIPM) was alerted that Officer Vicknair's conduct toward G.H. was inappropriate. OIPM notified NOPD and NOPD investigated.[37]
>
>During and after this investigation, Officer Vicknair remained on the streets and had the opportunity to rape G.H. a second time.[38]
>
>The sexual abuse of G.H. by Officer Vicknair occurred while Vicknair was in uniform, in a NOPD issued vehicle, on NOPD duty, and facilitated by his possession of a NOPD-issued deadly weapon.[39]

However, Mr. Vicknair's criminal Bill of Information shows that he pleaded guilty to only one act, which occurred on September 23, 2023, and is different from the misconduct alleged in Plaintiff's First Amended Complaint.[40] The Bill of Information alleged only that Mr. Vicknair "engaged in a sexual act with [G.H.] without her consent, when he intentionally touched her genitals under her clothing."[41]

In addition, the act described in the Bill of Information and the Factual Basis does not constitute rape, which is what Plaintiff alleged in this lawsuit. Under Louisiana law, rape requires proof of "sexual penetration, when the rape involves vaginal or anal intercourse, whether the penetration is accomplished using the genitals of the offender or victim or using any instrumentality and however slight[.]"[42] There are no allegations of vaginal or anal intercourse with G.H. or penetration by use of an instrumentality in the Bill of Information or Factual Basis.

---

[36] *Id.*, ¶ 95
[37] *Id.*, ¶ 97.
[38] *Id.*, ¶ 98.
[39] *Id.*, ¶191.
[40] Exhibit 10 (Bill of Information filed in *USA v. Rodney Vicknair*, 22-212 (E.D. La. 9/22/2022); Doc. 79 (First Amended Complaint).
[41] *Id.*
[42] La. Rev. Stat. Ann. §§ 14:41(B).

The facts alleged by Plaintiff with respect to color of law also far exceed any set of facts considered as part of the criminal case. Moreover, the Factual Basis only references "color of law" in very conclusory manner, stating that "Vicknair was acting under color of law and his conduct did not have a legitimate law enforcement purpose."[43] The specific facts provided in the Factual Basis regarding Mr. Vicknair's actions as a police officer are limited to:

> [W]hile acting in his capacity as a police officer to facilitate his conduct to gain [G.H.'s] trust, VICKNAIR and [G.H] spoke on the phone and exchanged messages on Snapchat. VICKNAIR, while in uniform, often stopped by unannounced at [G.H.'s] residence. Over time VICKNAIR made comments to [G.H.] that were sexual in nature. VICKNAIR requested and received sexually explicit photographs of [G.H.] and kept them on his cellphone. On one occasion he touched [G.H.'s] breast under her shirt, and on another occasion he touched [G.H.'s] buttocks over her clothes.[44]

The Factual Basis certainly does not, as Plaintiff alleges, state that Mr. Vicknair committed sexual acts upon G.H. while he was on-duty, in uniform, armed, or in his police vehicle. For these reasons, it is evident that the issues in the civil case and the criminal case are different and collateral estoppel should *not* be applied.[45] In order to invoke offensive collateral estoppel, Plaintiff must be able to show that the criminal case and present civil case consider an identical issue.[46] Plaintiff is unable to demonstrate this. Mr. Vicknair's guilty plea should not have any preclusive effect as to

---

[43] Doc. 87-1, p.2. The issue of whether an officer was acting under color of law is fact dependent and requires a court to determine "(1) whether the officer 'misuse[d] or abuse[d] his official power,' and (2) if 'there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties.'" *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464–65 (5th Cir.2010) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002)).

[44] Doc. 87-3, p.1. The conclusory allegations in the Factual Basis are insufficient to support Section 1983 action. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint must state "more than labels and conclusions": "formulaic recitation of the elements of a cause of action will not do.").

[45] Compare *Conners v. Pohlmann*, 2021 WL 4862069, *3 (E.D. La., Oct. 1, 2021) (issues were identical where civil § 1983 case alleged that police officers deprived victim of constitutional rights "by being deliberately indifferent," and criminal § 242 case alleged deprivation of rights because officers met the victim's "serious medical needs with deliberate indifference").

[46] *Winters*, 149 F.3d at 391.

9

any issue in the instant civil case. Summary judgment should therefore not be granted with respect to Plaintiff's Section 1983 or state law claims.

