UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYNE UPTON, INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER, G.H. | CIVIL ACTION<br><br>No. 21-407 |
| VERSUS | |
| RODNEY VICKNAIR, ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment Against Defendant Rodney Vicknair* **(Rec. Doc. 87)** filed by Plaintiff Rayne Upton. Defendants Shaun Ferguson and the City of New Orleans (the "City Defendants") oppose the motion (Rec. Doc. 97), as does Defendant Rodney Vicknair (Rec. Doc. 99); and Plaintiff replied; (Rec. Doc. 77). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART** as explained herein.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from the alleged sexual assault and rape of Plaintiff's minor child, G.H.,[1] by Defendant Rodney Vicknair, who was then an officer with the New Orleans Police Department ("NOPD"). In May 2020, Vicknair responded to a call and escorted then-14-year-old G.H., who was a victim of sexual assault, to the hospital to

---

[1] After the instant motion was filed, G.H. reached the age of majority, and Plaintiff Rayne Upton moved to substitute G.H. as plaintiff. (Rec. Doc. 101). The Court granted the motion to substitute (Rec. Doc. 105). To maintain consistency with the briefing, the Court refers to Ms. Upton as the Plaintiff in this case, but the findings and conclusions in this Order also apply to G.H.'s claims as substituted plaintiff.

1

undergo a forensic exam (i.e. a rape kit). Vicknair gave G.H. his cell phone number and offered to be her friend and mentor. At the time, Vicknair was 53-years-old.

During the four months thereafter, all while acting in his capacity as a police officer, Vicknair spoke on the phone and exchanged Snapchat messages with G.H. Vicknair, while in uniform, would also visit G.H.'s residence unannounced, while on- and off-duty. Vicknair also made comments to G.H. that were sexual in nature, and he requested and received explicit photos of G.H. and kept them on his cell phone. On one occasion, he touched G.H.'s breast under her shirt, and on another occasion, he touched G.H's buttocks over her clothes.

On September 21, 2020, G.H.'s counselor relayed to NOPD G.H's mother's concerns regarding the relationship between Vicknair and G.H. Ms. Upton's concerns included three incidents: (1) Mr. Vicknair shouted "nice ass" at G.H. while she was jogging; (2) Mr. Vicknair showed up at G.H.'s residence unannounced at night, entered G.H.'s bedroom with the mother, and stared at G.H.'s breast when G.H. was awakened; and (3) Mr. Vicknair took a picture with G.H in which he was hugging G.H. from behind. On September 23, 2020 at around 11:00 a.m., G.H.'s counselor reported to NOPD that G.H. had had sex with a 45 year-old man named "Jim." However, the counselor later requested to cancel the report because G.H. had threatened self-harm if anything happened to the suspect.

Later that day, on September 23, 2020 at around 11:00 p.m., Vicknair went to G.H.'s house and told G.H. to come outside and get into his vehicle. G.H. sat in the passenger's seat, and Vicknair locked the doors so she could not leave. Vicknair

leaned over G.H. and confined her against her will. Without G.H.'s consent, Vicknair digitally penetrated her vagina twice. During this incident, Vicknair was off-duty, out of uniform, and in his personal vehicle. His vehicle had an NOPD placard in the front window that allows officers to park in law enforcement officer parking.

On September 25, 2020, G.H. was interviewed at Children's Hopsital Child Advocacy Center by a trained forensic interviewer. During the forensic interview, G.H. described the September 23 sexual assault. Also on September 25, 2020, NOPD Lieutenant Lawrence Jones interviewed Vicknair. After the interview, Jones informed Vicknair that his employment was immediately suspended, and Vicknair was arrested. Vicknair resigned from NOPD effective January 13, 2021.

Plaintiff, G.H.'s mother, filed this action on February 24, 2021, bringing claims under 42 U.S.C. § 1983, 18 U.S.C. § 2255 as well as state law tort claims and vicarious liability claims. The City Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and 12(b)(1), and on June 25, 2021, this Court granted the motion in part and denied the motion in part. The Court dismissed with prejudice Plaintiff's § 1983 and § 2255 claims but retained supplemental jurisdiction over Plaintiff's state law claims. (Rec. Doc. 36).

