**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF DEFENDANTS SHAUN FERGUSON'S AND THE CITY OF NEW ORLEANS' MOTION FOR SUMMARY JUDGMENT

Defendants, Shaun Ferguson and the City of New Orleans (collectively, "Defendants"), through undersigned counsel, move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and, in support, respectfully show the following.[1]

## INTRODUCTION

On May 26, 2020, Plaintiff, a 14 year-old girl, became a victim of an attempted rape by a 17 year-old male who was visiting her home overnight. The crime was reported to the New Orleans Police Department ("NOPD") and Rodney Vicknair, then an officer of the NOPD, along with other law enforcement staff responded to the scene. Mr. Vicknair exchanged contact information with Plaintiff and Plaintiff's mother, and, according to Plaintiff, "began grooming her."[2] On September 23, 2020, Mr. Vicknair sexually assaulted Plaintiff.[3]

Mr. Vicknair's vile conduct cannot be excused or mitigated. The fact that Mr. Vicknair is now dead is no comfort to Plaintiff. However, Defendants do not bear responsibility for Vicknair's

---

[1] Rodney Vicknair, a former Defendant in this case, died on January 1, 2024, due to complications relating to a brain tumor. Doc. 114. See Doc. 97-5. On January 9, 2024, The Court granted Plaintiff's motion to dismiss all claims against Mr. Vicknair with prejudice. Doc. 119.
[2] Doc. 79 (First Amended Complaint), ¶ 5.
[3] Exhibit 1, Affidavit of Lieutenant Lawrence Jones, ¶ 8.

independent criminal conduct, which he perpetrated solely for his own personal reasons. Further, Defendants had no policy, custom, or practice that caused Mr. Vicknair to sexually assault Plaintiff.[4]

Plaintiff cannot demonstrate, by reference to any competent evidence, a pattern showing deliberate indifference to sexual abuse by NOPD officers. Plaintiff's citation to alleged previous complaints against NOPD officers fails for several reasons. Plaintiff's pattern "evidence" is based on inadmissible hearsay and lacks any context to demonstrate the significance of such alleged complaints. There are simply no grounds to find that Mr. Vicknair's sexual assault of Plaintiff was a "plainly obvious consequence" of NOPD's hiring, training or supervising him, so it cannot be said that a patter exists that may support *Monell* liability.[5]

For these reasons and as further discussed below, Plaintiff cannot demonstrate the existence of a genuine issue of material fact as to any of her claims. Summary judgment is therefore proper. Alternatively, if the Court dismisses all of Plaintiff's Federal law claims, Defendants seek dismissal of Plaintiff's remaining state law claims for lack of supplemental jurisdiction.

## FACTS AND PROCEDURAL BACKGROUND

From 2007 to September 25, 2020, Mr. Vicknair worked for the New Orleans Police Department ("NOPD") as a police officer.[6] Prior to being employed, Mr. Vicknair submitted an application and underwent a rigorous background check.[7] Nothing in his background check indicated that Mr. Vicknair had committed any act of sexual assault upon a child or woman, which would have automatically caused him to be rejected.[8] Mr. Vicknair had a previous charge of simple

---

[4] See Exhibit 2, Haney Deposition, pp. 30:18 – 31:8.
[5] See *Hardeman v. Kerr County*, 244 F. App'x 593, 596 (5th Cir. 2007).
[6] Exhibit 3, Excerpts of the Deposition of Rodney Vicknair (Vicknair Deposition), pp. 64:19-22, 65:6-9.
[7] Exhibit 4, Deposition transcript of Lieutenant Nicole Powell ("Powell Deposition"), pp. 9:15-23.
[8] *Id.*, 33:23 – 34:22.

battery on his record, which was expunged; NOPD considered this charge and approved Mr. Vicknair's hire.[9]

During his tenure at NOPD, Mr. Vicknair received annual training on child abuse and child abuse investigations, sexual assault and investigations, and community policing.[10] NOPD has comprehensive policies and regulations concerning response to and investigation of sexual crimes.[11] All NOPD officers receive annual training concerning these policies.[12] In addition, Mr. Vicknair undertook an additional 40 hour training regarding crisis intervention that resulted in his receiving a certification in crisis intervention.[13] In addition, Mr. Vicknair undertook an additional 40 hour training curriculum and additional supervisory evaluation that resulted in his becoming qualified to be designated as a field training officer.[14] Mr. Vicknair's discipline history did not include any allegations of sexual misconduct or that otherwise gave cause for concern that he might sexually assault a minor or a woman.[15]

On May 26, 2020, Mr. Vicknair and two other NOPD officers responded to a call at G.H.'s residence because G.H., a 14 year-old girl, had been sexually assaulted by a 17 year-old male overnight visitor to G.H.'s residence.[16] As part of that call, Mr. Vicknair and his partner, also an NOPD officer, transported G.H. and her mother to Children's Hospital for an interview and evaluation.[17]

