## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, individually and        DOCKET NO.
On behalf of her minor
Daughter, G.H.         2:21-cv-407
    Plaintiff,         JUDGE BARBIER
                       MAG. ROBY
VERSUS
RODNEY VICKNAIR, SHAUN FERGUSON,
THE CITY OF NEW ORLEANS; DOE
DISTRICT COMMANDER; DOES 1 TO 10;
and XYZ INSURANCE COMPANIES 1 TO 10,

    Defendants.

DEPOSITION OF THE CITY OF NEW ORLEANS, through its designated representative, LIEUTENANT NICOLE POWELL, given in the above-entitled cause, pursuant to the following stipulation, before Sandra P. DiFebbo, Certified Shorthand Reporter, in and for the State of Louisiana, at the Office of the City Attorney, 1300 Perdido Street, City Hall, Room 5E03, New Orleans, Louisiana, on the 10th day of January, 2024, commencing at 10:00 AM.

## Page 2

APPEARANCES:

MOST & ASSOCIATES
BY: HOPE PHELPS,
ATTORNEY AT LAW
201 St. Charles Avenue
Suite 2500, #9685
New Orleans, Louisiana 70170
Representing the Plaintiff

CITY OF NEW ORLEANS
LAW DEPARTMENT
BY: JAMES ROQUEMORE,
ASSISTANT CITY ATTORNEY
1300 Perdido Street
Suite 5E03
New Orleans, Louisiana 70112
Representing Shaun Ferguson, the City of New Orleans, DOE District Commander, DOES 1 to 10 and XYZ Insurance Companies 1 to 10

Reported By:

Sandra P. DiFebbo
Certified Shorthand Reporter
State of Louisiana

## Page 3

EXAMINATION INDEX

                                    Page
BY MS. PHELPS:            5, 37
BY MR. ROQUEMORE:         30

EXHIBIT INDEX
                          Page
Exhibit 1                 9
Exhibit 2                 9

## Page 4

STIPULATION

It is stipulated and agreed by and among counsel for the parties hereto that the deposition of THE CITY OF NEW ORLEANS, through its designated representative, LIEUTENANT NICOLE POWELL, is hereby being taken pursuant to the Federal Rules of Civil Procedure for all purposes in accordance with law;

That the formalities of reading and signing are specifically reserved;

That the formalities of sealing, certification, and filing are hereby specifically waived.

That all objections, save those as to the form of the question and responsiveness of the answer are hereby reserved until such time as this deposition or any part thereof is used or sought to be used in evidence.

* * * * *

Sandra P. DiFebbo, Certified Shorthand Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.

EXHIBIT 4

## Page 5

1      LIEUTENANT NICOLE POWELL, having been
2  first duly sworn, was examined and testified on
3  her oath as follows:
4      MS. PHELPS:
5          Before we start, can we stipulate
6          that the deposition is properly noticed
7          and the reporter is duly qualified?
8      MR. ROQUEMORE:
9          I'll stipulate to that.
10 EXAMINATION BY MS. PHELPS:
11   Q. Good morning, Lieutenant Powell.
12   A. Good morning.
13   Q. Do you understand what case you are here
14 for today?
15   A. Yes.
16   Q. What case is that?
17   A. Vicknair.
18   Q. And you understand this is a civil case?
19   A. Yes.
20   Q. You understand that you are a witness for
21 NOPD and designated to speak for NOPD on a number
22 of topics?
23   A. Yes.
24   Q. Are you aware that you were made to
25 represent the knowledge of NOPD on those topics?

## Page 6

1    A. Yes.
2    Q. You realize that you have been designated
3  as a representative of NOPD for me to question you
4  on those topics?
5    A. Yes.
6    Q. You realize that when I'm asking you a
7  question, I'm not really asking it of you
8  individually that I'm asking it of NOPD?
9    A. Yes.
10   Q. When you give an answer, you are giving
11 the answer of NOPD, right?
12   A. Correct. Yes.
13   Q. When I say you, I am referring to NOPD.
14   A. Yes.
15   Q. Unlike a normal deposition, I don't know
16 is not a sufficient answer, because NOPD has an
17 obligation to produce someone who does know. Do
18 you understand?
19   A. Yes.
20   Q. When did you begin preparing for this
21 deposition?
22   A. It had to have been since December.
23   Q. How much time would you say you've spent
24 preparing?
25   A. You want days, hours?

## Page 7

1    Q. Hours.
2    A. Around about, I would say, ten.
3    Q. Over how many days?
4    A. Over the course of a month from when I
5  was notified to come.
6    Q. Was anyone there with you when you were
7  preparing?
8    A. No.
9    Q. Did you review any documents to prepare
10 for this deposition?
11   A. Yes.
12   Q. Which documents did you review?
13   A. Rodney Vicknair's background.
14   Q. I'm going to show you a copy of our
15 notice of deposition. Have you seen this document
16 before?
17   A. I would say yes.
18   Q. This is just a notice of our deposition
19 today, January 10th at 10:00 AM, right?
20   A. Yes.
21   Q. Let me make sure I have this right. Your
22 attorney told me that you are prepared to testify
23 on Topic 1, Subsection 1, application of employment
24 and background check. Is that correct?
25   A. This one right here? That would be Page

## Page 8

1  2, correct?
2    Q. Yes.
3    A. Just to make sure I'm looking at the same
4  page.
5    Q. Yes. And then Topic 2, NOPD's hiring
6  process?
7    A. Right here?
8    Q. Yes.
9    A. Parts of it as it relates to more
10 specifically H.
11     MR. ROQUEMORE:
12         As it relates to what?
13         (WITNESS INDICATING)
14     MR. ROQUEMORE:
15         Are we looking at 3?
16     MS. PHELPS:
17         I'm looking at Topic 2.
18     MR. ROQUEMORE:
19         That's Topic 3.
20     THE WITNESS:
21         Oh, yeah, well, 2.
22     MR. ROQUEMORE:
23         So you are good for 2?
24     THE WITNESS:
25         Yes.

Page 9

```
 1  BY MS. PHELPS:
 2      Q.  We'll attach this as Exhibit 1 to the
 3  deposition. Did you bring any documents with you
 4  today?
 5      A.  No.
 6      Q.  Are you prepared to testify today on
 7  Rodney Vicknair's application for employment and
 8  the background check?
 9      A.  Yes.
10      Q.  I have a copy of what we received from
11  the city here. There's a lot of papers. I printed
12  up about four. Have you seen these documents
13  before?
14      A.  Yes.
15      Q.  This is Vicknair's application for
16  employment and background check done by NOPD,
17  correct?
18      A.  Yes.
19      Q.  We are going to attach this as Exhibit 2.
20  I'm looking at the first page, CNO-3887. Following
21  an investigation, the commander of recruitment
22  recommended Vicknair for a position of police
23  recruit with NOPD. Is that right?
24      A.  Yes.
25      Q.  Is it important to do a background check
```

Page 10

```
 1  for officer applicants?
 2      A.  Yes.
 3      Q.  And NOPD should do a background check
 4  that includes finding any criminal history,
 5  correct?
 6      A.  Correct.
 7      Q.  Because if NOPD hires an officer with a
 8  criminal history, it needs to know what that
 9  criminal history is, correct?
10      A.  Correct.
11      Q.  Because criminal history is an important
12  factor in predicting whether someone will be a good
13  officer or commit crimes as an officer; is that
14  right?
15      A.  Correct.
16      Q.  This evaluation is dated December 14th,
17  2006. Is that right?
18      A.  Yes.
19      Q.  I'm going to go to Rodney Vicknair's
20  employment history.
21      A.  Where are you at?
22      Q.  Starting at CNO-3896. Page 9 of 10 of
23  this section.
24      A.  Okay.
25      Q.  Also, there is another page tied to this
```

Page 11

```
 1  I'll start with. So Rodney Vicknair was employed
 2  by Priority EMS from March 1997 until April of
 3  2004; is that right?
 4      A.  Yes.
 5      Q.  That's almost ten years, right?
 6      A.  Yeah. Almost ten years.
 7      Q.  Is it unusual for an applicant to leave a
 8  profession they have been in for ten years to join
 9  NOPD?
10      A.  No.
11          MR. ROQUEMORE:
12              Objection. Form. You can answer.
13          THE WITNESS:
14              No.
15  BY MS. PHELPS:
16      Q.  Skip ahead a couple pages. CNO-3947.
17      A.  What page number, please?
18      Q.  It is 3947.
19          MR. ROQUEMORE:
20              Look down here. This is what she is
21          referring to.
22          THE WITNESS:
23              39407?
24  BY MS. PHELPS:
25      Q.  3947. You've been through these records
```

