**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, individually and        DOCKET NO.
On behalf of her minor
Daughter, G.H.          2:21-cv-407
      Plaintiff,        JUDGE BARBIER
                        MAG. ROBY
VERSUS
RODNEY VICKNAIR, SHAUN FERGUSON,
THE CITY OF NEW ORLEANS; DOE
DISTRICT COMMANDER; DOES 1 TO 10;
and XYZ INSURANCE COMPANIES 1 TO 10,

      Defendants.

      DEPOSITION OF THE CITY OF NEW ORLEANS,
through its designated representative, CAPTAIN
PRECIOUS BANKS, given in the above-entitled cause,
pursuant to the following stipulation, before
Sandra P. DiFebbo, Certified Shorthand Reporter, in
and for the State of Louisiana, at the Office of
the City Attorney, 1300 Perdido Street, City Hall,
Room 5E03, New Orleans, Louisiana, on the 10th day
of January, 2024, commencing at 10:45 AM.

**2**

1  APPEARANCES:
2
3      MOST & ASSOCIATES
       BY: HOPE PHELPS
4      ATTORNEY AT LAW
       201 St. Charles Avenue
5      Suite 2500, #9685
       New Orleans,Louisiana  70170
6      Representing the Plaintiff
7
8      CITY OF NEW ORLEANS
       LAW DEPARTMENT
9      BY: JAMES ROQUEMORE,
       ASSISTANT CITY ATTORNEY -and-
10     ELIZABETH WEIGAND,
       ASSISTANT CITY ATTORNEY
11     1300 Perdido Street
       Suite 5E03
12     New Orleans, Louisiana  70112
       Representing Shaun Ferguson, the City of
13     New Orleans, DOE District Commander, DOES
       1 to 10 and XYZ Insurance Companies
14     1 to 10
15
16  Reported By:
17
18     Sandra P. DiFebbo
       Certified Shorthand Reporter
19     State of Louisiana
20
21
22
23
24
25

**3**

1      E X A M I N A T I O N      I N D E X
2
3                         Page
4  BY MS. PHELPS:              5, 44
5  BY MR. ROQUEMORE:              27
6
7
8      E X H I B I T      I N D E X
9                      Page
10
11  Exhibit 3            7
12  Exhibit 4            11
13  Exhibit 5            19
14  Exhibit 6            20
15  Exhibit 7            22
16
17
18
19
20
21
22
23
24
25

**4**

1      S T I P U L A T I O N
2
3      It is stipulated and agreed by and
4  among counsel for the parties hereto that the
5  deposition of THE CITY OF NEW ORLEANS, through its
6  designated representative, CAPTAIN PRECIOUS BANKS,
7  is hereby being taken pursuant to the Federal Rules
8  of Civil Procedure for all purposes in accordance
9  with law;
10      That the formalities of reading and
11  signing are specifically reserved;
12      That the formalities of sealing,
13  certification, and filing are hereby specifically
14  waived.
15      That all objections, save those as to
16  the form of the question and responsiveness of the
17  answer are hereby reserved until such time as this
18  deposition or any part thereof is used or sought to
19  be used in evidence.
20              * * * * *
21      Sandra P. DiFebbo, Certified Shorthand
22  Reporter, in and for the State of Louisiana,
23  officiated in administering the oath to the
24  witness.
25

EXHIBIT
tabbies
5

**Page 5**

1      CAPTAIN PRECIOUS BANKS, having been first
2  duly sworn, was examined and testified on her
3  oath as follows:
4  EXAMINATION BY MS. PHELPS:
5      Q.  Good morning, Captain Banks.
6      A.  Good morning.
7      Q.  Do you know what case you are here for
8  today?
9      A.  Yes.  Rodney Vicknair.
10     Q.  You understand that is the civil case?
11     A.  Yes.
12     Q.  You understand that you are a witness
13 NOPD has designated to speak for it on a number of
14 topics?
15     A.  Yes.
16     Q.  Are you aware that you were made
17 available to represent the knowledge of NOPD on
18 those topics?
19     A.  Yes.
20     Q.  You realize that I am asking questions of
21 you, but, really, I'm asking questions of NOPD?
22     A.  Yes.
23     Q.  When you give an answer, that was the
24 answer of NOPD?
25     A.  Yes.

**Page 6**

1      Q.  When I say you, I'm referring to NOPD.
2  You understand?
3      A.  Yes.
4      Q.  Unlike a normal deposition, I don't know
5  is not a sufficient answer, because NOPD has an
6  obligation to produce someone who does know.  Do
7  you understand?
8      A.  Yes.
9      Q.  When did you begin preparing for this
10 deposition?
11     A.  I did a brief overview, I believe, when
12 the date was set to put on my calendar.  I also
13 reviewed documents on yesterday in reference to
14 this investigation, and, also, this morning.
15     Q.  How much time would you say you spent
16 preparing?
17     A.  Combined, maybe two or three hours.
18     Q.  What documents did you review?
19     A.  I reviewed the case investigation
20 completed by then Sergeant Lawrence Jones, and,
21 also, the officer's PIB history, which is the
22 disciplinary history.
23     Q.  I am going to show you a copy of our
24 Notice of Deposition, which is already marked as
25 Exhibit 1 to the 30(b)6 deposition.  Have you seen

**Page 7**

1  this document before?
2      A.  Yes.
3      Q.  This is just the notice of the 30(b)(6)
4  deposition, correct?
5      A.  Correct.
6      Q.  And your attorney has told me that you
7  are prepared to testify on Topic 1, Subsection 2.
8  Is that right?
9      A.  Yes.
10     Q.  Topic 6?
11     A.  Yes.
12     Q.  Topic 7?
13     A.  Yes.
14     Q.  And Topic 8?
15     A.  Yes.
16     Q.  Actually, we're going to toss that topic.
17 Have you brought any documents with you to the
18 deposition today?
19     A.  No.
20     Q.  I am going to show you a copy of the
21 Public Integrity Bureau Officer Complaint History
22 Short Form for Rodney Vicknair.  Or, actually,
23 that's multiple topics.  This is going to be
24 Exhibit 3.  Have you seen this document before?
25     A.  Yes.

**Page 8**

1      Q.  This is the complaint and disciplinary
2  history for Rodney Vicknair, correct?
3      A.  Yes.
4      Q.  You are familiar with Rodney Vicknair's
5  complaint and disciplinary history?
6      A.  Yes.  I have knowledge of it.
7      Q.  At the bottom of the page, on April 24th,
8  2009, a complaint was received regarding Rodney
9  Vicknair's professional conduct, correct?
10     A.  Correct.
11     Q.  That complaint was sustained?
12     A.  Correct.
13     Q.  Vicknair was given a letter of reprimand,
14 correct?
15     A.  Correct.
16     Q.  He was not suspended for this incident?
17     A.  No.
18     Q.  A complaint was received on February 6th,
19 2014 in connection with a vehicle pursuit, correct?
20     A.  Correct.
21     Q.  And that complaint was sustained?
22     A.  Correct.
23     Q.  And Vicknair was suspended for three days
24 in connection with that, correct?
25     A.  Correct.

9

1  Q.  Just over a month later, another
2  complaint was received in connection with a vehicle
3  pursuit March 28th, 2014, correct?
4  A.  Correct.
5  Q.  That complaint was also sustained?
6  A.  Correct.
7  Q.  And Vicknair was suspended for one day
8  and penalized with driver training, correct?
9  A.  Correct.
10  Q.  A complaint was received on January 26th,
11  2016 regarding professional conduct, correct?
12  A.  Correct.
13  Q.  And that complaint was also sustained?
14  A.  Correct.
15  Q.  And Vicknair was given a letter of
16  reprimand?
17  A.  Correct.
18  Q.  But he was not suspended?
19  A.  No.
20  Q.  If my math is right, Vicknair has a total
21  of four sustained complaints prior to the subject
22  incident.
23  A.  Four, yes.
24  Q.  There were also several not sustained
25  complaints; is that right?

10

1  A.  Correct.
2  Q.  I think there are five not sustained.
3  A.  Yes.  Five not sustained.
4  Q.  For what reasons would a complaint not be
5  sustained?
6  MR. ROQUEMORE:
7  Objection. Form.  You can answer.
8  THE WITNESS:
9  Not sustained means you can't prove
10  or disprove the allegation.
11  BY MS. PHELPS:
12  Q.  Is there any point where a person would
13  be terminated for having too many complaints or
14  complaints for -- is there a limited number of
15  complaints?
16  A.  So when discipline is issued, discipline
17  -- when you have a hearing, you look at the past
18  three years, 36 months of the complaint of same
19  action.  It has to be the same allegation, and
20  there is a penalty matrix when you have a first
21  offense, a second offense, third offense, maybe
22  fourth offense.  So if it's a second offense, the
23  penalty increases, and there is different levels.
24  Like there is a Level A for something that is
25  considered minor where you would get an oral

11

1  reprimand or a letter of reprimand, possible one-
2  day suspension.  You have a Level B that may start
3  off as a letter of reprimand, a one-day suspension
4  or a three-day suspension.  It just depends on the
5  level and how egregious the allegation is.  And if
6  it's maybe like a Level D, I believe, D or higher,
7  you can face demotion or termination.
8  Q.  I am going to show you a copy of the
9  signed NOPD investigation.  This is the NOPD signed
10  investigation and disciplinary recommendations.
11  Have you seen this before?
12  A.  Yes.
13  Q.  According to this document, NOPD's Public
14  Integrity Bureau investigated Vicknair for a
15  potential violation of Revised Statute 14:134,
16  Malfeasance in Office.  Is that correct?
17  A.  Yes.  That is one of the allegations.
18  Q.  This case was assigned to then Sergeant
19  Lawrence Jones with the Public Integrity Bureau,
20  correct?
21  A.  Correct.
22  Q.  And according to this document, the
23  investigation began on Monday, September 21st,
24  2020; is that right?
25  A.  That's what the document says.

