CHAPTER: 42.2  Page 1 of 7



# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER: 42.2

## TITLE: SEXUAL ASSAULT

**EFFECTIVE: 11/15/2015**
**REVISED: 05/27/2018**

### PURPOSE

The purpose of this policy is to establish requirements and procedures for NOPD members to follow when responding to reports of sexual assault. Sex Crimes Unit detectives shall investigate sexually related incidents with victims 17 years of age and older at the time the incident is reported, including signals:

- 24-K (unreported sexual assault kit);
- 42 (first-degree rape);
- 42-M (first-degree rape, male victim);
- 42-U (first-degree rape, unfounded);
- 43 (second-degree rape);
- 43-M (second-degree rape, male victim);
- 43-U (second-degree rape, unfounded);
- 81S (sexting);
- 89 (crime against nature);
- 283 (video voyeurism); and
- 27 (attempted crime) related to any of the above signals.

If a Sex Crimes detective is not available to respond to an incident, a Special Victims Section supervisor shall direct a Child Abuse detective to respond to the incident. All detectives shall handle sexual assault investigations according to the **Sex Crimes Unit Standard Operating Guidelines**.

District officers shall handle all misdemeanor sexual batteries (Signal 43-MB) with victims 17 years of age and older at the time the incident is reported according to **Chapter 42.2.1 – Misdemeanor Sexual Battery**.

The Child Abuse Unit shall investigate sexual incidents involving victims under the age of 17 at the time the incident is reported according to **Chapter 42.19 – Child Abuse**.

### DEFINITIONS

**24-K**—The signal for an unreported sexual assault where an examination by a SANE was conducted and a Sexual Assault Kit was utilized and packaged for collection by police.

EXHIBIT
8a

CNO-0025

**Developmental disability**—Severe chronic disabilities that can be cognitive or physical or both. The disabilities appear before the age of 22 and are likely to be lifelong. Some developmental disabilities are largely physical issues, such as cerebral palsy or epilepsy. Some individuals may have a condition that includes a physical and intellectual disability, for example, Down syndrome or fetal alcohol syndrome. Refer to La. R.S. 28:451.2(11) for the State definition.

**Misdemeanor sexual battery**—The intentional touching of the breasts or buttocks of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the intentional touching of the breasts or buttocks of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when the offender acts without the consent of the victim (La. R.S. 14:43.1.1). Misdemeanor sexual batteries are classified under Signal 43-MB for reporting purposes and handled according to **Chapter 42.2.1 – Misdemeanor Sexual Battery**.

**Third-party reporter**—Any person who on behalf of a victim seeks to report a crime or obtain information to assist a victim in obtaining victim services.

**Victim advocate**—This generic term may apply to a wide range of service providers, rape crisis counselors, social workers, and crime victim advocates.

## POLICY STATEMENT

1. The trauma experienced by a victim of sexual assault can inflict serious and lasting emotional and psychological harm on the victim and impair the victim's ability to participate in the investigation. Officers and detectives play a significant role in the victim's ability to cope with the emotional and psychological after-effects of the crime and willingness to participate in the investigation. It is imperative that officers responding to a sexual assault incident recognize, understand, and manage these effects for the benefit of the victim and the criminal investigation.

2. The trauma experienced by a sexual assault victim may be so overwhelming that a victim cannot function well enough to assist in the investigation at certain stages of the case. Trauma also affects memory and the ability to explain events in a narrative form. Trauma from crime victimization complicates a victim's participation in the investigation. It is important that sexual assault cases be handled from a nonjudgmental perspective so as not to communicate in any way to a victim that the victim is to blame for the crime. All members shall initiate investigations without the presumption that the victim is lying and shall not express cynicism or blame to the victim.

3. NOPD prioritizes encouraging victims of sexual assault to feel safe reporting these crimes to the police and conducting thorough investigations of reported sexual assaults over prosecuting victims who come forward.

