

# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER: 42.19

## TITLE: CHILD ABUSE

**EFFECTIVE:** 3/12/2017
**REVISED:** Replaces Policy and Procedure 330

**PURPOSE**

The purpose of this policy is to establish requirements for NOPD members who respond to reports of child abuse and neglect. The Child Abuse Unit shall investigate all abuse and sexually related incidents involving victims under the age of 17 years at the time the incident is reported, including the following signals:

- 29 (death);
- 30 (homicide) at the behest of the Criminal Investigations Division Commander;
- 42 (first-degree rape);
- 42-B (oral sexual battery);
- 42-M (first-degree rape, male victim);
- 42-U (unfounded first-degree rape);
- 43 (second-degree rape);
- 43-B (sexual battery);
- 43-M (second degree rape, male victim);
- 43-MB (misdemeanor sexual battery);
- 43-U (unfounded second-degree rape);
- 46-C (Trafficking of Children for Sexual Purposes);
- 80 (carnal knowledge of a juvenile);
- 81 (indecent behavior);
- 81-S (sexting);
- 89 (crime against nature);
- 92 (contributing to the delinquency of a juvenile);
- 93 (cruelty to a juvenile);
- 283 (video voyeurism); and
- 27 (attempted crime) related to any of the above signals.

Absent exigent circumstances, officers **shall not** interview the child victim or child witnesses. See **Interviewing Children** for more information.

If a Child Abuse detective is not available to respond to the incident, a Special Victims Section supervisor shall direct a Sex Crimes detective to respond to the incident. All detectives shall handle child abuse investigations according to the **Child Abuse Unit Standard Operating Guidelines**.

Officers may utilize the procedures outlined within this chapter when responding to cases of

**EXHIBIT**
8C

**CNO-0041**

abuse, neglect, maltreatment, or sexually related incidents involving developmentally disabled victims 17 years of age and older according to the procedures outlined in this Chapter.

Refer to **Chapter 42.2 – Sexual Assault** for guidance on handling sexual incidents involving victims 17 years of age and older at the time the incident is reported.

### DEFINITIONS

Definitions relevant to this Chapter include:

**Abuse**—Any one of the following acts that seriously endanger the physical, mental, or emotional health and safety of a child:
  (a) The infliction of physical or mental injury upon a child by any person;
  (b) The attempted infliction of physical or mental injury upon a child by any person;
  (c) Allowing, as a result of inadequate supervision, the affliction or attempted infliction of physical or mental injury upon a child by any person;
  (d) The exploitation or overwork of a child by any person; or
  (e) The involvement of a child in any sexual activity constituting a crime under the laws of this state.

**Child**—A person under 17 years of age who, prior to juvenile proceedings, has not been judicially emancipated or emancipated by marriage (La. Ch.C. art.728; definition changed from 18 to 17 years for purposes of this Chapter).

**Commercial Sexual Exploitation of Children (CSEC), also known as Domestic Minor Sex Trafficking (DMST)**—To recruit, harbor, transport, provide, sell, purchase, receive, isolate, entice, obtain, or maintain the use of a person under the age of eighteen years for the purpose of engaging in commercial sexual activity. Commercial sex act means any sexual act performed or conducted when any thing of value has been given, promised, or received by any person. Refer to La. R.S. 14:46.3.

**Developmental disability**—A severe chronic disability that can be cognitive or physical or both. Developmental disabilities appear before the age of 22 and are likely to be lifelong. Some developmental disabilities are largely physical issues, such as cerebral palsy or epilepsy. Some individuals may have a condition that includes a physical and intellectual disability, for example Down syndrome or fetal alcohol syndrome. Refer to La. R.S. 28:451.2(12) for the state definition.

**Misdemeanor sexual battery**—The intentional touching of the breasts or buttocks of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the intentional touching of the breasts or buttocks of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when the offender acts without the consent of the victim (La. R.S. 14:43.1.1). Misdemeanor sexual batteries are classified under Signal 43-MB.

**Neglect**—The refusal or unreasonable failure of a parent or caretaker to supply a child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child. Neglect includes prenatal neglect.

**Protective custody**—Taking a child into custody without a court order based on reasonable grounds to believe that the child's surroundings are such as to endanger the child's welfare and immediate removal appears to be necessary for the child's protection (La. Ch.C. art. 621).

