# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## SHAUN FERGUSON'S AND CITY OF NEW ORLEANS' *DAUBERT* MOTION TO
## LIMIT TESTIMONY OF SHANNON E. SMITH, LPC-S, NCC

Defendants, Shaun Ferguson and the City of New Orleans (the "City Defendants") respectfully request the Court to issue an order to exclude all or parts of the opinion testimony of Plaintiff's designated expert, Shannon E. Smith, LPC-S, NCC, from the trial of this matter.

## BACKGROUND

Plaintiff retained Ms. Smith to provide an opinion on Plaintiff's "current mental health" and "possible effects of victimization by Police Officer Rodney Vicknair."[1] Ms. Smith met with Plaintiff on one occasion, interviewed her, and administered several self-reporting assessment measures. Ms. Smith concluded that Plaintiff's "current mental state" included "symptoms of anxiety in the severe range, symptoms of depression in the moderate range, symptoms of post-traumatic stress in the mild to moderate range, and no dissociative symptoms."[2] In addition, Ms. Smith stated that Plaintiff "reported specific distrust of and a negative impression of police officers following her experiences with Mr. Vicknair" and is "afraid of cops."[3]

---

[1] Exhibit 1, p. 3, Expert Witness Report of Shannon E. Smith, LPC-S, NCC, and See Exhibit 2 p.52:5-p.52:12 Rough Draft of Deposition of Shannon E Smith taken on January 19, 2024, ("Smith Depo").
[2] *Id.*
[3] *Id.* at p. 5.

However, at deposition, Ms. Smith acknowledged that several events had occurred in Plaintiff's life prior to, and after, her encounter with Mr. Vicknair which may have adversely affected Plaintiff's current mental health. These events included, among other things, a history of housing and educational instability, a period of foster care, sexual abuse by her brother, physical and sexual abuse by her brother and father, sex trafficking and prostitution of Plaintiff by her mother, alcohol use and other risky behaviors by Plaintiff, and an attempted rape which resulted in Mr. Vicknair being called to Plaintiff's residence.[4] In addition, Plaintiff was hospitalized on at least two occasions for mental health issues, including self-harm and suicidal ideation, and received numerous mental health diagnoses, before she met Mr. Vicknair.[5] State child welfare officials have been called concerning Plaintiff before and after the incident involving Mr. Vicknair because of circumstances unrelated to Mr. Vicknair.[6] Further, at the time Plaintiff first encountered Mr. Vicknair, and continuing through the date that Mr. Vicknair allegedly sexually assaulted Plaintiff, Plaintiff was engaged in an ongoing sexual relationship with a 50 year-old man named Jim, which Plaintiff's mother condoned.[7] Given Plaintiff's extensive mental health history and numerous adverse events in her life, Ms. Smith, at deposition, denied being able to express any expert opinion as to any causal effect Mr. Vicknair's actions had on Plaintiff's current mental health.[8]

In addition, Ms. Smith testified that she has experience as a "victim advocate," but has no training, education, or expertise in law enforcement, sex crimes investigation, police protocol, or

---

[4] Exhibit 2 ("Smith Depo") p.14:8-p.14:21; p.85:9-p.85:22; p.98:14-p.98:20; p. 123:16-p.124:9; p.131:20-p.132:11; p.134:15-p.135:7; p.140:15-p.140:23; p.142:22 -143:2; p.150:7-p.152:11; p.154:15-p.156:10; p.159:3 -p.159:19; p.161:21-p.-162:15; p.167:1 -p.168:6; p.166:8 -p.166:25; p.171:21-p.173-24; p.176:6 -p.176:24; p.180:19 -p.182:4 ; p.182:10-p.183:24; p.186:3 -p. 186:15; and p.188:4- p.188:15.

[5] Exhibit 2 ("Smith Depo") p.92:22-p.93:22; p.114:2-p.114:25; p.120:15-123:8; p.125:3-p.127:1; p.130:11-p.131:16; p.140:6-p.140:14; p. 182:6 -p.182:17.

[6] Exhibit 2 ("Smith Depo"), p. 92:22-p.93:22; p.133:19-p.133:2; p.134:18-p.135:2; and p.137:6-p.137.7

[7] Exhibit 2,(Smith Depo) p.87:16 -p.87:21; p.143:12-p.144:8;p.162:16 -p.164:5; and p.177:13 -p.182:4.

