UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYNE UPTON, individually and On behalf of her minor Daughter, G.H. | DOCKET NO. 2:21-cv-407 |
| Plaintiff, | JUDGE BARBIER |
| | MAG. ROBY |

VERSUS

RODNEY VICKNAIR, SHAUN FERGUSON,
THE CITY OF NEW ORLEANS; DOE
DISTRICT COMMANDER; DOES 1 TO 10;
and XYZ INSURANCE COMPANIES 1 TO 10,

Defendants.

DEPOSITION OF THE CITY OF NEW ORLEANS, through its designated representative, CAPTAIN PRECIOUS BANKS, given in the above-entitled cause, pursuant to the following stipulation, before Sandra P. DiFebbo, Certified Shorthand Reporter, in and for the State of Louisiana, at the Office of the City Attorney, 1300 Perdido Street, City Hall, Room 5E03, New Orleans, Louisiana, on the 10th day of January, 2024, commencing at 10:45 AM.

**EXHIBIT B**

```
 1   APPEARANCES:
 2
 3            MOST & ASSOCIATES
              BY: HOPE PHELPS,
 4            ATTORNEY AT LAW
              201 St. Charles Avenue
 5            Suite 2500, #9685
              New Orleans,Louisiana  70170
 6            Representing the Plaintiff
 7
 8            CITY OF NEW ORLEANS
              LAW DEPARTMENT
 9            BY:  JAMES ROQUEMORE,
              ASSISTANT CITY ATTORNEY -and-
10            ELIZABETH WEIGAND,
              ASSISTANT CITY ATTORNEY
11            1300 Perdido Street
              Suite 5E03
12            New Orleans, Louisiana  70112
              Representing Shaun Ferguson, the City of
13            New Orleans, DOE District Commander, DOES
              1 to 10 and XYZ Insurance Companies
14            1 to 10
15
16   Reported By:
17
18            Sandra P. DiFebbo
              Certified Shorthand Reporter
19            State of Louisiana
20
21
22
23
24
25
```

```
 1                    S T I P U L A T I O N
 2
 3                    It is stipulated and agreed by and
 4    among counsel for the parties hereto that the
 5    deposition of THE CITY OF NEW ORLEANS, through its
 6    designated representative, CAPTAIN PRECIOUS BANKS,
 7    is hereby being taken pursuant to the Federal Rules
 8    of Civil Procedure for all purposes in accordance
 9    with law;
10                    That the formalities of reading and
11    signing are specifically reserved;
12                    That the formalities of sealing,
13    certification, and filing are hereby specifically
14    waived.
15                    That all objections, save those as to
16    the form of the question and responsiveness of the
17    answer are hereby reserved until such time as this
18    deposition or any part thereof is used or sought to
19    be used in evidence.
20                          * * * * *
21                Sandra P. DiFebbo, Certified Shorthand
22    Reporter, in and for the State of Louisiana,
23    officiated in administering the oath to the
24    witness.
25
```

1   Q.   Would you please read the first sentence
2  of Page 2 -- Paragraph 4 on Page 2?
3   A.   "Sergeant Lawrence Jones requested" --
4   Q.   Starting with Reign agreed.
5   A.   "Reign agreed and on Monday September 21,
6  2020, Sergeant Lawrence Jones relocated to Reign
7  H███s residence located at ████████████████
8  ████████████████████ Sergeant Jones was met
9  at the residence by Ms. Andria Wright the family's
10 counselor, Reign ██████ and her daughter ██████
11 ████████████████"  I also have a question on Page 3
12 where it states what Exhibit D is.  This paragraph.
13 He is saying that the interview was attached as
14 Exhibit D.  It looks like the paragraph above says
15 she concluded her statement on Monday, September
16 21st, 2020 at 5:31 PM, according to Sergeant Jones'
17 report.
18   Q.   This was tape recorded, correct?
19   A.   It says it was, yeah, audio recorded.
20   Q.   Is this -- the text underneath statement
21 of Rayne ██████ victim's mother, is that the
22 summary that Sergeant Jones would have written?
23   A.   Yes.  This will be Sergeant Jones'
24 summary of his interview with Miss ██████
25   Q.   So in this summary, Sergeant Jones notes

