UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, individually and on
behalf of her minor daughter,
G.H.                           DOCKET NO. 2:21-CV-407
    Plaintiff

V                              JUDGE: CARL BARBIER

RODNEY VICKNAIR, SHAUN FERGUSON
THE CITY OF NEW ORLEANS; DOE        MAGISTRATE: KAREN WELLS ROBY
DISTRICT COMMANDER; DOES 1 TO 10;
And XYZ INSURANCE COMPANIES 1 to 10,
    Defendants

    30(b)(6) DEPOSITION OF THE CITY OF NEW

ORLEANS, through its designated representative,

SERGEANT DAVID ALLEN BARNES, given in the

above-entitled cause, pursuant to the following

stipulation, before Raynel E. Schule, Certified

Shorthand Reporter in and for the State of

Louisiana, at the Office of the City Attorney,

1300 Perdido Street, City Hall - Room 5E03, New

Orleans, Louisiana, 70112, commencing at 10:05

o'clock a.m., on Wednesday, the 24th day of

January, 2023.

**EXHIBIT H**

```
 1   APPEARANCES:

 2

     For the Plaintiff:
 3
     MOST & ASSOCIATES
 4   Attorneys at Law
     BY:  WILLIAM MOST, ESQ.
 5   201 St. Charles Avenue, Suite 2500   #9685
     New Orleans, Louisiana     70170

 6

 7   For the Defendants:

 8   JIM ROQUEMORE, ESQ.
     Assistant City Attorney
 9   1300 Perdido Street
     City Hall - Room 5E03
10   New Orleans, Louisiana   70112

11

12

13   Reported By:   Raynel E. Schule
                    Certified Shorthand Reporter
14                  State of Louisiana

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                S T I P U L A T I O N
 2              It is stipulated and agreed by and
 3   between Counsel for the parties hereto that the
 4   30(b)(6) DEPOSITION OF THE CITY OF NEW ORLEANS,
 5   through its designated representative, SERGEANT
 6   DAVID ALLEN BARNES, is hereby being taken
 7   pursuant to the Federal Rules of Civil Procedure
 8   for all purposes in accordance with law;
 9              That the formalities of reading and
10   signing are specifically waived;
11              That the formalities of sealing,
12   certification, and filing are hereby
13   specifically waived.
14              That all objections, save those as to
15   the form of the question and responsiveness of
16   the answer, are hereby reserved until such time
17   as this deposition or any part thereof is used
18   or sought to be used in evidence.
19                       * * * * *
20              Raynel E. Schule, Certified
21   Shorthand Reporter in and for the State of
22   Louisiana, officiated in administering the oath
23   to the witness.
24
25
```

```
1    A.   Sure.
2    Q.   So many NOPD officers conduct their patrol
3         in NOPD vehicles, also called units,
4         correct?
5    A.   Correct.
6    Q.   And those NOPD vehicles have a GPS device
7         called an Automatic Vehicle Locator,
8         correct?
9    A.   Correct.  There has been some changes to
10        the Automatic Vehicle Locator system since
11        -- and if I refer to it as AVL, that's
12        commonly what we call it -- since the cyber
13        attack so --
14   Q.   In 2020 did -- so what were the changes
15        that you're describing?
16   A.   So prior to the cyber attack, we were
17        actually able to get historical data from
18        the Automatic Vehicle Location System.
19        After the cyber attack, we could log in and
20        see where the vehicle is at that present
21        time, but weren't able to pull up
22        historical data.  So we couldn't see, like,
23        where it had been or a path it had taken,
24        anything like that, but we were able to
25        pinpoint where it was at the time we were
```

