UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYNE UPTON, individually and on behalf of her minor daughter, G.H.<br><br>　　　　　Plaintiff,<br>　　v.<br><br>RODNEY VICKNAIR, SHAUN FERGUSON, THE CITY OF NEW ORLEANS; DOE DISTRICT COMMANDER; DOES 1 to 10; and XYZ INSURANCE COMPANIES 1 to 10,<br><br>　　　　　Defendants. | Docket No. 2:21-cv-407<br><br>JUDGE: CARL BARBIER<br><br>MAGISTRATE: KAREN WELLS ROBY |

**Opposition to City Defendants' Daubert Motion
to Limit Testimony of Shannon E. Smith, LPC-S, NCC**

In this case involving sexual assault of a minor, Plaintiff designated Shannon E. Smith, LPC-S, NCC as an expert. Ms. Smith is licensed by the State of Louisiana as a Licensed Professional Counselor, is a National Certified Counselor through the National Board for Certified Counselors, and is an Associate Professional on the Louisiana Registry of Sexual Offender Treatment Providers. She has worked with victims/survivors of sexual trauma and intimate partner violence for twenty-five years.

The City moves to exclude all of Ms. Smith's opinions concerning Plaintiff G.H.'s mental health because Plaintiff has a prior and subsequent history of trauma and due to the limitations inherent in forensic interviews. R. Doc. 127. Those arguments are unsupported by legal authority and are contrary to Fifth Circuit jurisprudence. Ms. Smith has the professional experience to provide testimony regarding G.H.'s mental health that will be helpful to the jury as they are tasked with making determinations regarding causation and damages.

1

The City also moves to prevent Ms. Smith from opining that Officer Vicknair's initial conduct towards G.H. was unusual and should have raised concerns. Ms. Smith bases these opinions on her decades of experience involving routine interactions with law enforcement and observing interactions between victims and law enforcement in sexual assault cases. This testimony will be helpful to the jury as they evaluate the impact Officer Vicknair's actions had on G.H., whether the initial interactions described in the NOPD Investigation and witnessed by other officers normalized certain conduct, and the extent and degree to which this caused harm to Plaintiff.

The City's motion should be denied to the extent that it seeks to exclude Ms. Smith's testimony regarding G.H.'s mental health and her opinion of Officer Vicknair's initial interactions with G.H. as described in the NOPD Investigation.

## LAW AND ARGUMENT

Defendants' motion should be denied because Ms. Smith's opinions are both reliable and relevant.

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or other wise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 gives the district court considerable discretion to admit or exclude expert testimony." *Watson v. Snap-On Tools, Inc.*, No. 04-1313-A, 2006 U.S. Dist. LEXIS 55301, at *8 (W.D. La. July 25, 2006) (Drell, J.) (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 138-39 (1997)). "Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-

93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), trial courts are to act as 'gatekeepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' The gatekeeping function is meant to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable.'" *Watson*, 2006 U.S. Dist. LEXIS 55301, at *9 (quoting *Daubert,* 509 U.S. at 589).

"[T]he rejection of expert testimony is the exception rather than the rule." *Id.* at *9-10. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id*. at *10. (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

"In general, 'questions relating to the bases and sources of an expert's testimony affect the weight to be assigned that opinion rather than its admissibility.'" *Olson v. City of Burnet*, No. A-20-CV-00162-JRN, 2021 U.S. Dist. LEXIS 69851, at *3 (W.D. Tex. Feb. 25, 2021) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "The perceived flaws in the testimony of [the] experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *14.38 Acres of Land*, 80 F.3d at 1079.