2. **Mr. Vicknair did not fully or vigorously litigate his criminal case before pleading guilty.**

The doctrine of collateral estoppel requires that Plaintiff show that Mr. Vicknair fully and vigorously litigated his prior criminal case.[47] Factors that courts look to in determining whether a criminal case is fully and vigorously litigated include the number of years the criminal case is pending, whether trial has been continued, and the number of discovery-related pleading filed.[48] For example, in *Conners v. Pohlman*, the Court determined that issued in a previous criminal case was fully and vigorously litigated where "[t]he criminal action took years[,] the trial was continued six times before guilty pleas were entered, [and] the action entailed over one hundred discovery-related pleadings and orders."[49]

Mr. Vicknair did not pursue a trial in his criminal case.[50] He did not file any discovery or evidentiary motions.[51] Instead, Mr. Vicknair pleaded guilty less than two months from the date the Bill of Information was filed, and after waiving indictment.[52] In addition, Mr. Vicknair pleaded guilty despite a continued denial of "ever sexually touching [G.H.]" and despite the evidence indicating that Mr. Vicknair was acting on wholly personal matters when he met with G.H. on the night of September 23, 2020.[53] Given the complete absence of any effort to litigate or investigate the case, it cannot be said that Mr. Vicknair fully and vigorously litigated his criminal case. Rather,

---

[47] *Id.*
[48] See *Conners v. Pohlmann*, 2021 WL 4862069, *4.
[49] *Id.*
[50] See *Mitchell v. City of New Orleans*, 2016 WL 3127168, *4 (where police officer has been "convicted by a jury after a fully trial, there can be no dispute that the issue presently under consideration was fully and vigorously litigated in the prior action").
[51] See Exhibit 9, p. 2 (criminal docket).
[52] Doc 9, p. 2-3; *USA v. Rodney Vicknair*, 22-212 (E.D. La. 10/7/2022) Doc. 10.
[53] Doc. 87-3, p. 2. See also Exhibit 2, pp. 110:7 – 115:25.

10

as Mr. Vicknair stated at his deposition, he signed the Factual Basis and pleaded guilty "to hurry up and get all this over with."[54]

### 3. The issue in Plaintiff's civil case - whether Mr. Vicknair raped G.H. – was not necessary to the judgment in Vicknair's criminal case.

As is noted above, the issue in Plaintiff's civil action is whether Mr. Vicknair deprived G.H. of her constitutional rights by raping G.H. multiple times while acting under color of law by being on-duty, in uniform, in his police vehicle, and armed. There is no doubt that the issues in the civil case are far broader than those in the prior criminal case. The criminal case only addressed one night and one act. That act does not establish that a rape occurred. Because Plaintiff cannot show that the issue in her civil case is "necessary to support the judgment in the prior [criminal] case," collateral estoppel is not proper.[55] Plaintiff is therefore not entitled to summary judgment on either the Section 1983 or her state law claims.

### 4. Special circumstances exist due to Mr. Vicknair's major and likely terminal health problems that make it unfair to apply collateral estoppel.

The Supreme Court recognizes that collateral estoppel would be unfair to apply in a case where a defendant had "little incentive to defend vigorously."[56] In the previous criminal case, when Vicknair pleaded guilty, he had numerous health problems, including three previous heart attacks, multiple heart procedures, a stroke, hypertension, deep vein thrombosis, and an undiagnosed, likely terminal, brain tumor.[57] In addition, Mr. Vicknair had been terminated from his employment

---

[54] Exhibit 2, p116:1-15.
[55] *Winters*, 149 F.3d at 391
[56] *Parklane Hosiery*, 43 U.S. at 330.
[57] Doc. 87-4, 18:18-24 ("Now, both the government and the defense counsel have also considered the defendant's medical condition prior to entering into the plea agreement. Among other things, defendant has had three heart attacks, multiple heart procedures, a stroke, he suffers from hypertension. Among other things, he has deep vein thrombosis, he uses a BiPAP machine, and he takes numerous medication."); Exhibit 4, p. 3 (June 6, 2023, letter from Koga Neurosurgery regarding Mr. Vicknair's brain tumor – "This patient has a malignant brain tumor in the right hemisphere causing altered mental status, cognitive

with NOPD and had limited healthcare options. These circumstances strongly suggest that Mr. Vicknair had little incentive to fully and vigorously litigate his criminal case. Thus, it would be unfair for any ruling in this civil case to be issued based on Mr. Vicknair's guilty plea. The parties in this case, including the City Defendants, are entitled to fully and vigorously litigate all contested issues in this case, including the issue of a constitutional violation.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion for Partial Summary Judgment Against Defendant Rodney Vicknair.

Respectfully submitted,

/s/ *James M. Roquemore*
JAMES M. ROQUEMORE (LSB #40035)
Deputy City Attorney
RENEE E. GOUDEAU (LSB #33157)
Deputy City Attorney
DONESIA D. TURNER (LSB #23338)
City Attorney
1300 Perdido Street
City Hall – Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Fax: (504) 658-9868
james.roquemore@nola.gov
regoudeau@nola.gov
cmstraymond@nola.gov
donesia.turner@nola.gov

*Attorneys for Defendants, City of New Orleans and Shaun Ferguson, Superintendent of the New Orleans Police Department*

---

impairment and hemiplegia. . . . He has had worsening symptoms since January 2023 and has not received adjuvant treatments at this time."); Exhibit 2, p. 5:1-24.