On September 22, 2022, Vicknair was criminally charged in federal court with one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242. *United States v. Rodney Vicknair*, No. 22-212 (E.D. La. 9/22/2022). Vicknair entered a plea of guilty on November 16, 2022, agreeing that (1) he deprived G.H. of a right secured by the Constitution or law of the United States, namely her fundamental

right to bodily integrity; (2) he acted willfully; (3) he acted under the color of law; and (4) his conduct included kidnapping. (Plea Agreement, Rec. Doc. 87-6). On the same date, he signed a Factual Basis admitting as true the following facts:

> RODNEY VICKNAIR (VICKNAIR) was a police officer with the New Orleans Police Department (NOPD). In May 2020, VICKNAIR, while working in his capacity as an NOPD officer, escorted a l4-year-old girl (Vl), who was a victim of sexual assault, to the hospital to undergo a forensic exam, i.e. a rape kit. VICKNAIR gave Vl his cell phone number and offered to be her friend and mentor. At the time, VICKNAIR was 53-years old.
> During the four months thereafter, all while acting in his capacity as a police officer to facilitate his conduct to gain V1's trust, VICKNAIR and Vl spoke on the phone and exchanged messages on Snapchat. VICKNAIR, while in uniform, often stopped by unannounced at Vl's residence. Over time, VICKNAIR made comments to Vl that were sexual in nature. VICKNAIR requested and received sexually explicit photographs of V I and kept them on his cellphone. On one occasion he touched Vl's breast under her shirt, and on another occasion he touched Vl's buttocks over her clothes.
> On the night of September 23,2020, VICKNAIR arrived at Vl's house, which was located in the Eastern District of Louisiana. By that time, Vl had turned l5-years-old. He told her to come outside and get into his vehicle. V1 got into the passenger's seat while VICKNAIR remained in the driver's seat.
> Then, VICKNAIR locked the doors so that Vl could not leave. VICKNAIR leaned over toward Vl, causing her to fear for her physical safety, and confining her against her will, all of which constituted kidnapping. VICKNAIR then engaged in a sexual act with Vl without her consent, when he intentionally touched her genitals under her clothing. VICKNAIR was acting under color of law and his conduct did not have a legitimate law enforcement purpose. He knew his actions were wrong and against the law, but he engaged in such conduct anyway.

(Factual Basis, Rec. Doc. 87-3). The court sentenced him to imprisonment for a term of 168 months. (Sentencing Transcript, Rec. Doc. 87-5).

On January 5, 2023, Plaintiff filed a motion to reconsider the dismissal of Plaintiff's municipal liability claims with prejudice and instead revise the order to

4

dismiss those claims without prejudice. (Rec. Doc. 66). Plaintiff contended that a dismissal without prejudice would allow her to amend her complaint to add pattern and practice evidence based on data analysis from a previously unavailable report, including data on a pattern of sexual abuse by NOPD officers. (Rec. Doc 66-1, at 3-4). The Court granted Plaintiff's motion, allowing Plaintiff to file an Amended Complaint including a *Monell* claim of municipal liability against the City Defendants. (Rec. Doc. 79).

On May 19, 2023, Plaintiff filed the instant motion, arguing that, because Vicknair pled guilty to violating 18 U.S.C. § 242 for his sexual abuse of G.H., Vicknair's civil liability is established by the doctrine of collateral estoppel as to her state law claims of assault, battery, false imprisonment, and negligence, as well as her constitutional claim under Section 1983. (Rec. Doc. 87-1, at 1). In response, the City Defendants argue that Plaintiff cannot satisfy any of the elements warranting application of collateral estoppel. (Rec. Doc. 97). In his response, Vicknair adopts the City Defendants' response and adds that he has a malignant brain tumor and other health problems that existed at the time of his plea and impaired his judgment. (Rec. Doc. 99). In her reply, Plaintiff contends that Vicknair vigorously litigated the same issues in his criminal action, admitted the facts described in her motion, and should be estopped from changing his testimony now in an attempt to create a factual dispute on summary judgment. (Rec. Doc. 104).