---

[9] *Id.* 34:23 – 36:8.
[10] Exhibit 2, Excerpts of the Deposition of Captain Bruce Haney (Haney Deposition), p. 20:13 – 22:6.
[11] See Exhibit 8, Affidavit of Sergeant David Barnes, ¶ 1 and Exhibits 8a – 8i, attached thereto.
[12] Exhibit 2, (Haney Deposition), pp. 20:13 – 22:6.
[13] Exhibit 2, pp. 22:7 – 23:9.
[14] Exhibit 2, pp. 23:24 – 26:7.
[15] Exhibit 5, Deposition of Capt. Precious Banks ("Banks Deposition), pp. 24:12 – 26:5.
[16] Exhibit 6 and 9, NOPD trip sheets of NOPD officers of First District, 2nd Platoon ("Trip Sheets"), CNO 735-738.
[17] Exhibit 6 and 9 (Trip Sheet), CNO 735.

Over the next four months, Mr. Vicknair developed an inappropriate relationship with G.H. This relationship entailed social media and telephone communications of a sexual nature, G.H.'s transmittal of sexual pictures to Mr. Vicknair's telephone, and visits, both while he was on-duty and off-duty, to G.H.'s residence at various times, while G.H.'s mother was present or nearby.[18] According to both G.H. and Mr. Vicknair, no sexual activity occurred during this period.[19]

On September 21, 2020, G.H.'s counselor relayed to NOPD concerns of G.H.'s mother regarding Mr. Vicknair's relationship with G.H.[20] G.H.'s mother was primarily concerned about three incidents: (1) Mr. Vicknair shouted "nice ass" at G.H. while she was jogging; (2) Mr. Vicknair showed up at G.H.'s residence unannounced at night, entered G.H.'s bedroom with the mother, and stared at G.H.'s breast when G.H. was awakened; and (3) Mr. Vicknair took a picture with G.H in which he was hugging G.H. from behind.[21]

On September 23, 2020, Mr. Vicknair sexually assaulted Plaintiff. The assault occurred after Mr. Vicknair's workday ended, while Mr. Vicknair was off work, out of uniform, in Mr. Vicknair's personal vehicle, and for purposes wholly unrelated to any NOPD business.[22] At deposition, Plaintiff vaguely described three other instances of "sexual assault" by Mr. Vicknair prior to September 23, 2020 (which contradicted previous denials to law enforcement of any other sex assaults by Mr. Vicknair).[23]

---

[18] Doc. 97-1 (manually attached) (G.H. Forensic Interview), time stamp 14:25 – 15:15, 15:35 – 18:15, 18:44 – 20:29, 27:05 – 27:55, 28:10- 29:15.

[19] Doc. 97-1 (manually attached) (G.H. Forensic Interview), time stamp 12:50-13:10, 14:05-18:15, 29:30-30:10.

[20] Exhibit 1 (Jones Affidavit), ¶ 5.

[21] Exhibit 1 (Jones Affidavit), ¶ 6.

[22] Exhibit 7, Excerpts of transcript of Deposition of G.H. taken November 15, 2023 ("G.H. Depo."), pp. 226:5 – 231:12. See also, Doc. 97-1 (manually attached), time stamp 9:45 – 12:40 (G.H. describes the sexual assault), 29:30 – 30:10 and 39:15-39:40 (stating that Vicknair never touched her while inside of a NOPD police vehicle); and Exhibit 9, Affidavit of Kimera Dufeal and CNO 3305 (Mr. Vicknair's trip sheet dated September 23, 2020, reporting his shift completion as 11:00 a.m.).

[23] See Exhibit 7 (G.H. Deposition), pp. 24:20 – 31:5 (first instance – grabbed breast while Plaintiff was in bed); 18:14 – 18:22 (second instance – "running hands up my thighs and putting his hands in my pants"),

At the time Mr. Vicknair encountered G.H. on the night of September 23, 2020, Vicknair was off-duty, out of uniform, and had driven his personal vehicle to G.H's residence.[24] G.H. reported Mr. Vicknair's actions to NOPD on Friday September 25, 2020. In a forensic interview at Children's Hospital on that date, G.H. reported that Mr. Vicknair put his finger inside her vagina twice while she was in Mr. Vicknair's truck.[25]

After NOPD received the report of Mr. Vicknair's alleged sexual assault, on Friday, September 25, 2020, Vicknair was interviewed by NOPD, arrested, and suspended from employment.[26] Mr. Vicknair resigned from NOPD effective January 13, 2021.[27]

On February 24, 2021, Plaintiff filed her Original Complaint seeking damages, which included a claim of municipal liability.[28] On June 25, 2021, the Court dismissed Plaintiff's *Monell* claim against the City and Superintendent Ferguson.[29] On February 16, 2023, the Court granted the Plaintiff's Motion for Reconsideration and granted her leave to file an amended complaint to include a *Monell* claim.[30] On February 16, 2023, Plaintiff filed her First Amended Complaint.[31]