Page 12

```
 1  before, right?
 2      A.  Yes.
 3      Q.  And for some of Vicknair's past
 4  employment, his past supervisors were contacted or
 5  current supervisors, correct?
 6      A.  According to the report.
 7      Q.  The supervisor he identifies here for
 8  Priority EMS, Vincent Chapetta, this person was not
 9  contacted by NOPD, right?
10      A.  Is that Primary Family EMS?
11      Q.  I believe it's Priority EMS.
12      A.  Talking about the supervisor? According
13  to the report, it does not state if they spoke to
14  the supervisor or made any contacts, according to
15  the -- they could have, but according to the
16  information I have before me, it does not state in
17  the report.
18      Q.  The investigator conducting this
19  background check also interviewed some of
20  Vicknair's neighbors; is that correct?
21      A.  Uh-huh. Correct.
22      Q.  In this application, there is a section
23  where Rodney Vicknair is asked to answer the
24  question, "Why do you want to become a New Orleans
25  police officer?"
```

13

```
1      MR. ROQUEMORE:
2          What page are we on?
3      MS. PHELPS:
4          I am trying to find the page.
5      MR. ROQUEMORE:
6          Was there a page for the neighbors
7          being contacted?  Are you still working
8          on that one, too?
9      MS. PHELPS:
10         I didn't have any other questions
11         about it. Just that neighbors were
12         contacted.
13  BY MS. PHELPS:
14     Q.  CNO-3922.
15     A.  Okay.
16     Q.  In the application, Vicknair is asked to
17  answer this question, "Why do you want to become a
18  New Orleans police officer?"
19     A.  Correct.
20     Q.  Why is it important to ask officers that
21  question or recruits, applicants?
22     A.  That question is very important just like
23  any other profession, as why you want to do
24  something. People wants to become a police officer
25  for various reasons, and they have goals towards
```

14

```
1   the character of that person or the reason why that
2   person want to become a police officer.
3      Q.  Vicknair's first sentence is, "I always
4   wanted to be a police officer in New Orleans." Is
5   it fair to say that he was drawn to this
6   profession?
7      A.  If that's his statement, that he always
8   wanted to.
9      Q.  Moving on to Vicknair's criminal history.
10  I believe some of the arrest history information
11  starts back at the beginning, 3891. Just the
12  second page.
13     A.  You said 3891?
14     Q.  3891. There are records on CNO-3950. I
15  know he was aware that Vicknair had been arrested
16  for attempted burglary, criminal damage to
17  property, and illegal use of a weapon. Is that
18  right?
19     A.  You said attempted burglary or is it
20  battery?
21     Q.  All. So two counts of criminal damage to
22  property, two counts illegal use of a weapon.
23     A.  Which one we looking at so I can --
24     Q.  CNO-3950.
25     A.  Okay. I see that right there now.
```

15

```
1      Q.  And NOPD was aware of this at the time of
2   his hiring?
3      A.  Correct.
4      Q.  NOPD was also aware that he had been
5   arrested for battery the year before his
6   application in March 2005?
7      A.  Correct.
8      Q.  Going back to the first page of the --
9   the second page of the evaluation, Arrest History
10  Information, where there is a summary of that
11  incident. This battery happened in a home. It
12  involved Vicknair's girlfriend or ex-girlfriend,
13  correct?
14     A.  Yes.
15     Q.  Does NOPD characterize this incident as
16  Vicknair coming home to his own home and finding a
17  strange man in the bed with his girlfriend?
18         MR. ROQUEMORE:
19             Objection. Form.
20  BY MS. PHELPS:
21     Q.  How does NOPD characterize this incident?
22         MR. ROQUEMORE:
23             Objection. Form. You can answer,
24             if you know.
25         THE WITNESS:
```

16

```
1              According to the investigators,
2          under -- I guess this is 3897. As it
3          relates to that incident, the
4          investigator stated the subject
5          returned home to find a stranger in the
6          house with his girlfriend and demanded
7          the man to leave.
8   BY MS. PHELPS:
9      Q.  The investigator notes that this is
10  potentially something that Vicknair could be
11  rejected for, correct?
12     A.  Yes.
13     Q.  And the investigator notes that it is
14  important, though, that these circumstances should
15  be looked at, correct? I'm on 3897, the one you
16  just referenced.
17     A.  Can you repeat your question?
18     Q.  The investigator notes that the
19  circumstances should be looked at in considering
20  whether or not Vicknair should be rejected.
21     A.  As it relates to a possible rejection?
22     Q.  Yes.
23     A.  Correct. That is the investigator's --
24  because it's a possible recommendation, but he also
25  stated that he should be reviewed as acceptable. He
```

**17**

1  also stated in his recommendation that the charges
2  was dropped and expunged and should not reflect
3  poorly on the applicant.
4      Q.  Going towards the end, CNO-3967. NOPD
5  had a copy of the police report narrative from the
6  St. Tammany Parish Sheriff's Office for this
7  incident, correct?
8      A.  Yes.
9      Q.  The victim is identified as Byron
10 McMichael, right?
11     A.  Yes.
12     Q.  The girlfriend is identified as Miss
13 Denise Trower?
14     A.  According to the report, yes.
15     Q.  According to this narrative, both Miss
16 Trower and Mr. McMichael state that they were
17 dating, that Miss Trower was Mr. McMichael's
18 girlfriend. Is that correct?
19     A.  I'm just reading it to refresh. Give me
20 one second. That's under 3967?
21     Q.  Yes. It may continue on to 3968.
22     A.  I see in one part from Mr. McMichael's
23 statement, he said his girlfriend and identified
24 her as Miss Denise Trower. Give me one second to
25 look at her. She also identified her boyfriend as

**18**

1  Mr. McMichael, according to the report.
2      Q.  Miss Trower identifies Vicknair as her
3  ex-boyfriend, correct?
4      A.  Yes. According to the report, yes.
5      Q.  According to this report, Miss Trower and
6  Mr. McMichael both identified this residence as
7  Miss Trower's residence.
8      A.  I'm trying to see. Give me a second.
9  The words are kind of small. They talked about the
10 residence, but I'm trying to locate the exact
11 verbiage that says that they both said it is her
12 residence.
13     Q.  I will read the beginning of the
14 narrative, 3967. "Mr. McMichael stated he was
15 sleeping inside the residence, which was his
16 girlfriend's, Miss Denise Trower."
17     A.  I see that part. I read that one. What
18 I was trying to figure out if she said it was her
19 residence. I didn't see that in her statement.
20     Q.  Okay. All three parties give a statement
21 that Mr. Vicknair pulled a knife out of his pocket.
22 Is that right?
23         MR. ROQUEMORE:
24             Objection. Form.
25 BY MS. PHELPS:

**19**

1      Q.  According to this narrative, does each
2  Mr. McMichael, Miss Trower, and Mr. Vicknair state
3  that Mr. Vicknair pulled a knife out of his pocket?
4          MR. ROQUEMORE:
5              Object to form.
6          THE WITNESS:
7              Answer?
8          MR. ROQUEMORE:
9              You can.
10         THE WITNESS:
11             According to the statement, on each
12         statements of those who was
13         interviewed, which would include
14         Mr. McMichael, Mr. Vicknair, and Miss
15         Trower, they all were consistent in
16         Mr. McNair [sic] pulling out a knife.
17 BY MS. PHELPS:
18     Q.  Mr. McMichael states that Vicknair
19 threatened him with a knife. Is that right?
20     A.  He said he was threatened. He said he
21 pulled the knife out, according to the report, and
22 began to threaten him and Miss Trower.
23     Q.  Is it also stated in this report that
24 Vicknair had a gun in his car?
25     A.  He advised the deputies, according to the

**20**

1  report, that he had a firearm in the vehicle. The
2  deputies did seize that weapon for safekeeping,
3  according to the report.
4      Q.  Is it fair to say that Miss Trower and
5  Mr. McMichael's statements differ from
6  Mr. Vicknair's statement? I will specify. On the
7  point of who was in a relationship with whom.
8      A.  As it relates to the relationship, they,
9  in their statements, refer to each other either as
10 boyfriend/girlfriend, and with her stating that he
11 is her ex-boyfriend, with Mr. Vicknair's stating
12 that she is his girlfriend. So, yeah, definitely.
13     Q.  During the course of his background
14 check, there is no indication in this record that
15 NOP interviewed Miss Denise Trower, correct?
16     A.  That is correct.
17     Q.  Also no indication that NOPD interviewed
18 Mr. Byron McMichael, correct?
19     A.  That is correct.
20     Q.  Is it fair to say Mr. McMichael's and
21 Miss Trower's version of events is different from
22 the summary of this incident accepted by NOPD?
23         MR. ROQUEMORE:
24             Objection. Form.
25         THE WITNESS:

**21**

1  Answer?
2  MR. ROQUEMORE:
3  Yes.
4  THE WITNESS:
5  It is different, but the
6  recommendation is just that it's a
7  small summary. It does not tell in
8  detail the whole thing, which is why
9  you have a whole background process.
10  It is just a short gist of what the
11  investigator did at the time, so you
12  can't look at the fact that those --
13  the things that are in this particular
14  police report is not taken into
15  consideration. Just because the
16  investigator did not mention it in his
17  summary recommendation does not mean he
18  took it in consideration, which he said
19  it is a possible reject.
20  BY MS. PHELPS:
21  Q. What has NOPD done to change their hiring
22  practices specifically in terms of the
23  investigation of criminal history and background to
24  prevent this from happening again?
25  MR. ROQUEMORE:

**22**

1  Object to the form.
2  THE WITNESS:
3  When you say prevent, what do you
4  mean exactly?
5  BY MS. PHELPS:
6  Q. Prevent the hiring of someone like Rodney
7  Vicknair.
8  MR. ROQUEMORE:
9  Objection to form.
10  THE WITNESS:
11  As a person who has a criminal
12  history?
13  MS. PHELPS:
14  Yes.
15  THE WITNESS:
16  There have been great -- a lot of
17  changes and reform in NOPD background
18  process. Mr. Vicknair was hired pre-
19  consent decree. Post-consent decree,
20  there was a lot of things in place.
21  Just because someone has a criminal
22  history does not make them an automatic
23  reject for a candidate. A lot of
24  things are taken into consideration.
25  Now we look at a candidate, potential

**23**

1  police recruit candidate, holistically.
2  We look at everything. We take a lot
3  of things in consideration. A person
4  still can be acceptable under similar
5  circumstances, but the areas of concern
6  are notated within that investigator's
7  report.
8  BY MS. PHELPS:
9  Q. Have there been any changes to NOPD's
10  hiring practices since the arrest and conviction of
11  Rodney Vicknair?
12  A. As it relates to?
13  Q. Just any changes to hiring practices
14  related to criminal history or to prevent --
15  MR. ROQUEMORE:
16  I am going to object to form. It's
17  overly broad. She already -- she did
18  testify that there were many changes
19  after the consent decree, but you can
20  answer, if you are able to.
21  THE WITNESS:
22  I will say this. I will say that
23  our hiring practice that we have now is
24  the most strenuant [sic] in the state,
25  I would say, and that if anyone, not

**24**

1  just Mr. Vicknair, but anybody does
2  anything, we do look at it. We look at
3  things that -- we always evaluate. Like
4  I said, it's very strenuant, but we
5  always look at things that we may have
6  -- can improve on. And looking at
7  Mr. Vicknair's background and looking
8  at the investigator, even though it was
9  then, in today's standards, because of
10  the way this is categorized, and even
11  though you look at it, we have
12  disqualifiers.
13  Some things you don't look in
14  account. They are taken together. He
15  still will fall in what we call now --
16  back then they say reject. What we
17  call now as possible. Those things we
18  look at, because they have -- he has a
19  criminal history, and we look at in
20  depth more now those police reports and
21  things in there, because it shows the
22  makeup of that individual and would
23  they be a good candidate for a police
24  officer. So it's a lot of changes, and
25  it's more strenuant than any other law

**Page 25**

1   enforcement agency in the state.
2   BY MS. PHELPS:
3       Q. To make sure I understand right, looking
4   at this investigation and evaluation, Rodney
5   Vicknair would still be classified as a possible
6   candidate?
7       A. Back then they said possible reject.
8   Just because what we have -- there is nothing else
9   in his background that's indicative to anything.
10  Even though he has that, that was in 1986. He was
11  a juvenile at that time, right? Those earlier
12  things that happened. And I think -- was that 19
13  -- it may have been mentioned. I'm not a hundred
14  percent sure.
15      Q. What incident are you referring to in
16  1986?
17      A. Some of those earlier things. What was
18  that? 50 -- I think it was --
19          MR. ROQUEMORE:
20              3950? Is that the page that you are
21  --
22          THE WITNESS:
23              Yeah.
24          MR. ROQUEMORE:
25              That's the page that has the listing

**Page 26**

1   of his criminal history.
2           THE WITNESS:
3               Even the investigator. I know we
4           mentioned that in his actual -- the
5           arrest history, which is CNO-3891 and
6           CNO-3892, it actually explained all of
7           the arrests. I know it didn't mention
8           in the summary, but under his actual
9           arrest history, it talked about all his
10          arrests.
11  BY MS. PHELPS:
12      Q. Did you say he was a juvenile in 1985?
13      A. No, it's not. With the checks, they
14  noted all of the arrests under the Arrest History
15  Information, but they also noted that they checked
16  with the Special Officers Division, Narcotics,
17  NCIC, that revealed no record of any arrest
18  warrants or any negative information. They checked
19  with Slidell. City court of Slidell, Baton Rouge
20  Police Department, Jefferson Parish Police
21  Department, Louisiana Department of Public Safety
22  and Corrections, Office of Motor Vehicles, the
23  clerk of Criminal District Court, Orleans Parish,
24  the FBI, and there were no record of arrest
25  warrants or any information concerning the

**Page 27**

1   applicant. They noted any other arrests that was
2   on his thing as well as Ascension Parish.
3       Q. An incident or arrest like the one that
4   Vicknair had in 2005, the year before he was hired,
5   would still not be disqualifying for a candidate
6   today?
7       A. What you mean disqualifying? What do you
8   mean?
9       Q. What would they be classified as? You
10  said there is accepted, reject, or possible reject?
11      A. There are automatic violations, and there
12  are possible violations to the hiring criteria.
13  Automatic is just that. It's automatic. Possible
14  are those that you can have further review. It
15  does not necessarily knock them out of the process,
16  but it's something that you look at.
17      Q. What are examples of automatic
18  violations?
19      A. Just an example, if a person pled guilty
20  to any misdemeanors, felony, or anything like that.
21  If they pled guilty, found guilty, or anything.
22  That's just an example of an automatic. If a
23  person -- say if he worked for another law
24  enforcement agency, and he was terminated, that's
25  an automatic in today's standards. So, as I said,

**Page 28**

1   it's much more strenuant after the consent decree.
2       Q. What are examples of possible violations?
3       A. If he was arrested for a misdemeanor or
4   traffic or something very minor.
5       Q. What about an arrest for battery?
6       A. That is a misdemeanor. It falls under
7   that.
8       Q. What about assault with a deadly weapon?
9           MR. ROQUEMORE:
10              Objection. Form.
11          THE WITNESS:
12              As it relates to this report?
13  BY MS. PHELPS:
14      Q. I'm just asking would assault with a
15  deadly weapon be a possible violation.
16      A. They all are violations. It's just where
17  you place them at that makes a difference.
18      Q. Have there been any changes to hiring
19  practice directly in response to any information
20  about Rodney Vicknair?
21      A. No. I mean, I've answered that it's more
22  strenuant. Like I said, looking at his background,
23  besides those few little incidents, there was
24  nothing else in his background, and this was just
25  one step in the process, right. Just because you

**29**

1  pass a background doesn't mean that you
2  automatically become a police officer. He has to
3  have a psychological exam, a medical exam. Those
4  things are in play, too. So now it is a whole
5  process. And a person, a candidate, does when they
6  pass, they go to the next step of the process. As
7  it relates now, this background, the next step of
8  the process is a psychological and medical exam,
9  right. And if an individual candidate fails any
10 one of those, then they do not become -- it's
11 almost like the last step. They do not get hired
12 as a police officer. So those are some of the
13 things. Not changes as it relates to this but
14 changes because of the consent decree.
15    Q.  I saw in here that there is a section of
16 lie detector test results. Is that --
17    A.  It is computerized voice stress analysis.
18 I'm trying not to say the acronym for it.
19    Q.  But that's not the psychological exam, is
20 it?
21    A.  Correct. No.
22    Q.  Do you know what psychological exam it
23 is, the label for it?
24       MR. ROQUEMORE:
25          Objection. Form.

**30**

1       THE WITNESS:
2          That's through civil service. We do
3       not deal with the psychological exam.
4       All we do is say that the person is --
5       as it relates to now is cleared, Their
6       background, and they are referred to
7       those -- to -- and it was a similar
8       process back then. He had to have a
9       psychological exam prior to being hired
10      as well as a medical exam.
11 BY MS. PHELPS:
12    Q.  Do you know what the psychological exam
13 is testing for indications of?
14    A.  We do not know. We do not have nothing
15 in that process. That's civil service.
16    Q.  I don't have any further questions for
17 you. Thank you for your time today.
18 EXAMINATION BY MR. ROQUEMORE.
19    Q.  Lieutenant Powell, I have a couple of
20 questions for you. Just to be clear, your name is
21 Nicole Powell, right?
22    A.  Correct.
23    Q.  And you're a lieutenant with the NOPD?
24    A.  Yes.
25    Q.  What department do you work in?