12

1  Q.  On that date, Sergeant Jones went to the
2  home of the minor and her mother to take statements
3  from them; is that right?
4  A.  According to this report.
5  MR. ROQUEMORE:
6  What page are we looking at?
7  MS. PHELPS:
8  The second page.
9  MR. ROQUEMORE:
10  Which paragraph, if you don't mind?
11  MS. PHELPS:
12  Fourth paragraph.
13  BY MS. PHELPS:
14  Q.  According to this, Counselor Andrea
15  Wright was also present; is that right?
16  A.  According to the document, correct.
17  Q.  And the child's mother gave a statement
18  to Sergeant Jones, which was attached as Exhibit D
19  to the report and also copied here.
20  MR. ROQUEMORE:
21  Objection to the form.  I'll point
22  out Exhibit D doesn't necessarily
23  indicate that she was -- she gave a
24  statement on that day.
25  BY MS. PHELPS:

13

1    Q.  Would you please read the first sentence
2  of Page 2 -- Paragraph 4 on Page 2?
3    A.  "Sergeant Lawrence Jones requested" --
4    Q.  Starting with Reign agreed.
5    A.  "Reign agreed and on Monday September 21,
6  2020, Sergeant Lawrence Jones relocated to Reign
7  Haney's residence located at 860 Olga Street, New
8  Orleans, Louisiana 70128.  Sergeant Jones was met
9  at the residence by Ms. Andria Wright the family's
10  counselor, Reign Hainey and her daughter G████,
11  'G████ H████'" I also have a question on Page 3
12  where it states what Exhibit D is.  This paragraph.
13  He is saying that the interview was attached as
14  Exhibit D.  It looks like the paragraph above says
15  she concluded her statement on Monday, September
16  21st, 2020 at 5:31 PM, according to Sergeant Jones'
17  report.
18    Q.  This was tape recorded, correct?
19    A.  It says it was, yeah, audio recorded.
20    Q.  Is this -- the text underneath statement
21  of Rayne Hainey, victim's mother, is that the
22  summary that Sergeant Jones would have written?
23    A.  Yes.  This will be Sergeant Jones'
24  summary of his interview with Miss Hainey.
25    Q.  So in this summary, Sergeant Jones notes

14

1  that he was told that Vicknair had responded to a
2  call for assistance and taken the child to
3  Children's Hospital for a sexual assault
4  examination previously.  Is that right?
5    A.  Correct.
6    Q.  Sergeant Jones summarizes here that the
7  mom reported that she thought that Vicknair was
8  trying to be a positive role model for the child?
9    A.  Correct.
10    Q.  Sergeant Jones goes on to describe that
11  the mother quoted she became alarmed when Vicknair
12  started coming over to their home more frequently?
13    A.  Correct.
14    Q.  Sergeant Jones goes on to describe
15  several incidents, including one where Officer
16  Vicknair shouted, "Nice ass," at the child from his
17  marked police vehicle in public.
18    MR. ROQUEMORE:
19      Objection.  Form.
20    THE WITNESS:
21      Yes.
22  BY MS. PHELPS:
23    Q.  Does the summary describe a photograph
24  that Sergeant Jones was shown?
25    A.  I remember a mention of a photograph.

15

1  Let me double read.  She showed it to him.  It
2  doesn't say if she showed it to Sergeant Jones, but
3  she does -- the mother does talk about a photograph
4  in her daughter's phone.
5    Q.  How is the photograph described?
6    A.  The photograph is described as G████
7  really close with Rodney Vicknair.  His arm is
8  wrapped around her waist with their face touching.
9    Q.  According to the summary, the child's
10  mother describes to Sergeant Jones that Vicknair
11  wore a pin on his uniform that she understood to
12  represent he was specialized, certified in some
13  form of trauma response?
14    A.  Correct.
15    Q.  At this point, NOPD had information that
16  Vicknair had at least an inappropriate relationship
17  with a child he had come into contact with on the
18  job, correct?
19    A.  Correct.
20    MR. ROQUEMORE:
21      Objection to form.  You may answer.
22    THE WITNESS:
23      Correct.
24  BY MS. PHELPS:
25    Q.  I'm looking at the page with the

16

1  Photograph Exhibit E.
2    MR. ROQUEMORE:
3      The next page.
4  BY MS. PHELPS:
5    Q.  It appears that Sergeant Jones was shown
6  a copy of the photo?  Is that right?
7    A.  Correct.
8    Q.  The paragraph below that, on Tuesday,
9  September 22nd, 2020, Sergeant Jones looked up the
10  report for the call that Vicknair had initially
11  responded to; is that right?
12    A.  Correct.
13    Q.  Sergeant Jones noted that Vicknair had
14  requested the assistance of a child abuse detective
15  relative to the first-degree rape of a 14-year-old
16  victim; is that right?
17    A.  Correct.
18    Q.  Detective Kimberly Wilson had been
19  assigned as the child abuse detective; is that
20  right?
21    A.  Correct.
22    Q.  Was an arrest ever made in connection
23  with that report?
24    A.  The initial incident not involving
25  Vicknair as the accused?

17

```
1     Q.  Yes.
2     A.  I don't know that to my knowledge.
3     Q.  Also, on Tuesday, September 22nd,
4  Sergeant Jones drafted an introduction letter to
5  the mother who made the complaint?
6     A.  Correct.
7     Q.  After taking the statement from the
8  child's mother and seeing the photograph, did NOPD
9  have probable cause to arrest Vicknair?
10        MR. ROQUEMORE:
11           Objection.  Form.
12        THE WITNESS:
13           Yes.
14        MR. ROQUEMORE:
15           Could you repeat that last question
16        and answer?
17        {COURT REPORTER READ BACK}
18  BY MS. PHELPS:
19     Q.  I'm now showing you a copy of the
20  Affidavit for Arrest Warrant and the Arrest Warrant
21  for Rodney Vicknair.  Have you seen this document
22  before?
23     A.  Yes.
24     Q.  This was a valid warrant, correct?
25     A.  Correct.
```

18

```
1     Q.  It was supported by probable cause for
2  malfeasance in office, correct?
3     A.  Correct.
4     Q.  NOPD sought this warrant because it
5  concluded Vicknair had committed malfeasance in
6  office, correct?
7     A.  Wait.  Repeat.
8     Q.  NOPD sought this warrant because it
9  believed Vicknair had committed malfeasance in
10  office, correct?
11        MR. ROQUEMORE:
12           Objection.  Form.
13        THE WITNESS:
14           You said sought?  There was a word
15        that I was --
16        MR. ROQUEMORE:
17           The arrest warrant speaks for
18        itself, but you can answer.
19        THE WITNESS:
20           Yes.  They found probable cause.
21  BY MS. PHELPS:
22     Q.  That is the city's position, that
23  Vicknair committed malfeasance in office among
24  other crimes, correct?
25     A.  As of the evidence obtained at the time,
```

19

```
1  yes.
2     Q.  Let me go back to Exhibit 4.
3        MR. ROQUEMORE:
4           This arrest warrant was -- what was
5        the exhibit number on that?
6        MS. PHELPS:
7           Exhibit 5.
8  BY MS. PHELPS:
9     Q.  The arrest warrant includes Revised
10  Statute 14:134, Malfeasance in Office, because
11  Officer Rodney Vicknair used his position as a
12  public employee to befriend a 15-year-old victim
13  after transporting her to Children's Hospital to
14  have a sexual assault kit completed, correct?
15        MR. ROQUEMORE:
16           Objection.  Form.
17        THE WITNESS:
18           Correct.
19  BY MS. PHELPS:
20     Q.  The description I just read of
21  malfeasance in office, is that found on the
22  disciplinary recommendations page of the signed
23  investigation report under Rule 2, Moral Conduct?
24     A.  Yes.
25     Q.  Sergeant Jones' investigation proved this
```

20

```
1  beyond a preponderance of evidence, correct?
2     A.  Correct.
3     Q.  You couldn't obtain an arrest warrant and
4  arrest someone for malfeasance in office unless
5  they committed one of the offenses described in the
6  malfeasance in office statute?
7     A.  Correct.  They must meet one of the
8  elements.
9     Q.  I will attach the Malfeasance in Office
10  statute as Exhibit 6.  Are you familiar with this
11  statute?
12     A.  Yes.
13     Q.  Vicknair was arrested for malfeasance in
14  office because he intentionally performed a duty
15  lawfully required of him in an unlawful manner; is
16  that correct?
17        MR. ROQUEMORE:
18           Objection.  Form.
19        THE WITNESS:
20           Correct.
21        MR. ROQUEMORE:
22           I'll also object to that is beyond
23        the scope.  So your answer to that was
24        yes?
25        THE WITNESS:
```



21

```
 1        Yes.
 2 BY MS. PHELPS:
 3    Q.  An element of this charge, arrest, is
 4 obviously that Vicknair acted as an officer for the
 5 City of New Orleans, correct?
 6    A.  He was on duty at the time, correct.
 7    Q.  This was a valid arrest, because he
 8 committed the crimes of sexual battery and indecent
 9 behavior with a juvenile while in office, correct?
10        MR. ROQUEMORE:
11           Objection.  Form.
12        THE WITNESS:
13           Based upon the preponderance of the
14           evidence.
15 BY MS. PHELPS:
16    Q.  Did NOPD make any findings regarding
17 Vicknair's credibility?
18    A.  No.
19    Q.  NOPD deemed the child, G███ H████, to
20 be credible, correct?
21    A.  Correct.
22    Q.  NOPD deemed the mother, Rayne Hainey, to
23 be credible, correct?
24    A.  Correct.
25    Q.  NOPD deemed the counselor, Andrea Wright,
```

22

```
 1 to be credible, correct?
 2    A.  Correct.
 3    Q.  The Public Integrity Bureau and the
 4 previous superintendent, Shaun Ferguson, all
 5 concurred in the disciplinary recommendations of
 6 Sergeant Jones, correct?
 7    A.  Correct.
 8    Q.  And this included the complaint of
 9 malfeasance in office, correct?
10    A.  Correct.  Also, just to make a note, the
11 signature for Shaun Ferguson was made by his
12 designee.  If you look at the handwriting above,
13 then Deputy Chief Arlinda Westbrook.  The
14 handwriting was similar.
15    Q.  Shaun Ferguson's designee is authorized
16 to sign for him?
17    A.  Correct.
18    Q.  I'm going to show you a copy of the
19 Factual Basis from the criminal case.  We'll attach
20 this as Exhibit 7.  Have you seen this document
21 before?
22    A.  I don't remember.  I may have.
23    Q.  The Factual Basis is the basis of facts
24 that or summary of facts that provide the basis for
25 Rodney Vicknair's conviction for deprivation of
```

23

```
 1 rights under color of law, correct?
 2        MR. ROQUEMORE:
 3           I object.  This is beyond the scope.
 4           These happened well after the PIB
 5           investigation was closed.
 6 BY MS. PHELPS:
 7    Q.  Comparing this to NOPD's investigation,
 8 does NOPD have any reason to believe that the
 9 statements in this document are untrue?
10        MR. ROQUEMORE:
11           Objection.  Form.  Beyond the scope.
12        THE WITNESS:
13           I'm still reviewing the document.
14           The Factual Basis is similar to the
15           information contained within the Public
16           Integrity Bureau Investigation.
17 BY MS. PHELPS:
18    Q.  In reading the Factual Basis, is there
19 anything in it that is inconsistent with NOPD's
20 investigation and findings?
21        MR. ROQUEMORE:
22           Objection.  Form.  Beyond the scope.
23        THE WITNESS:
24           It appears to be similar.
25 BY MS. PHELPS:
```