4. Victims of sexual assault shall not be charged for non-violent misdemeanors uncovered during the investigation of the sexual assault or related to the sexual assault. Facts related to the victim's potential non-violent misdemeanor(s) shall be documented in the investigative report and addressed by the investigator or the A-Case Officer with the screening District Attorney during the case presentation. The Screening District Attorney's determination as to the filing and prosecution of the charges will determine if any follow-up investigation is required by the NOPD.

5. The rights of sex workers shall be protected to the same extent as any other victim of sexual assault.

## COMMUNICATIONS SERVICES RESPONSIBILITIES

6. Communications Services shall dispatch a Sex Crimes detective to all sexual assault calls for service, except for 43-MB calls for service (see **Chapter 42.2.1 – Misdemeanor Sexual Battery**).

7. Communications Services shall dispatch a platoon officer on all Code 2 sexual assault calls. Communications Services shall **not** dispatch platoon officers on Code 1 sexual assault calls for service unless requested by a detective.

## ROLE OF THE PLATOON OFFICER

8. In sexual assault cases, the platoon officer's role is to:
   (a) Provide an emergency response, including attending to medical needs;
   (b) Express empathy (e.g. by saying, "I know this must be very difficult");
   (c) Assure the victim he/she will not be judged (e.g. by saying, "This is not your fault");
   (d) Put the victim at ease by explaining the investigative process (e.g. by saying, "I am going to ask you a few questions and wait with you until a detective arrives");
   (e) Inquire about the identity and location of the perpetrator;
   (f) Contact family support if possible;
   (g) Preserve evidence; and
   (h) Communicate observations to the Sex Crimes detective.

## INITIAL RESPONSE

9. As part of the initial response, officers shall:
   (a) Make contact with the victim or third-party reporter as soon as possible to address safety concerns and summon emergency medical assistance if needed;
   (b) Evaluate the scene for people, vehicles, or objects involved as well as possible threats;
   (c) Relay all vital information to responding officers, supervisors, and detectives, including any possible language barriers; and
   (d) When appropriate and necessary, platoon officers shall begin a search for the suspect and temporarily detain or arrest the suspect as appropriate based on evidence of probable cause. If the suspect is detained, wait for the Sex Crimes detective. Patrol officers shall not interrogate the suspect.

## MAJOR CRIME SCENE OFFICER STATEMENT

10. Officers shall complete the Major Crime Scene Officer's Statement (Form 188) and provide it to the investigating detectives.

11. The statement should include a written narrative of all observations, including observations of the crime scene and any statements volunteered by the victim, perpetrator, witnesses, or reporting persons. Officers shall as accurately as possible use the victim's own words. Officers shall record observations of the crime scene, including the demeanors of the suspect and victim and document any injuries or disheveled clothing.

12. Under no circumstances should officers complete a report in the Electronic Police Reporting System. If an officer responds to a non-sexual assault signal and encounters elements of a sexual assault, he/she should not reference the sexual assault in an EPR report in any way.

**CNO-0027**

**VICTIM STATEMENTS**

13. Victims have the legal right to have a victim advocate present during interactions with law enforcement. If a victim requests a victim advocate, the officer shall work with the assigned detective to obtain access to a victim advocates when reasonably possible.

14. The officer shall clearly explain his or her role to the victim. After an officer has completed the duties detailed in the **Role Of The Platoon Officer** section of this Chapter and explained his or her limited role in the investigation, the officer shall not urge the victim to tell his or her story but also should not prevent the victim from doing so. If the victim chooses to tell his or her story, the officer shall avoid interrupting, express sympathy, ask only open-ended questions, limit follow-up questions unless required by the situation, and document these statements in the Major Crime Scene Officer's Statement (Form 188).

15. Responding officers shall not ask the victim if he/she wants the assailant prosecuted. In the immediate aftermath of a sexual assault, a victim shall not be expected or encouraged to make decisions regarding the investigation or charges related to the offense.