### POLICY STATEMENT

1.  The first responding officer is the initial source of information for the remainder of the

investigative team and makes decisions that can deeply affect the investigation and the victim, setting the tone for the entirety of a case. This policy is intended to guide responding officers when responding to reports of child abuse, child neglect, maltreatment, and sexual-related incidents, including the commercial sexual exploitation of children.

## COMMUNICATIONS SERVICES RESPONSIBILITIES

2. Communications Services shall dispatch a Child Abuse detective, or a Sex Crimes detective at the direction of a Special Victims Section supervisor, to the location of the victim.

3. For child abuse calls as defined in this Chapter, Communications Services shall dispatch a patrol officer for Code 2 calls for service. Communications Services shall not dispatch a patrol officer to a Code 1 call for service unless otherwise requested by the detective.

4. When a complainant reports child abuse, communications personnel shall follow standard emergency response that includes evaluating and properly prioritizing the call, securing medical assistance, inquiring about a suspect's current location, and obtaining detailed information to identify the suspect. Information about the child's relationship with the victim, weapon use, and history of violence also shall be obtained.

5. To ensure critical evidence is not lost, Communications Services personnel shall:

    (a) Ask whether the victim has bathed, douched, urinated, or made other physical changes and advise against doing so;
    (b) Ask the reporting person to use a clean jar to collect urine should the victim have to urinate;
    (c) Let the reporting person know that other evidence may still be identified and recovered so the crime should still be reported if the victim has bathed or made other physical changes;
    (d) Preserve the communications tape and printout for the investigation; and
    (e) Explain to the reporting person that these questions will not delay an officer's response to the caller's location.

## RESPONSIBILITY OF THE PATROL OFFICER

6. The patrol officer's responsibility is to:

    (a) Provide an emergency response, including attending to medical needs;
    (b) Inquire about the identity and location of the suspect;
    (c) Preserve evidence;
    (d) Request a Child Abuse detective if one is not already on scene; and
    (e) Communicate observations to the responding detective.

7. If an officer responds to a scene that may involve child abuse but was not dispatched under a child abuse signal and no Child Abuse Unit detective is on scene, the officer shall immediately notify the Child Abuse Unit.

8. The following sections of this chapter provide greater detail on the officer's responsibilities when responding to a child abuse incident.

## INITIAL RESPONSE

9. As part of the initial response, patrol officers shall:

**CNO-0043**

(a) Make contact with the reporting person as soon as possible to address safety concerns and summon emergency medical assistance if needed;
(b) Evaluate the scene for people, vehicles, or objects involved as well as possible threats;
(c) Relay all vital information to responding officers, supervisors, and detectives, including any possible language barriers; and
(d) When appropriate and necessary, patrol officers shall begin a search for the suspect and temporarily detain or arrest the suspect as appropriate based on evidence of probable cause. If the suspect is detained, wait for the Child Abuse detective to interrogate the suspect. Patrol officers shall not interrogate the suspect.

## MANDATORY NOTIFICATIONS

10. Members who believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall notify the Child Abuse Unit (La. Ch.C. arts. 609-610).

## MAJOR CRIME SCENE OFFICER STATEMENT

11. All officers and supervisors on scene shall complete a Major Crime Scene Officer Statement (Form 188) and provide it to investigating detectives.

12. The statement should include a written narrative of all observations, including observations of the crime scene and any statements taken from individuals interviewed at the scene. As accurately as possible, officers shall use the interviewee's own words. Officers shall record observations of the crime scene, including the suspect's demeanor and the victim's demeanor, and document any injuries or disheveled clothing.

13. **For privacy reasons, under no circumstances should officers complete a report in the Electronic Police Reporting System for a possible child abuse incident.** If an officer responds to a call with a non-child abuse signal and encounters elements of child abuse, he/she should not reference the alleged child abuse in an EPR report in any way. See **Victim Confidentiality** for more information.

## INTERVIEWING CHILDREN

14. The officer **shall not** interview the child victim or child witnesses. In exigent circumstances after consulting a Special Victims Section supervisor, only the minimum information necessary to stabilize the situation and secure evidence may be obtained from a child.

15. If the victim chooses to tell his or her story, express sympathy and document the statements in the Major Crime Scene Officer Statement.

## INTERVIEWING ADULTS

16. Officers shall inquire with adults on scene as to the location and identity of the suspect.

17. Absent exigent circumstances, officers shall not interview adult suspects and witnesses. If a detective requests that an officer interview adult suspects or witnesses under exigent circumstances, the officer shall document the statements in a Major Crime Scene Officer Statement, and the detective shall document the exigent circumstance in a supplemental report.