[8] Exhibit 2 ("Smith Depo") p. 60:2-p.60:25; p.89:22-p.90:7; and p.106:14-p.107:2;

medicine.[9] Based solely on experience as a victim advocate, Ms. Smith offered opinions as to "best practice protocol" with respect to law enforcement and medical staff response to reports of sexual assault.[10]

In addition, Ms. Smith acknowledged that she did not interview Mr. Vicknair, but rather reviewed a report issued by the Public Integrity Bureau of the New Orleans Police Department ("NOPD") concerning Mr. Vicknair's misconduct.[11] Ms. Smith offered testimony on the propriety of Mr. Vicknair's conduct as a law enforcement officer and his motivation to "use his position as a police officer to justify his ongoing relationship" with Plaintiff.[12]

## LAW AND ARGUMENT

### A. *Daubert* and Federal Rules of Evidence 702 and 403.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony and provides, in pertinent part, that, if a witness is qualified as an expert, he or she may testify if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court acts as a "gatekeeper," ensuring that only relevant and reliable expert testimony is admitted into evidence. Both scientific and nonscientific expert testimony are subject to the Daubert framework, which requires trial courts to make a preliminary assessment of

---

[9] Exhibit 2,("Smith Depo") p.47:14-p.49:14; p.96:14- p.97:12; p.100:3-p.101:7; p.116:25-p.117:12.
[10] Exhibit 2, ("Smith Depo")p.95:5-p.98:13.
[11] Exhibit 2,("Smith Depo") p.100:21-p.101:7 and p.103:19 -p.103:25
[12] Ex. 1, pp. 5-6.

"whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability and validity of an expert opinion does not require a finding of certainty, but the opinion must be demonstrated through evidence that the expert's knowledge is more than speculation. *Daubert*, at p. 590. An expert's self-proclaimed accuracy is insufficient. *Kumho*, at p. 157.

In the event an expert's testimony survives the threshold scrutiny required by Rule 702 and *Daubert*, supra, the proposed testimony is still subject to further review under F.R.E. Rule 403. *Daubert*, at p. 595. Expert evidence can be both misleading and powerful and Rule 403 provides more control over experts than over lay witnesses. *Daubert*, at p. 595. Thus, an expert's opinion that lacks reliable support may render it more prejudicial than probative, making it inadmissible under Rule 403. *Viterbo v. Dow Chemical Company*, 826 F.2d 420, 422 (5th Cir. 1987).

**B. <u>All testimony concerning Plaintiff's current mental health and the effects of Mr. Vicknair's misconduct should be excluded because Ms. Smith conceded that she had no basis to conclude that any aspect to Plaintiff's current mental health was caused by Mr. Vicknair.</u>**

All testimony from Ms. Smith concerning Plaintiff's current mental health and effects of Mr. Vicknair's misconduct should be excluded under Federal Rules of Evidence 702 and 403 because she has no basis to provide any opinion that would be reliable or helpful to a jury, or which would be more probative than prejudicial.

Ms. Smith conceded that she had no basis to provide an opinion that any aspect of Plaintiff's current mental state was caused by the actions of Mr. Vicknair.[13] This is not surprising

---

[13] Exhibit 1, p. 3; and Exhibit 2, p. 60:8-p.60:11; p.89:22-p.90:7; and p.106:14-p.107:2.

given the numerous mental health challenges faced by Plaintiff throughout her life before and after her encounter with Mr. Vicknair, as noted above. Therefore, the assessment measures performed by Ms. Smith, which resulted in indicated symptoms of anxiety, depression and post-traumatic stress, have no context and the diagnoses made as a result cannot be attributable to Mr. Vicknair or the other Defendants. Any expert opinion that might suggest that Mr. Vicknair caused any of Plaintiff's present mental health issues would not be supported by any facts and should be excluded under *Daubert* and *Kumho* as not being reliable. In addition, any relevance of such testimony would be substantially outweighed by the prejudice and confusion to the jury caused by introduction of such evidence.

Second, Ms. Smith should be precluded from repeating self-serving statements made by Plaintiff to Ms. Smith during her evaluation. During Plaintiff's evaluation by Ms. Smith, Plaintiff stated that "she is conscious of her body and dresses to minimize risk" which resulted "as a change in her thought process that began after her experiences with Mr. Vicknair."[14] In addition, Plaintiff "reported specific distrust of and a negative impression of police officers following her experiences with Mr. Vicknair" and that she is "afraid of cops."[15] Given that Ms. Smith failed to offer any causal connection between Mr. Vicknair's misconduct and Plaintiff's current mental health, the only use for such statements at trial would be to impermissibly bolster Plaintiff's testimony with an imprimatur of an expert witness. Further, such statements are demonstratively not reliable given Plaintiff's history of dishonesty towards her mental health providers.[16] Any probative value of such testimony would therefore be substantially outweighed by the prejudicial value of the use of

---

[14] Exhibit 1, p. 4.
[15] *Id.*, pp. 4-5.
[16] See Ex. 2,("Smith Depo") p.92:14 -p.95:3. Plaintiff, during her evaluation, stated to Ms. Smith that "she feels like she is able to be honest now that she is an adult." Exhibit 1, p. 5. However, this self-serving statement, made in the context of an evaluation in conjunction with her litigation, demonstrates merely that Plaintiff is aware of the need to provide statements to Ms. Smith that superficially support her case.

an expert witness to repeat Plaintiff's statements and should be excluded. See *Naquin v. Elevating Boats,* LLC, 2012 WL 1664257, *5 (E.D. La. May 11, 2012) (precluding economist from calculating plaintiff's future lost wages based solely on the plaintiff's self-serving testimony).