1  that he was told that Vicknair had responded to a
2  call for assistance and taken the child to
3  Children's Hospital for a sexual assault
4  examination previously.  Is that right?
5       A.   Correct.
6       Q.   Sergeant Jones summarizes here that the
7  mom reported that she thought that Vicknair was
8  trying to be a positive role model for the child?
9       A.   Correct.
10      Q.   Sergeant Jones goes on to describe that
11 the mother quoted she became alarmed when Vicknair
12 started coming over to their home more frequently?
13      A.   Correct.
14      Q.   Sergeant Jones goes on to describe
15 several incidents, including one where Officer
16 Vicknair shouted, "Nice ass," at the child from his
17 marked police vehicle in public.
18           MR. ROQUEMORE:
19                Objection.  Form.
20           THE WITNESS:
21                Yes.
22 BY MS. PHELPS:
23      Q.   Does the summary describe a photograph
24 that Sergeant Jones was shown?
25      A.   I remember a mention of a photograph.

```
1    Let me double read.  She showed it to him.  It
2    doesn't say if she showed it to Sergeant Jones, but
3    she does -- the mother does talk about a photograph
4    in her daughter's phone.
5         Q.   How is the photograph described?
6         A.   The photograph is described as ▇
7    really close with Rodney Vicknair.  His arm is
8    wrapped around her waist with their face touching.
9         Q.   According to the summary, the child's
10   mother describes to Sergeant Jones that Vicknair
11   wore a pin on his uniform that she understood to
12   represent he was specialized, certified in some
13   form of trauma response?
14        A.   Correct.
15        Q.   At this point, NOPD had information that
16   Vicknair had at least an inappropriate relationship
17   with a child he had come into contact with on the
18   job, correct?
19        A.   Correct.
20             MR. ROQUEMORE:
21                  Objection to form.  You may answer.
22             THE WITNESS:
23                  Correct.
24   BY MS. PHELPS:
25        Q.   I'm looking at the page with the
```

1    Q.   Yes.
2    A.   I don't know that to my knowledge.
3    Q.   Also, on Tuesday, September 22nd,
4  Sergeant Jones drafted an introduction letter to
5  the mother who made the complaint?
6    A.   Correct.
7    Q.   After taking the statement from the
8  child's mother and seeing the photograph, did NOPD
9  have probable cause to arrest Vicknair?
10        MR. ROQUEMORE:
11             Objection.  Form.
12        THE WITNESS:
13             Yes.
14        MR. ROQUEMORE:
15             Could you repeat that last question
16        and answer?
17             {COURT REPORTER READ BACK}
18  BY MS. PHELPS:
19    Q.   I'm now showing you a copy of the
20  Affidavit for Arrest Warrant and the Arrest Warrant
21  for Rodney Vicknair.  Have you seen this document
22  before?
23    A.   Yes.
24    Q.   This was a valid warrant, correct?
25    A.   Correct.

1                   Yes.
2  BY MS. PHELPS:
3       Q.   An element of this charge, arrest, is
4  obviously that Vicknair acted as an officer for the
5  City of New Orleans, correct?
6       A.   He was on duty at the time, correct.
7       Q.   This was a valid arrest, because he
8  committed the crimes of sexual battery and indecent
9  behavior with a juvenile while in office, correct?
10           MR. ROQUEMORE:
11                Objection.  Form.
12           THE WITNESS:
13                Based upon the preponderance of the
14           evidence.
15  BY MS. PHELPS:
16       Q.   Did NOPD make any findings regarding
17  Vicknair's credibility?
18       A.   No.
19       Q.   NOPD deemed the child, ▇ H▇  to
20  be credible, correct?
21       A.   Correct.
22       Q.   NOPD deemed the mother, Rayne ▇ to
23  be credible, correct?
24       A.   Correct.
25       Q.   NOPD deemed the counselor, Andrea Wright,

1  in the -- during the summer, when he quote/unquote
2  befriended the child, some of that was while he was
3  on duty?
4      A.   Correct.
5          MR. ROQUEMORE:
6               Those are the questions I have.
7  BY MS. PHELPS:
8      Q.   To follow up on what you said about him
9  being alone.  After Sergeant Jones learned that
10 Rodney Vicknair was frequently going over to this
11 residence and making this mother uncomfortable and
12 suspected an inappropriate relationship with a
13 child --
14         MR. ROQUEMORE:
15              Objection.  Form.
16 BY MS. PHELPS:
17     Q.   After Sergeant Jones interviewed this
18 family on September 21st, could NOPD have assigned
19 someone to ride along with Rodney Vicknair while he
20 was investigated?
21     A.   They could have, however, NOPD chose to
22 take him off the streets, and as you can see,
23 eventually, very swiftly, within a short time
24 frame, a matter of a few days, the arrest warrant
25 was issued, and he was arrested.  So to leave him

```
1   on the street with allegations of the sort would be
2   improper, so he was removed.
3        Q.    Thank you for your time today.
4           MR. ROQUEMORE:
5                No further questions.  Thank you.
6                [End of deposition, 12:00.]
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```