| | | |
|---|---|---|
| 1 | Q. | Okay. So sitting here today, you don't |
| 2 | | know of any particular policy requiring |
| 3 | | supervisors to look for patterns in trip |
| 4 | | sheets, agreed? |
| 5 | A. | Agreed, not specifically patterns. |
| 6 | Q. | And you don't know of any system that would |
| 7 | | conduct periodic reviews of trip sheets to |
| 8 | | look for patterns in locations? |
| 9 | A. | I don't know of any system that would |
| 10 | | conduct periodic reviews of trip sheets. |
| 11 | Q. | And as far as you know, trip sheets are |
| 12 | | currently just in paper form, and some of |
| 13 | | them have been scanned, but they're not |
| 14 | | able to be searched electronically or by |
| 15 | | any sort of automated system to look for |
| 16 | | patterns, agreed? |
| 17 | A. | Agreed. |
| 18 | Q. | I'm going to move on to -- well, actually |
| 19 | | let me before we leave this topic, if an |
| 20 | | officer -- if trip sheets showed an officer |
| 21 | | returning to the home of a minor victim of |
| 22 | | sexual assault, that would be a red flag |
| 23 | | regarding that officer's conduct. Would |
| 24 | | you agree? |
| 25 | A. | If they weren't dispatched there for some |

```
1              reason, yeah, absolutely.
2       Q.     And so far as you know, NOPD has no system
3              for picking that up other than hoping that
4              supervisors spot that on trip sheets,
5              agreed?
6       A.     Not that I'm aware of.  The most effective
7              thing would be close and effective
8              supervision from that frontline supervisor
9              on reviewing the trip sheets.
10      Q.     Is there anything in any training that you
11             know of that would train supervisors to
12             look for officers returning to the homes of
13             sex crime victims?
14      A.     So there's training regarding looking for
15             patterns on evaluations.  There's nothing
16             I'm aware of that is that specific,
17             especially on trip sheets.
18      Q.     Okay.  We'll move on to Topic h, 3h, which
19             is policies and procedures regarding
20             hiring, selection, and applicant background
21             checks.  Are you familiar generally with
22             that topic?
23      A.     Yes, generally.
24      Q.     Okay, and are you familiar with the policy
25             that NOPD has when people apply to be NOPD
```

```
1          don't know about that hasn't been put into
2          NCIC, but does exist in a system somewhere.
3          So it's -- it's a little bit more thorough
4          than just a NCIC check.
5     Q.   And NCIC includes arrests and convictions.
6          Is that right?
7     A.   I believe so.
8     Q.   And so at the very least, when NOPD is
9          reviewing an applicant's criminal
10         background history, if it's in NCIC, NOPD
11         will at least have that and perhaps more.
12         Is that correct?
13    A.   They should have at least that and more.
14    Q.   And as far as you know, they do have that
15         and more?
16    A.   As far as I know.
17    Q.   It would be inappropriate for NOPD to hire
18         a habitual offender as a police officer.
19         Would you agree?
20    A.   I would agree, but I think "habitual
21         offender" is sort of a blanket term.
22    Q.   Sure.
23    A.   I think it's very general.
24    Q.   Okay. I'm going to mark this as "Exhibit
25         B" as in boy. Sergeant Barnes, is this the
```

```
 1             first couple of pages of NOPD Operations
 2             Manual Chapter 41.8?  (Counsel hands
 3             document to witness.)
 4      A.     It is.  It looks like it's like Pages 1 and
 5             2 of Chapter 41.8.
 6      Q.     And do you see on Page 2 NOPD defines
 7             habitual offender?
 8      A.     Huh-huh.
 9      Q.     It defines habitual offender as, "Any
10             person with a criminal history of two or
11             more felony convictions or five or more
12             felony or misdemeanor arrests for any
13             offense."  Do you see that?
14      A.     I do.
15      Q.     And is that the definition of habitual
16             offender you were using when you said you
17             agreed that it would be inappropriate for
18             NOPD to hire a habitual offender?
19      A.     I wouldn't say that this is the exact
20             definition I was using at that point.  I
21             was thinking of a habitual offender more
22             along the lines of a blanket, like, legal
23             definition of just someone who repeatedly
24             conducts any kind of offenses, right.  In
25             this definition, this would clearly I think
```

```
1         meet the standard of I wouldn't hire
2         someone who met this definition of a
3         habitual offender for sure.
4    Q.   Right.  So the City should not be hiring
5         applicants who meet this Chapter 41.8
6         definition of habitual offender, agreed?
7    A.   I would agree that they shouldn't be hiring
8         that -- let me clarify.  The City, so to
9         speak, they shouldn't be hiring someone who
10        meets this definition to be a police
11        officer, right.
12   Q.   And was that true at the time when you were
13        hired?
14   A.   Absolutely.
15   Q.   And I don't know if you know this, but were
16        you hired at the same time as Rodney
17        Vicknair?
18   A.   I was hired prior to Officer Vicknair
19        from my understanding.
20   Q.   Yeah.  It has been a number of years so
21        I'll mark this as exhibit --
22   A.   He was -- if I recall correctly, he was
23        hired shortly after me.
24   Q.   Okay.  I'll mark this as "Exhibit C."  You
25        see that this is a NOPD document dated
```

```
1         August 4th, 20 -- 2006?  (Counsel hands
2         document to witness.)
3    A.   I do.
4    Q.   And do you see that it describes
5         applicants, and it includes both yourself
6         and Rodney Vicknair?
7    A.   I do.
8    Q.   So the two of you were hired at -- maybe
9         you were hired first, but it was at
10        approximately the same time as Mr.
11        Vicknair?
12   A.   Well, this is an application.  It says,
13        they've applied for the position.  So while
14        he may have applied at the same time, he
15        did not go through or get hired at the same
16        time as me because he was not in my academy
17        class --
18   Q.   Okay.
19   A.   -- or any academy at the time I was.
20   Q.   So the two of you were applying at the same
21        time, and then you got hired first, and
22        then he got hired subsequently is your
23        approximate understanding?
24   A.   That is my understanding.
25   Q.   And so when we talked about the standard of
```

```
 1        not hiring, the City not hiring a habitual
 2        offender, that was true at the time that
 3        both you and Mr. Vicknair were applying to
 4        be officers, agreed?
 5   A.   That would be my understanding, yes.
 6   Q.   And do you know if -- if the City's
 7        standards for hiring officers with criminal
 8        histories have changed over time?
 9   A.   I don't know if it has changed over time.
10        I would imagine as with everything, it sort
11        of changes over time as the law changes.  I
12        know we have had changed it over time as it
13        applies to things like marijuana use,
14        right.  I don't imagine that they have
15        changed it over time as it applies to --
16        other than to maybe become more restrictive
17        as it applies to criminal offenses.
18   Q.   So if NOPD did hire a habitual offender as
19        a police officer, that would suggest a
20        serious problem with NOPD's policies or the
21        training of its hiring officers, agreed?
22              MR. ROQUEMORE:
23              Objection, form.
24              THE WITNESS:
25              I would say it's definitely a
```

```
 1        recruits, correct?
 2   A.   You could say role model.
 3   Q.   Okay.  When you say, "you could say role
 4        model," you agree that they are serving as
 5        role models, agreed?
 6   A.   I agree that they should be serving as role
 7        models.
 8   Q.   And NOPD has selected them to be role
 9        models, correct?
10   A.   I think NOPD has selected them to train and
11        establish how officers are supposed to act
12        and carry themselves professionally on the
13        street.  I don't know that I would stretch
14        to go to a role model side of it.  Not
15        everyone you encounter is going to be
16        somebody I would refer to as a role model.
17   Q.   Okay.
18   A.   Does that make sense to kind of clarify it
19        like that?  I don't know -- I don't know
20        that role model is the correct term.  We
21        select them to train and show them the
22        proper way to professionally police the
23        City, right, and effectively police the
24        City.  You're not always going to find
25        somebody who you would think of as a role
```