Experts may not "offer bald legal conclusions." *Estate of Baker*, 2018 U.S. Dist. LEXIS 244564, at *12 (*citing C.P. Interests, Inc. v. California Pools, Inc.,* 238 F.3d 690, 697 (5th Cir. 2001)). "However, there is no longer a 'per se rule against testimony regarding ultimate issues of fact.'" *Id.* (quoting *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 239 (5th Cir. 1983)). "Federal Rule

3

of Evidence 704 ('Rule 704') provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id.*

In this case, Ms. Smith will not give an opinion on the ultimate issue of causation, which is to be decided by the jury.[1] Based on her professional assessment of G.H. and review of G.H.'s medical records, Ms. Smith is qualified and able to give her opinion on G.H.'s mental health and victimization by Officer Rodney Vicknair.[2]

**A. The Court should deny Defendant's motion because the existence of prior and subsequent trauma history and the limitations inherent to forensic interviews are not grounds for excluding expert testimony regarding a sexual assault victim's mental health.**

In their *Daubert* Motion, Defendants argue that Smith's opinions regarding Plaintiff's mental health should be excluded as unreliable because Plaintiff experienced other traumas and because Smith's assessment and the assessments made by other providers relied to an extent on what Plaintiff reported to them. Defendants cite no authority whatsoever for this proposition that expert testimony regarding a sexual assault victim's mental health may be excluded as unreliable simply because a victim suffered other traumas and because mental health assessments consider information reported by the victim.

On the contrary, in the context of forensic interviews in sexual assault cases, the Fifth Circuit has recognized the "obvious limitations inherent in such research" and that "expert testimony drawing on it is not thereby proscribed by *Daubert*." *U.S. v. Simmons*, 470 F.3d 1115 (5th Cir. 2006) (citing *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997) (recognizing methodological limitations in all social-science research, particularly sexual-

---

[1] See R. Doc. 127-5, p. 6:3-13 (Rough Draft Dep. of Shannon Smith).
[2] R. Doc. 127-4, p. 2-4 (Expert Report of Shannon Smith).

4

harassment research; nevertheless, holding such expert testimony admissible). Rather, the expert's professional experience, education, training, and observations are considered indicators of reliability. *Id.* at 1122.

Likewise, Ms. Smith's opinions which draw on her biopsychosocial interview and assessment of G.H., her review of G.H.'s treatment record, and the City's own Public Integrity Bureau report, which included a forensic interview of G.H. are not proscribed solely because of the limitations inherent in interviewing sexual assault victims.[3] Defendants do not dispute that Ms. Smith has the professional experience, education, and training, and made the observations necessary to assess G.H.'s mental health status. And Defendants' complaint that Smith's opinions are in part based on G.H.'s statements is particularly inappropriate when Defendants' 30(b)(6) witness testified that "NOPD deemed the child, [G.H.], to be credible."[4]

Thus, Defendants' request to exclude expert testimony regarding G.H.'s mental health should be denied.

**B. The Court should deny Defendants' motion because Smith's testimony regarding G.H.'s mental health meets the Daubert test of reliability in that her opinions are based on her professional experience, education, training and personal observations interviewing G.H.**

"The party offering expert testimony … bears the burden of establishing 'by a preponderance of the evidence that the testimony is reliable.'" *Ricks v. City of Alexandria*, No. 12-0349, 2014 U.S. Dist. LEXIS 121244, at *21 (W.D. La. Aug. 28, 2014) (quoting *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir. 1998)). "In analyzing reliability, the trial court must assess whether the reasoning or methodology supporting the expert's testimony is valid. The point

---

[3] R. Doc. 127-4, p. 3-4; R. Doc.125-4, p. 5-8 (NOPD Investigation).
[4] R. Doc. 135-9 (Excerpt from Deposition of Capt. Banks), p. 21:19-21.

is to exclude expert testimony that is based solely on subjective belief or unsupported speculation." *Watson*, 2006 U.S. Dist. LEXIS 55301, at *10-11 (citing *Daubert*, 509 U.S. at 590).