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075

## **DISCUSSION**

Plaintiff argues that Vicknair is liable in this civil action for deprivation of G.H.'s rights under color of law and related state-law claims because he previously pled guilty to violating 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) for the same violations of G.H.'s bodily integrity and kidnapping. (Rec. Doc. 87-1). First, she argues that, because 18 U.S.C. § 242 and 42 U.S.C. § 1983 have the same elements, and Vicknair pled guilty to violating § 242, collateral estoppel requires partial summary judgment on her § 1983 claim. *Id.* at 7. Second, she argues that she is also entitled to judgment as a matter of law against Vicknair on her state law claims of assault, battery, false imprisonment, and negligence, because Vicknair's guilty plea was an admission of each of the elements of those claims. *Id.* at 7-10.

Under the equitable doctrine of collateral estopppel, also known as issue preclusion, a judgment in a prior suit precludes relitigation in a second suit upon a different cause of action of the issues "actually litigated and necessary to the outcome"

7

of the first action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 325, n.5 (1979). Issue preclusion helps prevent repetitive litigation of the same dispute, conserve judicial resources, maintain consistency, and avoid oppression or harassment of an adverse party. *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 228 (5th Cir. 2018) (internal citations and quotation marks omitted).

Offensive use of collateral estoppel involves "a plaintiff seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co.*, 439 U.S. at 329. Offensive collateral estoppel requires the plaintiff prove four elements:

(1) the issue at stake must be identical to the one involved in the prior action;

(2) the issue must have been actually litigated in the prior action;

(3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action; and

(4) no special circumstances would render preclusion inappropriate or unfair.

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n.12 (5th Cir. 1995) *abrogated on other grounds by Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016). To ensure fairness to both parties, trial courts have broad discretion in determining when the doctrine should be applied. *Parklane Hosiery Co.*, 439 U.S. at 331; *Nations v. Sun Oil Co. (Delaware)*, 705 F.2d 742, 745 (5th Cir. 1983). Plaintiffs may invoke the summary judgment mechanism when all genuine issues of material fact had been decided in the prior case. 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2735 (4th ed. Apr. 2023).

8

Collateral estoppel is applicable to criminal and civil cases. *See Wolfson v. Baker*, 623 F.2d 1074, 1077 (5th Cir. 1980) (quoting *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951)). "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action." *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983). To determine what issues were determined against the defendant in a prior criminal judgment, the trial judge must examine the record, pleadings, evidence submitted, jury instructions, and other court's opinions. *Emich Motors Corp.*, 340 U.S. at 569.

### I.   Plaintiff's claim under 42 U.S.C. § 1983

Plaintiff presents a simple argument for Vicknair's liability under 42 U.S.C. § 1983: Vicknair was previously adjudged to be guilty of a crime (violation of 18 U.S.C. § 242) that has the same elements that Plaintiff would have to prove to establish civil liability under Section 1983. (Rec. Doc. 87-1, at 6-7). Defendants point to the claims in Plaintiff's Amended Complaint, including that Vicknair raped and committed sexual acts upon G.H. while he was on-duty, armed, in uniform, or in his police vehicle. (Rec. Doc. 97, at 8-9). Defendants argue that, because the claims in the Amended Complaint differ from the crime that Vicknair pleaded guilty to, his guilty plea should not have any preclusive effect. *Id.* Defendants also argue that "Vicknair did not fully or vigorously litigate his criminal case before pleading guilty," because he continued to deny ever sexually touching G.H. even after signing the factual basis. *Id.* at 10.

9

Here, Plaintiff's motion turns on the determination of four legal questions: (1) are the issues underlying the § 242 charge and the § 1983 claim identical? (2) was the issue fully and vigorously litigated in the prior action? (3) was the issue necessary to the judgment in the § 242 action? and (4) are there any special circumstances would render preclusion inappropriate or unfair? If the answer is yes to the first three questions and no to the final question, then collateral estoppel applies.

The first element of collateral estoppel is easily established: § 1983 and § 242 are generally considered analogues. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 214 n.23 (1970) (explaining that the "linguistic differences" between § 1983 and § 242 "have not been thought to be substantive"); *Fundiller v. City of Cooper*, 777 F.2d 1436, 1439 (11th Cir. 1985) (describing § 242 as "the criminal counterpart to section 1983"); *United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975) (describing § 1983 as "the civil counterpart to § 242"). In order to prevail under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Similarly, to prove a violation of § 242, "the government must prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law." *United States v. Moore*, 708 F.3d 639, 645 (5th Cir. 2013). Further, the elements of deliberate indifference are identical in the civil and criminal contexts.[2] *Compare Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)

---

[2] Section 242 also requires proof of "willfulness," which is "independent of the 'deliberate indifference' standard ... require[d] for a violation of the due process right to medical care while in custody."