Meanwhile, on September 22, 2022, Mr. Vicknair was charged in federal court with violating 18 U.C. § 242, a criminal statute.[32] On November 16, 2022, Mr. Vicknair entered a plea of guilty and, on March 14, 2023, he was sentenced.[33] On August 31, 2023, the Court granted

---

23:21 – 24:22:21 (second instance – digital penetration of vagina); 31:12 – 31:16 (third instance – would not answer question); 54:23- 56:13 (third instance – touched "breast, my butt, my vaginal area"). Compare Doc. 97-1, G.H. Forensic Interview, time stamp 12:50-13:10, 14:05-18:15, 29:30-30:10 (stating that there was only one instance of sexual abuse).

[24] Doc. 97-1 (manually attached) (Forensic Interview of G.H.), time stamp 9:45 - 10:15; Exhibit 2 (Vicknair Deposition), 28:23-29:2.

[25] Exhibit 1 (Jones Affidavit), ¶ 8.

[26] Ex. 1, ¶ 8 (Jones Affidavit); Exhibit 3 (Vicknair Deposition), pp. 66:1-68:5.

[27] Exhibit 3, p. 65:6-9.

[28] Doc. 1.

[29] Doc. 36.

[30] Doc. 78.

[31] Doc. 79.

[32] *USA v. Rodney Vicknair*, 22-212 (E.D. La. 9/22/2022) Doc. 1.

[33] *USA v. Rodney Vicknair*, 22-212 (E.D. La. 11/16/2022, 3/14/2023) Docs. 24, 48.

partial summary judgment to the Plaintiff against Mr. Vicknair on the Section 1983 claim.[34]

However, following Mr. Vicknair's death on January 1, 2024, the Plaintiff dismissed all claims

against Mr. Vicknair with prejudice. On January 23, 2024, the discovery deadline passed. There

are four additional depositions sought by Plaintiff, and one by Defendants, but none of these

deponents have information that may create an issue of fact to prevent summary judgment in favor

of the Defendants.

## LAW AND ARGUMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.[35] The movant bears the burden of identifying those

portions of the record it believes demonstrate the absence of a genuine issue of material fact.[36] A

motion for summary judgment will be granted when the record indicates that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law.[37] When

the moving party has met its Rule 56(a) burden, the nonmovant must identify specific evidence in

the record and articulate how that evidence supports that party's claim.[38]

I. **Plaintiff's First Cause of Action – Civil Rights Violations based on Section 1983 - articulates no cognizable claim against either Defendant Ferguson or the City.**

Plaintiff's asserts a claim under 42 U.S.C. § 1983 against "all Defendants."[39] However, there

is no evidence that Superintendent Ferguson took any intentional or reckless acts by himself which

directly harmed Plaintiff. Plaintiff's claims against the Superintendent are only against him in his

---

[34] Doc. 107.
[35] Fed. R. Civ. P. 56(a).
[36] *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).
[37] *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004).
[38] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).
[39] Doc. 79, ¶ 126-128.

official capacity, which are subsumed in Plaintiff's *Monell* claim.[40] Further, the City cannot be held liable for Mr. Vicknair's alleged Constitutional violations under a theory of *respondeat superior*.[41] This cause of action should therefore be dismissed.

## II.  Plaintiff's Second Cause of Action – a claim of municipal liability based on Section 1983 -- fails because Plaintiff cannot demonstrate any policy was the cause of Mr. Vicknair's criminal actions.

Plaintiff claims that Defendants violated her constitutional rights by failing to "properly supervise and discipline officers" and failing to provide "adequate supervision, training, and discipline of misconduct."[42] To state a claim pursuant to § 1983, Plaintiff must claim a violation of a right secured by the Constitution or laws of the United States and demonstrate the alleged deprivation was committed by a person acting under color of state law.[43]

A Section 1983 claim against a municipality for alleged constitutional violations for failure to train, supervise, or discipline, as Plaintiff asserts, requires that Plaintiff prove: "(1) that the municipality's training, supervisory or disciplinary policies or practices were inadequate, that the municipality was deliberately indifferent in adopting these deficient policies and (3) that the inadequate training, supervisory or disciplinary policies directly caused the violations in question."[44] "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[45] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference

---

[40] See, e.g., *Brooks v. George County, Miss.*, 84 F.3d 157 (5th Cir. 1996) (a suit against the County Sheriff in his official capacity is a suit against the County, itself); *Goodman v. Harris Cty.,* 571 F.3d 388, 395-96 (5th Cir. 2009).
[41] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)
[42] Doc. 79, ¶ 143.
[43] See 42 U.S.C. § 1983; *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir.1997).
[44] *Hankins v. Wheeler*, No. 21-129, 2022 WL 2208848 at *7 (E.D. La. June 21, 2022) (Fallon, J.) (citing *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir.. 2020).
[45] *Connick v. Thompson*, 563 U.S. 51 (2011) citing *Board of Commm'rs of Bryan Cty. v. Brown*, 520 U.S. 397.