**31**

1    A.  I am the commander of the Recruitment
2  Applicant Investigation Section.
3    Q.  How long have you held that title?
4    A.  Almost a year.
5    Q.  Before that what did you do?
6    A.  I was assigned to the office of the
7  superintendent.
8    Q.  How long have you worked for the New
9  Orleans Police Department?
10   A.  Almost 22 years.
11   Q.  And in your job duties currently, could
12 you just give us a nutshell of your job duties with
13 respect to background checks?
14   A.  As it relates to a background check, what
15 I do now, throughout that process, I do meet with
16 investigators and throughout that process we talk
17 about various things in the background, any issues,
18 anything that we look at, anything we need to do.
19 I am one of the people that signs off on the
20 applicant's background.
21   Q.  Can you tell me where you fall in the
22 supervisory chain of command with respect to the
23 necessity for doing background checks for NOPD,
24 potential NOPD officers?
25   A.  All backgrounds?

**32**

1    Q.  All backgrounds.
2    A.  So there's different categories. So all
3  backgrounds. I'm the final signature on
4  acceptables and next to last signature on
5  unacceptables. So unacceptables, the last step is
6  for the deputy chief to review.
7    Q.  With respect to --
8    A.  And I do want to say this. One of the
9  things that we do now that may be different than
10 the background back in 2006 is if there is any
11 issues or the recommendation of the individual is
12 different, so backgrounds now go through several
13 steps review, right. It goes from the investigator
14 to the investigator's immediate supervisor, from
15 the investigator's immediate supervisor to an
16 administrative person, from an administrative
17 person, which is a civilian, so it is not a
18 commissioned, a civilian, to the lieutenant of the
19 unit, which is me. If that person acceptable, I am
20 the final say-so on the applicant. If there is a
21 thing where the person is unacceptable, then I am
22 not. It goes to a deputy chief as the final
23 reviewer of that particular applicant. If anything
24 in the process -- if the supervisor say, yes, this
25 person is acceptable, the civilian reviewer, if

### Page 33

1  they said yes, this person acceptable, and I say,
2  no, this person is not -- is unacceptable, then it
3  goes to an independent board, becomes the final
4  thing. So it's totally taken out of recruitment,
5  which is something different and goes to an
6  independent review board that is held and convened
7  and makes the final determination on that
8  particular person. So those are some of the steps
9  as far as reviewing background that it goes
10  through, and the process is two ways. If
11  acceptable, I am the last stop. If it's
12  unacceptable, I'm next to last. If there is any
13  disagreement on whether a person acceptable,
14  unacceptable, and point of reviewing, it goes to an
15  independent board.
16     Q.  Is that something that came out of the
17  consent decree?
18     A.  Correct.
19     Q.  And just for the record, who is the
20  deputy chief that it is kicked up to?
21     A.  The current deputy chief over recruitment
22  is Michelle Woodfork.
23     Q.  In looking at the background check that
24  was conducted on Rodney Vicknair, was there any
25  indication that Rodney Vicknair had committed any

### Page 34

1  act of sexual assault on a child --
2     A.  No.
3     Q.  -- previously? Was there any indication
4  that Rodney Vicknair had committed any sexual
5  assault upon a woman?
6     A.  No.
7     Q.  How would sexual assaults on children,
8  sexual assaults on women, be treated by NOPD
9  currently under their policies and practices?
10     A.  That's an automatic rejection. I am not
11  sure or don't recall if I did a part of -- I could
12  say this. A part of the process it is now there is
13  prescreening. Prescreening looks at just that, the
14  criminal history. I also do checks in -- sex
15  offender checks, all those different type of checks
16  in those sexual databases to see if an individual
17  candidate is listed in that. If a candidate do pop
18  up in any of those databases, or if any criminal
19  history that indicates anything of a sexual nature,
20  then that candidate, based on our hiring criteria,
21  is an automatic rejection, and they don't even make
22  it to the background process.
23     Q.  With respect to the criminal event that
24  Mr. Vicknair was involved in, the arrest that was
25  later expunged or charges were dropped and then

### Page 35

1  later expunged, how did the fact the charges were
2  dropped and later expunged play into the
3  evaluation, based upon your current -- your
4  experience and your viewpoint looking back?
5     A.  I'm just going to speak on his. Just
6  looking at it, and it was dropped and expunged
7  could be for a number of reasons, but it also could
8  be for -- a lot of what these things could be a
9  misunderstanding. No, we did not interview those,
10  and we usually do not get involved in criminal
11  matters, because we're just looking at the
12  applicant themselves, but it does play a factor
13  that along the way something happened and may or
14  may not -- could be or lead to what it was in the
15  original report, but it does not make that person,
16  okay, he is good. He has no violations. He still
17  has violations, because you still was arrested.
18  Just because the court case is expunged and the
19  charges dropped doesn't mean that what we term no
20  violations. There still is a possible violation,
21  because you have that arrest. So we more focused
22  on the whole case, but we still look at that
23  arrest.
24     Q.  Can you say whether or not the New
25  Orleans Police Department took that allegation of

### Page 36

1  batteries by Officer -- potential Officer Vicknair
2  seriously?
3     A.  I would say so, with the investigator.
4  They -- at the time, the investigator who
5  investigated this took that in consideration before
6  they made their determination, and as well as
7  looking at his case. It was signed off on by a
8  deputy chief.
9     Q.  One other point. In doing background
10  checks of officers in general, when an officer has
11  -- you stated --
12     A.  Police candidate, not officer.
13     Q.  Oh, let me -- I'll rephrase it. A police
14  candidate. You stated that when a police candidate
15  has been terminated, that's an automatic --
16     A.  From another law enforcement agency, yes.
17     Q.  So you would not hire somebody who has
18  been terminated?
19     A.  Correct.
20     Q.  Can you explain how you would treat or
21  the NOPD would treat an officer who has resigned
22  while being investigated for a disciplinary action?
23     A.  That's an automatic rejection.
24     Q.  Could you explain that a little bit more?
25     A.  It is an automatic rejection. You

## Page 37

1 resigned under investigation.
2  Q. Any investigation?
3  A. Any investigation.
4   MR. ROQUEMORE:
5    Those are all the questions that I
6    have.
7 BY MS. PHELPS:
8  Q. A point of clarification. You mentioned
9 it would be an automatic rejection violation for
10 sexual assault, anything involving a child. What
11 if that were a dropped charge or expunged? Well,
12 not expunged but if it had been dropped?
13  A. It would still --
14  Q. Automatic?
15  A. Yeah. That's why I mentioned that there
16 is different categories. There is automatic and
17 that's possible. It's a violation, how we look at
18 it in its totality. Even if a person has been
19 arrested and for whatever reason, for a sexual
20 offense, right, and whatever reason. The victim
21 don't want to testify or something like that. That
22 is a very egregious offense, and that person
23 wouldn't fit as a police candidate for NOPD. So
24 that would be an automatic unacceptable candidate
25 for us. So I don't want you to think that, okay,

## Page 38

1 it's case by case, and everybody fits different.
2 That's a lot. So that person wouldn't even make it
3 into the background phase in the process we have
4 now, because in prescreening, they will be
5 unacceptable in prescreening, so it wouldn't be a
6 background, and it would be permanent. So a person
7 -- just because a person is unacceptable, they do
8 have a opportunity to come back, and a lot of times
9 that particular offense, with a sexual offense,
10 would be a permanent offense. That means you never
11 could apply to be a police officer with New Orleans
12 Police Department.
13   MS. PHELPS:
14    Those are all my questions. Thank
15    you.
16   MR. ROQUEMORE:
17    Okay. We will read and sign and ask
18    for it to be expedited, if possible.
19    We only need the electronic version.
20    [End of deposition, 10:50]

## Page 39

WITNESS CERTIFICATE

    I, LIEUTENANT NICOLE POWELL, have
read or have had the foregoing testimony read to me
pursuant to Rule 30(e) of the Federal Rules of
Civil Procedure and do hereby certify that to the
best of my ability and understanding, it is a true
and correct transcription of my testimony.

Please check one:

_____ Without corrections

_____ With corrections (see errata sheet)

_____    _____
LIEUTENANT NICOLE POWELL      Date

## Page 40

CERTIFICATE

    This certification is valid only for
a transcript accompanied by my original signature
and original required seal on this page.
    I, SANDRA P. DIFEBBO, Certified
Court Reporter, in and for the State of Louisiana,
as the officer before whom this testimony was
taken, do hereby certify that LIEUTENANT NICOLE
POWELL, after having been duly sworn by me upon
authority of R.S. 37:2554, did testify as
hereinbefore set forth in the foregoing 39 pages;
    That the testimony was reported by
me in stenotype, was prepared and transcribed by me
or under my personal direction and supervision, and
is a true and correct transcript to the best of my
ability and understanding;
    That the transcript has been
prepared in compliance with transcript format
guidelines required by statute or by rules of the
board, that I have acted in compliance with the
prohibition on contractual relationships as defined
by Louisiana Code of Civil Procedure Article 1434
and in rules and advisory opinions of the board;
    That I am not related to Counsel or
to the parties herein, nor am I otherwise
interested in the outcome of this matter.