24

```
 1    Q.  Does NOPD have any basis to believe that
 2 Rodney Vicknair did not do any of the acts
 3 described in the factual basis?
 4        MR. ROQUEMORE:
 5           Same objection.
 6        THE WITNESS:
 7           Based upon the preponderance of the
 8           evidence, as I stated previously, the
 9           information in the Factual Basis is
10           similar.  It mirrors the NOPD's
11           investigation.
12 BY MS. PHELPS:
13    Q.  What has NOPD done to change its'
14 practices to prevent this from happening again?
15    A.  Well, yearly there is in-service training
16 on the rules and regulations of the department.
17 There is discussion about laws.  Also, we have a
18 EPIC program, but that's usually when another
19 employee is present to basically let another
20 employee know if they're doing something wrong or
21 it appears that there is something wrong.  In an
22 instance where a person is alone, as this appear
23 Officer Vicknair was alone, on his own, you really
24 can't govern a person's moral conduct.  When you
25 hire somebody, you -- it's on the basis you believe
```

25

1  that this person has morals. So as an individual,
2  you really can't tell a person how to behave. An
3  adult. That's something that is possible learned
4  behavior. So, like I said, we usually have annual
5  training on the do's and don't's of the rules and
6  regulations, state, federal, municipal laws, but as
7  an individual in this case, Mr. Vicknair acted
8  alone from what the investigation reveals, and this
9  is more of a moral issue than of something that the
10 department could have prevented.
11      Due to his previous disciplinary history,
12 which I have reviewed, there was no prior
13 allegations of any inappropriate misconduct with
14 anyone, so that would have not been any red flags
15 to anyone, including his supervisors. The depart-
16 ment does have processes in place to trigger if
17 there is complaints of this sort, especially a
18 pattern where a deep dive will be done, including
19 being seen by our psychologist, but there was no
20 previous history with Officer Vicknair. Once
21 again, he acted alone. There was no other
22 witnesses as far as employees of the department
23 which would -- may have prevented this, but, as I
24 say, we have an EPIC program when there is other
25 employees present where they can step in, and, you

26

1  know, tell a person, hey, what you're doing is
2  wrong as far as maybe flirting or something. Just,
3  you know, call EPIC when you -- it is you and that
4  person, and you are counseling them prior to
5  telling a supervisor or reporting it.
6      Q.  You mentioned Vicknair acting alone. I
7  understand that Vicknair frequently worked alone;
8  is that right?
9      A.  Correct.
10     Q.  Do officers have an option to work alone
11 or with partners?
12          MR. ROQUEMORE:
13              Objection. This is going well
14          beyond the scope. If you want to couch
15          it in terms of potential violations of
16          policy and practice, she is certainly
17          here to talk about those related items.
18 BY MS. PHELPS:
19     Q.  So my original question had been if NOPD
20 has done anything since Rodney Vicknair's arrest,
21 any changes to their practices or policies since
22 that time, and you mentioned annual trainings. Has
23 there been a change to the trainings that are given
24 since Rodney Vicknair's arrest?
25     A.  Every year --

27

1          MR. ROQUEMORE:
2              I am going to object. We do have
3          somebody to speak to training.
4          MS. PHELPS:
5              Okay. No further questions. Thank
6          you.
7          MR. ROQUEMORE:
8              I do have a few.
9  EXAMINATION BY MR. ROQUEMORE:
10     Q.  Your name is Captain Precious Banks,
11 correct?
12     A.  Correct.
13     Q.  And you work for the New Orleans Police
14 Department's Public Integrity Bureau, right?
15     A.  Correct.
16     Q.  Explain what the Public Integrity Bureau
17 does.
18     A.  The Public Integrity Bureau investigates
19 allegations of misconduct against employees of the
20 New Orleans Police Department. Upon a completion
21 of those investigations, depending on what the
22 findings are, if it's a sustained finding, hearings
23 are scheduled and disciplinary hearings are
24 conducted while recommendations are made.
25     Q.  I am going to ask a little bit more about

28

1  that. I wanted to talk about you first. As
2  captain, where do you fall within the hierarchy of
3  the PIB, as they call it?
4      A.  As a captain assigned to the Public
5  Integrity Bureau, I fall underneath the deputy
6  superintendent of the bureau.
7      Q.  Are you the person essentially in charge
8  of the PIB?
9      A.  Yes.
10     Q.  I did have a question about the steps in
11 the process, so walk us through the steps from the
12 initial complaint to the imposition of discipline,
13 all of the -- there is a number of steps, right?
14     A.  Yes.
15     Q.  And they all fall under the civil service
16 rules that are applicable to police officers; is
17 that right?
18     A.  Correct.
19     Q.  There is also protections that are
20 provided for police officers under a police officer
21 bill of rights, which is statutory, right?
22     A.  Correct.
23     Q.  Walk us through the procedural steps that
24 go into composing a discipline.
25     A.  So we start from the beginning with the

29

1  complaint. We receive a complaint. A preliminary
2  investigation is conducted. Upon completion of a
3  preliminary investigation, depending on what the
4  allegation is, is where the complaint is assigned.
5      Q. Explain that. Criminal versus civil.
6      A. So we have administrative investigations
7  which are only administrative in nature, meaning
8  it's a rule or a policy violation. We have
9  criminal, which means it has a criminal allegation.
10 With our criminal cases, I'm going to start with,
11 because that's a little more complex. When an
12 intake person first receives a complaint, and if it
13 has a criminal allegation, the criminal section is
14 notified immediately, because it's about collecting
15 the evidence and securing the evidence so we won't
16 lose anything.
17      If it's a hot call, which means it just
18 happened, you know, it's something we can go out
19 and grab video and things right now, the criminal
20 unit will take over. Then it may possibly turn
21 into a summons or an arrest, but we also still have
22 not only the criminal portion to investigate, you
23 know, but also locate witnesses. I'll be short on
24 the admin part. The admin investigation, once the
25 preliminary investigation is concluded, and the

30

1  intake process is assigned to our administrative
2  unit or out to the field, and those allegations are
3  more like neglect of duty, professionalism,
4  courtesy, things of that nature. We also have a
5  force investigation team which investigate use of
6  force allegations. Talk about the police officer
7  bill of rights. That's something that all police
8  officers within the State of Louisiana have. They
9  have a right to obtain counsel within a certain
10 amount of time, bring forth witnesses, similar to
11 the actual criminal court. Civil service also
12 provides protection which also says they can have a
13 representative, a counsel present during
14 investigations, and they are afforded certain
15 avenues to assist them during their investigation
16 process.
17      So with a criminal case, it depends on
18 the allegation, whether it's something dealing with
19 sexual assault, child abuse, homicide or something
20 of the sort. Our criminal unit would work in
21 conjunction with the other units, like Special
22 Victims Unit, which this case will be with sex
23 crimes. They will work jointly together. With a
24 criminal case, as you know, it goes through the
25 court process, and the PIB investigator will

31

1  monitor the case as it goes along to keep everyone
2  abreast, and, also, have contact with the Special
3  Victims Unit to make sure everyone is obtaining the
4  same information. From there, upon the court case
5  being completed, depending on the outcome of the
6  court case, some people may be acquitted, found not
7  guilty, or guilty, maybe sentenced right then and
8  there or nol pros. So let's say that a person is
9  found guilty, as in this case. The case will be
10 completed by the PIB investigator based upon the
11 findings with the court and the findings that the
12 investigator also found, because our findings are a
13 little bit different.
14      For PIB it is based upon the
15 preponderance of the evidence where in the court
16 it's based upon beyond reasonable doubt. So with
17 our cases, when you would go -- in this case, it
18 was completed. The investigator found it to be
19 sustained. That's his recommendations and his
20 recommendations only. From here it will go to a
21 bureau chiefs' hearing or the superintendent
22 committee's hearing, which will be a panel of
23 deputy chiefs who will hear this case similar to a
24 court process. The investigator will be present
25 along with the accused and the accused's attorney,

32

1  and the accused have the opportunity to, once
2  again, give their side of the story. From there
3  the panel decides what their recommendation will be
4  as a group, whether sustained, which will be
5  guilty, not sustained, prove or can't prove or
6  disprove. Exonerated. It did happen, but it
7  didn't violate the rules or regulations or
8  unfounded. It didn't happen at all. From there
9  their recommendations go to the superintendent of
10 police, and the superintendent gives the final
11 decision. In this case, this did not go to the
12 superintendent of police, as documented. Also,
13 Vicknair resigned prior to the completion of this
14 case, so --
15      Q. Can I ask you to pause? Explain about
16 the significance -- is there any significance to
17 him resigning under --
18      A. Investigation?
19      Q. -- under investigation?
20      A. So for one, with him resigning under
21 investigation, he did not give a statement in this
22 investigation. So the investigator was only able
23 to utilize the information he had given to him and
24 whatever he obtained during it. So there is no
25 statement of Officer Rodney Vicknair.

33

1    Q.  Before we go forward --
2    A.  I'm sorry.  There is a statement, but
3  Officer Vicknair did not attend a hearing.  He did
4  not attend the hearing.  Correction to the record.
5  He did make a statement.
6    Q.  Is there a different type of statement, a
7  more formal statement, as part of the PIB process
8  as opposed to a statement to a criminal
9  investigator?
10    A.  Yes.  So with PIB there is two
11  statements.  There is a criminal statement, which
12  can be refused, but there is an administrative
13  statement which you are compelled to give.  So it's
14  not something you can elect not to give.  You have
15  to give a statement in an administrative nature.
16  With an administrative statement, you cannot use it
17  in the criminal portion, because you are compelled.
18  So Officer Vicknair did give an administrative
19  statement, but he did not attend a hearing.
20    Q.  When an officer resigns while an
21  investigation is undergoing, being undertaken, how
22  does that affect the investigation?
23    A.  So if there is supplemental information
24  that need to be obtained from the accused, the
25  investigator will not be able to obtain that

34

1  information, because the person is no longer an
2  employee, and we cannot compel that person to come
3  forth with any additional information.
4    Q.  But if he resigns while the investigation
5  is going, does the investigation continue to go to
6  the conclusion or how does that work?
7    A.  So the investigator have to look at the
8  items they have at that time upon the person
9  resigning, and they come to a conclusion with the
10  information that is obtained.
11    Q.  In this case, what happened after
12  Vicknair resigned?
13    A.  After he resigned, the case was closed on
14  the department's end.
15    Q.  Why was that?
16    A.  Because there was no further steps that
17  needed to be taken.  Well, that could be taken
18  without Officer Vicknair.
19    Q.  How did that affect the punishment that
20  could be meted out to Officer Vicknair?
21    A.  So due to Officer Vicknair no longer
22  being an employee of the New Orleans Police
23  Department, punishment could not be imposed upon
24  him if the superintendent decided to provide any
25  punishment, as per the disciplinary matrix.