**CHARGING VICTIMS**

16. When determining whether to charge a <u>victim</u> of the reported sexual assault with a violent misdemeanor or felony offense uncovered during the investigation or related to the sexual assault, officers shall weigh, at a minimum, the following factors:
    (a) The public safety benefits of encouraging reporting of sexual assault by making victims feel safe coming forward;
    (b) The importance to the investigation of victims providing candid and complete information and not withholding information relevant to the investigation (such as drug use or prostitution) out of fear of prosecution;
    (c) The potential chilling effect that charging the victim will have on future reporting;
    (d) The impact a victim's conviction would have on the defendant;
    (e) Whether the victim was chosen, groomed or extorted by the perpetrator of the sexual assault in order to trap the victim into a vulnerable position where if the victim reported the sexual assault, he/she would be charged with a crime,
    (f) The nature and severity of the victim's offense;
    (g) The harm caused by the victim's offense; and
    (h) The risk to the public of not charging the victim with the offense.

17. Prior to charging the victim of sexual assault with a violent misdemeanor or felony uncovered during the investigation or related to the sexual assault, the officer shall obtain supervisory approval for the arrest and concurrence in the charge and document this in the investigative report.

18. If the officer and supervisor determine a violent misdemeanor or felony charge against a sexual assault victim is appropriate and **both** the victim and the perpetrator of the sexual assault participated in the commission of the offense, the officer and supervisor shall consider whether to charge the sexual assault perpetrator with the additional count as well and document this in the investigative report.

19. In the event that the officer chooses to charge the sexual assault victim and not the sexual assault perpetrator with the offense in which they both participated, the officer shall document the decision not to charge the sexual assault perpetrator and the justifications for the decision. The officer shall obtain supervisory approval and concurrence for this decision and document this in the investigative report.

## SUSPECT INTERVIEWS

20. Suspects should only be interviewed by the detective but can be detained by the responding officer.

## SIGNS OF DRUG-FACILITATED SEXUAL ASSAULT

21. Officers should be aware that the signs of drug-facilitated sexual assault could include:
    (a) The victim reports being under the influence of a drug during the sexual assault;
    (b) The victim experiences vaginal soreness or other signs of sexual activities and cannot remember a part or the entirety of the incident;
    (c) The victim reports becoming heavily intoxicated very rapidly;
    (d) The victim reports symptoms of amnesia; and
    (e) The victim may exhibit symptoms of intoxication if still under the influence of rape-facilitating drugs.

## PRESERVING EVIDENCE

22. Officers shall protect the integrity of evidence and request assistance or direction from a Sex Crimes detective regarding the collection or preservation of evidence. Officers should secure the crime scene to ensure that evidence is not lost, changed, or contaminated.

23. Evidence should be handled by as few people as possible.

24. Encourage the victim not to change clothing, smoke, eat, drink, shower, urinate, or defecate by explaining that those activities could destroy evidence. If the victim decides to do any of these activities, contact a Sex Crimes detective for instructions on preservation of evidence and chain of custody. Clothing or other items that may contain DNA should be placed in a paper, not plastic, bag. Detectives shall carry receptacles for the collection of urine samples.

25. If a drug-facilitated sexual assault is suspected, officers shall preserve drinks to allow a crime lab to test for the presence of drugs. Additionally, in consultation with the assigned Sex Crimes detective, officers shall expedite a forensic exam to collect the victim's urine before any drugs leave the victim's system, if the victim agrees to the exam.

## SEXUAL ASSAULT FORENSIC EXAM

26. Officers shall be aware of the process and benefit of a sexual assault forensic medical examination and, if asked, explain its importance to investigative efforts as well as the victim's well-being. Officers shall not pressure victims to receive a forensic exam. Participating in a forensic exam does not obligate the victim to pursue a criminal complaint.

27. If the victim wants a forensic exam and there is a danger of loss of evidence by waiting for the arrival of a detective, the platoon officer shall contact the dispatched Sex Crimes detective or supervisor for instructions.

28. University Medical Center is the designated site for forensic exams.

### VICTIM ASSISTANCE

29. Officers shall:
    (a) Commend the victim for coming forward to the police;
    (b) and
    (c) Show understanding, patience, and respect for the victim's dignity and attempt to establish trust and rapport.