**CNO-0044**

18. Officers shall ensure that the child victim is not present and cannot hear the interview with the adult.

19. When interviewing adults, officers should address:

    (a) **The allegation:** "Please tell me **exactly** what the child said to you, what you saw, and how you found out about this. What else do you know or think about this?"
    (b) **First disclosure:** "Who did the child tell first? What were the circumstances?"
    (c) **Corroboration:** "Do you know of any children or adults who might know something about this?"
    (d) **Suspect's history:** "Do you know if anything like this has ever happened before with the alleged perpetrator?"
    (e) **Need for a medical exam:** If the incident may have happened in the last 72 hours or the child is currently injured, the child may need immediate medical evaluation. See **Addressing Medical Needs.**

## SUSPECT INTERVIEWS

20. Suspects should be interviewed only by the detective but can be detained by the responding officer.

21. If a suspect discloses any information, that information shall be documented in the Major Crime Scene Officer Statement and communicated to the detective.

## ADDRESSING MEDICAL NEEDS

22. Obtain medical care in emergency cases or at the direction of the detective.

23. A case is considered an emergency if the victim is injured, complaining of injury, or if there has been physical contact with the alleged perpetrator in the past 72 hours.

24. Consult with the detective about addressing medical needs other than in emergency situations.

## SIGNS OF DRUG-FACILITATED SEXUAL ASSAULT

25. Officers should be aware that the signs of drug-facilitated sexual assault could include:

    (a) The victim reports being under the influence of a drug during the abuse;
    (b) The victim experiences vaginal soreness or other signs of abuse and cannot remember a part or the entirety of the incident;
    (c) The victim reports becoming heavily intoxicated very rapidly;
    (d) The victim reports symptoms of amnesia; and/or
    (e) The victim may exhibit symptoms of intoxication if still under the influence of rape-facilitating drugs.

## SIGNS OF COMMERCIAL SEXUAL EXPLOITATION OF CHILDREN

26. Officers should immediately notify the Child Abuse Unit if they suspect a child could be a victim of commercial sexual exploitation. Officers should be aware that the signs of commercial sexual exploitation of children could include:

    (a) Child has run away from home;

(b) Inappropriate dress, including overtly sexual clothing or oversized clothing;
(c) Child has unexplained bruises or injuries;
(d) Child is in possession of large amounts of money, more than one cell phone, hotel keys;
(e) Child has an older boyfriend, girlfriend, friend or relative more than 5 years older than the child;
(f) The child is not enrolled in school or is missing large amounts of school;
(g) The child has fake identification or someone else is in control of their identification; or
(h) The child was arrested or spotted in an area known for prostitution, such as an adult entertainment venue, strip club, massage parlor, x-rated video shop, known area of town and/or hotel.

27. In accordance with La. R.S. 14:46.3, no victim of Trafficking shall be prosecuted for unlawful acts committed as a direct result of being trafficked. Consent of a minor is not a defense and shall not be relevant to the investigation. No victim of trafficking shall be arrested, investigated, or referenced in terms of La. R.S. 14:82 Prostitution.

**PRESERVING EVIDENCE**

28. Officers shall protect the integrity of evidence and request assistance or direction from a Child Abuse detective regarding the collection or preservation of evidence. Officers should secure the crime scene to ensure that evidence is not lost, changed, or contaminated.

29. Evidence should be handled by as few people as possible.

30. Absent exigent circumstances, officers and detectives shall not collect evidence. Crime Scene Technicians shall collect evidence under the direction of a Child Abuse Unit detective.

31. If anyone reports the presence of possible physical evidence, make sure that it is collected. Examples of physical evidence include but are not limited to clothing worn by the victim, drawings, writings, tape recordings, videos, e-mails, or text messages made by the victim regarding the allegation, bed sheets, used condoms, or evidence collected by an emergency department professional.

32. If a drug-facilitated sexual assault is suspected, officers shall preserve drinks to allow a crime lab to test for the presence of drugs and, in consultation with the assigned Child Abuse detective, expedite the forensic exam before any drugs leave the victim's system, if the victim's custodians agree to the exam.

**PROTECTIVE CUSTODY**

33. An officer may take a child into temporary protective custody without a court order if there are reasonable grounds to believe that the child's surroundings endanger his/her welfare and immediate removal appears necessary (La. Ch.C. art. 621).