**C.** **Any testimony regarding "best practices" for law enforcement should be excluded because Ms. Smith has no expertise.**

Ms. Smith is not an expert in any area relating "best practices" or "standard protocol" relating to law enforcement; she admitted that she has no education, specialized training, or other expertise that would qualify her to offer an opinion regarding NOPD's response to the report of the attempted rape upon Plaintiff and has never offered an expert opinion in a court of law upon such subject. Nevertheless, Plaintiff offered the following opinions in her Report:

> When a victim reports sexual assault, best practice protocol is for the victim to be provided with a victim advocate, who can explain the process of the sexual assault forensic exam, provide the victim with choices, inform the victim of follow-up counseling and support services available, and advocate for the wishes of the victim with other professionals, including law enforcement and medical professionals.[17]

> It does not appear that [Plaintiff] was provided with choices or agency regarding the exam, nor does it appear that standard protocol was followed by Officer Vicknair, who demonstrated inappropriate communication and familiarity with the victim.[18]

> It is my opinion that the response by law enforcement and medical staff to [Plaintiff's] sexual assault report were detrimental to [Plaintiff].[19]

At deposition, Ms. Smith explained that she based these opinions solely upon her experience as a "victim advocate" and by "best practice" she was focusing only on the best outcome for victims such as Plaintiff.

There has been no reported Federal case, to Defendants' knowledge, in which a "victim advocate" was permitted to provide opinion on the topic of law enforcement protocol. Compare

---

[17] Ex. A, p. 5.
[18] *Id.*
[19] *Id.*

*Neal v. City of Hempstead, Tex.*, No. 4:12-CV-1733, 2014 WL 3907785, at *6 (S.D. Tex. Aug. 11, 2014) (expert on law enforcement practices qualified based employment based on decades of employment in law enforcement, and multiple expert witness appearances). It is consistent with common sense that in order to qualify as an expert in the area of law enforcement practice and procedure, a witness must have some amount of education, training or experience as a law enforcement officer; Ms. Smith has none. It is Plaintiff's burden to demonstrate admissibility of Ms. Smith's testimony, which Plaintiff cannot do. Any opinion offered by Ms. Smith would be based on solely on her experiences in assisting victims in the limited role of advocate. This limited perspective, uninformed by formal education, training, or specific law enforcement experience, cannot form the basis of a reasonable, reliable or helpful opinion about police protocol or best practices in responding to reports of sex crimes. The opinion should therefore be excluded under *Daubert* and *Kumho*. Further, any testimony from her in this regard should be excluded under Rule 403 in that its relevancy is substantially outweighed by the prejudicial effect of the imprimatur of such testimony as an "expert."

### D. **Any testimony concerning Mr. Vicknair's motivations should be excluded because such opinions are based on speculation and are legal conclusions.**

Ms. Smith offers the following opinions regarding Mr. Vicknair's motivations in connection to Plaintiff: (1) "Mr. Vicknair abused his role as a law enforcement officer to gain access to [Plaintiff]" and (2) "Mr. Vicknair abused his role as a law enforcement officer to maintain continued access to [Plaintiff] and to sexually abuse her."[20] Ms. Smith did not meet with Mr. Vicknair or otherwise evaluate Mr. Vicknair. Her opinions in this regard are therefore not based on facts or data sufficient to satisfy Rule 702 or *Daubert*. To the extent that she reached these conclusions after reading the NOPD's report, these opinions cannot reasonably be said to be based

---

[20] Exhibit 1, pp. 5, 6.

upon sources that a reasonable counselor would rely upon. Further, the conclusion that Mr. Vicknair "abused his role as law enforcement officer" is essentially a legal conclusion that is not the proper subject for expert testimony. See *Toomer v. Florida Parishes Juvenile Justice Commission*, 2005 WL 5974570 (E.D. La. 2005) (excluding expert opinion that is "a mixture of legal conclusions and cumulative factual assertions that would unduly infringe upon the fact-finding functions of the jury and, worse, likely lead to jury confusion."). For these reasons, under *Daubert* and *Kumho* and Rule 403, these opinions should be excluded.

## **CONCLUSION**

For the foregoing reasons, all or parts of Ms. Smith's opinion testimony should be excluded from the trial in this case.

Respectfully submitted:

/s/ James M. Roquemore
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

***Counsel for Shaun Ferguson and the City
of New Orleans***