|    |    |                                                          |
|----|----|----------------------------------------------------------|
| 1  |    | model in any walk of life, right.  Though                |
| 2  |    | they might be effective at training, they                |
| 3  |    | may not be the person you want to act like               |
| 4  |    | all the time, right.                                     |
| 5  | Q. | I think I've got you.  So --                             |
| 6  | A. | So --                                                    |
| 7  | Q. | -- this FTO is supposed to be a role model               |
| 8  |    | of policing, but maybe not a role model of               |
| 9  |    | other parts of their life.  They might not               |
| 10 |    | be role model dad; role model friend, but                |
| 11 |    | they're at least a role model police                     |
| 12 |    | officer that NOPD has selected to train                  |
| 13 |    | recruits, agreed?                                        |
| 14 | A. | Right, and that's -- that's sort of what                 |
| 15 |    | I'm getting at with it.  If you -- if you                |
| 16 |    | -- I don't necessarily want to consider                  |
| 17 |    | somebody who's on his third wife a -- a                  |
| 18 |    | perfect role model, right, but they might                |
| 19 |    | be a good police officer.  They might be                 |
| 20 |    | good at training, but I wouldn't refer to                |
| 21 |    | them as a role model --                                  |
| 22 | Q. | Just generally?                                          |
| 23 | A. | -- so to speak.  Just generally, right.                  |
| 24 | Q. | Okay.  Okay.  I'm going to move on to NOPD               |
| 25 |    | Operations Manual Chapter 35.1.9, which is               |