Importantly, "the Advisory Committee Note to Rule 702 of the Federal Rules of Evidence explains that <u>testimony from an expert whose reliability is based mainly on that expert's personal observations, professional experience, education, and training may be admissible</u>." *Watson*, 2006 U.S. Dist. LEXIS 55301, at *12 (emphasis added). Specifically, that Committee Note provides:

> Nothing in this amendment is intended to suggest that *experience alone—or experience in conjunction with other knowledge, skill, training or education*—may not provide sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates *that an expert may be qualified on the basis of experience*.

*Id.* at *13 (emphasis added) (quoting 2000 Advisory Committee Note to Rule 702). Indeed, "[i]n certain fields, *experience is the predominant, if not sole, basis* for a great deal of reliable expert testimony." 2000 Advisory Committee Note to Rule 702 (emphasis added).

Illustrative of this point is the Fifth Circuit decision of *St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000). In that case, the defendant challenged the admissibility of plaintiff's expert's opinions because the expert "hasn't published an article relating to his specific hypothesis in this case, his hypothesis has not been subject to peer review and is not supported by specific studies and he hasn't conducted tests to verify his hypothesis." The Fifth Circuit rejected the defendant's arguments, and held that the expert's opinions were sufficiently reliable based on his professional experience, education, and training and personal observations: "Dr. Chabreck's expertise in marshland ecology and in the erosion of vegetative mats in particular, along with his personal observation of the St. Martins' property, sufficiently qualified him to testify as an expert." *Id.* The *St. Martin* Court viewed plaintiff's expert's

professional experience, education, and training and personal observations to be sufficient "alternative indices of his testimony's reliability and relevance." *Id.* at 407.

Here, Ms. Smith's opinions on G.H.'s mental health are reliable because they are based on and sufficiently tied to her professional experience, education, training and personal observations from working as a licensed professional counselor since 2015.[5] Her professional experience leads to the conclusions she has reached, her experience is a sufficient basis for her opinions and, this experience is reliably applied to the facts.[6] Additionally, Ms. Smith testified that she cannot and will not give an opinion on causation.[7] However, based on her review of the treatment record, Ms. Smith could testify to the symptoms of trauma G.H. experienced prior to the sexual assault by Officer Vicknair.[8] And she can also testify to the symptoms of trauma she identified during her assessment of G.H.[9] The jury may draw their own legal conclusions regarding whether and to what extent G.H.'s symptoms were caused or exacerbated by Officer Vicknair.

C. **Smith has a decade of professional experience as a victim advocate, interacting with law enforcement and observing law enforcement interact with victims in sexual assault cases, and may provide expert testimony regarding Officer Vicknair's interactions with G.H.**

"[A]n expert witness's testimony (and its reliability) may be based on his personal and professional experience and his own observation." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015). Courts routinely accept expert testimony as helpful to the jury about how a reasonable police officer in a similar position would behave. *See Olson v. City of Burnet*, No. A-20-CV-00162-JRN, 2021 U.S. Dist. LEXIS 69851, at *13 (W.D. Tex. Feb. 25, 2021). Courts also routinely accept expert opinions about whether the practices of a police department, such as

---

[5] R. Doc. 127-4, p. 7; R. Doc. 127-5, p. 25:6-12.
[6] *Id.*
[7] R. Doc. 127-5, p. 6:3-13.
[8] Exhibit A, Excerpt from Deposition Transcript of Shannon Smith, p. 194:4-25.
[9] R. Doc. 127-5, p. 25:6-12.

training, supervision and hiring, meet industry standards. *Olson*, 2021 U.S. Dist. LEXIS 69851, at *11 (holding that opinions about whether a police department's "practices are below the standard of other police departments" are admissible and "well within the purview of an expert.").