10

(civil), *with United States v. Hickman*, 766 F. App'x 240, 252 (6th Cir. 2019) (criminal).

Both the prior criminal charge and the instant civil claims stem from Vicknair's conduct toward G.H. In the prior criminal action, Vicknair was charged under 18 U.S.C § 242 and pled guilty to willfully depriving G.H. of her fundamental right to bodily integrity, acting under the color of law, and kidnapping. (Plea Agreement, Rec. Doc. 87-6, at 1). In the § 1983 claim at hand, Plaintiff alleges that Vicknair willfully deprived G.H. of her right to be free from sexual abuse and bodily intrusions by state actors and her right to be free from unlawful seizure of her person. (First Cause of Action, First Amended Complaint, Rec. Doc. 79, at 26). Thus, the present issue is identical to that litigated in the prior criminal action.

Defendants argue that Plaintiff frames her claims in the Amended Complaint in a way that is different from the act described in the Bill of Information and Factual Basis, alleging that Vicknair "attacked and raped G.H.," so Vicknair's guilty plea as to § 242 should not have any preclusive effect. (Rec. Doc. 97, at 7-10). Defendants also argue that the act described in the Bill of Information and Factual Basis "does not constitute rape, which is what Plaintiff alleged in this lawsuit," because Louisiana law's definition of rape requires "sexual penetration, when the rape involves vaginal or anal intercourse, whether the penetration is accomplished using the genitals of the

---

*United States v. Gonzales*, 436 F.3d 560, 569 n.5 (5th Cir. 2006), *abrogated on other grounds by United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc). "For a § 1983 claim the plaintiff need prove deliberate indifference, because that much is required to prove a violation of the due process right. However, for a § 242 claim, the prosecution must also prove that the defendant acted willfully." *Id.*

11

offender or victim or using any instrumentality and however slight." *Id.* (citing La. Rev. Stat. Ann. § 14:41(B)). Notwithstanding the undisputed fact that sexual penetration using an instrumentality occurred in this case, the Court need not relitigate the underlying facts to determine that Plaintiff has demonstrated the first condition to apply collateral estoppel. The issues under consideration in her § 1983 claim (whether Vicknair willfully deprived G.H. of her right to be free from bodily intrusions by state actors and unlawful seizure of her person) are the same as those at issue in Vicknair's criminal case (whether Vicknair willfully deprived G.H. of her right to bodily integrity and kidnapped G.H.). Whether or not Vicknair was in uniform or on- or off-duty also has no effect on this element for collateral estoppel. Vicknair may not relitigate the issue determined during his criminal proceeding— whether he violated G.H.'s rights—and that issue is identical to the issue now before the Court in Plaintiff's § 1983 claim.

Second, the issue was fully and vigorously litigated in the prior criminal action. The Government filed the Bill of Information in his criminal action on September 22, 2022, and Vicknair pled guilty on November 16, 2022. Defendants argue that, "given the complete absence of any effort to litigate or investigate the case, it cannot be said that Mr. Vicknair fully and vigorously litigated his criminal case. Rather, as Mr. Vicknair stated at his deposition, he signed the Factual Basis and pleaded guilty to 'hurry up and get all this over with.'" (Rec. Doc. 97, at 10-11). According to Plaintiff's reply, before the Bill of Information was filed, "the U.S. Department of Justice investigated the criminal allegations for two years, during which time Defendant

Vicknair, with the aid of his criminal defense attorney, engaged in negotiations for a shorter recommended sentence." (Rec. Doc. 104, at 4). Judge Africk also provided Vicknair the opportunity to withdraw his guilty plea at his first sentencing hearing on March 8, 2023 and proceed to trial. (Sentencing Transcript, Rec. Doc. 87-4). Vicknair returned to court on March 14, 2023 to maintain his guilty plea and accept his sentence of imprisonment for 168 months. (Sentencing Transcript, Rec. Doc. 87-5).