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[46] "A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to determine deliberate indifference for purposes of failure to train.[47] In order to constitute a pattern, prior incidents must be "fairly similar to what ultimately transpired."[48] Under rare circumstances, a single prior instance may demonstrate deliberate indifference under a "failure to supervise" theory, where it was obvious that "the highly predictable consequence" of the specific deficiency in supervision would be the harm suffered by a plaintiff.[49]

### A. There is no evidence of any inadequacy in NOPD's supervision or training of Mr. Vicknair.

Defendants have demonstrated the adequacy of supervision and training of Mr. Vicknair by multiple means. Captain Bruce Haney, in his capacity as designated representative of NOPD, testified as to the multiple and continual training provided to Mr. Vicknair and other officers regarding responses to victims of sexual violence and investigations thereof.[50] Mr. Vicknair, in fact received additional, voluntary, training on crisis intervention and field officer certification. Plaintiff does not, and cannot, claim that Mr. Vicknair's training was defective in any particular way. Further, Defendants are "entitled to rely on an officer's common sense not to commit statutory rape, so any alleged failure to train him not to commit statutory rape does not show deliberate indifference to the rights of its inhabitants."[51]

---

[46] *Id.*

[47] *Connick* at 60.

[48] *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005); see also *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir.2001).

[49] See *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (a city could be liable for a single incident of objectively unreasonable excessive force under a "failure to supervise" theory, if it was obvious that "the highly predictable consequence" of the specific deficiency in supervision was that officers would apply force in such a way as to violate the Fourth Amendment).

[50] See supra, footnote ___.

[51] *Doe ex rel. Doe v. City of Demopolis*, 461 Fed.Appx. 915, 917 (11th Cir. 2012), relying upon *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Floyd v. Waiters*, 133 F.3d 786 (11th Cir. 1998).

In addition, Captain Precious Banks explained the formalized process that NOPD is required to undertake in response to every complaint made against a police officer, which was followed in each instance a complaint was made against Mr. Vicknair.[52] Captain Banks further explained that discipline of officers follows guidelines set forth in a penalty matrix. The sufficiency of the supervision and training of Mr. Vicknair by NOPD has been demonstrated by multiple witnesses. Plaintiff does not, and cannot, contend that NOPD failed to follow the proper disciplinary procedures or failed to take disciplinary against Mr. Vicknair in accordance with the Penalty Matrix. In addition, multiple witnesses testified as to the supervision provided to Mr. Vicknair.[53]

**B. There is no causal link between NOPD's training and supervision and Mr. Vicknair's sexual assault of Plaintiff.**

From the record evidence, it is clear that no NOPD policy or failure to train was the "moving force" behind Mr. Vicknair's criminal acts in grooming and sexually assaulting Plaintiff.

> [A] direct causal connection must exist between the policy and the alleged constitutional deprivation. This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it.[54]

---

[52] Exhibit 5, Deposition of Banks, pp. 28:23 – 35:13. See Louisiana Revised Statute §40:2531, known as the Police Officer Bill of Rights, which mandates procedures for conducting administrative investigations of police officers.

[53] See Exhibit 2, Deposition of Haney, p. 12:8 – 13:24 (trip sheets); Exhibit 8, Affidavit of Sergeant David Barnes, ¶ 2 (INSIGHT: EARLY INTERVENTION SYSTEM, a computer-based supervision tool, which serves as is a data warehouse which can be accessed by supervisors to receive and integrate member information in order to facilitate close and effective supervision of members as well as identify patterns or series of incidents that may indicate at-risk behaviors), and Exhibit 5, Deposition of Banks, pp. 24:12 – 26:7, 27:13 – 32:14 (supervision).

[54] *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir.1992). See also *City of Canton*, 109 S.Ct. at 1206 ("must be closely related to the ultimate injury" and have "actually caused" the constitutional violation complained of); *Piotrowski*, 237 F.3d at 581; *Pineda v. City of Houston*, 291 F.3d 325, 334 (5th Cir.2002).

Plaintiff cannot show any causal link between NOPD's training and supervision and the sexual assault by Mr. Vicknair. Mr. Vicknair's choice to molest Plaintiff was his own, made despite NOPD's policies and training. Under these facts, there can be no causal connection between any policy of Defendants and Mr. Vicknair's actions.[55]

**C. Plaintiff's list of prior complaints against officers does not support a finding of a pattern that could demonstrate deliberate indifference.**

Deliberate Indifference can be proven two ways: (1) proof by pattern; and (2) a single incident.[56] To prove deliberate indifference via proof by pattern, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.[57] A pattern requires similarity and specificity, as well as "sufficiently numerous prior incidents" as opposed to "isolated instances."[58] "[O]ccasional acts of untrained policemen are not otherwise attributed to city policy or custom."[59]

Plaintiff alleged in the First Amended Complaint that there exists a pattern of sexual abuse by NOPD. The Court determined that, based on the following alleged facts allegedly relating to such pattern, Plaintiff's proposed amended complaint "may not be futile at this stage":[60]

- NOPD routinely fails to impose consequences on officers who commit sexual violence, because of the 189 officers with formal complaints of sexual violence, only 38 have resigned and 6 were terminated or resigned under investigation.