_Sandra P. DiFebbo_
Sandra P. DiFebbo,
Certified Shorthand Reporter
Date: 1/15/24

**A**
ability 39:9
  40:11
able 23:20
above-enti...
  1:17
acceptable
  16:25 23:4
  32:19,25
  33:1,11,13
acceptables
  32:4
accepted
  20:22
  27:10
accompani...
  40:3
account
  24:14
acronym
  29:18
act 34:1
acted 40:13
action 36:22
actual 26:4,8
administer...
  4:23
administra...
  32:16,16
advised
  19:25
advisory
  40:15
agency 25:1
  27:24
  36:16
agreed 4:3
ahead 11:16
allegation
  35:25
analysis
  29:17

answer 4:17
  6:10,11,16
  11:12
  12:23
  13:17
  15:23 19:7
  21:1 23:20
answered
  28:21
anybody
  24:1
APPEARA...
  2:1
applicant
  11:7 17:3
  27:1 31:2
  32:20,23
  35:12
applicant's
  31:20
applicants
  10:1 13:21
application
  7:23 9:7,15
  12:22
  13:16 15:6
apply 38:11
April 11:2
areas 23:5
arrest 14:10
  15:9 23:10
  26:5,9,14
  26:17,24
  27:3 28:5
  34:24
  35:21,23
arrested
  14:15 15:5
  28:3 35:17
  37:19
arrests 26:7
  26:10,14
  27:1

Article 40:14
Ascension
  27:2
asked 12:23
  13:16
asking 6:6,7
  6:8 28:14
assault 28:8
  28:14 34:1
  34:5 37:10
assaults 34:7
  34:8
assigned
  31:6
ASSISTANT
  2:9
ASSOCIA...
  2:3
attach 9:2,19
attempted
  14:16,19
attorney
  1:21 2:4,9
  7:22
authority
  40:7
automatic
  22:22
  27:11,13,13
  27:17,22,25
  34:10,21
  36:15,23,25
  37:9,14,16
  37:24
automatic...
  29:2
Avenue 2:4
aware 5:24
  14:15 15:1
  15:4

**B**
B 3:8

back 14:11
  15:8 24:16
  25:7 30:8
  32:10 35:4
  38:8
background
  7:13,24 9:8
  9:16,25
  10:3 12:19
  20:13 21:9
  21:23
  22:17 24:7
  25:9 28:22
  28:24 29:1
  29:7 30:6
  31:13,14,17
  31:20,23
  32:10 33:9
  33:23
  34:22 36:9
  38:3,6
backgrounds
  31:25 32:1
  32:3,12
BARBIER
  1:6
based 34:20
  35:3
Baton 26:19
batteries
  36:1
battery
  14:20 15:5
  15:11 28:5
bed 15:17
began 19:22
beginning
  14:11
  18:13
behalf 1:4
believe 12:11
  14:10
best 39:9

  40:10
bit 36:24
board 33:3,6
  33:15
  40:13,15
boyfriend
  17:25
boyfriend/...
  20:10
bring 9:3
broad 23:17
burglary
  14:16,19
Byron 17:9
  20:18

**C**
C 40:1,1
call 24:15,17
candidate
  22:23,25
  23:1 24:23
  25:6 27:5
  29:5,9
  34:17,17,20
  36:12,14,14
  37:23,24
car 19:24
case 5:13,16
  5:18 35:18
  35:22 36:7
  38:1,1
categories
  32:2 37:16
categorized
  24:10
cause 1:17
CERTIFI...
  39:1
certification
  4:13 40:3
Certified
  1:19 2:17

  4:21 40:5
  40:22
certify 39:8
  40:6
chain 31:22
change 21:21
changes
  22:17 23:9
  23:13,18
  24:24
  28:18
  29:13,14
Chapetta
  12:8
character
  14:1
characterize
  15:15,21
charge 37:11
charges 17:1
  34:25 35:1
  35:19
Charles 2:4
check 7:24
  9:8,16,25
  10:3 12:19
  20:14
  31:14
  33:23
  39:13
checked
  26:15,18
checks 26:13
  31:13,23
  34:14,15,15
  36:10
chief 32:6,22
  33:20,21
  36:8
child 34:1
  37:10
children 34:7
circumstan...

SOUTHERN COURT REPORTERS, INC.
(504) 488-1112

| | | | | | |
|---|---|---|---|---|---|
| 16:14,19 23:5 | 9:21 31:1 **commencing** 1:23 | 40:14 **convened** 33:6 | 22:11,21 23:14 24:19 26:1 | **demanded** 16:6 **Denise** 17:13 | 37:16 38:1 **direction** 40:10 |
| **city** 1:9,15,21 1:21 2:8,9 2:11 4:5 9:11 26:19 | **commissio...** 32:18 **commit** 10:13 | **conviction** 23:10 **copy** 7:14 9:10 17:5 | 26:23 34:14,18,23 35:10 **criteria** | 17:24 18:16 20:15 **department** | **directly** 28:19 **disagreem...** 33:13 |
| **civil** 4:8 5:18 30:2,15 39:8 40:14 | **committed** 33:25 34:4 **Companies** | **correct** 6:12 7:24 8:1 9:17 10:5,6 | 27:12 34:20 **current** 12:5 | 2:8 26:20 26:21,21 30:25 31:9 | **disciplinary** 36:22 **disqualifiers** |
| **civilian** 32:17,18,25 **clarification** 37:8 | 1:10 2:12 **compliance** 40:12,13 | 10:9,10,15 12:5,20,21 13:19 15:3 15:7,13 | 33:21 35:3 **currently** 31:11 34:9 | 35:25 38:12 **deposition** 1:15 4:5,18 | 24:12 **disqualifying** 27:5,7 **District** 1:1,2 |
| **classified** 25:5 27:9 **clear** 30:20 | **computeri...** 29:17 **concern** 23:5 | 16:11,15,23 17:7,18 18:3 20:15 | **D** **D** 3:1,8 | 5:6 6:15,21 7:10,15,18 9:3 38:20 | 1:10 2:12 26:23 **Division** |
| **cleared** 30:5 **clerk** 26:23 **CNO-3887** 9:20 | **concerning** 26:25 **conducted** 33:24 | 20:16,18,19 29:21 30:22 33:18 | **damage** 14:16,21 **databases** 34:16,18 | **depth** 24:20 **deputies** 19:25 20:2 | 26:16 **DOCKET** 1:4 |
| **CNO-3891** 26:5 **CNO-3892** 26:6 | **conducting** 12:18 **consent** 22:19 | 36:19 39:10 40:10 **corrections** | **Date** 39:20 40:23 **dated** 10:16 | **deputy** 32:6 32:22 33:20,21 | **document** 7:15 **documents** 7:9,12 9:3 |
| **CNO-3896** 10:22 **CNO-3922** 13:14 | 23:19 28:1 29:14 33:17 | 26:22 39:14,16 **counsel** 4:4 40:16 | **dating** 17:17 **Daughter** 1:5 **day** 1:22 | 36:8 **designated** 1:16 4:6 5:21 6:2 | 9:12 **DOE** 1:9 2:12 |
| **CNO-3947** 11:16 **CNO-3950** | **considerati...** 21:15,18 22:24 23:3 | **counts** 14:21 14:22 **couple** 11:16 | **days** 6:25 7:3 **deadly** 28:8 28:15 | **detail** 21:8 **detector** 29:16 | **doing** 31:23 36:9 **drawn** 14:5 |
| 14:14,24 **CNO-3967** 17:4 | 36:5 **considering** 16:19 | 30:19 **course** 7:4 20:13 | **deal** 30:3 **December** 6:22 10:16 | **determinat...** 33:7 36:6 **DiFebbo** | **dropped** 17:2 34:25 35:2,6,19 |
| **Code** 40:14 **come** 7:5 38:8 | **consistent** 19:15 **contacted** 12:4,9 13:7 | **court** 1:1 26:19,23 35:18 40:5 | **decree** 22:19 22:19 23:19 28:1 | 1:19 2:17 4:21 40:5 40:21 | 37:11,12 **duly** 5:2,7 40:7 |
| **coming** 15:16 **command** | 13:12 **contacts** 12:14 | **crimes** 10:13 **criminal** 10:4 | 29:14 33:17 **Defendants** | **differ** 20:5 **difference** | **duties** 31:11 31:12 |
| 31:22 **commander** 1:10 2:12 | **continue** 17:21 **contractual** | 10:8,9,11 14:9,16,21 21:23 | 1:12 **defined** 40:14 **definitely** 20:12 | 28:17 **different** 20:21 21:5 32:2,9,12 33:5 34:15 | **E** **E** 3:1,1,8,8 40:1,1 **earlier** 25:11 |

| | | | | | |
|---|---|---|---|---|---|
| 25:17 | 27:19,22 | find 13:4 | 18:16 | hire 36:17 | 32:14,15 |
| EASTERN | examples | 16:5 | gist 21:10 | hired 22:18 | important |
| 1:2 | 27:17 28:2 | finding 10:4 | give 6:10 | 27:4 29:11 | 9:25 10:11 |
| egregious | Exhibit 3:11 | 15:16 | 17:19,24 | 30:9 | 13:20,22 |
| 37:22 | 3:12 9:2,19 | firearm 20:1 | 18:8,20 | hires 10:7 | 16:14 |
| either 20:9 | expedited | first 5:2 9:20 | 31:12 | hiring 8:5 | improve 24:6 |
| electronic | 38:18 | 14:3 15:8 | given 1:17 | 15:2 21:21 | incident |
| 38:19 | experience | fit 37:23 | giving 6:10 | 22:6 23:10 | 15:11,15,21 |
| employed | 35:4 | fits 38:1 | go 10:19 29:6 | 23:13,23 | 16:3 17:7 |
| 11:1 | explain 36:20 | focused | 32:12 | 27:12 | 20:22 |
| employment | 36:24 | 35:21 | goals 13:25 | 28:18 | 25:15 27:3 |
| 7:23 9:7,16 | explained | following | goes 32:13,22 | 34:20 | incidents |
| 10:20 12:4 | 26:6 | 1:18 9:20 | 33:3,5,9,14 | history 10:4 | 28:23 |
| EMS 11:2 | expunged | follows 5:3 | going 7:14 | 10:8,9,11 | include |
| 12:8,10,11 | 17:2 34:25 | foregoing | 9:19 10:19 | 10:20 14:9 | 19:13 |
| enforcement | 35:1,2,6,18 | 39:6 40:8 | 15:8 17:4 | 14:10 15:9 | includes 10:4 |
| 25:1 27:24 | 37:11,12 | form 4:16 | 23:16 35:5 | 21:23 | independent |
| 36:16 | ——— F ——— | 11:12 | good 5:11,12 | 22:12,22 | 33:3,6,15 |
| errata 39:16 | F 40:1 | 15:19,23 | 8:23 10:12 | 23:14 | indicates |
| evaluate 24:3 | fact 21:12 | 18:24 19:5 | 24:23 | 24:19 26:1 | 34:19 |
| evaluation | 35:1 | 20:24 22:1 | 35:16 | 26:5,9,14 | INDICATI... |
| 10:16 15:9 | factor 10:12 | 22:9 23:16 | great 22:16 | 34:14,19 | 8:13 |
| 25:4 35:3 | 35:12 | 28:10 | guess 16:2 | holistically | indication |
| event 34:23 | fails 29:9 | 29:25 | guidelines | 23:1 | 20:14,17 |
| events 20:21 | fair 14:5 20:4 | formalities | 40:13 | home 15:11 | 33:25 34:3 |
| everybody | 20:20 | 4:10,12 | guilty 27:19 | 15:16,16 | indications |
| 38:1 | fall 24:15 | format 40:12 | 27:21,21 | 16:5 | 30:13 |
| evidence | 31:21 | forth 40:8 | gun 19:24 | HOPE 2:3 | indicative |
| 4:19 | falls 28:6 | found 27:21 | ——— H ——— | hours 6:25 | 25:9 |
| ex-boyfriend | Family 12:10 | four 9:12 | H 3:8 8:10 | 7:1 | individual |
| 18:3 20:11 | far 33:9 | further 27:14 | Hall 1:21 | house 16:6 | 24:22 29:9 |
| ex-girlfriend | FBI 26:24 | 30:16 | happened | hundred | 32:11 |
| 15:12 | Federal 4:8 | ——— G ——— | 15:11 | 25:13 | 34:16 |
| exact 18:10 | 39:7 | G.H 1:5 | 25:12 | ——— I ——— | individually |
| exactly 22:4 | felony 27:20 | general | 35:13 | identified | 1:4 6:8 |
| exam 29:3,3 | Ferguson 1:9 | 36:10 | happening | 17:9,12,23 | information |
| 29:8,19,22 | 2:11 | girlfriend | 21:24 | 17:25 18:6 | 12:16 |
| 30:3,9,10 | figure 18:18 | 15:12,17 | held 31:3 | identifies | 14:10 |
| 30:12 | filing 4:13 | 16:6 17:12 | 33:6 | 12:7 18:2 | 15:10 |
| EXAMIN... | final 32:3,20 | 17:18,23 | hereinbefore | illegal 14:17 | 26:15,18,25 |
| 5:10 30:18 | 32:22 33:3 | 20:12 | 40:8 | 14:22 | 28:19 |
| examined 5:2 | 33:7 | girlfriend's | hereto 4:4 | immediate | inside 18:15 |
| example | | | | | Insurance |

| | | | | | |
|---|---|---|---|---|---|
| 1:10 2:12 | join 11:8 | long 31:3,8 | 35:11 | name 30:20 | 22:17 |
| interested | JUDGE 1:6 | look 11:20 | McMichael | Narcotics | 30:23 |
| 40:17 | juvenile | 17:25 | 17:10,16 | 26:16 | 31:23,24 |
| interview | 25:11 | 21:12 | 18:1,6,14 | narrative | 34:8 36:21 |
| 35:9 | 26:12 | 22:25 23:2 | 19:2,14,18 | 17:5,15 | 37:23 |
| interviewed | | 24:2,2,5,11 | 20:18 | 18:14 19:1 | NOPD's 8:5 |
| 12:19 | K | 24:13,18,19 | McMichael's | nature 34:19 | 23:9 |
| 19:13 | kicked 33:20 | 27:16 | 17:17,22 | NCIC 26:17 | normal 6:15 |
| 20:15,17 | kind 18:9 | 31:18 | 20:5,20 | necessarily | notated 23:6 |
| investigated | knife 18:21 | 35:22 | McNair | 27:15 | noted 26:14 |
| 36:5,22 | 19:3,16,19 | 37:17 | 19:16 | necessity | 26:15 27:1 |
| investigation | 19:21 | looked 16:15 | mean 21:17 | 31:23 | notes 16:9,13 |
| 9:21 21:23 | knock 27:15 | 16:19 | 22:4 27:7,8 | need 31:18 | 16:18 |
| 25:4 31:2 | know 6:15,17 | looking 8:3 | 28:21 29:1 | 38:19 | notice 7:15 |
| 37:1,2,3 | 10:8 14:15 | 8:15,17 | 35:19 | needs 10:8 | 7:18 |
| investigator | 15:24 26:3 | 9:20 14:23 | means 38:10 | negative | noticed 5:6 |
| 12:18 16:4 | 26:7 29:22 | 24:6,7 25:3 | medical 29:3 | 26:18 | notified 7:5 |
| 16:9,13,18 | 30:12,14 | 28:22 | 29:8 30:10 | neighbors | number 5:21 |
| 21:11,16 | knowledge | 33:23 35:4 | meet 31:15 | 12:20 13:6 | 11:17 35:7 |
| 24:8 26:3 | 5:25 | 35:6,11 | mention | 13:11 | nutshell |
| 32:13 36:3 | | 36:7 | 21:16 26:7 | never 38:10 | 31:12 |
| 36:4 | L | looks 34:13 | mentioned | New 1:9,15 | |
| investigato... | L 4:1 | lot 9:11 | 25:13 26:4 | 1:22 2:5,8 | O |
| 16:23 23:6 | label 29:23 | 22:16,20,23 | 37:8,15 | 2:11,12 4:5 | O 3:1 4:1 |
| 32:14,15 | law 2:4,8 4:9 | 23:2 24:24 | Michelle | 12:24 | oath 4:23 5:3 |
| investigators | 24:25 | 35:8 38:2,8 | 33:22 | 13:18 14:4 | object 19:5 |
| 16:1 31:16 | 27:23 | Louisiana | minor 1:4 | 31:8 35:24 | 22:1 23:16 |
| involved | 36:16 | 1:2,20,22 | 28:4 | 38:11 | Objection |
| 15:12 | lead 35:14 | 2:11,18 | misdemea... | Nicole 1:17 | 11:12 |
| 34:24 | leave 11:7 | 4:22 26:21 | 28:3,6 | 4:6 5:1 | 15:19,23 |
| 35:10 | 16:7 | 40:5,14 | misdemea... | 30:21 39:5 | 18:24 |
| involving | lie 29:16 | | 27:20 | 39:20 40:6 | 20:24 22:9 |
| 37:10 | lieutenant | M | misunderst... | NOP 20:15 | 28:10 |
| issues 31:17 | 1:16 4:6 | M 3:1 | 35:9 | NOPD 5:21 | 29:25 |
| 32:11 | 5:1,11 | MAG 1:7 | month 7:4 | 5:21,25 6:3 | objections |
| | 30:19,23 | makeup | morning | 6:8,11,13 | 4:15 |
| J | 32:18 39:5 | 24:22 | 5:11,12 | 6:16 9:16 | obligation |
| JAMES 2:9 | 39:20 40:6 | man 15:17 | Motor 26:22 | 9:23 10:3,7 | 6:17 |
| January 1:23 | listed 34:17 | 16:7 | Moving 14:9 | 11:9 12:9 | offender |
| 7:19 | listing 25:25 | March 11:2 | | 15:1,4,15 | 34:15 |
| Jefferson | little 28:23 | 15:6 | N | 15:21 17:4 | offense 37:20 |
| 26:20 | 36:24 | matter 40:17 | N 3:1,1,1,8 | 20:17,22 | 37:22 38:9 |
| job 31:11,12 | locate 18:10 | matters | 4:1 | 21:21 | 38:9,10 |

| | | | | | |
|---|---|---|---|---|---|
| 17:6 26:22 31:6 | Orleans,Lo... 2:5 | 2:10 permanent | 33:14 36:9 37:8 | practices 21:22 | 11:8 13:23 14:6 |
| officer 10:1,7 10:13,13 12:25 13:18,24 14:2,4 24:24 29:2 29:12 36:1 36:1,10,12 36:21 38:11 40:6 | outcome 40:17 overly 23:17 | 38:6,10 person 12:8 14:1,2 22:11 23:3 27:19,23 29:5 30:4 32:16,17,19 32:21,25 33:1,2,8,13 35:15 37:18,22 38:2,6,7 | police 9:22 12:25 13:18,24 14:2,4 17:5 21:14 23:1 24:20,23 26:20,20 29:2,12 31:9 35:25 36:12,13,14 37:23 38:11,12 | 23:10,13 34:9 pre- 22:18 predicting 10:12 prepare 7:9 prepared 7:22 9:6 40:9,12 preparing 6:20,24 7:7 prescreening 34:13,13 38:4,5 | prohibition 40:14 properly 5:6 property 14:17,22 psychologi... 29:3,8,19 29:22 30:3 30:9,12 Public 26:21 pulled 18:21 19:3,21 pulling 19:16 |
| | **P** | | | | |
| | P 1:19 2:17 4:1,21 40:5 40:21 | | | | |
| | page 3:3,9 7:25 8:4 9:20 10:22 10:25 11:17 13:2 13:4,6 14:12 15:8 15:9 25:20 25:25 40:4 | | | | |
| officers 13:20 26:16 31:24 36:10 | | personal 40:10 phase 38:3 PHELPS 2:3 3:4 5:4,10 8:16 9:1 11:15,24 13:3,9,13 15:20 16:8 18:25 19:17 21:20 22:5 22:13 23:8 25:2 26:11 28:13 30:11 37:7 38:13 | policies 34:9 poorly 17:3 pop 34:17 position 9:22 possible 16:21,24 21:19 24:17 25:5 25:7 27:10 27:12,13 28:2,15 35:20 37:17 38:18 | prevent 21:24 22:3 22:6 23:14 previously 34:3 Primary 12:10 printed 9:11 prior 30:9 Priority 11:2 12:8,11 Procedure 4:8 39:8 40:14 process 8:6 21:9 22:18 27:15 28:25 29:5 29:6,8 30:8 30:15 31:15,16 32:24 33:10 34:12,22 38:3 produce 6:17 profession | purposes 4:8 pursuant 1:18 4:7 39:7 |
| officiated 4:23 | | | | | **Q** |
| Oh 8:21 36:13 | pages 11:16 40:8 | | | | qualified 5:7 question 4:16 6:3,7 12:24 13:17,21,22 16:17 |
| okay 10:24 13:15 14:25 18:20 35:16 37:25 38:17 | papers 9:11 Parish 17:6 26:20,23 27:2 part 4:18 17:22 18:17 34:11,12 | | | | questions 13:10 30:16,20 37:5 38:14 |
| opinions 40:15 opportunity 38:8 original 35:15 40:3 40:4 | particular 21:13 32:23 33:8 38:9 parties 4:4 18:20 40:16 Parts 8:9 pass 29:1,6 people 13:24 31:19 percent 25:14 Perdido 1:21 | place 22:20 28:17 Plaintiff 1:6 2:6 play 29:4 35:2,12 please 11:17 39:13 pled 27:19,21 pocket 18:21 19:3 point 20:7 | Post-consent 22:19 potential 22:25 31:24 36:1 potentially 16:10 Powell 1:17 4:7 5:1,11 30:19,21 39:5,20 40:7 practice 23:23 28:19 | | **R** |
| | | | | | R 40:1 R.S 40:7 RAYNE 1:4 read 18:13 18:17 38:17 39:6 39:6 reading 4:10 17:19 realize 6:2,6 |
| Orleans 1:9 1:15,22 2:8 2:11,12 4:5 12:24 13:18 14:4 26:23 31:9 35:25 38:11 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| really 6:7 | 16:21 | reserved | ROBY 1:7 | seal 40:4 | 32:3,4 40:3 |
| reason 14:1 | 34:10,21 | 4:11,17 | Rodney 1:9 | sealing 4:12 | signed 36:7 |
| 37:19,20 | 36:23,25 | residence | 7:13 9:7 | second 14:12 | signing 4:11 |
| reasons | 37:9 | 18:6,7,10 | 10:19 11:1 | 15:9 17:20 | signs 31:19 |
| 13:25 35:7 | related 23:14 | 18:12,15,19 | 12:23 22:6 | 17:24 18:8 | similar 23:4 |
| recall 34:11 | 40:16 | resigned | 23:11 25:4 | section 10:23 | 30:7 |
| received 9:10 | relates 8:9,12 | 36:21 37:1 | 28:20 | 12:22 | Skip 11:16 |
| recommen... | 16:3,21 | respect 31:13 | 33:24,25 | 29:15 31:2 | sleeping |
| 16:24 17:1 | 20:8 23:12 | 31:22 32:7 | 34:4 | see 14:25 | 18:15 |
| 21:6,17 | 28:12 29:7 | 34:23 | Room 1:22 | 17:22 18:8 | Slidell 26:19 |
| 32:11 | 29:13 30:5 | response | ROQUEM... | 18:17,19 | 26:19 |
| recommen... | 31:14 | 28:19 | 2:9 3:5 5:8 | 34:16 | small 18:9 |
| 9:22 | relationship | responsive... | 8:11,14,18 | 39:16 | 21:7 |
| record 20:14 | 20:7,8 | 4:16 | 8:22 11:11 | seen 7:15 | somebody |
| 26:17,24 | relationships | results 29:16 | 11:19 13:1 | 9:12 | 36:17 |
| 33:19 | 40:14 | returned | 13:5 15:18 | seize 20:2 | sought 4:18 |
| records | repeat 16:17 | 16:5 | 15:22 | sentence | speak 5:21 |
| 11:25 | rephrase | revealed | 18:23 19:4 | 14:3 | 35:5 |
| 14:14 | 36:13 | 26:17 | 19:8 20:23 | seriously | Special 26:16 |
| recruit 9:23 | report 12:6 | review 7:9,12 | 21:2,25 | 36:2 | specifically |
| 23:1 | 12:13,17 | 27:14 32:6 | 22:8 23:15 | service 30:2 | 4:11,13 |
| recruitment | 17:5,14 | 32:13 33:6 | 25:19,24 | 30:15 | 8:10 21:22 |
| 9:21 31:1 | 18:1,4,5 | reviewed | 28:9 29:24 | set 40:8 | specify 20:6 |
| 33:4,21 | 19:21,23 | 16:25 | 30:18 37:4 | sex 34:14 | spent 6:23 |
| recruits | 20:1,3 | reviewer | 38:16 | sexual 34:1,4 | spoke 12:13 |
| 13:21 | 21:14 23:7 | 32:23,25 | Rouge 26:19 | 34:7,8,16 | St 2:4 17:6 |
| refer 20:9 | 28:12 | reviewing | Rule 39:7 | 34:19 | standards |
| referenced | 35:15 | 33:9,14 | rules 4:8 | 37:10,19 | 24:9 27:25 |
| 16:16 | reported | right 6:11 | 39:7 40:13 | 38:9 | start 5:5 11:1 |
| referred 30:6 | 2:15 40:9 | 7:19,21,25 | 40:15 | Shaun 1:9 | Starting |
| referring | reporter 1:19 | 8:7 9:23 | | 2:11 | 10:22 |
| 6:13 11:21 | 2:17 4:22 | 10:14,17 | S | sheet 39:16 | starts 14:11 |
| 25:15 | 5:7 40:5,22 | 11:3,5 12:1 | S 4:1 | Sheriff's 17:6 | state 1:20 |
| reflect 17:2 | reports 24:20 | 12:9 14:18 | safekeeping | short 21:10 | 2:18 4:22 |
| reform 22:17 | represent | 14:25 | 20:2 | Shorthand | 12:13,16 |
| refresh 17:19 | 5:25 | 17:10 | Safety 26:21 | 1:19 2:17 | 17:16 19:2 |
| reject 21:19 | representa... | 18:22 | Sandra 1:19 | 4:21 40:22 | 23:24 25:1 |
| 22:23 | 1:16 4:6 | 19:19 25:3 | 2:17 4:21 | show 7:14 | 40:5 |
| 24:16 25:7 | 6:3 | 25:11 | 40:5,21 | shows 24:21 | stated 16:4 |
| 27:10,10 | Representi... | 28:25 29:9 | save 4:15 | sic 19:16 | 16:25 17:1 |
| rejected | 2:6,11 | 30:21 | saw 29:15 | 23:24 | 18:14 |
| 16:11,20 | required | 32:13 | say-so 32:20 | sign 38:17 | 19:23 |
| rejection | 40:4,13 | 37:20 | says 18:11 | signature | 36:11,14 |

| | | | | | |
|---|---|---|---|---|---|
| statement | 15:10 | 36:15,18 | 27:6 30:17 | 32:21 33:2 | 25:5 27:4 |
| 14:7 17:23 | 20:22 21:7 | terms 21:22 | today's 24:9 | 33:12,14 | 28:20 |
| 18:19,20 | 21:17 26:8 | test 29:16 | 27:25 | 37:24 38:5 | 33:24,25 |
| 19:11 20:6 | superinten... | testified 5:2 | told 7:22 | 38:7 | 34:4,24 |
| statements | 31:7 | testify 7:22 | Topic 7:23 | unaccepta... | 36:1 |
| 19:12 20:5 | supervision | 9:6 23:18 | 8:5,17,19 | 32:5,5 | Vicknair's |
| 20:9 | 40:10 | 37:21 40:7 | topics 5:22 | understand | 7:13 9:7,15 |
| states 1:1 | supervisor | testimony | 5:25 6:4 | 5:13,18,20 | 10:19 12:3 |
| 19:18 | 12:7,12,14 | 39:6,10 | totality 37:18 | 6:18 25:3 | 12:20 14:3 |
| stating 20:10 | 32:14,15,24 | 40:6,9 | totally 33:4 | understan... | 14:9 15:12 |
| 20:11 | supervisors | testing 30:13 | traffic 28:4 | 39:9 40:11 | 20:6,11 |
| statute 40:13 | 12:4,5 | Thank 30:17 | transcribed | unit 32:19 | 24:7 |
| stenotype | supervisory | 38:14 | 40:9 | UNITED 1:1 | victim 17:9 |
| 40:9 | 31:22 | thereof 4:18 | transcript | unusual 11:7 | 37:20 |
| step 28:25 | sure 7:21 8:3 | thing 21:8 | 40:3,10,12 | UPTON 1:4 | viewpoint |
| 29:6,7,11 | 25:3,14 | 27:2 32:21 | 40:12 | use 14:17,22 | 35:4 |
| 32:5 | 34:11 | 33:4 | transcripti... | usually 35:10 | Vincent 12:8 |
| steps 32:13 | sworn 5:2 | things 21:13 | 39:10 | | violation |
| 33:8 | 40:7 | 22:20,24 | treat 36:20 | V | 28:15 |
| stipulate 5:5 | | 23:3 24:3,5 | 36:21 | valid 40:3 | 35:20 37:9 |
| 5:9 | T | 24:13,17,21 | treated 34:8 | various | 37:17 |
| stipulated | T 3:1,8 4:1,1 | 25:12,17 | Trower | 13:25 | violations |
| 4:3 | 40:1,1 | 29:4,13 | 17:13,16,17 | 31:17 | 27:11,12,18 |
| stipulation | take 23:2 | 31:17 32:9 | 17:24 18:2 | vehicle 20:1 | 28:2,16 |
| 1:18 | taken 4:7 | 35:8 | 18:5,16 | Vehicles | 35:16,17,20 |
| stop 33:11 | 21:14 | think 25:12 | 19:2,15,22 | 26:22 | voice 29:17 |
| strange | 22:24 | 25:18 | 20:4,15 | verbiage | |
| 15:17 | 24:14 33:4 | 37:25 | Trower's | 18:11 | W |
| stranger 16:5 | 40:6 | threaten | 18:7 20:21 | version 20:21 | waived 4:14 |
| Street 1:21 | talk 31:16 | 19:22 | true 39:9 | 38:19 | want 6:25 |
| 2:10 | talked 18:9 | threatened | 40:10 | VERSUS 1:8 | 12:24 |
| strenuant | 26:9 | 19:19,20 | trying 13:4 | Vicknair 1:9 | 13:17,23 |
| 23:24 24:4 | Talking | three 18:20 | 18:8,10,18 | 5:17 9:22 | 14:2 32:8 |
| 24:25 28:1 | 12:12 | tied 10:25 | 29:18 | 11:1 12:23 | 37:21,25 |
| 28:22 | Tammany | time 4:17 | two 14:21,22 | 13:16 | wanted 14:4 |
| stress 29:17 | 17:6 | 6:23 15:1 | 33:10 | 14:15 | 14:8 |
| subject 16:4 | tell 21:7 | 21:11 | type 34:15 | 15:16 | wants 13:24 |
| Subsection | 31:21 | 25:11 | | 16:10,20 | warrants |
| 7:23 | ten 7:2 11:5 | 30:17 36:4 | U | 18:2,21 | 26:18,25 |
| sufficient | 11:6,8 | times 38:8 | U 4:1 | 19:2,3,14 | way 24:10 |
| 6:16 | term 35:19 | title 31:3 | Uh-huh | 19:18,24 | 35:13 |
| Suite 2:5,10 | terminated | today 5:14 | 12:21 | 22:7,18 | ways 33:10 |
| summary | 27:24 | 7:19 9:4,6 | unaccepta... | 23:11 24:1 | We'll 9:2 |

| W (cont.) | 1 (cont.) | 3 (cont.) |
|---|---|---|
| we're 35:11 | 11:8 31:10 | 22 31:10 |
| weapon | | 2500 2:5 |
| 14:17,22 | **Z** | |
| 20:2 28:8 | | **3** |
| 28:15 | **0** | 3 8:15,19 |
| witness 4:24 | | 30 3:5 |
| 5:20 8:13 | **1** | 30(e) 39:7 |
| 8:20,24 | 1 1:10,10 | 37 3:4 |
| 11:13,22 | 2:12,13 | 37:2554 40:7 |
| 15:25 19:6 | 3:11 7:23 | 3891 14:11 |
| 19:10 | 7:23 9:2 | 14:13,14 |
| 20:25 21:4 | 1/15/24 40:23 | 3897 16:2,15 |
| 22:2,10,15 | 10 1:10,10 | 39 40:8 |
| 23:21 | 2:12,13 | 39407 11:23 |
| 25:22 26:2 | 10:22 | 3947 11:18 |
| 28:11 30:1 | 10:00 1:23 | 11:25 |
| 39:1 | 7:19 | 3950 25:20 |
| woman 34:5 | 10:50 38:20 | 3967 17:20 |
| women 34:8 | 10th 1:22 | 18:14 |
| Woodfork | 7:19 | 3968 17:21 |
| 33:22 | 1300 1:21 | |
| words 18:9 | 2:10 | **4** |
| work 30:25 | 1434 40:14 | |
| worked | 14th 10:16 | **5** |
| 27:23 31:8 | 19 25:12 | 5 3:4 |
| working 13:7 | 1985 26:12 | 50 25:18 |
| wouldn't | 1986 25:10 | 5E03 1:22 |
| 37:23 38:2 | 25:16 | 2:10 |
| 38:5 | 1997 11:2 | |
| | | **6** |
| **X** | **2** | |
| X 3:1,1,8,8 | 2 3:12 8:1,5 | **7** |
| XYZ 1:10 | 8:17,21,23 | 70112 2:11 |
| 2:12 | 9:19 | 70170 2:5 |
| | 2:21-cv-407 | |
| **Y** | 1:5 | **8** |
| yeah 8:21 | 2004 11:3 | |
| 11:6 20:12 | 2005 15:6 | **9** |
| 25:23 | 27:4 | 9 3:11,12 |
| 37:15 | 2006 10:17 | 10:22 |
| year 15:5 | 32:10 | 9685 2:5 |
| 27:4 31:4 | 201 2:4 | |
| years 11:5,6 | 2024 1:23 | |