35

1    Q.  How would that affect Officer Vicknair's
2  future employability as a police officer with the
3  NOPD or other places?
4    A.  So according to the allegations that
5  Officer Vicknair was sustained for, he would have
6  been terminated by the police department, and he
7  would not have been able to obtain employment with
8  another agency.  I know directly in the State of
9  Louisiana, when you are convicted of something in
10  the State of Louisiana, or you are -- and you are
11  terminated as a law enforcement employee for a
12  criminal matter, you cannot be POST certified
13  within the State of Louisiana.
14    Q.  I just want to back up a little bit.
15  Sergeant Jones' investigation report that he
16  signed, that recommendation is reviewed and
17  determined whether it's going to be approved at
18  certain higher levels as it goes up, right?
19    A.  Yes.  So his report is reviewed by his
20  supervisor, by the PIB captain, the deputy
21  superintendent of PIB, and there's a signature line
22  for the superintendent, but the PIB superintendent
23  is the designee for the department, the police
24  department superintendent, on numerous cases.
25    Q.  These signatures on the last page of the

36

1  investigation were -- there is Lieutenant Darryl
2  Watson, Captain Sabrina Richardson, Deputy Chief
3  Arlinda Westbrook, and Shaun Ferguson.  These are
4  all approved at what kind of -- is this after a
5  discipline hearing has been held?
6    A.  No.  This is before the hearing is held.
7  This is a review of the actual investigation, and
8  if the people in the reviewing chain concurs,
9  agrees, with the investigator's findings.
10    Q.  So after this step there would be another
11  hearing which evidence is presented and considered,
12  right?
13    A.  Correct.  There would be a hearing after.
14  Only if the case is sustained would there be a
15  hearing scheduled for the accused.
16    Q.  But that didn't happen here?
17    A.  No, because Vicknair resigned prior to.
18    Q.  So assuming there was -- if it had gone
19  to the next level, and had the hearing, that would
20  be the predisciplinary hearing?  Is that right, or
21  is there a captain's panel?
22    A.  It's the chiefs' panel.  Because of the
23  allegation, it would go in front of a panel of chiefs,
24  deputy superintendents.
25    Q.  The chiefs' panel.  If the chiefs' panel

37

1  had determined that there was a violation, as, in
2  your opinion, it probably looks like there would
3  have been, right?
4      A.  Correct.
5      Q.  Then it would have gone forward to --
6  what is the next level?
7      A.  It would have went for the hearing.  The
8  chiefs would hear the case just as similar to a
9  trial.  Then the chiefs would together come up with
10  a recommendation, and if you was to go by this
11  investigation, it would be sustained, and they make
12  a recommendation of the penalty based upon a
13  penalty matrix.  And for these allegations, the
14  penalty matrix would be termination.  And from
15  there, they're recommendation go to the
16  superintendent for the final say on the case.  The
17  superintendent is the only person who can demote or
18  terminate. Even suspend someone.
19      Q.  So the superintendent would issue the
20  final --
21      A.  The final discipline.
22      Q.  And then, under the civil service rules,
23  the officer would have a right to an appeal before
24  a neutral hearing officer to have the evidence
25  reviewed once again?

38

1      A.  Correct.
2      Q.  And that recommendation from the hearing
3  officer would then be reviewed by the Civil Service
4  Commission for final determination whether or not
5  the discipline would be approved; is that right?
6      A.  Correct.
7      Q.  Let me back up just a couple of -- well,
8  move forward, I guess.  The disciplinary
9  recommendations made by Sergeant Jones.  I just
10  want to talk about relative to malfeasance in
11  office, because there is two statements, two items,
12  that he lists under this malfeasance in office that
13  Miss Phelps discussed or asked you about.  One was
14  Rodney Vicknair used his position as a public
15  employee to befriend 15-year-old victim after
16  transporting her to Children's Hospital to have a
17  sexual assault kit completed.  You're aware that
18  that happened on May 26th, 2020, right? I'll refer
19  you to Page 5.
20      A.  Okay.  When he -- the original contact
21  with the victim.
22      Q.  This is from the state.  On Page 5, the
23  victim refers -- says, "G██████ disclosed that the
24  first responding officer to her sexual assault
25  investigation which happened May 20th."

39

1      A.  Yeah, and Vicknair was the responding
2  officer.
3      Q.  So, therefore, that indicates that the
4  befriending started in May of 2020, correct?
5      A.  Correct.
6      Q.  And you are also aware that the sexual
7  assault happened on September 23rd of 2020?
8      A.  Correct.
9      Q.  So there is a time period between May and
10  September 23rd that the befriending happened?
11      A.  Correct.
12      Q.  And is it your opinion that that gave
13  probable cause, the befriending, to arrest Rodney
14  Vicknair?
15      A.  Yes.  It shows this pattern.
16      Q.  How is it probable -- what crime has
17  occurred when he is befriending the 14-year-old
18  child who then turned 15?
19      A.  So, one, he was on duty, and as an
20  officer, as the mother stated, he was trying to
21  comfort the child somewhere in her statement, and
22  he befriended at the time a 14-year-old child.
23  They began communicating, according to the
24  report, inappropriately via telephone.  Via the
25  cell phone and a social media app.

40

1      Q.  How does that give probable cause for a
2  crime?
3      A.  From the inappropriate behavior with a
4  underage juvenile, it almost appears that he used
5  his position as an officer to befriend this young
6  lady where he is supposed to be helping her seek
7  help for the crime that was being reported at that
8  time, but the mother initially says that it appears
9  he was trying to comfort her.  I believe she said
10  she didn't have a father figure.  She had an absent
11  father.
12      Q.  And you are looking at Page 15 of 19 of
13  the first paragraph?
14      A.  Yeah.
15      Q.  Five of 19?
16      A.  Yeah.
17      Q.  This was reported, according to this
18  report, on September 21st, 2020?
19      A.  Yeah.  According to this report, that
20  date may be inaccurate.  Lawrence Jones would have
21  to testify to that.  It appears in the report he
22  spoke with everyone on the 25th.  Things began on
23  the 23rd or 25th of September.
24      Q.  Is there any indication that there was a
25  sexual assault other than on the 23rd of September?

41

1      A.  No.  Just inappropriate communication.
2      Q.  So as we're sitting here today, on the
3  first page where it says, "On Monday, September
4  21st, Lawrence Jones began a sexual assault
5  investigation," you're not really sure why he wrote
6  that?
7      A.  No.
8      Q.  To your indication, there was no -- to
9  your information, there was -- on September 21st,
10  there was no indication that -- to NOPD that there
11  was a sexual assault?
12      A.  No.  Not according to this report.  It
13  appears it was reported on the 25th.  The days are
14  a little confusing, but Lawrence Jones would be
15  able to explain that better as he was the
16  investigator.
17      Q.  Is there anything else you think you want
18  to add?
19      A.  The only thing, I guess, I would like to
20  reiterate, this is similar to a child.  You can't
21  supervise everyone, especially when they're alone.
22  An adult has to be accountable for their own
23  behavior and their moral conducts, and his actions,
24  even though he was an employee of the department,
25  there was no indication of any past history of

42

1  inappropriate conduct that would have alerted
2  anyone on the department to this incident possibly
3  occurring or any other incidents.  Mr. Vicknair, as
4  a human, should have morals, and as far as the New
5  Orleans Police Department, once notified of these
6  allegations, the department stepped in and took
7  action as appropriate, and as we can tell by the
8  outcome of the investigation, the New Orleans
9  Police Department did its job.  But as far as an
10  officer being solo and no supervision, officers
11  ride one man, and when they're a one man, they're
12  alone.  So we can't govern a person.  In the
13  academy, and in our annual in-service, you are
14  provided training on how to handle calls for
15  service and what your behavior is to be, especially
16  regarding professionalism and courtesy.  So in this
17  instance, like I said, Officer Vicknair was alone.
18  There was no previous red flags, so this would have
19  not been anything the New Orleans Police Department
20  could have prevented, and that's just my opinion.
21      Q.  Sexual assault on a minor.  The rule
22  violation of an officer for a sexual assault on a
23  violation doesn't depend on whether he is on duty
24  or not?
25      A.  No.

43

1      Q.  And in this case, I know that your
2  testimony was -- regarded some stuff that he did
3  while he was on duty, however, I want to ask you
4  specifically, is there anything in the report that
5  specifically states that when the sexual assault
6  occurred on Wednesday, September 23rd, 2020, that
7  Officer Vicknair was on duty?
8      A.  No.  Not that I've read.
9      Q.  There is nothing to indicate that he was
10  on duty when he sexually assaulted, right?
11      A.  Nothing that I've read, no.
12      Q.  In fact, Officer Vicknair was off duty
13  when the sexual assault happened, right?
14      A.  According to what was written.
15      Q.  And he was in his own private vehicle?
16      A.  Correct.
17      Q.  And he was out of uniform?
18      A.  Correct.
19      Q.  And he did not have a gun on him?
20      A.  No.  Not to my knowledge.  Not according
21  to the report.
22      Q.  And he was not acting on police business
23  when he sexually assaulted the victim?
24      A.  No, he was not.
25      Q.  However, it's your opinion that earlier

44

1  in the -- during the summer, when he quote/unquote
2  befriended the child, some of that was while he was
3  on duty?
4      A.  Correct.
5      MR. ROQUEMORE:
6          Those are the questions I have.
7  BY MS. PHELPS:
8      Q.  To follow up on what you said about him
9  being alone.  After Sergeant Jones learned that
10  Rodney Vicknair was frequently going over to this
11  residence and making this mother uncomfortable and
12  suspected an inappropriate relationship with a
13  child --
14      MR. ROQUEMORE:
15          Objection.  Form.
16  BY MS. PHELPS:
17      Q.  After Sergeant Jones interviewed this
18  family on September 21st, could NOPD have assigned
19  someone to ride along with Rodney Vicknair while he
20  was investigated?
21      A.  They could have, however, NOPD chose to
22  take him off the streets, and as you can see,
23  eventually, very swiftly, within a short time
24  frame, a matter of a few days, the arrest warrant
25  was issued, and he was arrested.  So to leave him

45

1  on the street with allegations of the sort would be
2  improper, so he was removed.
3       Q.  Thank you for your time today.
4            MR. ROQUEMORE:
5            No further questions.  Thank you.
6            [End of deposition, 12:00.]
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