### VICTIM CONFIDENTIALITY

30. Throughout the investigation of the case, officers and detectives shall protect the confidentiality of the victim's information to the maximum extent possible by law and policy. Officers shall not publicly disclose the name, address, or identity of victims of sex offenses (La. R.S. 46:1844).

31. Officers shall **not**:
    (a) Use a victim's address or name on the radio, whenever feasible. If an officer's car does not have an MDT, phone contact between the communications desk and responding officers or detectives is preferred to contact over the radio.
    (b) Disseminate or publish in an initial police report the name of any victim of a sex crime (La. R.S. 46:1844(W)). Responding officers shall document their response fully on a Major Crime Scene Officer's Statement (Form 188).

### BODY WORN CAMERAS

32. Officers shall use body cameras in accordance with **Chapter 41.3.10 – Body Worn Cameras**. Per Chapter 41.3.10:

    > There may be limited circumstances when the respect for an individual's privacy or dignity outweighs the need to record an event (e.g. – a victim traumatized following a violent assault). When an officer believes such circumstances exist, or that use of a BWC would impede or limit the cooperation of a victim or witness during an investigative contact, an officer may deactivate the BWC after receiving authorization from a supervisor.

33. NOPD shall not publically release footage of sexual assault cases (La. R.S. 46:1844).

### CHANGING THE SIGNAL AND DISPOSITION

34. Platoon officers and supervisors **shall not** change the signal of sexual assault calls for service. Only the Sex Crimes Unit may change the signal in accordance with the **Sex Crimes Unit Operating Guidelines**.

35. Platoon officers and supervisors may give dispositions only to GOA sexual assault calls for service. Platoon officers and supervisors shall not give dispositions for other sexual assault calls for service.

36. Only Sex Crimes detectives may use the 24-K signal.

### TRANSFERRING THE CASE TO A DETECTIVE

37. The officer shall be aware that a victim of sexual assault may bond with the first responding officer. To help the victim become comfortable speaking with other members, the officer shall explain the role of the different members of the sexual assault response team and help with transitions through introductions.

**CNO-0030**

**PLATOON SUPERVISOR**

38. Platoon supervisors shall respond to the scene if requested by the responding officers.

39. Supervisors should be careful not to intervene in the responding officer's interactions with the victim or ask the victim to recount the incident again unless necessary.

40. Sex Crimes supervisors will communicate to platoon supervisors regarding any training needs for officers under their supervision.

41. Platoon supervisors shall include training on responding to sexual assault in roll call.

**INCIDENTS INVOLVING CHILDREN, ADOLESCENTS, OR DEVELOPMENTALLY DISABLED INDIVIDUALS**

42. Officers shall handle all sexual incidents involving a victim under the age of 17 at the time the incident is reported in accordance with **Chapter 42.19 – Child Abuse**.

43. Officers may also choose to handle cases involving developmentally disabled victims according to **Chapter 42.19 – Child Abuse**.

**TRAINING**

44. The Education and Training Division shall provide annual sexual assault training to officers. The Training Division shall document this training.

45. Any additional training supervisors receive, i.e. information bulletins, updates to policies, etc., shall be shared with officers during roll call.



# NEW ORLEANS POLICE DEPARTMENT OPERATIONS MANUAL

## CHAPTER: 42.2

## TITLE: SEXUAL ASSAULT

**EFFECTIVE:** 11/15/15
**REVISED:**

### PURPOSE

The purpose of this policy is to establish requirements and procedures for NOPD members to follow when responding to reports of sexual assault. Sex Crimes Unit detectives shall investigate all sexually related incidents with victims 17 years of age and older, including signals:

- 24-K (unreported sexual assault kit);
- 42 (aggravated rape);
- 42-B (oral sexual battery);
- 42-M (aggravated rape, male victim);
- 43 (simple rape);
- 43-B (sexual battery);
- 43-M (simple rape, male victim);
- 81S (sexting);
- 89 (crime against nature);
- 283 (video voyeurism); and
- 27 (attempted crime) related to any of the above signals.