34. Whenever feasible, officers shall consult with the Child Abuse Unit prior to taking a child into protective custody in a child abuse related case. If prior notification is not feasible, officers shall contact the Child Abuse Unit promptly after taking a child into protective custody.

35. Prior to taking a child into temporary protective custody, the officer should take reasonable steps to deliver the child to another parent or legal guardian who is not

Case 2:21-cv-00407-CJB-KWR   Document 126-14   Filed 01/23/24   Page 7 of 17

CHAPTER: 42.19                                    Page 7 of 8

involved in the actions which precipitated taking the child into temporary protective custody. The detective **shall** receive permission from a Special Victims Section supervisor and DCFS before delivering the child to another parent or legal guardian.

36. The officer must complete a separate face sheet in the EPR system with the Signal 78 - Protective Custody. The original signal of the call shall not be changed to Signal 78 - Protective Custody. The officer shall contact the detective to determine the appropriate destination for the individual.

### OFFICER RESPONSIBILITIES FOR DRUG-ENDANGERED CHILDREN

37. Officers responding to a drug lab or other narcotics crime scene where a child is present or where a child resides should:

    (a) Document the environmental, medical, social, and other conditions of the child using photography as appropriate, and
    (b) Notify a Special Victims Section supervisor.

### SUPPORTING THE CHILD VICTIM

38. If the officer encounters the child, the officer should state, "What happened is not your fault. I'm sorry this happened to you, and none of this is your fault. I'm going to call a special team to help you."

39. Officers shall demonstrate support in all interactions with the victim and encourage adults on scene to:
    (a) Support the victim and the investigation;
    (b) Avoid discussing the incident in front of the victim;
    (c) If the child brings up the incident, listen without questioning and document exactly what the child says; and
    (d) Not blame the child or make the child feel guilty with questions such as "why didn't you tell when it happened."

### VICTIM CONFIDENTIALITY

40. Throughout the investigation of the case, officers and detectives shall protect the confidentiality of the victim's information to the maximum extent possible by law and policy. Officers shall not publicly disclose the name, address, or identity of child abuse victims.

41. Strategies to protect victim confidentiality include:

    (a) Not using a victim's address or name on police radio, whenever feasible. If an officer's unit does not have an MDT, phone contact between Communications Services and responding officers or detectives is preferred to contact over police radio.
    (b) Responding officers shall document their response fully on a Major Crime Scene Officer's Statement Form (Form 188). The name of any child abuse victim shall not be disseminated or published in an initial police report.

### BODY WORN CAMERAS

42. Officers shall use body cameras in accordance with **Chapter 41.3.10 – Body Worn Cameras.**

**CNO-0047**

43. NOPD shall not publicly release footage of child sexual assault cases (La. R.S. 46:1844).

## CHANGING THE SIGNAL AND DISPOSITION

44. Responding officers **shall not** change the signal or give a disposition for any call for service with a signal covered by this Chapter. Only the Special Victims Section may change the signal or give a disposition in accordance with the **Child Abuse Unit Standard Operating Guidelines**.

## TRANSFERRING THE CASE TO A DETECTIVE

45. A victim of child abuse may bond with the first officer with whom he or she comes into contact after the incident. To help the child victim become comfortable speaking with other members, the officer shall explain the role of the different members of the child abuse response team and help with transitions through introductions to other members involved in the investigation.

## PATROL SUPERVISOR

46. Patrol supervisors shall respond to the scene if requested.

47. Patrol supervisors **shall not** change the signal or give a disposition for any call for service with a signal covered by this Chapter. Only the Special Victims Section may change the signal or give a disposition in accordance with the **Child Abuse Unit Standard Operating Guidelines**.

48. Special Victims Section supervisors will communicate to patrol supervisors regarding any training needs for officers under their supervision.

ARCHIVED DO NOT USE

**Policy**

**330**

**New Orleans Police Department**
Policy Manual

# Child Abuse Reporting

### 330.1 PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines and procedures for reports of suspected child abuse and the taking of minors into protective custody.

### 330.1.1 DEFINITIONS
**Abuse** - Any one of the following acts which seriously endanger the physical, mental or emotional health and safety of a child:

(a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
(b) The exploitation or overwork of a child by a parent or any other person.
(c) The involvement of the child in any sexual activity constituting a crime under the laws of this state.

**Child** - A person under 18 years of age who, prior to juvenile proceedings, has not been emancipated.

**Neglect** - The refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment or counseling for any injury, illness or condition of the child. Neglect includes prenatal neglect.