|   |    |                                                    |
|---|----|----------------------------------------------------|
| 1 |    | patrol officer minimizes interactions with         |
| 2 |    | the child thereafter.  Would you agree             |
| 3 |    | that's what's supposed to happen?                  |
| 4 | A. | I would say that the patrol officer if             |
| 5 |    | dispatched and arrives, their primary job          |
| 6 |    | is to make sure that the scene is safe, no         |
| 7 |    | one is in danger, no evidence is going to          |
| 8 |    | get destroyed, and then pass everything off        |
| 9 |    | to the detective.                                  |
| 10 | Q. | Okay, and not have interactions with the          |
| 11 |    | child, except in exigent circumstances            |
| 12 |    | thereafter, agreed?                               |
| 13 | A. | They should have very limited interaction         |
| 14 |    | with the child to make sure that that child      |
| 15 |    | is safe essentially.                              |
| 16 | Q. | Okay.  So once there has been the handoff        |
| 17 |    | to the specialized unit, the patrol officer      |
| 18 |    | should not be just hanging around with the       |
| 19 |    | child victim, say, at a hospital?                |
| 20 | A. | I would say that unless there was some           |
| 21 |    | supervisory approval or some direction for       |
| 22 |    | that officer to be involved, then no, the        |
| 23 |    | officer should go back to -- to functioning      |
| 24 |    | as a platoon officer, return to answering        |
| 25 |    | calls for service.                                |

|    |    |                                                      |
|----|----|------------------------------------------------------|
| 1  | Q. | And unless directed by the supervisor or             |
| 2  |    | specifically approved a patrol officer               |
| 3  |    | after there has been the handoff to the              |
| 4  |    | specialized unit should not be giving his            |
| 5  |    | phone number to a minor victim, agreed?              |
| 6  | A. | I don't think it would be appropriate for            |
| 7  |    | any patrol officer to provide, especially            |
| 8  |    | if it's a personal phone number, their               |
| 9  |    | personal number to a minor child who's a             |
| 10 |    | victim.                                              |
| 11 | Q. | And if other officers saw an officer giving          |
| 12 |    | his phone number to a minor sex crime                |
| 13 |    | victim, that's a red flag that should be             |
| 14 |    | reported to the chain of command, agreed?            |
| 15 | A. | I think depending upon the circumstances,            |
| 16 |    | yes.                                                 |
| 17 | Q. | Well, what circumstance would it be                  |
| 18 |    | appropriate for a patrol officer to give             |
| 19 |    | his personal phone number to a minor sex             |
| 20 |    | crime victim?                                        |
| 21 | A. | I offhand cannot think of any circumstance           |
| 22 |    | that would be appropriate. It doesn't                |
| 23 |    | necessarily mean that one doesn't exist,             |
| 24 |    | right.                                               |
| 25 | Q. | Sure, but it's at least a red flag that              |

```
 1         should be reported up the chain of command,
 2         agreed?
 3    A.   I would agree that it would definitely be a
 4         red flag.
 5    Q.   That should be reported up the chain of
 6         command?
 7    A.   I would report it to the supervisor.
 8    Q.   If officers don't know that that's a red
 9         flag, that would be a training issue,
10         agreed?
11              MR. ROQUEMORE:
12              Objection, form.  Beyond the
13          scope.
14              THE WITNESS:
15              I don't necessarily know if it
16          would be a training issue.  I mean,
17          I guess it could be.  It certainly
18          could be a training issue.  It could
19          be a whole host of other issues, but
20          I think a training issue would
21          definitely -- would definitely come
22          into play.
23    BY MR. MOST:
24    Q.   Okay.  Moving on to -- well, actually
25         before we move on, the patrol -- if the
```

|   |   |   |
|---|---|---|
| 1 |    | minor sex crime victim needs to be |
| 2 |    | transported from the scene of the crime to |
| 3 |    | a hospital, that should be done by the |
| 4 |    | specialized unit, agreed? |
| 5 | A. | Again, that depends on a number of things, |
| 6 |    | like, the type of unit they're in; if they |
| 7 |    | even have room in the unit.  If -- a |
| 8 |    | supervisor could surely authorize a patrol |
| 9 |    | officer to transport any type of victim, |
| 10 |   | whether it's a -- a child victim, a child |
| 11 |   | witness, or, you know, an adult victim to a |
| 12 |   | hospital or for forensic interview, |
| 13 |   | something like that. |
| 14 | Q. | But in the absence of exigent |
| 15 |   | circumstances, it should be the specialized |
| 16 |   | unit that's doing the interaction to |
| 17 |   | transport, agreed? |
| 18 | A. | I don't know if exigent circumstances would |
| 19 |   | really be the -- the term for it.  I think |
| 20 |   | it depends on things like if that |
| 21 |   | specialized detective or a specialized, |
| 22 |   | like, supervisor made the decision that |
| 23 |   | they're trying to make the victim as |
| 24 |   | comfortable as possible, I think they could |
| 25 |   | take that into account when determining |