Ms. Smith's opinions on Officer Vicknair's initial interactions with G.H. are reliable because they are sufficiently tied to her decade of professional experience and personal observations as a victim advocate.[10] In her decade of experience as a victim advocate, Ms. Smith had never witnessed a police officer interact with a victim in the way in which Officer Vicknair is described as having interacted with G.H.[11]

**D. The Court should deny Defendants' motion because Smith's testimony regarding G.H.'s mental health and Officer Vicknair's interactions with G.H. are helpful to the jury in understanding the trauma suffered by G.H. and determining the extent to which Officer Vicknair victimized G.H.**

The Court must next determine whether Ms. Smith's testimony is relevant under *Daubert* and Fed. R. Evid. 702. The "dispositive question" regarding relevance in this context "is whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue,' not whether the testimony satisfies the plaintiff's burden on the ultimate issue at trial." *Watson*, 2006 U.S. Dist. LEXIS 55301, at *16 (quoting *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

Plaintiff agrees that Ms. Smith will not make legal conclusions regarding causation. And Ms. Smith has testified that she cannot and will give an opinion on causation. Ms. Smith does, however, have the expertise to assist the jury in understanding the symptoms that pre-existed the sexual assault by Officer Vicknair, and understanding G.H.'s current symptoms and diagnosis.[12]

---

[10] R. Doc. 127-5, p. 18:3 -19:3.
[11] *Id.*; see also, R. Doc. 127-4, p. 2, 5.
[12] Exhibit A, p. 194:4-25.

8

As the trier of fact, the jury is entitled to draw their own conclusions regarding the degree and extent to which symptoms were caused or exacerbated by Officer Vicknair's conduct.

Plaintiff also agrees that Ms. Smith will not offer conclusory opinions that Officer Vicknair "abused his role as a law enforcement officer." The City's own Investigation report identified and described certain interactions between Officer Vicknair on the day he met G.H. at the scene of a sexual assault, transported her to the hospital, and waited with her at the hospital.[13] As a victim advocate with a decade of experience interacting with victims and witnessing law enforcement interact with those victims, Ms. Smith would testify that she never saw law enforcement interact with a victim in the manner that Officer Vicknair is described as having interacted with G.H.[14] To make determinations regarding causation and damages, the jury must evaluate the impact Officer Vicknair's actions had on G.H. A jury could find that the initial interactions described in the NOPD Investigation and witnessed by other officers normalized misconduct, created a perception that Vicknair had authority to interact with G.H. in this manner, and led to the continued harm and escalating abuses of authority. Ms. Smith's testimony that this conduct was unusual and cause for concern is helpful to the jury in determining those facts in issue.

For example, Officer Curtis Carkum, who was with Officer Vicknair the date they met G.H., testified that he interpreted these interactions as Officer Vicknair's establishing a "rapport" with the victim.[15] The trier of fact is entitled to weigh that perception against Ms. Smith's expert observation that, over a decade of witnessing law enforcement interactions with sexual assault victims, she never witnessed an officer interact in the manner that Officer Vicknair is described as

---

[13] R. Doc.125-4, p. 5
[14] R. Doc. 127-5, p. 18:3 -19:3; R. Doc. 127-4, p. 2, 5.
[15] R. Doc. 135-10, (Excerpt from Dep. Officer Carkum), p. 22:9-23:4; 25:11-27:13.

9

openly interacting with G.H.[16] As the trier of fact, the jury may draw their own inferences and conclusions regarding Officer Vicknair's abuse of his authority as a law enforcement officer to victimize G.H., and the harm caused by his actions and apparent authority.

Accordingly, Ms. Smith's testimony regarding G.H.'s mental health and Officer Vicknair's initial interactions with G.H. is relevant under *Daubert*.

## CONCLUSION

The City's motion should be denied to the extent that it seeks to exclude Ms. Smith's testimony regarding G.H.'s mental health and her opinion of Officer Vicknair's initial interactions with G.H. as described in the NOPD Investigation.

    Respectfully submitted,

*/s/ Hope Phelps*
**WILLIAM MOST (La. Bar No. 36914)**
**HOPE PHELPS (La. Bar No. 37259)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
***Counsel for Plaintiff, G.H.***

---

[16] R. Doc. 127-5, p. 18:3 -19:3; R. Doc. 127-4, p. 2, 5.