Other than Defendants' conclusory assertions in their opposition, they provide no evidence that Vicknair failed to fully and vigorously litigate his criminal case, in which he faced significant criminal penalties and was represented by a criminal defense attorney. Although only two months elapsed between when the Government filed charges against him and when Vicknair admitted his guilt, over three years had elapsed since the 2020 incidents underlying the guilty plea. Both the Government and Vicknair appeared in court at a live hearing on the guilty plea, and both were fully heard: the government offered the signed plea agreement into evidence, and Vicknair entered the guilty plea. *United States v. Rodney Vicknair*, No. 22-212, Rec. Doc. 23 (E.D. La. 11/16/2022). Vicknair gave up his right to appeal or contest his guilty plea, conviction, and sentence as part of his plea. (Plea Agreement, Rec. Doc. 87-6, at 3). "Collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea." *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974). Indeed, "it is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by

contending that he did not read or understand it." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820–21 (5th Cir. 2012). That Vicknair continued to deny he "ever sexually touch[ed] G.H." (Rec. Doc. 87-3, at 2) even after pleading guilty has no effect on the binding nature of his signed plea agreement and his verification of the facts included in the factual basis. Thus, the Court finds that Vicknair fully and vigorously litigated the issues presently under consideration during his criminal case.

Third, the issues were necessary to the prior action, because deprivation of a federal constitutional right is an essential element to both § 242 and § 1983. Because § 242 required the determination that Vicknair violated G.H.'s rights to be free from bodily intrusions and from kidnapping, the issues were necessary to support his criminal conviction.

Lastly, no special circumstances exist that would make it unfair to apply collateral estoppel. The Supreme Court has set out three special circumstances that would make issue preclusion unfair: (1) when the plaintiff easily could have joined the previous action but chose not to; (2) if the defendant had little incentive to defend vigorously; and (3) if the judgment upon which the plaintiff seeks to rely is itself inconsistent with a previous judgment in favor of the defendant. *Parklane Hosiery*, 439 U.S. at 330-31. None of those circumstances are applicable here. Defendants argue without authority that Vicknair's health condition is a special circumstance that could bar the application of collateral estoppel. (Rec. Doc. 97, at 11-12). Vicknair has had numerous health problems, including three heart attacks, multiple heart procedures, a stroke, hypertension, and a likely terminal brain tumor. *Id.* at 11.

Defendants argue that these problems "strongly suggest that Mr. Vicknair had little incentive to fully and vigorously litigate his criminal case." *Id.* at 12. Vicknair also argues that these conditions "existed at the time of his plea and impaired his judgment." (Rec. Doc. 99, at 2). However, other than their conclusory statements, Defendants provide no evidence that these conditions affected Vicknair's capacity to plead guilty or his state of mind in defending vigorously during his criminal action. Therefore, precluding Vicknair from relitigating whether he violated G.H.'s rights would be neither inappropriate nor unfair.

Accordingly, the Court finds the doctrine of collateral estoppel applies in this instance and Plaintiff may introduce the prior judgment to establish all matters of fact and law necessarily decided by the conviction. As a result, each of the elements for Plaintiff's § 1983 claim against Vicknair is conclusively established. Because there is no genuine issue of material fact as to whether Vicknair, while acting under color of state law, willfully violated G.H.'s fundamental right to bodily integrity, and his conduct included kidnapping, Plaintiff is entitled to summary judgment on her § 1983 claim against Vicknair.

## II. Plaintiff's state law claims

Plaintiff also moves for summary judgment against Vicknair on her state law claims of assault, battery, false imprisonment, and negligence based on the doctrine of collateral estoppel. (Rec. Doc. 87-1, at 7). Defendants do not provide argument in opposition to this application of offensive collateral estoppel. (Rec. Docs. 97, 99).

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). Plaintiff is not required to prove a hostile or harmful intent, and the defendant may be liable for battery "although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Id.* In his criminal prosecution, Vicknair admitted the following harmful or offensive contacts:

(1) Vicknair "touched [G.H.'s] breast under her shirt…" (Factual Basis, Rec. Doc. 87-3, at 1).

(2) Vicknair "touched [G.H.'s] buttocks over her clothes." *Id.*

(3) Vicknair "engaged in a sexual act with G.H. without her consent, when he intentionally touched her genitals under her clothing." *Id.* at 2.