---

[55] See *Johnson*, 379 S.3d at 310 (no causal connection where officer's forced entry was his own choice and was contrary to his training and experience).
[56] *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d at 624 (citing *Canton*.).
[57] *Bryan Cty.* 520 U.S. at 49, *Connick v. Thompson*, 563 U.S. 51, 62 (2011).
[58] *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).
[59] *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021).
[60] See Doc. 78, p. 4; Doc. 79, ¶¶ 135.

- From 2019 to 2021, of the 254 officers with complaint records who left the department, 97% had a misconduct complaint within the previous two calendar years.

- 84% of reported victims of sexual violence by NOPD officers are female, and one-fourth of reported victims are children and young people under the age of 26.

However, as proof of these allegations, Plaintiff relies upon a "report" issued by an organization called the "Umbrella Coalition".[61] The entirety of the "report" is inadmissible hearsay and cannot support Plaintiff's allegations at the summary judgment stage.[62] Further, the report is facially dubious give the anonymity of the authors, inscrutability of its methodology, and uncertainty of its sources. Plaintiff has not designated an expert witness affiliated with the Umbrella Coalition or elsewhere, to explain the conclusions in this report. The report should be, at this summary judgment stage, entirely disregarded.

However, even if Plaintiff's list of prior complaints against NOPD police officers is considered, evidence of a mere list of officers' alleged sexual misconduct is insufficient to raise a triable fact dispute about deliberate indifference.[63] "The Fifth Circuit requires more than a list of instances of misconduct to ensure that the jury has the necessary context to glean a pattern, if

---

[61] Doc. 79 ¶¶106-123; Doc. 78, pp. 1-2 (citing Doc. 66-6). See Doc. 111, ¶ I(56)  (Plaintiff's Witness and Exhibit List).

[62] See Federal Rule of Evidence 802; *Hatch v. Wal-Mart Stores, Inc*., 200 Fed. Appx. 310, 312 (5th Cir 2006) , 68 F.3d 124, (Plaintiff's hearsay evidence could not defeat retailer's summary judgment motion on claim for alleged violation of settlement agreement's confidentiality provisions); *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998) (rejecting the use of assorted policy papers and reports…many of which were excluded as hearsay").

[63] See *Alfaro v. City of Houston*, 2013 WL 3457060, *13 (S.D. Texas, July 9, 2013) (summary judgment granted to city because plaintiff's evidence of a list of prior sexual misconduct complaints against police officers, offered to show pattern of sexual misconduct among officers, was insufficient to create inference of deliberate indifference); *Oporto v. City of El Paso*, 2012 Wl 2191697, *5 (W.D. Tex. June 14, 2012) (rejecting as evidence of pattern 32 purportedly similar incidents of police misconduct over 15 years).

any."[64] An important part of context is the similarity of prior complaints to the present complaint. A cursory review of the list relied upon by Plaintiff shows substantial dissimilarity, which precludes an inference of deliberate indifference.[65]

Further, this is not an incident where proof of deliberate indifference may be made by a single incident.[66] This exception permits deliberate indifference to be shown by a single incident if where "a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."[67] This "single-incident exception" exists only where the "risk of constitutional violations" was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* (quoting *Littell*, 894 F.3d at 624).

The instant case does not fit within the single incident exception. *Flores v. County of Los Angeles*, is instructive.[68]  In *Flores*, a plaintiff alleged she was sexually assaulted by a deputy sheriff at a vehicle inspection station and brought a *Monell* claim against the County.  In support of her §1983 claims, the plaintiff alleged defendant "failed to implement proper training to protect women to ensure that Sheriff's [d]eputies do not sexually assault women that…[they] come into contact with at the Vehicle Inspection Area." *Flores* at 1158. The plaintiff attempted to allege her failure to train claim fell within the narrow circumstances in which a pattern might not be necessary to show deliberate indifference.  However, the Court dismissed her claim, reasoning:

> There is every reason to assume that police academy applicants are familiar with the criminal prohibition on sexual assault, as everyone is presumed to know the law. …There is no basis from which to conclude that the unconstitutional

---

[64] *Alfaro*, at *13 (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).
[65] See *Alfaro*, at *14 (rejecting evidence of list of prior complaints because plaintiff failed to show the size of the city's police department, identify similarities between the cited complaints an the plaintiffs' allegations, or identified similarities between decision to hire the listed officers and the defendant officer).
[66] *Valdez*, 852 Fed.Appx. at 136 (citing *Bd. of the City Comm'rs v. Brown*, 520 U.S. 397, 409 (1997), and citing *Canton*, 489 U.S. at 390, 109 S. Ct. 1197) (proof of deliberate indifference by a single incident is the exception to general rule requiring a pattern).
[67] *Id.*
[68] 758 F.3d 1154 (2014).

consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County or Baca were deliberately indifferent.

Where the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.[69]

For these reasons, Plaintiff has failed to present facts sufficient to create a permissible inference that Defendants acted with deliberate indifference in training, supervising or disciplining Mr. Vicknair.[70]

### III.  <u>Plaintiff's Third Cause of Action – State Torts of Assault and Battery against all Defendants – fails because Mr. Vicknair's sexual assault was not rooted to his employment as NOPD or incidental to his duties.</u>

Plaintiff alleges that the "assault and battery" of Plaintiff was "made possible by the apparent authority of the position [Mr. Vicknair] held as an officer with NOPD." "The factors to be considered in determining whether an employer may be liable for an intentional tort of an employee are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee's duties, occurred on the employer's premises, and occurred during the hours of employment." [71] "Only tortious conduct so closely connected in time, place, and causation to the employment duties as to be regarded as a risk of harm fairly attributable to

---

[69] *Flores* at 1160 (citation omitted).

[70] Plaintiff alleges that NOPD officers are "usually allowed to resign without investigation or consequence." This allegation is false, has no factual support and constitutes unsupported speculation. However, with respect officers resigning while under investigation, NOPD's corporate witnesses explained that NOPD cannot discipline an officer who resigns under investigation, but such an officer, depending on the allegations could be precluded from law enforcement certification within the State of Louisiana and would automatically be ineligible for rehire. Exhibit 5, Deposition of Banks 34:11 – 35:13; Exhibit 4, Deposition of Powell, pp. 36:20 - 37:3

[71] *Doe v. Louisiana Mun. Ass'n*, 746 So.2d 179 (5th Cir. 1999) (citing *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974).

the employer's business imposes vicarious liability on an employer."[72] "Conduct motivated by purely personal considerations entirely extraneous to the employer's interests does not."[73]

This case is similar to *Doe v. Louisiana Mun. Ass'n*. In *Doe*, a plaintiff alleged that police officer used his apparent authority as an office to molest him. Among other things, the plaintiff alleged that the officer visited him while he was on patrol, in his squad car, in his uniform and carrying a side arm, and used threats to keep him quiet. However, the court ruled that these factors were "not material" to the issue of vicarious liability. Instead, the employer was not vicariously liable for the officer's conduct because the molestation was not employment rooted or reasonably incidental to the performance of the employee's duties.[74]

Here, as in Doe, Mr. Vicknair's grooming and sexual assault of Plaintiff were in no way rooted in employment or reasonably incidental to the performance of NOPD's duties. This claim should therefore be dismissed.

### IV.    Plaintiff's Fourth cause of action - State Torts of Negligence and Negligent Infliction of Emotional Distress – is based on a mistaken interpretation of NOPD policies.

In Plaintiff's Fourth cause of action, she alleges that "Defendants Ferguson and City of New Orleans assumed a particular duty to take care with regard to G.H. by dispatching Officer Vicknair to handle her sexual abuse."[75] She further alleges, "Defendants breached the duty owed to G.H. By violating their own policy by allowing an untrained patrol officer such as Defendant Vicknair to interact with and transport G.H.. with no supervision from a trained child abuse or sex crime detective."[76] Plaintiff claims that Defendants are vicariously liable for the acts

---

[72] *Id*.
[73] *Id*.
[74] *Id*. at 183.
[75] Doc. 79, ¶ 159.
[76] *Id*. at ¶ 161.

of Defendant Vicknair and all officers "involved in responding to the May 2020 sexual assault, and independently negligent for failing to adequately train its officers and effectively supervise officers who respond to complaints of child abuse and sexual assault."[77]

The liability of a police officer is determined using the duty/risk analysis.[78] The standard negligence analysis, under La.C.C. art. 2315, consists of the following four-prong inquiry:

(1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
(2) Did the defendant(s) owe a duty to the plaintiff?
(3) Was the duty breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?[79]

As an initial matter, the facts show that Defendants did not violate any policy in their response to the report of the attempted rape of Plaintiff on May 26, 2020. As Captain Haney, the lead officer of NOPD's academy, explained, a reporting officer ensures that the scene is safe and secure, and then a child abuse investigator is called in; the need for transport of a victim is within the discretion of the investigator.[80] As such, the facts do not indicate that the Defendant's violated any duty to Plaintiff. Defendants' response to Plaintiff's attempted rape report was well within the scope of reasonableness applied to police officers. "[P]olice officers are not held to a standard of perfect hindsight, and their chosen course of action is not required to be the 'best,' or even a 'better,' alternative."[81] Plaintiff's negligence and negligent infliction of emotional distress claims therefore should be dismissed.

---

[77] *Id.* at 163.
[78] *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318.
[79] *Id.* (citations omitted)
[80] Ex. 2, 26:23 – 28:30:11.
[81] See *Thomas v. Bridgefield Cas. Ins. Col, Inc.*, 409 Fed Appx. 720, 723 (5ᵗʰ Cir. 2010) (no liability to police officers for failure to secure crime scene before calling paramedic to render aid to injured officer).

**V.**     **Plaintiff's Seventh cause of action – negligent hiring, training and discipline – is not supported by any evidence.**

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis" used in Louisiana for negligence claims.[82] The elements of liability in a Louisiana negligence case are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages.[83]

Plaintiff cannot present evidence to show any breach of duty by Defendant, either in hiring, training, or disciplining Mr. Vicknair. Defendants have demonstrated the extensive hiring process and background checks that were involved in the process of hiring Mr. Vicknair.[84] In addition, Defendants have demonstrated the extensive training Mr. Vicknair was provided, including specific training with respect to investigating sexual crimes.[85] Plaintiff's allegations in this cause of action are not supported by facts and are based upon a misinterpretation of NOD Policy Chapter 42.19, which expressly contemplates that a patrol officer may arrive on the scene without a sex crimes detective, and may "stabilize the situation and secure evidence [that] may be obtained from a child."[86]

Finally, Defendants have demonstrated the highly structured discipline process, which is largely dictated by statutory due process protections for police officers. [87] Every complaint made against Mr. Vicknair was properly investigated. Plaintiff's statement that Mr. Vicknair demonstrated "predatory behavior" to Defendants is not shown by the evidence. To the contrary

---

[82] *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009).
[83] *Id*.
[84] See, Exhibit 4, Deposition of Powell, and text accompanying footnotes 7-9, *supra*.
[85] See text and citations related to footnotes 10-13, *supra*.
[86] Doc. 79, ¶ 183.
[87] See, generally, Exhibit 5, Deposition of Banks, pp. 27:16 – 28:9.

as, Captain Banks explained, there was not forewarning to Defendants that Mr. Vicknair might

sexually abuse a 15 year-old.

> You can't supervise everyone, especially when they're alone. An adult has to be
> accountable for their own behavior and their moral conducts, and his actions, even
> though he was an employee of the department, there was no indication of any past
> history of inappropriate conduct that would have alerted anyone on the department
> to this incident possibly occurring or any other incidents. Mr. Vicknair, as a human,
> should have morals, and as far as the New Orleans Police Department, once notified
> of these allegations, the department stepped in and took action as appropriate, and
> as we can tell by the outcome of the investigation, the New Orleans Police
> Department did its job. But as far as an officer being solo and no supervision,
> officers ride one man, and when they're a one man, they're alone. So we can't govern
> a person. In the academy, and in our annual in-service, you are provided training
> on how to handle calls for service and what your behavior is to be, especially
> regarding professionalism and courtesy. So in this instance, like I said, Officer
> Vicknair was alone. There was no previous red flags, so this would have not been
> anything the New Orleans Police Department could have prevented, and that's just
> my opinion.[88]

## VI.   Plaintiff's Eighth Cause of Action – Vicarious liability against City Defendants – fails because Defendants are not liable for Mr. Vicknair's independent criminal conduct undertaken for his personal pleasure.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on

any theory of vicarious liability."[89] In addition, vicarious liability does not apply in a § 1983 claim

against a municipality.[90] Therefore, any Section 1983 claim brought against the City or

Superintendent Ferguson should be dismissed.

As to Plaintiff's state law claims, an employer cannot be held liable for the intentional

tortious conduct of an employee unless the employee commits the intentional act within the ambit

of his assigned duties and in furtherance of his employer's objective.[91] The intentional tortious

conduct of the employee must be so closely connected in time, pace, and causation to this

---

[88] Exhibit 5, (Banks Deposition), pp. 41:20 0 42:20.
[89] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).
[90] *City of Canton*, 489 U.S. at 385.
[91] *Carr v. Sanderson Farm, Inc*. 15-0953 (La.App. 1 Cir. 2/17/16), 189 So. 3d 450, 454.

employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.[92] The following factors are recognized as being relevant as to whether an employer may be held liable for the intentional acts of its employee:

(1)    whether the tortious act was primarily employment rooted;
(2)    whether the violence was reasonably incidental to the performance of the employee's duties;
(3)    whether the act occurred on the employer's premises; and
(4)    whether it occurred during the hours of employment.[93]

In *Baumeister*, a hospital employee sued the hospital for damages arising out of a sexual assault committed by her supervisor on hospital premises. The Louisiana Supreme Court held that the hospital was not vicariously liable because the assault was not primarily employment rooted and was not reasonably incidental to the performance of the supervisor's duties. The Court's reasoning is applicable to the instant case. The risk that Mr. Vicknair might groom and sexually assault a minor child is "not a risk fairly attributable to the performance of [Mr. Viknair's] duties."[94] Further, here, as in *Baumeister*, Mr. Vicknair's grooming and sexual assault was entirely extraneous" to NOPD's interests.[95] Mr. Vicknair's conduct, far from furthering NOPD's interests, frustrated one of its fundamental tenet – to prevent violence against women, including but not limited to sexual assault, child abuse, and domestic violence.[96]

For these reasons, it is beyond serious argument that Mr. Vicknair's sexual assault of Plaintiff on the night of September 23, 2020, after work, out of uniform, in his private vehicle, without a gun, was wholly unrelated to his employment as an NOPD police officer or any duties

---

[92] *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994, 996.
[93] *Id*. at 996-97 (citing *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974).
[94] *Id*. at 999.
[95] *Id*. at 1000.
[96] Exhibit 2, (Haney Deposition), pp. 30:18 – 31:8.

thereto.[97] For these reasons, Defendants are not vicariously liable for Mr. Vicknair's independent, criminal, actions.

**VII.    Plaintiff's tenth cause of action – a claim under La. Civ. Code Art. 2315.3 – is without merit.**

Plaintiff's tenth cause of action "against all defendants"[98] is a claim for exemplary damages pursuant to La. Civ. Code Art. 2315.3, which provides:

> exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton and reckless disregard for the rights and safety of the person through an act of pornography involving juveniles, as defined by R.S. 14:81.1, regardless of whether the defendant was prosecuted for his acts.

Louisiana Revised Statute 81.1(A)(1) provides that "[i]t shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles." According to Plaintiff, she sent "nudes" to Mr. Vicknair via Snapchat, a social media application.[99] However, Plaintiff fails to offer any evidence that Defendants, themselves, possessed pornography involving juveniles or otherwise committed the crime as described by La. R.S. § 81.1(A). La. Civ. Code Art. 2315.3, as a statute providing for exemplary damages imposing a penalty, must be strictly construed.[100]

The Court's previous reasoning regarding Plaintiff's previous assertion of a claim under 18 U.S.C. § 225, which the Court dismissed. As is the case with regard to Plaintiff's claim based on Article 2315.3, "a claim under § 2255 is limited to a "defendant [who] committed the acts

---

[97] Exhibit 7, (Plaintiff's Deposition), pp. 12:1 – 19, 229:1 - 12. See *Patterson v. Al Copeland Enterprises, Inc.*, 95–2288 (La. App. 4 Cir. 1/19/96) 667 So.2d 1188, writ denied, 96–0723 (La.11/22/96) 683 So.2d 1196, (supervisor's rape of employee was not related to the rapist's employment duties, did not further his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations extraneous to employer's interest).
[98] Doc. 79, ¶ 204.
[99] Exhibit 7, (Plaintiff Deposition), pp. 202:14 – 205:20.
[100] *Grefer v. Alpha Technical*, 02–1237, p. 9 (La. App. 4 Cir. 8/8/07), 965 So.2d 511, 518.

described in any of the listed offenses."[101] Because Plaintiff does not allege that Defendants violated R.S. 14:81.1, this claim should be dismissed.

**VIII.** **Upon dismissal of Plaintiff's claims under 42 U.S.C. § 1983 and 18 U.S.C. § 2255, this Honorable Court would not have supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.**

Pursuant to 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state law claims so long as the court has original jurisdiction over any federal claims. A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). Considering the above analysis, Plaintiffs have stated no viable federal claim against the City or the Superintendent and, as a result, the remaining state law claims should be dismissed. Previously, the Court retained supplemental jurisdiction despite dismissing Plaintiff's Monell claim based on Rule 12(b)(6) because federal claims remained against Mr. Vicknair.[102] That is not the case now and remand would be appropriate.

**CONCLUSION**

For these reasons, the Court should grant Defendants Motion for Partial Summary Judgment Against Plaintiff.

---

[101] Doc. 36, p. 10.
[102] Doc 36, pp. 11-12.

Respectfully submitted,


/s/ *James M. Roquemore*_____
JAMES M. ROQUEMORE (LSB #40035)
Deputy City Attorney
CORWIN ST. RAYMOND (LSB #31330)
Deputy City Attorney
DONESIA D. TURNER (LSB #23338)
City Attorney
1300 Perdido Street
City Hall – Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Fax: (504) 658-9868
james.roquemore@nola.gov
cmstraymond@nola.gov
donesia.turner@nola.gov

*Attorneys for Defendants, City of New Orleans and*
*Shaun Ferguson, Superintendent of the New Orleans*
*Police Department*

21