46

1            WITNESS CERTIFICATE
2
3
4
5       I, CAPTAIN PRECIOUS BANKS, have read
6  or have had the foregoing testimony read to me
7  pursuant to Rule 30(e) of the Federal Rules of
8  Civil Procedure and do hereby certify that to the
9  best of my ability and understanding, it is a true
10  and correct transcription of my testimony.
11
12
13  Please check one:
14
   _____Without corrections
15
16
   _____With corrections (see errata sheet)
17
18
19
20
   _____    _____
   CAPTAIN PRECIOUS BANKS       Date
21
22
23
24
25

47

1
2            CERTIFICATE
3       This certification is valid only for
4  a transcript accompanied by my original signature
   and original required seal on this page.
5       I, SANDRA P. DIFEBBO, Certified
   Court Reporter, in and for the State of Louisiana,
6  as the officer before whom this testimony was
   taken, do hereby certify that CAPTAIN PRECIOUS
7  BANKS, after having been duly sworn by me upon
   authority of R.S. 37:2554, did testify as
8  hereinbefore set forth in the foregoing 46 pages;
9       That the testimony was reported by
   me in stenotype, was prepared and transcribed by me
10  or under my personal direction and supervision, and
   is a true and correct transcript to the best of my
11  ability and understanding;
12       That the transcript has been
   prepared in compliance with transcript format
13  guidelines required by statute or by rules of the
   board, that I have acted in compliance with the
14  prohibition on contractual relationships as defined
   by Louisiana Code of Civil Procedure Article 1434
15  and in rules and advisory opinions of the board;
16       That I am not related to Counsel or
   to the parties herein, nor am I otherwise
17  interested in the outcome of this matter.
18
19
20
21  _Sandra P. DiFebbo_
   Sandra P. DiFebbo,
22  Certified Shorthand Reporter
23  Date: 1/15/24
24
25

Page  48

| A | | | | |
|---|---|---|---|---|
| **ability** 46:9 47:11 | **admin** 29:24 29:24 | 21:25 **Andria** 13:9 | 44:25 **Article** 47:14 | 47:7 **authorized** 22:15 |
| **able** 32:22 33:25 35:7 41:15 | **administer...** 4:23 **administra...** | **annual** 25:4 26:22 42:13 | **asked** 38:13 **asking** 5:20 5:21 | **available** 5:17 **Avenue** 2:4 |
| **above-enti...** 1:17 | 29:6,7 30:1 33:12,15,16 33:18 | **answer** 4:17 5:23,24 6:5 10:7 15:21 | **ass** 14:16 **assault** 14:3 19:14 | **avenues** 30:15 **aware** 5:16 |
| **abreast** 31:2 **absent** 40:10 | **adult** 25:3 41:22 | 17:16 18:18 | 30:19 38:17,24 | 38:17 39:6 |
| **abuse** 16:14 16:19 30:19 | **advisory** 47:15 | 20:23 **app** 39:25 **appeal** 37:23 | 39:7 40:25 41:4,11 42:21,22 | **————————** **B** |
| **academy** 42:13 | **affect** 33:22 34:19 35:1 | 34:19 | 43:5,13 | **B** 3:8 11:2 |
| **accompani...** 47:3 | **Affidavit** 17:20 | **appear** 24:22 **APPEARA...** 2:1 | **assaulted** 43:10,23 | **back** 17:17 19:2 35:14 38:7 |
| **accountable** 41:22 | **afforded** 30:14 | **appears** 16:5 23:24 | **assigned** 11:18 16:19 28:4 | **Banks** 1:17 4:6 5:1,5 27:10 46:5 |
| **accused** 16:25 31:25 32:1 | **agency** 35:8 **agreed** 4:3 13:4,5 | 24:21 40:4 40:8,21 41:13 | 29:4 30:1 44:18 | 46:20 47:7 **BARBIER** 1:6 |
| 33:24 36:15 | **agrees** 36:9 **alarmed** | **applicable** 28:16 **appropriate** | **assist** 30:15 **assistance** 14:2 16:14 | **based** 21:13 24:7 31:10 31:14,16 |
| **accused's** 31:25 | 14:11 **alerted** 42:1 | 42:7 **approved** | **ASSISTANT** 2:9,10 | 37:12 **basically** 24:19 |
| **acquitted** 31:6 | **allegation** 10:10,19 | 35:17 36:4 38:5 | **ASSOCIA...** 2:3 | **basis** 22:19 22:23,23,24 |
| **acted** 21:4 25:7,21 47:13 | 11:5 29:4,9 29:13 30:18 | **April** 8:7 **Arlinda** 22:13 36:3 | **assuming** 36:18 **attach** 20:9 | 23:14,18 24:1,3,9,25 **battery** 21:8 |
| **acting** 26:6 43:22 | 36:23 **allegations** | **arm** 15:7 **arrest** 16:22 | 22:19 **attached** | **befriend** 19:12 38:15 40:5 |
| **action** 10:19 42:7 | 11:17 25:13 27:19 30:2 | 17:9,20,20 18:17 19:4 | 12:18 13:13 | **befriended** 39:22 44:2 |
| **actions** 41:23 **acts** 24:2 | 30:6 35:4 37:13 42:6 | 19:9 20:3,4 21:3,7 | **attend** 33:3,4 33:19 | **befriending** 39:4,10,13 |
| **actual** 30:11 36:7 | 45:1 **amount** | 26:20,24 29:21 | **attorney** 1:21 2:4,9 | 39:17 **began** 11:23 |
| **add** 41:18 **additional** | 30:10 **and-** 2:9 | 39:13 44:24 | 2:10 7:6 31:25 | 39:23 |
| 34:3 | **Andrea** 12:14 | **arrested** 20:13 | **audio** 13:19 **authority** | |
| | | | | 40:22 41:4 **beginning** 28:25 **behalf** 1:4 **behave** 25:2 **behavior** 21:9 25:4 40:3 41:23 42:15 **believe** 6:11 11:6 23:8 24:1,25 40:9 **believed** 18:9 **best** 46:9 47:10 **better** 41:15 **beyond** 20:1 20:22 23:3 23:11,22 26:14 31:16 **bill** 28:21 30:7 **bit** 27:25 31:13 35:14 **board** 47:13 47:15 **bottom** 8:7 **brief** 6:11 **bring** 30:10 **brought** 7:17 **bureau** 7:21 11:14,19 22:3 23:16 27:14,16,18 28:5,6 31:21 **business** 43:22 **————————** **C** |

C 47:1,1
calendar
  6:12
call 14:2
  16:10 26:3
  28:3 29:17
calls 42:14
captain 1:16
  4:6 5:1,5
  27:10 28:2
  28:4 35:20
  36:2 46:5
  46:20 47:6
captain's
  36:21
case 5:7,10
  6:19 11:18
  22:19 25:7
  30:17,22,24
  31:1,4,6,9
  31:9,17,23
  32:11,14
  34:11,13
  36:14 37:8
  37:16 43:1
cases 29:10
  31:17
  35:24
cause 1:17
  17:9 18:1
  18:20
  39:13 40:1
cell 39:25
certain 30:9
  30:14
  35:18
certainly
  26:16
CERTIFI...
  46:1
certification
  4:13 47:3
certified 1:19

2:18 4:21
  15:12
  35:12 47:5
  47:22
certify 46:8
  47:6
chain 36:8
change 24:13
  26:23
changes
  26:21
charge 21:3
  28:7
Charles 2:4
check 46:13
Chief 22:13
  36:2
chiefs 31:23
  36:23 37:8
  37:9
chiefs' 31:21
  36:22,25,25
child 14:2,8
  14:16
  15:17
  16:14,19
  21:19
  30:19
  39:18,21,22
  41:20 44:2
  44:13
child's 12:17
  15:9 17:8
Children's
  14:3 19:13
  38:16
chose 44:21
City 1:9,15
  1:21,21 2:8
  2:9,10,12
  4:5 21:5
city's 18:22
civil 4:8 5:10

28:15 29:5
  30:11
  37:22 38:3
  46:8 47:14
close 15:7
closed 23:5
  34:13
Code 47:14
collecting
  29:14
color 23:1
Combined
  6:17
come 15:17
  34:2,9 37:9
comfort
  39:21 40:9
coming
  14:12
Commander
  1:10 2:13
commencing
  1:23
Commission
  38:4
committed
  18:5,9,23
  20:5 21:8
committee's
  31:22
communic...
  39:23
communic...
  41:1
Companies
  1:10 2:13
Comparing
  23:7
compel 34:2
compelled
  33:13,17
complaint
  7:21 8:1,5

8:8,11,18
  8:21 9:2,5
  9:10,13
  10:4,18
  17:5 22:8
  28:12 29:1
  29:1,4,12
complaints
  9:21,25
  10:13,14,15
  25:17
completed
  6:20 19:14
  31:5,10,18
  38:17
completion
  27:20 29:2
  32:13
complex
  29:11
compliance
  47:12,13
composing
  28:24
concluded
  13:15 18:5
  29:25
conclusion
  34:6,9
concurred
  22:5
concurs 36:8
conduct 8:9
  9:11 19:23
  24:24 42:1
conducted
  27:24 29:2
conducts
  41:23
confusing
  41:14
conjunction
  30:21

connection
  8:19,24 9:2
  16:22
considered
  10:25
  36:11
contact
  15:17 31:2
  38:20
contained
  23:15
continue
  34:5
contractual
  47:14
convicted
  35:9
conviction
  22:25
copied 12:19
copy 6:23
  7:20 11:8
  16:6 17:19
  22:18
correct 7:4,5
  8:2,9,10,12
  8:14,15,19
  8:20,22,24
  8:25 9:3,4
  9:6,8,9,11
  9:12,14,17
  10:1 11:16
  11:20,21
  12:16
  13:18 14:5
  14:9,13
  15:14,18,19
  15:23 16:7
  16:12,17,21
  17:6,24,25
  18:2,3,6,10
  18:24
  19:14,18

20:1,2,7,16
  20:20 21:5
  21:6,9,20
  21:21,23,24
  22:1,2,6,7
  22:9,10,17
  23:1 26:9
  27:11,12,15
  28:18,22
  36:13 37:4
  38:1,6 39:4
  39:5,8,11
  43:16,18
  44:4 46:10
  47:10
Correction
  33:4
corrections
  46:14,16
couch 26:14
counsel 4:4
  30:9,13
  47:16
counseling
  26:4
counselor
  12:14
  13:10
  21:25
couple 38:7
court 1:1
  17:17
  30:11,25
  31:4,6,11
  31:15,24
  47:5
courtesy 30:4
  42:16
credibility
  21:17
credible
  21:20,23
  22:1

crime 39:16
40:2,7
crimes 18:24
21:8 30:23
criminal
22:19 29:5
29:9,9,10
29:13,13,19
29:22
30:11,17,20
30:24 33:8
33:11,17
35:12

**D**

D 3:1,8 11:6
11:6 12:18
12:22
13:12,14
Darryl 36:1
date 6:12
12:1 40:20
46:20
47:23
daughter 1:5
13:10
daughter's
15:4
day 1:22 9:7
11:2 12:24
days 8:23
41:13
44:24
dealing
30:18
decided
34:24
decides 32:3
decision
32:11
deemed
21:19,22,25
deep 25:18

Defendants
1:12
defined
47:14
demote
37:17
demotion
11:7
depart-
25:15
department
2:8 24:16
25:10,22
27:20
34:23 35:6
35:23,24
41:24 42:2
42:5,6,9,19
departmen...
27:14
34:14
depend
42:23
depending
27:21 29:3
31:5
depends 11:4
30:17
deposition
1:15 4:5,18
6:4,10,24
6:25 7:4,18
45:6
deprivation
22:25
deputy 22:13
28:5 31:23
35:20 36:2
36:24
describe
14:10,14,23
described
15:5,6 20:5

24:3
describes
15:10
description
19:20
designated
1:16 4:6
5:13
designee
22:12,15
35:23
detective
16:14,18,19
determinat...
38:4
determined
35:17 37:1
DiFebbo
1:19 2:18
4:21 47:5
47:21
different
10:23
31:13 33:6
direction
47:10
directly 35:8
disciplinary
6:22 8:1,5
11:10
19:22 22:5
25:11
27:23
34:25 38:8
discipline
10:16,16
28:12,24
36:5 37:21
38:5
disclosed
38:23
discussed
38:13

discussion
24:17
disprove
10:10 32:6
District 1:1,2
1:10 2:13
dive 25:18
do's 25:5
**DOCKET**
1:4
document
7:1,24
11:13,22,25
12:16
17:21
22:20 23:9
23:13
documented
32:12
documents
6:13,18
7:17
DOE 1:9
2:13
doing 24:20
26:1
don't's 25:5
double 15:1
doubt 31:16
drafted 17:4
driver 9:8
due 25:11
34:21
duly 5:2 47:7
duty 20:14
21:6 30:3
39:19
42:23 43:3
43:7,10,12
44:3

**E**

E 3:1,1,8,8

16:1 47:1,1
earlier 43:25
**EASTERN**
1:2
egregious
11:5
elect 33:14
element 21:3
elements
20:8
ELIZABE...
2:10
employabil...
35:2
employee
19:12
24:19,20
34:2,22
35:11
38:15
41:24
employees
25:22,25
27:19
employment
35:7
enforcement
35:11
EPIC 24:18
25:24 26:3
errata 46:16
especially
25:17
41:21
42:15
essentially
28:7
eventually
44:23
evidence
4:19 18:25
20:1 21:14
24:8 29:15

29:15
31:15
36:11
37:24
examination
5:4 14:4
27:9
examined 5:2
exhibit 3:11
3:12,13,14
3:15 6:25
7:24 12:18
12:22
13:12,14
16:1 19:2,5
19:7 20:10
22:20
**Exonerated**
32:6
explain 27:16
29:5 32:15
41:15

**F**

F 47:1
face 11:7
15:8
fact 43:12
facts 22:23
22:24
factual 22:19
22:23
23:14,18
24:3,9
fall 28:2,5,15
familiar 8:4
20:10
family 44:18
family's 13:9
far 25:22
26:2 42:4,9
father 40:10
40:11

**February**
8:18
**federal** 4:7
25:6 46:7
**Ferguson** 1:9
2:12 22:4
22:11 36:3
**Ferguson's**
22:15
**field** 30:2
**figure** 40:10
**filing** 4:13
**final** 32:10
37:16,20,21
38:4
**finding** 27:22
**findings**
21:16
23:20
27:22
31:11,11,12
36:9
**first** 5:1
10:20 13:1
28:1 29:12
38:24
40:13 41:3
**first-degree**
16:15
**five** 10:2,3
40:15
**flags** 25:14
42:18
**flirting** 26:2
**follow** 44:8
**following**
1:18
**follows** 5:3
**force** 30:5,6
**foregoing**
46:6 47:8
**form** 4:16
7:22 10:7

12:21
14:19
15:13,21
17:11
18:12
19:16
20:18
21:11
23:11,22
44:15
**formal** 33:7
**formalities**
4:10,12
**format** 47:12
**forth** 30:10
34:3 47:8
**forward** 33:1
37:5 38:8
**found** 18:20
19:21 31:6
31:9,12,18
**four** 9:21,23
**fourth** 10:22
12:12
**frame** 44:24
**frequently**
14:12 26:7
44:10
**front** 36:23
**further** 27:5
34:16 45:5
**future** 35:2

_____
**G**
**G.H** 1:5
G⬛⬛⬛ 15:6
21:19
38:23
G⬛⬛⬛
13:11
G⬛⬛⬛
13:10
**give** 5:23

32:2,21
33:13,14,15
33:18 40:1
**given** 1:17
8:13 9:15
26:23
32:23
**gives** 32:10
**go** 19:2 28:24
29:18
31:17,20
32:9,11
33:1 34:5
36:23
37:10,15
**goes** 14:10,14
30:24 31:1
35:18
**going** 6:23
7:16,20,23
11:8 22:18
26:13 27:2
27:25
29:10 34:5
35:17
44:10
**Good** 5:5,6
**govern** 24:24
42:12
**grab** 29:19
**group** 32:4
**guess** 38:8
41:19
**guidelines**
47:13
**guilty** 31:7,7
31:9 32:5
**gun** 43:19

_____
**H**
**H** 3:8
**Hainey** 13:10
13:11,21,24

21:19,22
**Hall** 1:21
**handle** 42:14
**handwriting**
22:12,14
**Haney's** 13:7
**happen** 32:6
32:8 36:16
**happened**
23:4 29:18
34:11
38:18,25
39:7,10
43:13
**happening**
24:14
**hear** 31:23
37:8
**hearing**
10:17
31:21,22
33:3,4,19
36:5,6,11
36:13,15,19
36:20 37:7
37:24 38:2
**hearings**
27:22,23
**held** 36:5,6
**help** 40:7
**helping** 40:6
**hereinbefore**
47:8
**hereto** 4:4
**hey** 26:1
**hierarchy**
28:2
**higher** 11:6
35:18
**hire** 24:25
**history** 6:21
6:22 7:21
8:2,5 25:11

25:20
41:25
**home** 12:2
14:12
**homicide**
30:19
**HOPE** 2:3
**Hospital**
14:3 19:13
38:16
**hot** 29:17
**hours** 6:17
**human** 42:4

_____
**I**
**immediately**
29:14
**imposed**
34:23
**imposition**
28:12
**improper**
45:2
**in-service**
24:15
42:13
**inaccurate**
40:20
**inappropri...**
15:16
25:13 40:3
41:1 42:1
44:12
**inappropri...**
39:24
**incident** 8:16
9:22 16:24
42:2
**incidents**
14:15 42:3
**included**
22:8
**includes** 19:9

**including**
14:15
25:15,18
**inconsistent**
23:19
**increases**
10:23
**indecent**
21:8
**indicate**
12:23 43:9
**indicates**
39:3
**indication**
40:24 41:8
41:10,25
**individual**
25:1,7
**individually**
1:4
**information**
15:15
23:15 24:9
31:4 32:23
33:23 34:1
34:3,10
41:9
**initial** 16:24
28:12
**initially**
16:10 40:8
**instance**
24:22
42:17
**Insurance**
1:10 2:13
**intake** 29:12
30:1
**Integrity**
7:21 11:14
11:19 22:3
23:16
27:14,16,18

28:5
intentionally
20:14
interested
47:17
interview
13:13,24
interviewed
44:17
introduction
17:4
investigate
29:22 30:5
investigated
11:14
44:20
investigates
27:18
investigation
6:14,19
11:9,10,23
19:23,25
23:5,7,16
23:20
24:11 25:8
29:2,3,24
29:25 30:5
30:15
32:18,19,21
32:22
33:21,22
34:4,5
35:15 36:1
36:7 37:11
38:25 41:5
42:8
investigati...
27:21 29:6
30:14
investigator
30:25
31:10,12,18
31:24

32:22 33:9
33:25 34:7
41:16
investigato...
36:9
involving
16:24
issue 25:9
37:19
issued 10:16
44:25
items 26:17
34:8 38:11
its' 24:13

**J**
JAMES 2:9
January 1:23
9:10
job 15:18
42:9
jointly 30:23
Jones 6:20
11:19 12:1
12:18 13:3
13:6,8,22
13:25 14:6
14:10,14,24
15:2,10
16:5,9,13
17:4 22:6
38:9 40:20
41:4,14
44:9,17
Jones' 13:16
13:23
19:25
35:15
JUDGE 1:6
juvenile 21:9
40:4

**K**

keep 31:1
Kimberly
16:18
kind 36:4
kit 19:14
38:17
know 5:7 6:4
6:6 17:2
24:20 26:1
26:3 29:18
29:23
30:24 35:8
43:1
knowledge
5:17 8:6
17:2 43:20

**L**
L 4:1
lady 40:6
law 2:4,8 4:9
23:1 35:11
lawfully
20:15
Lawrence
6:20 11:19
13:3,6
40:20 41:4
41:14
laws 24:17
25:6
learned 25:3
44:9
leave 44:25
let's 31:8
letter 8:13
9:15 11:1,3
17:4
level 10:24
11:2,5,6
36:19 37:6
levels 10:23
35:18

Lieutenant
36:1
limited 10:14
line 35:21
lists 38:12
little 27:25
29:11
31:13
35:14
41:14
locate 29:23
located 13:7
longer 34:1
34:21
look 10:17
22:12 34:7
looked 16:9
looking 12:6
15:25
40:12
looks 13:14
37:2
lose 29:16
Louisiana
1:2,20,22
2:12,19
4:22 13:8
30:8 35:9
35:10,13
47:5,14

**M**
M 3:1
MAG 1:7
making
44:11
malfeasance
11:16 18:2
18:5,9,23
19:10,21
20:4,6,9,13
22:9 38:10
38:12

man 42:11
42:11
manner
20:15
March 9:3
marked 6:24
14:17
math 9:20
matrix 10:20
34:25
37:13,14
matter 35:12
44:24
47:17
meaning
29:7
means 10:9
29:9,17
media 39:25
meet 20:7
ment 25:16
mention
14:25
mentioned
26:6,22
met 13:8
meted 34:20
mind 12:10
minor 1:4
10:25 12:2
42:21
mirrors
24:10
misconduct
25:13
27:19
model 14:8
mom 14:7
Monday
11:23 13:5
13:15 41:3
monitor 31:1
month 9:1

months
10:18
moral 19:23
24:24 25:9
41:23
morals 25:1
42:4
morning 5:5
5:6 6:14
mother 12:2
12:17
13:21
14:11 15:3
15:10 17:5
17:8 21:22
39:20 40:8
44:11
move 38:8
multiple 7:23
municipal
25:6

**N**
N 3:1,1,1,8
4:1
name 27:10
nature 29:7
30:4 33:15
necessarily
12:22
need 33:24
needed 34:17
neglect 30:3
neutral 37:24
New 1:9,15
1:22 2:5,8
2:12,13 4:5
13:7 21:5
27:13,20
34:22 42:4
42:8,19
Nice 14:16
nol 31:8

**NOPD** 5:13
5:17,21,24
6:1,5 11:9
11:9 15:15
17:8 18:4,8
21:16,19,22
21:25 23:8
24:1,13
26:19 35:3
41:10
44:18,21
**NOPD's**
11:13 23:7
23:19
24:10
**normal** 6:4
**note** 22:10
**noted** 16:13
**notes** 13:25
**notice** 6:24
7:3
**notified**
29:14 42:5
**number** 5:13
10:14 19:5
28:13
**numerous**
35:24

**O**

**O** 3:1 4:1
**oath** 4:23 5:3
**object** 20:22
23:3 27:2
**objection**
10:7 12:21
14:19
15:21
17:11
18:12
19:16
20:18
21:11

23:11,22
24:5 26:13
44:15
**objections**
4:15
**obligation**
6:6
**obtain** 20:3
30:9 33:25
35:7
**obtained**
18:25
32:24
33:24
34:10
**obtaining**
31:3
**obviously**
21:4
**occurred**
39:17 43:6
**occurring**
42:3
**offense** 10:21
10:21,21,22
10:22
**offenses** 20:5
**office** 1:20
11:16 18:2
18:6,10,23
19:10,21
20:4,6,9,14
21:9 22:9
38:11,12
**officer** 7:21
14:15
19:11 21:4
24:23
25:20
28:20 30:6
32:25 33:3
33:18,20
34:18,20,21

35:1,2,5
37:23,24
38:3,24
39:2,20
40:5 42:10
42:17,22
43:7,12
47:6
**officer's** 6:21
**officers**
26:10
28:16,20
30:8 42:10
**officiated**
4:23
**Okay** 27:5
38:20
**Olga** 13:7
**once** 25:20
29:24 32:1
37:25 42:5
**one-** 11:1
**one-day** 11:3
**opinion** 37:2
39:12
42:20
43:25
**opinions**
47:15
**opportunity**
32:1
**opposed** 33:8
**option** 26:10
**oral** 10:25
**original**
26:19
38:20 47:3
47:4
**Orleans** 1:9
1:15,22 2:8
2:12,13 4:5
13:8 21:5
27:13,20

34:22 42:5
42:8,19
**Orleans,Lo...**
2:5
**outcome**
31:5 42:8
47:17
**overview**
6:11

**P**

**P** 1:19 2:18
4:1,21 47:5
47:21
**page** 3:3,9
8:7 12:6,8
13:2,2,11
15:25 16:3
19:22
35:25
38:19,22
40:12 41:3
47:4
**pages** 47:8
**panel** 31:22
32:3 36:21
36:22,23,25
36:25
**paragraph**
12:10,12
13:2,12,14
16:8 40:13
**part** 4:18
29:24 33:7
**parties** 4:4
47:16
**partners**
26:11
**pattern**
25:18
39:15
**pause** 32:15
**penalized** 9:8

**penalty**
10:20,23
37:12,13,14
**people** 31:6
36:8
**Perdido** 1:21
2:11
**performed**
20:14
**period** 39:9
**person** 10:12
24:22 25:1
25:2 26:1,4
28:7 29:12
31:8 34:1,2
34:8 37:17
42:12
**person's**
24:24
**personal**
47:10
**Phelps** 2:3
3:4 5:4
10:11 12:7
12:11,13,25
14:22
15:24 16:4
17:18
18:21 19:6
19:8,19
21:2,15
23:6,17,25
24:12
26:18 27:4
38:13 44:7
44:16
**phone** 15:4
39:25
**photo** 16:6
**photograph**
14:23,25
15:3,5,6
16:1 17:8

**PIB** 6:21
23:4 28:3,8
30:25
31:10,14
33:7,10
35:20,21,22
**pin** 15:11
**place** 25:16
**places** 35:3
**Plaintiff** 1:6
2:6
**please** 13:1
46:13
**PM** 13:16
**point** 10:12
12:21
15:15
**police** 14:17
27:13,20
28:16,20,20
30:6,7
32:10,12
34:22 35:2
35:6,23
42:5,9,19
43:22
**policies**
26:21
**policy** 26:16
29:8
**portion**
29:22
33:17
**position**
18:22
19:11
38:14 40:5
**positive** 14:8
**possible** 11:1
25:3
**possibly**
29:20
39:23 42:2

Page 54

| | | | | | |
|---|---|---|---|---|---|
| **POST** 35:12 | 14:4 24:8 | 22:24 | **rape** 16:15 | **refers** 38:23 | 41:12 43:4 |
| **potential** | **prior** 9:21 | 34:24 | **Rayne** 1:4 | **refused** | 43:21 |
| 11:15 | 25:12 26:4 | **provided** | 13:21 | 33:12 | **reported** |
| 26:15 | 32:13 | 28:20 | 21:22 | **regarded** | 2:16 14:7 |
| **practice** | 36:17 | 42:14 | **read** 13:1 | 43:2 | 40:7,17 |
| 26:16 | **private** 43:15 | **provides** | 15:1 17:17 | **regarding** | 41:13 47:9 |
| **practices** | **probable** | 30:12 | 19:20 43:8 | 8:8 9:11 | **Reporter** |
| 24:14 | 17:9 18:1 | **psychologist** | 43:11 46:5 | 21:16 | 1:19 2:18 |
| 26:21 | 18:20 | 25:19 | 46:6 | 42:16 | 4:22 17:17 |
| **Precious** | 39:13,16 | **public** 7:21 | **reading** 4:10 | **regulations** | 47:5,22 |
| 1:17 4:6 | 40:1 | 11:13,19 | 23:18 | 24:16 25:6 | **reporting** |
| 5:1 27:10 | **probably** | 14:17 | **realize** 5:20 | 32:7 | 26:5 |
| 46:5,20 | 37:2 | 19:12 22:3 | **really** 5:21 | **Reign** 13:4,5 | **represent** |
| 47:6 | **procedural** | 23:15 | 15:7 24:23 | 13:6,10 | 5:17 15:12 |
| **prediscipli...** | 28:23 | 27:14,16,18 | 25:2 41:5 | **reiterate** | **representa...** |
| 36:20 | **Procedure** | 28:4 38:14 | **reason** 23:8 | 41:20 | 1:16 4:6 |
| **preliminary** | 4:8 46:8 | **punishment** | **reasonable** | **related** 26:17 | 30:13 |
| 29:1,3,25 | 47:14 | 34:19,23,25 | 31:16 | 47:16 | **Representi...** |
| **prepared** 7:7 | **process** | **purposes** 4:8 | **reasons** 10:4 | **relationship** | 2:6,12 |
| 47:9,12 | 28:11 30:1 | **pursuant** | **receive** 29:1 | 15:16 | **reprimand** |
| **preparing** | 30:16,25 | 1:18 4:7 | **received** 8:8 | 44:12 | 8:13 9:16 |
| 6:9,16 | 31:24 33:7 | 46:7 | 8:18 9:2,10 | **relationships** | 11:1,1,3 |
| **preponder...** | **processes** | **pursuit** 8:19 | **receives** | 47:14 | **requested** |
| 20:1 21:13 | 25:16 | 9:3 | 29:12 | **relative** | 13:3 16:14 |
| 24:7 31:15 | **produce** 6:6 | **put** 6:12 | **recommen...** | 16:15 | **required** |
| **present** | **professional** | | 32:3 35:16 | 38:10 | 20:15 47:4 |
| 12:15 | 8:9 9:11 | **———— Q ————** | 37:10,12,15 | **relocated** | 47:13 |
| 24:19 | **profession...** | **question** | 38:2 | 13:6 | **reserved** |
| 25:25 | 30:3 42:16 | 4:16 13:11 | **recommen...** | **remember** | 4:11,17 |
| 30:13 | **program** | 17:15 | 11:10 | 14:25 | **residence** |
| 31:24 | 24:18 | 26:19 | 19:22 22:5 | 22:22 | 13:7,9 |
| **presented** | 25:24 | 28:10 | 27:24 | **removed** | 44:11 |
| 36:11 | **prohibition** | **questions** | 31:19,20 | 45:2 | **resigned** |
| **prevent** | 47:14 | 5:20,21 | 32:9 38:9 | **repeat** 17:15 | 32:13 |
| 24:14 | **pros** 31:8 | 27:5 44:6 | **record** 33:4 | 18:7 | 34:12,13 |
| **prevented** | **protection** | 45:5 | **recorded** | **report** 12:4 | 36:17 |
| 25:10,23 | 30:12 | **quote/unq...** | 13:18,19 | 12:19 | **resigning** |
| 42:20 | **protections** | 44:1 | **red** 25:14 | 13:17 | 32:17,20 |
| **previous** | 28:19 | **quoted** 14:11 | 42:18 | 16:10,23 | 34:9 |
| 22:4 25:11 | **prove** 10:9 | | **refer** 38:18 | 19:23 | **resigns** 33:20 |
| 25:20 | 32:5,5 | **———— R ————** | **reference** | 35:15,19 | 34:4 |
| 42:18 | **proved** 19:25 | **R** 47:1 | 6:13 | 39:24 | **responded** |
| **previously** | **provide** | **R.S** 47:7 | **referring** 6:1 | 40:18,19,21 | 14:1 16:11 |

responding
 38:24 39:1
response
 15:13
responsive...
 4:16
reveals 25:8
review 6:18
 36:7
reviewed
 6:13,19
 25:12
 35:16,19
 37:25 38:3
reviewing
 23:13 36:8
Revised
 11:15 19:9
Richardson
 36:2
ride 42:11
 44:19
right 7:8
 9:20,25
 11:24 12:3
 12:15 14:4
 16:6,11,16
 16:20 26:8
 27:14
 28:13,17,21
 29:19 30:9
 31:7 35:18
 36:12,20
 37:3,23
 38:5,18
 43:10,13
rights 23:1
 28:21 30:7
ROBY 1:7
Rodney 1:9
 5:9 7:22
 8:2,4,8
 15:7 17:21

19:11
 22:25 24:2
 26:20,24
 32:25
 38:14
 39:13
 44:10,19
role 14:8
Room 1:22
ROQUEM...
 2:9 3:5
 10:6 12:5,9
 12:20
 14:18
 15:20 16:2
 17:10,14
 18:11,16
 19:3,15
 20:17,21
 21:10 23:2
 23:10,21
 24:4 26:12
 27:1,7,9
 44:5,14
 45:4
rule 19:23
 29:8 42:21
 46:7
rules 4:7
 24:16 25:5
 28:16 32:7
 37:22 46:7
 47:13,15

_____
       S
S 4:1
Sabrina 36:2
Sandra 1:19
 2:18 4:21
 47:5,21
save 4:15
saying 13:13
says 11:25

13:14,19
 30:12
 38:23 40:8
 41:3
scheduled
 27:23
 36:15
scope 20:23
 23:3,11,22
 26:14
seal 47:4
sealing 4:12
second 10:21
 10:22 12:8
section 29:13
securing
 29:15
see 44:22
 46:16
seeing 17:8
seek 40:6
seen 6:25
 7:24 11:11
 17:21
 22:20
 25:19
sentence
 13:1
sentenced
 31:7
September
 11:23 13:5
 13:15 16:9
 17:3 39:7
 39:10
 40:18,23,25
 41:3,9 43:6
 44:18
Sergeant
 6:20 11:18
 12:1,18
 13:3,6,8,16
 13:22,23,25

14:6,10,14
 14:24 15:2
 15:10 16:5
 16:9,13
 17:4 19:25
 22:6 35:15
 38:9 44:9
 44:17
service 28:15
 30:11
 37:22 38:3
 42:15
set 6:12 47:8
sex 30:22
sexual 14:3
 19:14 21:8
 30:19
 38:17,24
 39:6 40:25
 41:4,11
 42:21,22
 43:5,13
sexually
 43:10,23
Shaun 1:9
 2:12 22:4
 22:11,15
 36:3
sheet 46:16
short 7:22
 29:23
 44:23
Shorthand
 1:19 2:18
 4:21 47:22
shouted
 14:16
show 6:23
 7:20 11:8
 22:18
showed 15:1
 15:2
showing

17:19
shown 14:24
 16:5
shows 39:15
side 32:2
sign 22:16
signature
 22:11
 35:21 47:3
signatures
 35:25
signed 11:9,9
 19:22
 35:16
significance
 32:16,16
signing 4:11
similar 22:14
 23:14,24
 24:10
 30:10
 31:23 37:8
 41:20
sitting 41:2
social 39:25
solo 42:10
somebody
 24:25 27:3
sorry 33:2
sort 25:17
 30:20 45:1
sought 4:18
 18:4,8,14
speak 5:13
 27:3
speaks 18:17
Special 30:21
 31:2
specialized
 15:12
specifically
 4:11,13
 43:4,5

spent 6:15
spoke 40:22
St 2:4
start 11:2
 28:25
 29:10
started 14:12
 39:4
Starting 13:4
state 1:20
 2:19 4:22
 25:6 30:8
 35:8,10,13
 38:22 47:5
stated 24:8
 39:20
statement
 12:17,24
 13:15,20
 17:7 32:21
 32:25 33:2
 33:5,6,7,8
 33:11,13,15
 33:16,19
 39:21
statements
 12:2 23:9
 33:11
 38:11
states 1:1
 13:12 43:5
statute 11:15
 19:10 20:6
 20:10,11
 47:13
statutory
 28:21
stenotype
 47:9
step 25:25
 36:10
stepped 42:6
steps 28:10

28:11,13,23
34:16
stipulated
4:3
stipulation
1:18
story 32:2
street 1:21
2:11 13:7
45:1
streets 44:22
stuff 43:2
subject 9:21
Subsection
7:7
sufficient 6:5
Suite 2:5,11
summarizes
14:6
summary
13:22,24,25
14:23 15:9
22:24
summer 44:1
summons
29:21
superinten...
22:4 28:6
31:21 32:9
32:10,12
34:24
35:21,22,22
35:24
37:16,17,19
superinten...
36:24
supervise
41:21
supervision
42:10
47:10
supervisor
26:5 35:20

supervisors
25:15
supplemen...
33:23
supported
18:1
supposed
40:6
sure 31:3
41:5
suspected
44:12
suspend
37:18
suspended
8:16,23 9:7
9:18
suspension
11:2,3,4
sustained
8:11,21 9:5
9:13,21,24
10:2,3,5,9
27:22
31:19 32:4
32:5 35:5
36:14
37:11
swiftly 44:23
sworn 5:2
47:7

_____
T
T 3:1,8 4:1,1
47:1,1
take 12:2
29:20
44:22
taken 4:7
14:2 34:17
34:17 47:6
talk 15:3
26:17 28:1

30:6 38:10
tape 13:18
team 30:5
telephone
39:24
tell 25:2 26:1
42:7
telling 26:5
terminate
37:18
terminated
10:13 35:6
35:11
termination
11:7 37:14
terms 26:15
testified 5:2
testify 7:7
40:21 47:7
testimony
43:2 46:6
46:10 47:6
47:9
text 13:20
Thank 27:5
45:3,5
thereof 4:18
thing 41:19
things 29:19
30:4 40:22
think 10:2
41:17
third 10:21
thought 14:7
three 6:17
8:23 10:18
three-day
11:4
time 4:17
6:15 18:25
21:6 26:22
30:10 34:8
39:9,22

40:8 44:23
45:3
today 5:8
7:18 41:2
45:3
told 7:6 14:1
topic 7:7,10
7:12,14,16
topics 5:14
5:18 7:23
toss 7:16
total 9:20
touching
15:8
training 9:8
24:15 25:5
27:3 42:14
trainings
26:22,23
transcribed
47:9
transcript
47:3,10,12
47:12
transcripti...
46:10
transporting
19:13
38:16
trauma
15:13
trial 37:9
trigger 25:16
true 46:9
47:10
trying 14:8
39:20 40:9
Tuesday
16:8 17:3
turn 29:20
turned 39:18
two 6:17
33:10

38:11,11
type 33:6

_____
U
U 4:1
uncomfort...
44:11
underage
40:4
undergoing
33:21
underneath
13:20 28:5
understand
5:10,12 6:2
6:7 26:7
understan...
46:9 47:11
understood
15:11
undertaken
33:21
unfounded
32:8
uniform
15:11
43:17
unit 29:20
30:2,20,22
31:3
UNITED 1:1
units 30:21
unlawful
20:15
untrue 23:9
UPTON 1:4
use 30:5
33:16
usually 24:18
25:4
utilize 32:23

_____
V

valid 17:24
21:7 47:3
vehicle 8:19
9:2 14:17
43:15
versus 1:8
29:5
Vicknair 1:9
5:9 7:22
8:2,13,23
9:7,15,20
11:14 14:1
14:7,11,16
15:7,10,16
16:10,13,25
17:9,21
18:5,9,23
19:11
20:13 21:4
24:2,23
25:7,20
26:6,7
32:13,25
33:3,18
34:12,18,20
34:21 35:5
36:17
38:14 39:1
39:14 42:3
42:17 43:7
43:12
44:10,19
Vicknair's
8:4,9 21:17
22:25
26:20,24
35:1
victim 16:16
19:12
38:15,21,23
43:23
victim's
13:21

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

**Victims**
    30:22 31:3
**video** 29:19
**violate** 32:7
**violation**
    11:15 29:8
    37:1 42:22
    42:23
**violations**
    26:15

_____ **W** _____
**waist** 15:8
**Wait** 18:7
**waived** 4:14
**walk** 28:11
    28:23
**want** 26:14
    35:14
    38:10
    41:17 43:3
**wanted** 28:1
**warrant**
    17:20,20,24
    18:4,8,17
    19:4,9 20:3
    44:24
**Watson** 36:2
**We'll** 22:19
**we're** 7:16
    41:2
**Wednesday**
    43:6
**WEIGAND**
    2:10
**went** 12:1
    37:7
**Westbrook**
    22:13 36:3
**Wilson** 16:18
**witness** 4:24
    5:12 10:8
    14:20

15:22
17:12
18:13,19
19:17
20:19,25
21:12
23:12,23
24:6 46:1
**witnesses**
25:22
29:23
30:10
**word** 18:14
**wore** 15:11
**work** 26:10
27:13
30:20,23
34:6
**worked** 26:7
**wrapped**
15:8
**Wright**
12:15 13:9
21:25
**written**
13:22
43:14
**wrong** 24:20
24:21 26:2
**wrote** 41:5

_____ **X** _____
**X** 3:1,1,8,8
**XYZ** 1:10
2:13

_____ **Y** _____
**yeah** 13:19
39:1 40:14
40:16,19
**year** 26:25
**yearly** 24:15
**years** 10:18

**yesterday**
6:13
**young** 40:5

_____ **Z** _____

_____ **0** _____

_____ **1** _____
**1** 1:10,10
2:13,14
6:25 7:7
**1/15/24** 47:23
**10** 1:10,10
2:13,14
**10:45** 1:23
**10th** 1:22
**11** 3:12
**12:00** 45:6
**1300** 1:21
2:11
**14-year-old**
16:15
39:17,22
**14:134** 11:15
19:10
**1434** 47:14
**15** 39:18
40:12
**15-year-old**
19:12
38:15
**19** 3:13 40:12
40:15

_____ **2** _____
**2** 7:7 13:2,2
19:23
**2:21-cv-407**
1:5
**20** 3:14
**2009** 8:8
**201** 2:4

**2014** 8:19 9:3
**2016** 9:11
**2020** 11:24
13:6,16
16:9 38:18
39:4,7
40:18 43:6
**2024** 1:23
**20th** 38:25
**21** 13:5
**21st** 11:23
13:16
40:18 41:4
41:9 44:18
**22** 3:15
**22nd** 16:9
17:3
**23rd** 39:7,10
40:23,25
43:6
**24th** 8:7
**2500** 2:5
**25th** 40:22
40:23
41:13
**26th** 9:10
38:18
**27** 3:5
**28th** 9:3

_____ **3** _____
**3** 3:11 7:24
13:11
**30(b)(6)** 7:3
**30(b)6** 6:25
**30(e)** 46:7
**36** 10:18
**37:2554** 47:7

_____ **4** _____
**4** 3:12 13:2
19:2
**44** 3:4

**46** 47:8

_____ **5** _____
**5** 3:4,13 19:7
38:19,22
**5:31** 13:16
**5E03** 1:22
2:11

_____ **6** _____
**6** 3:14 7:10
20:10
**6th** 8:18

_____ **7** _____
**7** 3:11,15
7:12 22:20
**70112** 2:12
**70128** 13:8
**70170** 2:5

_____ **8** _____
**8** 7:14
**860** 13:7

_____ **9** _____
**9685** 2:5