**Chapter 42.19 – Child Abuse** covers sexual incidents involving victims under the age of 17.

### DEFINITIONS
Definitions relevant to this Chapter include:

**24-K**—The signal for an unreported sexual assault kit.

**Developmental disability**—Means either:

    (a) A severe, chronic disability of a person that:
        1. Is attributable to an intellectual or physical impairment or combination of intellectual and physical impairments;
        2. Is manifested before the person reaches age twenty-two;
        3. Is likely to continue indefinitely;
        4. Results in substantial functional limitations in three or more of the following areas of major life activity:
            i. Self-care;
            ii. Receptive and expressive language;

      iii. Learning;
      iv. Mobility;
      v. Self-direction;
      vi. Capacity for independent living;
      vii. Economic self-sufficiency.
5. Is not attributed solely to mental illness; and
6. Reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated; or

(b) A substantial developmental delay or specific congenital or acquired condition in a person from birth through age nine that, without services and support, has a high probability of resulting in those criteria in Subparagraph (a) of this Paragraph later in life that may be considered to be a developmental disability (La. R.S. 28:451.2(12)).

**Third-Party Reporter**—Any person who on behalf of a victim seeks to report a crime or obtain information to assist a victim in obtaining victim services.

**Victim Advocate**—This generic term may apply to a wide range of service providers, rape crisis counselors, social workers, and crime victim advocates. The roles and services of these different advocates should be explained to the victim. Officers will help obtain access to victim advocates when reasonably possible.

## POLICY STATEMENT

1. The trauma experienced by a victim of sexual assault can inflict serious and lasting emotional and psychological harm on the victim and impair the victim's ability to participate in the investigation. Officers and detectives play a significant role in the victim's ability to cope with the emotional and psychological after-effects of the crime and willingness to participate in the investigation. It is imperative that officers responding to a sexual assault incident are able to recognize, understand, and manage these effects for the benefit of the victim and the criminal investigation.

2. The trauma experienced by a sexual assault victim may be so overwhelming that a victim cannot function well enough to assist in the investigation at certain stages of the case. Trauma also affects memory and the ability to explain events in a narrative form. Trauma from crime victimization complicates a victim's participation in the investigation. Therefore, it is especially important that these cases be handled from a nonjudgmental perspective so as not to communicate in any way to a victim that the victim is to blame for the crime. All members shall initiate investigations without the presumption that the victim is lying and shall not express cynicism or blame to the victim.

## COMMUNICATIONS SERVICES RESPONSIBILITIES

3. Communications Services shall dispatch a platoon officer from the District of occurrence, as well as a Sex Crimes detective, to the location of the victim.

4. When a caller reports a sexual assault, communications personnel shall follow standard emergency response that includes evaluating and properly prioritizing the call, securing medical assistance, inquiring about a suspect's current location, and obtaining detailed information to identify the suspect. Information about the relationship with the victim, weapon use, and history of violence also shall be obtained.

5. Because of the trauma of a sexual assault, a victim reaching out for assistance may be in crisis. The victim's behaviors may be symptomatic of this condition and can range from hysteria, crying, and rage to laughter, calmness, and unresponsiveness. No single

**CNO-0033**

reaction is typical, so it is important to refrain from judging or disregarding any victim because of his or her behavior.

6. To ensure critical evidence is not lost, communications personnel shall:

   (a) Ask whether the victim has bathed, douched, urinated, or made other physical changes and advise against doing so;
   (b) Ask the victim to use a clean jar to collect urine should the victim have to urinate;
   (c) Let the victim know that other evidence may still be identified and recovered so the crime should still be reported if the victim has bathed or made other physical changes;
   (d) Preserve the communications tape and printout for the investigation; and
   (e) Explain to the caller that these questions will not delay an officer's response to the caller's location.

## ROLE OF THE PLATOON OFFICER

7. In sexual assault cases, the platoon officer's role is to:

   (a) Provide an emergency response, including attending to medical needs;
   (b) Express empathy (e.g. by saying, "I know this must be very difficult");
   (c) Assure the victim he/she will not be judged (e.g. by saying, "This is not your fault");
   (d) Put the victim at ease by explaining the investigative process (e.g. by saying, "I am going to ask you a few questions and wait with you until a detective arrives");
   (e) Inquire about the identity and location of the perpetrator;
   (f) Contact family support if possible;
   (g) Preserve evidence; and
   (h) Communicate observations to the Sex Crimes detective.

## INITIAL RESPONSE

8. As part of the initial response, officers shall:

   (a) Make contact with the victim or third-party reporter as soon as possible to address safety concerns and summon emergency medical assistance if needed;
   (b) Evaluate the scene for people, vehicles, or objects involved as well as possible threats;
   (c) Relay all vital information to responding officers, supervisors, and detectives, including any possible language barriers; and
   (d) When appropriate and necessary, platoon officers shall begin a search for the suspect and temporarily detain or arrest the suspect as appropriate based on evidence of probable cause. If the suspect is detained, wait for the Sex Crimes detective. Patrol officers shall not interrogate the suspect.

## MAJOR CRIME SCENE OFFICER STATEMENT

9. Officers shall complete the Major Crime Scene Officer Statement and provide it to the investigating detectives.

10. The statement should include a written narrative of all observations, including observations of the crime scene and any statements volunteered by the victim, perpetrator, witnesses, or reporting persons. Officers shall as accurately as possible use the victim's own words. Officers shall record observations of the crime scene, including the demeanors of the suspect and victim and document any injuries or

**CNO-0034**

disheveled clothing.

11. Under no circumstances should officers complete a report in the Electronic Police Reporting System. If an officer responds to a non-sexual assault signal and encounters elements of a sexual assault, he/she should not reference the sexual assault in an EPR report in any way.

**VICTIM STATEMENTS**

12. Victims have the legal right to have a victim advocate present during interactions with law enforcement.

13. The officer shall clearly explain his or her role to the victim. After an officer has completed the duties detailed in the **Role Of The Platoon Officer** section of this Chapter and explained his or her limited role in the investigation, the officer shall not urge the victim to tell his or her story but also should not prevent the victim from doing so. If the victim chooses to tell his or her story, the officer shall avoid interrupting, express sympathy, ask only open-ended questions, limit follow-up questions unless required by the situation, and document these statements in the Major Crime Scene Officer Statement.

14. Responding officers shall not ask the victim if he/she wants the assailant prosecuted. In the immediate aftermath of a sexual assault, a victim shall not be expected or encouraged to make decisions regarding the investigation or charges related to the offense.

**SUSPECT INTERVIEWS**

15. Suspects should only be interviewed by the detective but can be detained by the responding officer.

**SIGNS OF DRUG-FACILITATED SEXUAL ASSAULT**

16. Officers should be aware that the signs of drug-facilitated sexual assault could include:

    (a) The victim reports being under the influence of a drug during the sexual assault;
    (b) The victim experiences vaginal soreness or other signs of sexual activities and cannot remember a part or the entirety of the incident;
    (c) The victim reports becoming heavily intoxicated very rapidly;
    (d) The victim reports symptoms of amnesia; and
    (e) The victim may exhibit symptoms of intoxication if still under the influence of rape-facilitating drugs.

**PRESERVING EVIDENCE**

17. Officers shall protect the integrity of evidence and request assistance or direction from a Sex Crimes detective regarding the collection or preservation of evidence. Officers should secure the crime scene to ensure that evidence is not lost, changed, or contaminated.

18. Evidence should be handled by as few people as possible.

19. Encourage the victim not to change clothing, smoke, eat, drink, shower, urinate, or defecate by explaining that those activities could destroy evidence. If the victim decides to do any of these activities, contact a Sex Crimes detective for instructions on

preservation of evidence and chain of custody. Clothing or other items that may contain DNA should be placed in a paper, not plastic, bag. Detectives shall carry receptacles for the collection of urine samples.

20. If a drug-facilitated sexual assault is suspected, officers shall preserve drinks to allow a crime lab to test for the presence of drugs. Additionally, in consultation with the assigned Sex Crimes detective, officers shall expedite a forensic exam to collect the victim's urine before any drugs leave the victim's system, if the victim agrees to the exam.

### SEXUAL ASSAULT FORENSIC EXAM

21. Officers shall be aware of the process and benefit of a sexual assault forensic medical examination and, if asked, explain its importance to investigative efforts as well as the victim's well-being. Officers shall not pressure victims to receive a forensic exam. Participating in a forensic exam does not obligate the victim to pursue a criminal complaint.

22. If the victim wants a forensic exam and there is a danger of loss of evidence by waiting for the arrival of a detective, the platoon officer shall contact the dispatched Sex Crimes detective or supervisor for instructions.

23. University Medical Center is the designated site for forensic exams.

### VICTIM ASSISTANCE

24. Officers shall:

    (a) Commend the victim for coming forward to the police;
    (b) Be aware that NOPD prioritizes conducting thorough investigations of sexual assault claims over prosecuting victims for minor offenses; and
    (c) Show understanding, patience, and respect for the victim's dignity and attempt to establish trust and rapport.

### VICTIM CONFIDENTIALITY

25. Throughout the investigation of the case, officers and detectives shall protect the confidentiality of the victim's information to the maximum extent possible by law and policy. Officers shall not publicly disclose the name, address, or identity of crime victims who are victims of sex offenses (La. R.S. 46:1844).

26. Officers shall **not**:

    (a) Use a victim's address or name on the radio, whenever feasible. If an officer's car does not have an MDT, phone contact between the communications desk and responding officers or detectives is preferred to contact over the radio.
    (b) Disseminate or publish in an initial police report the name of any victim of a sex crime (La. R.S. 46:1844(W)). Responding officers shall document their response fully on a Major Crime Scene Officer's Statement form.

### BODY WORN CAMERAS

27. Officers shall use body cameras in accordance with **Chapter 41.3.10 – Body Worn Cameras**. Per Chapter 41.3.10:

**CNO-0036**

There may be limited circumstances when the respect for an individual's privacy or dignity outweighs the need to record an event (e.g. – a victim traumatized following a violent assault). When an officer believes such circumstances exist, or that use of a BWC would impede or limit the cooperation of a victim or witness during an investigative contact, an officer may deactivate the BWC after receiving authorization from a supervisor.

28. NOPD shall not publically release footage of sexual assault cases (La. R.S. 46:1844).

### CHANGING THE SIGNAL AND DISPOSITION

29. Officers **shall not** change the signal of the original sexual assault dispatch call or give dispositions. Only the Sex Crimes Unit may change the signal or give a disposition in accordance with the **Sex Crimes Unit Operating Guidelines**.

30. Only Sex Crimes detectives may use the 24-K signal.

### TRANSFERRING THE CASE TO A DETECTIVE

31. The officer shall be aware that a victim of sexual assault may bond with the first responding officer. To help the victim become comfortable speaking with other members, the officer shall explain the role of the different members of the sexual assault response team and help with transitions through introductions.

### PLATOON SUPERVISOR

32. Platoon supervisors shall respond to the scene if requested by the responding officers.

33. Supervisors should be careful not to intervene in the responding officer's interactions with the victim or ask the victim to recount the incident again unless necessary.

34. Platoon supervisors **shall not** change the signal of the original sexual assault dispatch call or give dispositions. Only the Sex Crimes Unit may change the signal or give a disposition in accordance with the **Sex Crimes Unit Operating Guidelines**.

35. Sex Crimes supervisors will communicate to platoon supervisors regarding any training needs for officers under their supervision.

36. Platoon supervisors shall include training on responding to sexual assault in roll call.

### INCIDENTS INVOLVING CHILDREN, ADOLESCENTS, OR DEVELOPMENTALLY DISABLED INDIVIDUALS

37. Officers shall handle all sexual incidents involving a victim under the age of 17 in accordance with **Chapter 42.19 – Child Abuse**.

38. Officers may also choose to handle cases involving developmentally disabled victims according to **Chapter 42.19 – Child Abuse**.

### TRAINING

39. The Education and Training Division shall provide annual sexual assault training to officers. The Training Division shall document this training.

40. Any additional training supervisors receive, i.e. information bulletins, updates to policies, etc., shall be shared with officers during roll call.