### 330.2 POLICY
Members of the New Orleans Police Department Special Victim Section, Child Abuse Unit will investigate all reported incidents of child abuse or neglect and shall ensure the local Department of Children and Family Services (DCFS) is notified (Ch. C. 610; R.S. 603(15)).

Officers of the New Orleans Police Department responding to incidents of suspected child abuse where it cannot initially be shown that a crime occurred shall notify the Child Abuse Unit. The Child Abuse detective will determine if an incident report is required.

### 330.3 MANDATORY NOTIFICATIONS
Members of the New Orleans Police Department who believes that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall notify the Special Victims Section Child Abuse Unit who will make the appropriate notifications and/or contact the local DCFS (Ch. C. 609; Ch. C. 610).

### 330.3.1 NOTIFICATION AND REPORTING PROCEDURE
Notification to the DCFS should occur as follows (Ch. C. 610(B):

(a) The report shall contain the following information, if known:
1. The name, address, age, sex and race of the child.
2. The nature, extent and cause of the child's injuries or endangered condition, including any previous known or suspected abuse to this child or the child's siblings.

ARCHIVED DO NOT USE

**New Orleans Police Department**
Policy Manual

*Child Abuse Reporting*

---

3. The name and address of the child's parent(s) or other caretaker.
4. The names and ages of all other members of the child's household.
5. The name and address of the reporter.
6. An account of how this child came to the reporter's attention.
7. Any explanation of the cause of the child's injury or condition offered by the child, the caretaker or any other person.
8. The number of times the reporter has filed a report on the child or the child's siblings.
9. Any other information which the reporter believes might be important or relevant.
10. The name of the person or persons who are thought to have caused or contributed to the child's condition.
11. The name of such person or persons if named by the child.

(b) If the initial report was made orally by a mandatory reporter, within five days it shall be followed by a written report to the local child protection unit of the DCFS.

(c) Written reports are to be made using the form available electronically on the DCFS website.

The Child Abuse Unit Detectives have been designated to ensure the notification is performed.

### 330.4 INVESTIGATIONS

The Special Victims Section Child Abuse Unit shall investigate every report of child abuse or neglect if a violation of a criminal statute is alleged. The Child Abuse Unit shall participate in multidisciplinary teams for the investigation of child abuse or neglect cases in accordance with local judicial protocols (Ch. C. 508; Ch. C. 509; Ch. C. 510; Ch. C. 512).

General investigations of child abuse that do not meet the multidisciplinary team criteria shall be handled in accordance with this policy and as soon as reasonably possible based upon available resources.

The duties of the staff assigned to investigate child abuse include, but are not limited to:

(a) Responsibility for the investigation, the collection of evidence and preliminary preparation for prosecution of all cases of child abuse and molestation.
(b) Investigating the custodial deaths of children that could be attributed to abuse or molestation.
(c) Investigating any instance of Sudden Unexplained Infant Death (SUID).
(d) Investigation of reports of unfit homes, child abandonment, child endangering or neglect.
(e) Coordination with other enforcement agencies, social service agencies and school administrators in the application and enforcement of the laws regarding child abuse cases.
(f) Schedule a forensic interview of the victim or victims with the Child Advocacy Center.

All cases of the unexplained death of a child should be investigated as thoroughly as if it had been a case of suspected child abuse (e.g., a sudden or unexplained death of an infant).

---

ARCHIVED DO NOT USE

New Orleans Police Department

Policy Manual

Child Abuse Reporting

### 330.4.1 QUALIFIED INVESTIGATORS

Qualified investigators should be available for child abuse investigations. These investigators should:

(a) Conduct interviews in child appropriate interview facilities.
(b) Be familiar with forensic interview techniques specific to child abuse investigations.
(c) Present all cases of alleged child abuse to the prosecutor for review.
(d) Coordinate with other enforcement agencies, social service agencies and school administrators as needed.
(e) Provide referrals to therapy services, victim advocates, guardians and support for the child and family as appropriate.
(f) Participate in or coordinate with multidisciplinary investigative teams as applicable.

### 330.5 PROTECTIVE CUSTODY

Generally, officers of this department should remove a child from his/her parent or guardian without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the child. Prior to taking a child into protective custody, and when temporary protective custody is not mandated by law, the officer should take reasonable steps to deliver the child to another qualified parent or legal guardian unless it reasonably appears that the release would endanger the minor or result in abduction. In such circumstances, the officer should advise the qualified parent or legal guardian that he/she may petition the court for either a temporary restraining order or a protective order (Ch. C. 617; Ch. C. 618). If this is not a reasonable option, the officer shall ensure that the minor is delivered to the DCFS.

Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking a child into protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking a child into protective custody.

Before taking any child into protective custody, the officer shall contact the Child Abuse Unit. The Child Abuse detective will determine if a protective custody is warranted. The officer will transport the child to the New Orleans Police Department Juvenile Unit. The Juvenile detective will contact DCFS. Generally, removal of a child from his/her family, guardian or other responsible adult should be left to child welfare authorities such as the DCFS

In Louisiana, an officer may:

(a) Take a child into temporary protective custody without a court order if there are reasonable grounds to believe that the child's surroundings endanger his/her welfare and immediate removal appears necessary (Ch. C. 621).

   1. Prior to taking a child into temporary protective custody, the officer should take reasonable steps to deliver the child to another qualified parent or legal guardian unless it reasonably appears that the release would endanger the minor or result in abduction. If this is not a reasonable option, the officer shall promptly notify and release the child to the DCFS.

   2. Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking a child into temporary protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking a child into temporary protective custody.

ARCHIVED DO NOT USE

New Orleans Police Department

Policy Manual

*Child Abuse Reporting*

---

(b) File a verified complaint with the court alleging that there are reasonable grounds to believe that the child is in need of care and that emergency removal is necessary to secure the child's protection (Ch. C. 619(A)).

1. If the officer believes the danger is imminent, he/she shall relay the facts supporting the issuance of the order orally or by telephone to the judge and submit an affidavit of the information to the court within 24 hours (Ch. C. 620).

### 330.6 INTERVIEWS

#### 330.6.1 PRELIMINARY INTERVIEWS
Officers should avoid multiple interviews with a child victim and should attempt to gather only the information necessary to begin an investigation. When practicable, investigating officers should defer interviews until a person who is specially trained in such interviews is available. Generally, child victims should not be interviewed in the home or location where the alleged abuse occurred.

#### 330.6.2 DETAINING SUSPECTED CHILD ABUSE VICTIMS FOR INTERVIEWS
An officer should not detain a child involuntarily who is suspected of being a victim of child abuse solely for the purpose of an interview or physical exam without the consent of a parent or guardian unless one of the following applies:

(a) Exigent circumstances exist, such as:
  1. A reasonable belief that medical issues of the child need to be addressed immediately.
  2. A reasonable belief that the child is or will be in danger of harm if the interview or physical exam is not immediately completed.
  3. The alleged offender is the custodial parent or guardian and there is reason to believe the child may be in continued danger.

(b) A court order or warrant has been issued.

#### 330.6.3 RECORDING CHILD ABUSE VICTIMS
Any interview of the alleged child abuse or neglect victim shall be video and/or audio recorded as permitted by state law. If requested by a parent, any interview of the child or a parent must be recorded (Ch. C. 612). Interviews concerning reports of sexual child abuse are strongly encouraged to be video-recorded. If video equipment is not functional, the interview shall be audio recorded.

### 330.7 MEDICAL EXAMINATIONS
If the child has been the victim of abuse that requires a medical examination, the investigating officer should obtain consent for such examination from the appropriate parent, guardian or agency having legal custody of the child. The officer should also arrange for the child's transportation to the appropriate medical facility.

In cases where the alleged offender is the custodial parent or guardian and is refusing consent for the medical examination, officers should notify a supervisor before proceeding. If exigent circumstances do not exist or if state law does not provide for officers to take the child for a medical examination, the notified supervisor should consider obtaining a court order for such an examination.

---

Adopted: 2013/02/10 © 1995-2013 Lexipol, LLC

Child Abuse Reporting - 77

**CNO-0052**

ARCHIVED DO NOT USE

New Orleans Police Department

Policy Manual

*Child Abuse Reporting*

### 330.8 DRUG-ENDANGERED CHILDREN

A coordinated response by law enforcement and social services agencies is appropriate to meet the immediate and longer-term medical and safety needs of children exposed to the manufacturing, trafficking or use of narcotics.

### 330.8.1 SUPERVISOR RESPONSIBILITIES

The Child Abuse supervisor should:

(a) Work with professionals from the appropriate agencies, including the Louisiana Department of Children and Family Services (DCFS), other law enforcement agencies, medical service providers and local prosecutors to develop community specific procedures for responding to situations where there are children endangered by their exposure to methamphetamine labs or the manufacture and trafficking of other drugs.

(b) Activate the interagency response when an officer notifies the Detective Bureau supervisor that he/she has responded to a drug lab or other narcotics crime scene where a child is present or where evidence indicates that a child lives there.

(c) Provide Policy and Planning unit, through the chain of command, information to develop a report format or checklist for use when officers respond to drug labs or other narcotics crime scenes. The checklist will help officers document the environmental, medical, social and other conditions that may affect the child.

### 330.9 OFFICER RESPONSIBILITIES

Officers responding to a drug lab or other narcotics crime scene where a child is present or where there is evidence that a child lives should:

(a) Document the environmental, medical, social and other conditions of the child using photography as appropriate and the checklist or form developed for this purpose.

(b) Notify the Detective Bureau supervisor so an interagency response can begin.

### 330.10 CHILD DEATH REVIEW PANEL

The Louisiana State Child Death Review Panel has established standardized investigation protocols to investigate deaths of children (R.S. 40:2019(D). This department shall cooperate fully with any such panel and investigation.

### 330.11 RELEASE OF REPORTS

Reports of child abuse or neglect shall be confidential and may only be disclosed pursuant to state law and the Security and Release of Records Policy (R.S. 46:56; Ch. C. 616(B)).

# ARCHIVED DO NOT USE

**PR330**

New Orleans Police Department
Procedure Manual

# Child Abuse Reporting

### PR330.1   PURPOSE AND SCOPE
The Child Abuse Unit is a specialized investigative unit charged with the responsibility of conducting complete investigations of alleged physical abuse, physical neglect, sexual abuse, and exploitation of children under the age of 18 years old, which may include, but is not limited to the following: child pornography, child prostitution, obscenity, trafficking, and international parental kidnapping.

### PR330.2   OFFICER RESPONDING TO REPORT CHILD ABUSE
Officers responding to a suspected child abuse call shall do the following:

(a) Officers shall interview the reporting person to determine if a criminal violation has been committed. If the reporting person is the victim, the officer **shall limit their** interview with the victim to obtain enough information to determine that a crime has occurred.

(b) If child abuse is suspected, the officer must notify his/her supervisor before requesting a child abuse unit. The supervisor will determine if the Child Abuse Unit is to be notified.

(c) The officer must contact command desk to request a child abuse unit.

### PR330.3   RECLASSIFYING A CALL
Only a supervisor may change the signal of a call of suspected child abuse after speaking with a child abuse supervisor or detective. The supervisor will notify Command Desk via NOPD radio of a signal change before his/her ETOD. A call for service SHALL NOT be marked up without officers notifying a supervisor.

### PR330.4   TRANSPORTING AN ARRESTED SUBJECT
If a child abuse detective has probable cause to believe an individual committed criminal violation(s) of local, state, or federal laws, the officer may transport the individual to the Child Abuse office for the purpose of processing and/or debriefing the subject.

### PR330.5   SECURING THE SCENE
Responding officers shall: Make initial contact with the occupants and gain entry into the premises.

- Separate the parties. Separate occupants and witnesses from the victim and accused, keeping them out of sight and hearing range of one another, as safety permits.
- Restrain the suspect, if necessary, and/or remove the suspect.
- Assess for injuries and request medical services as necessary. Determine the whereabouts and identities of all people on the premises, including children.
- Identify and secure weapons that might pose a threat during the investigation or that might be potential evidence.

Child Abuse Reporting - 44

Adopted: 2013/02/10 © 1995-2013 Lexipol, LLC

**CNO-0054**

New Orleans Police Department
Procedure Manual

*Child Abuse Reporting*

### PR330.6 REPORTS

Officers responding to a case of suspected child abuse shall not write an incident report once the child abuse detectives has determined that an investigation is warranted. The child abuse detective will complete an incident and supplement report on the incident.

**The EPR system shall not be used to document a child abuse case.**

### PR330.7 PROTECTIVE CUSTODY

Officer responding to incidents involving protective custody shall immediately notify the child abuse unit. Once the detective determines that a protective custody is warranted, the detective will notify the Department of Family Service. The officer must complete a face sheet in the EPR system with the signal 21 Protective Custody. The officer will transport the individual to the Juvenile Bureau.

### PR330.8 ACTIVATION CRITERIA - AMBER ALERT

There are three elements for activation of the Amber Alert:

(a) the missing child must be 17 years of age or younger; and
(b) there is a supported reason to believe the child is in imminent danger; and/or
(c) there is a supported reason to believe that criminal activity is suspected in the disappearance.

### PR330.8.1 INSTRUCTIONS FOR AMBER ALERT

District personnel shall be dispatched to conduct investigations of missing children.

While investigating a possible missing child, district personnel shall consider the following elements as a possible Amber Alert case:

(a) The supported threat of imminent harm or death to the missing child;
(b) The age of the child (seventeen years or younger);
(c) Time of initial report or police response vs. time of the disappearance;
(d) Reliable witness information;
(e) Possible domestic or parental dispute involving the child; and
(f) Other facts that indicate the child was abducted or is in danger of serious injury or death (e.g., witnessed kidnapping, witnessed abuse, or violence toward child)

If the criteria for an Amber Alert is met, district personnels hall notify the Child Abuse Unit or the Command Desk requesting a Child Abuse detective contact the investigating officer either by telephone or radio. The investigating officer shall supply the Child Abuse detective with all pertinent information substantiating the need for an Amber Alert. If the Child Abuse detective concurs that the criteria for an Amber Alert is met, he/she shall:

(a) immediately notify the Sex Crimes Commander, who will in turn authorize an Amber Alert;
(b) notify the PIO that an alert has been authorized, requesting he/she respond to the scene;
(c) contact the Command Desk supervisor, supplying all information for the Amber Alert system initial reporting form; and
(d) respond to the scene to take command of the investigation.

ARCHIVED DO NOT USE
New Orleans Police Department
Procedure Manual

*Child Abuse Reporting*

---

The Child Abuse detective shall complete an Amber Alert System initial reporting form (Form 54), also referred to as a "script". A copy of the report form will be forwarded to Communication Services prior to the Child Abuse detective completing his/her tour of duty.

(a) Where time is of the essence, the Child Abuse detective may contact Command Desk personnel by telephone or radio, supplying the information on Form 54 (Amber Alert Reporting Form).

(b) Command Desk personnel shall use the supplied information to initiate the alert.

The equipment which broadcasts an Emergency Alert System (EAS) signal shall be maintained on the Command Desk. The Public Information Officer shall have primary responsibility for sending the message. However, when time is of a critical nature, the PIO may authorize the use of Command Desk personnel to send the alert.

It shall be the responsibility of the individual sending the alert to broadcast alert tones, followed by a verbal notification of the abduction information over the City News channel & the radio system. All Television news stations currently monitor the channel, as does WWL Radio (the EAS Alert station for this area). This will alert all stations to be on the lookout for the information that will follow.

Upon receipt from the Child Abuse detective, the person who sends the EAS signal shall complete the bottom portion of the Amber Alert system initial reporting form, and shall return the original form to the Child Abuse detective for inclusion in the case file.

The PIO shall e-mail the text of the script to the media which are on the established Amber Alert e-mail list, including any additional information and photographs of the missing child, if available.

Upon receipt of verification the child has been located, the commander of the Sex Crimes Section shall, at his discretion, instruct the Command Desk, the PIO or a Child Abuse detective to issue an "end of alert" message to the media via the established Amber Alert e-mail list. The PIO shall notify all media outlets via the City News Channel.

Within five working days of an Amber Alert, the PIO Commander shall request a meeting with the Sex Crimes Commander, the Communications Services Commander, and representatives from the media to evaluate the operation of the Amber Alert, with the goal of improving future Amber Alerts.

The Communications Services, in conjunction with the Greater New Orleans Broadcast Assoc. shall conduct mock amber alerts quarterly.

### PR330.8.2   NCIC INFORMATION BULLETINS

Investigating officers shall consider the use of an NCIC information bulletin to notify other jurisdictions outside Louisiana of the missing individual in cases where a child may have been abducted. All possible information shall be included in the bulletin including but not limited to the following:

(a) physical description of the child, including clothing worn at the time abducted;
(b) physical description of the individual suspected of the abduction, including a clothing description;
(c) all information as to the description of the vehicle used;
(d) descriptions of accomplices;

---

Child Abuse Reporting - 46

Adopted: 2013/02/10 © 1995-2013 Lexipol, LLC

**CNO-0056**

ARCHIVED DO NOT USE

**New Orleans Police Department**

Procedure Manual

*Child Abuse Reporting*

(e)  direction of flight; and

(f)  the time of the offense.

Investigators will decide if the message should be regional or if various states should be included in the notification. Investigators shall use Form 54 (Amber Alert Report form) when sending NCIC information bulletins.