As to the elements required to apply offensive collateral estoppel to Plaintiff's battery claim, Vicknair's admissions preclude him from relitigating Plaintiff's state law battery claim. First, the issue under consideration for a claim of battery (whether Vicknair committed a harmful or offensive contact with G.H.) was litigated in the prior criminal case when Vicknair admitted the above harmful or offensive contacts. Second, as the Court explained above, Vicknair fully and vigorously litigated the issues in his criminal case. Third, the issue of whether Vicknair committed a harmful or offensive contact with G.H. was necessary to support the judgment in his prior

16

criminal case. And finally, there are no special circumstances triggering the *Parklane* exceptions.

Under Louisiana law, assault is the imminent threat of battery. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (citing *Bulot v. Intracoastal Tubular Servs., Inc.*, 730 So. 2d 1012, 1018 (La. App. 4 Cir. 1999), *abrogated on other grounds by Bulot v. Intracoastal Tubular Servs., Inc.*, 888 So.2d 1017 (La. App. 4 Cir. 2004)). For the same reasons that offensive collateral estoppel applies to Plaintiff's battery claim, the Court finds that Vicknair may not relitigate the issue underlying Plaintiff's state law assault claim.

False imprisonment is the "unlawful and total restraint of the liberty of the person." *Rice*, 770 F.3d at 1136 (citing *Crossett v. Campbell*, 48 So. 141, 143 (La. 1908)). To prove a claim for false imprisonment, Plaintiff must prove that (1) G.H. was detained and (2) her detention was unlawful. *Id.* (citing *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 690 (La. 2006)). Malice is not a necessary element to the tort of false imprisonment. *Fontenot v. Lavergne*, 365 S. 2d 1168, 1170 (La. App. 3 Cir. 1978). In his criminal prosecution, Vicknair admitted the following facts:

(1) Vicknair "told [G.H.] to come outside and get into his vehicle" (Factual Basis, Rec. Doc. 87-3, at 1-2).

(2) After G.H. got into the passenger's seat, Vicknair remained in the driver's seat and "locked the doors so that [G.H.] could not leave. *Id.* at 2

(3) Vicknair "leaned over toward [G.H.], causing her to fear for her physical safety, and confining her against her will." *Id.*

These admissions justify applying collateral estoppel to the identical issues in Plaintiff's false imprisonment claim: Vicknair detained G.H., and her detention was unlawful. Vicknair fully and vigorously litigated this unlawful detention in his prior criminal proceeding, and this issue was essential to his conviction under § 242. Again, no special circumstances demonstrate that precluding Vicknair from relitigating this issue would be inappropriate or unfair.

Finally, as to Plaintiff's negligence claim against Vicknair, Plaintiff alleges that Vicknair's actions were the cause-in-fact of G.H.'s injury and emotional distress, Vicknair owed a duty of care to G.H. as a victim of child abuse and sexual assault according to the NOPD Manual guidelines, Vicknair breached that duty, and the risk of injuring G.H. was within the scope of that duty. (Rec. Doc. 87-1, at 9-10; Amended Complaint, Rec. Doc. 79, at 30-32). Under Louisiana's duty-risk analysis for negligence, a plaintiff must prove:

(1) the conduct in question was the cause-in-fact of the resulting harm;

(2) defendant owed a duty of care to plaintiff;

(3) the requisite duty was breached by the defendant;

(4) the risk of harm was within the scope of protection afforded by the duty breached.

*Stroik v. Ponseti*, 699 So. 2d 1072, 1077 (La. 1997).

To apply offensive collateral estoppel to Plaintiff's negligence claim against Vicknair, the issues under consideration as to Vicknair's negligence must be identical to those litigated in the prior action. This issue (what Vicknair's duty was, and

whether he breached it, and whether G.H.'s injuries were in the scope of protection afforded by the duty) is similar and closely related to the issue of whether he deprived G.H. of her right to bodily integrity and kidnapped her. However, the Court finds that Vicknair's negligence is not identical to the issues litigated previously in his criminal prosecution for violating § 242. It is also not clear that a finding that he breached his professional duty would have been necessary to support the judgment in the prior case. Finding two conditions for offensive collateral estoppel not met, Plaintiff is not entitled to summary judgment on the negligence claim against Vicknair on the basis of collateral estoppel.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Partial Summary Judgment* **(Rec. Doc. 87)** is **GRANTED** as to Plaintiff's § 1983 claim, battery claim, assault claim, and false imprisonment claim. The motion is **DENIED** as to Plaintiff's negligence claim.

New Orleans, Louisiana, this 31st day of August, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE