## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, individually and          DOCKET NO.
On behalf of her minor
Daughter, G.H.         2:21-cv-407
        Plaintiff,     JUDGE BARBIER
                       MAG. ROBY
VERSUS
RODNEY VICKNAIR, SHAUN FERGUSON,
THE CITY OF NEW ORLEANS; DOE
DISTRICT COMMANDER; DOES 1 TO 10;
and XYZ INSURANCE COMPANIES 1 TO 10,

        Defendants.

    DEPOSITION OF THE CITY OF NEW ORLEANS,
through its designated representative, CAPTAIN
PRECIOUS BANKS, given in the above-entitled cause,
pursuant to the following stipulation, before
Sandra P. DiFebbo, Certified Shorthand Reporter, in
and for the State of Louisiana, at the Office of
the City Attorney, 1300 Perdido Street, City Hall,
Room 5E03, New Orleans, Louisiana, on the 10th day
of January, 2024, commencing at 10:45 AM.

## Page 2

APPEARANCES:

    MOST & ASSOCIATES
    BY: HOPE PHELPS,
    ATTORNEY AT LAW
    201 St. Charles Avenue
    Suite 2500, #9685
    New Orleans, Louisiana 70170
    Representing the Plaintiff

    CITY OF NEW ORLEANS
    LAW DEPARTMENT
    BY: JAMES ROQUEMORE,
    ASSISTANT CITY ATTORNEY -and-
    ELIZABETH WEIGAND,
    ASSISTANT CITY ATTORNEY
    1300 Perdido Street
    Suite 5E03
    New Orleans, Louisiana 70112
    Representing Shaun Ferguson, the City of
    New Orleans, DOE District Commander, DOES
    1 to 10 and XYZ Insurance Companies
    1 to 10

Reported By:

    Sandra P. DiFebbo
    Certified Shorthand Reporter
    State of Louisiana

## Page 3

EXAMINATION INDEX

                                Page
BY MS. PHELPS:                  5, 44
BY MR. ROQUEMORE:               27


EXHIBIT INDEX
                                Page

Exhibit 3                       7
Exhibit 4                       11
Exhibit 5                       19
Exhibit 6                       20
Exhibit 7                       22

## Page 4

STIPULATION

    It is stipulated and agreed by and
among counsel for the parties hereto that the
deposition of THE CITY OF NEW ORLEANS, through its
designated representative, CAPTAIN PRECIOUS BANKS,
is hereby being taken pursuant to the Federal Rules
of Civil Procedure for all purposes in accordance
with law;
    That the formalities of reading and
signing are specifically reserved;
    That the formalities of sealing,
certification, and filing are hereby specifically
waived.
    That all objections, save those as to
the form of the question and responsiveness of the
answer are hereby reserved until such time as this
deposition or any part thereof is used or sought to
be used in evidence.
              * * * * *
    Sandra P. DiFebbo, Certified Shorthand
Reporter, in and for the State of Louisiana,
officiated in administering the oath to the
witness.



EXHIBIT 5

Def's Resp + Opp to Doc 125 - A

17

1  Q. Yes.
2  A. I don't know that to my knowledge.
3  Q. Also, on Tuesday, September 22nd,
4  Sergeant Jones drafted an introduction letter to
5  the mother who made the complaint?
6  A. Correct.
7  Q. After taking the statement from the
8  child's mother and seeing the photograph, did NOPD
9  have probable cause to arrest Vicknair?
10      MR. ROQUEMORE:
11          Objection. Form.
12      THE WITNESS:
13          Yes.
14      MR. ROQUEMORE:
15          Could you repeat that last question
16          and answer?
17          {COURT REPORTER READ BACK}
18 BY MS. PHELPS:
19  Q. I'm now showing you a copy of the
20 Affidavit for Arrest Warrant and the Arrest Warrant
21 for Rodney Vicknair. Have you seen this document
22 before?
23  A. Yes.
24  Q. This was a valid warrant, correct?
25  A. Correct.

18

1  Q. It was supported by probable cause for
2 malfeasance in office, correct?
3  A. Correct.
4  Q. NOPD sought this warrant because it
5 concluded Vicknair had committed malfeasance in
6 office, correct?
7  A. Wait. Repeat.
8  Q. NOPD sought this warrant because it
9 believed Vicknair had committed malfeasance in
10 office, correct?
11      MR. ROQUEMORE:
12          Objection. Form.
13      THE WITNESS:
14          You said sought? There was a word
15          that I was --
16      MR. ROQUEMORE:
17          The arrest warrant speaks for
18          itself, but you can answer.
19      THE WITNESS:
20          Yes. They found probable cause.
21 BY MS. PHELPS:
22  Q. That is the city's position, that
23 Vicknair committed malfeasance in office among
24 other crimes, correct?
25  A. As of the evidence obtained at the time,

19

1 yes.
2  Q. Let me go back to Exhibit 4.
3      MR. ROQUEMORE:
4          This arrest warrant was -- what was
5          the exhibit number on that?
6      MS. PHELPS:
7          Exhibit 5.
8 BY MS. PHELPS:
9  Q. The arrest warrant includes Revised
10 Statute 14:134, Malfeasance in Office, because
11 Officer Rodney Vicknair used his position as a
12 public employee to befriend a 15-year-old victim
13 after transporting her to Children's Hospital to
14 have a sexual assault kit completed, correct?
15      MR. ROQUEMORE:
16          Objection. Form.
17      THE WITNESS:
18          Correct.
19 BY MS. PHELPS:
20  Q. The description I just read of
21 malfeasance in office, is that found on the
22 disciplinary recommendations page of the signed
23 investigation report under Rule 2, Moral Conduct?
24  A. Yes.
25  Q. Sergeant Jones' investigation proved this

20

1 beyond a preponderance of evidence, correct?
2  A. Correct.
3  Q. You couldn't obtain an arrest warrant and
4 arrest someone for malfeasance in office unless
5 they committed one of the offenses described in the
6 malfeasance in office statute?
7  A. Correct. They must meet one of the
8 elements.
9  Q. I will attach the Malfeasance in Office
10 statute as Exhibit 6. Are you familiar with this
11 statute?
12  A. Yes.
13  Q. Vicknair was arrested for malfeasance in
14 office because he intentionally performed a duty
15 lawfully required of him in an unlawful manner; is
16 that correct?
17      MR. ROQUEMORE:
18          Objection. Form.
19      THE WITNESS:
20          Correct.
21      MR. ROQUEMORE:
22          I'll also object to that is beyond
23          the scope. So your answer to that was
24          yes?
25      THE WITNESS:

**Page 21**

```
 1        Yes.
 2   BY MS. PHELPS:
 3      Q.  An element of this charge, arrest, is
 4   obviously that Vicknair acted as an officer for the
 5   City of New Orleans, correct?
 6      A.  He was on duty at the time, correct.
 7      Q.  This was a valid arrest, because he
 8   committed the crimes of sexual battery and indecent
 9   behavior with a juvenile while in office, correct?
10         MR. ROQUEMORE:
11            Objection. Form.
12         THE WITNESS:
13            Based upon the preponderance of the
14         evidence.
15   BY MS. PHELPS:
16      Q.  Did NOPD make any findings regarding
17   Vicknair's credibility?
18      A.  No.
19      Q.  NOPD deemed the child, G▆▆H▆▆, to
20   be credible, correct?
21      A.  Correct.
22      Q.  NOPD deemed the mother, Rayne Hainey, to
23   be credible, correct?
24      A.  Correct.
25      Q.  NOPD deemed the counselor, Andrea Wright,
```

**Page 22**

```
 1   to be credible, correct?
 2      A.  Correct.
 3      Q.  The Public Integrity Bureau and the
 4   previous superintendent, Shaun Ferguson, all
 5   concurred in the disciplinary recommendations of
 6   Sergeant Jones, correct?
 7      A.  Correct.
 8      Q.  And this included the complaint of
 9   malfeasance in office, correct?
10      A.  Correct. Also, just to make a note, the
11   signature for Shaun Ferguson was made by his
12   designee. If you look at the handwriting above,
13   then Deputy Chief Arlinda Westbrook. The
14   handwriting was similar.
15      Q.  Shaun Ferguson's designee is authorized
16   to sign for him?
17      A.  Correct.
18      Q.  I'm going to show you a copy of the
19   Factual Basis from the criminal case. We'll attach
20   this as Exhibit 7. Have you seen this document
21   before?
22      A.  I don't remember. I may have.
23      Q.  The Factual Basis is the basis of facts
24   that or summary of facts that provide the basis for
25   Rodney Vicknair's conviction for deprivation of
```

**Page 23**

```
 1   rights under color of law, correct?
 2         MR. ROQUEMORE:
 3            I object. This is beyond the scope.
 4         These happened well after the PIB
 5         investigation was closed.
 6   BY MS. PHELPS:
 7      Q.  Comparing this to NOPD's investigation,
 8   does NOPD have any reason to believe that the
 9   statements in this document are untrue?
10         MR. ROQUEMORE:
11            Objection. Form. Beyond the scope.
12         THE WITNESS:
13            I'm still reviewing the document.
14         The Factual Basis is similar to the
15         information contained within the Public
16         Integrity Bureau Investigation.
17   BY MS. PHELPS:
18      Q.  In reading the Factual Basis, is there
19   anything in it that is inconsistent with NOPD's
20   investigation and findings?
21         MR. ROQUEMORE:
22            Objection. Form. Beyond the scope.
23         THE WITNESS:
24            It appears to be similar.
25   BY MS. PHELPS:
```

**Page 24**

```
 1      Q.  Does NOPD have any basis to believe that
 2   Rodney Vicknair did not do any of the acts
 3   described in the factual basis?
 4         MR. ROQUEMORE:
 5            Same objection.
 6         THE WITNESS:
 7            Based upon the preponderance of the
 8         evidence, as I stated previously, the
 9         information in the Factual Basis is
10         similar. It mirrors the NOPD's
11         investigation.
12   BY MS. PHELPS:
13      Q.  What has NOPD done to change its'
14   practices to prevent this from happening again?
15      A.  Well, yearly there is in-service training
16   on the rules and regulations of the department.
17   There is discussion about laws. Also, we have a
18   EPIC program, but that's usually when another
19   employee is present to basically let another
20   employee know if they're doing something wrong or
21   it appears that there is something wrong. In an
22   instance where a person is alone, as this appear
23   Officer Vicknair was alone, on his own, you really
24   can't govern a person's moral conduct. When you
25   hire somebody, you -- it's on the basis you believe
```

**25**

1 that this person has morals. So as an individual,
2 you really can't tell a person how to behave. An
3 adult. That's something that is possible learned
4 behavior. So, like I said, we usually have annual
5 training on the do's and don't's of the rules and
6 regulations, state, federal, municipal laws, but as
7 an individual in this case, Mr. Vicknair acted
8 alone from what the investigation reveals, and this
9 is more of a moral issue than of something that the
10 department could have prevented.
11     Due to his previous disciplinary history,
12 which I have reviewed, there was no prior
13 allegations of any inappropriate misconduct with
14 anyone, so that would have not been any red flags
15 to anyone, including his supervisors. The depart-
16 ment does have processes in place to trigger if
17 there is complaints of this sort, especially a
18 pattern where a deep dive will be done, including
19 being seen by our psychologist, but there was no
20 previous history with Officer Vicknair. Once
21 again, he acted alone. There was no other
22 witnesses as far as employees of the department
23 which would -- may have prevented this, but, as I
24 say, we have an EPIC program when there is other
25 employees present where they can step in, and, you

**26**

1 know, tell a person, hey, what you're doing is
2 wrong as far as maybe flirting or something. Just,
3 you know, call EPIC when you -- it is you and that
4 person, and you are counseling them prior to
5 telling a supervisor or reporting it.
6   Q. You mentioned Vicknair acting alone. I
7 understand that Vicknair frequently worked alone;
8 is that right?
9   A. Correct.
10   Q. Do officers have an option to work alone
11 or with partners?
12     MR. ROQUEMORE:
13       Objection. This is going well
14       beyond the scope. If you want to couch
15       it in terms of potential violations of
16       policy and practice, she is certainly
17       here to talk about those related items.
18 BY MS. PHELPS:
19   Q. So my original question had been if NOPD
20 has done anything since Rodney Vicknair's arrest,
21 any changes to their practices or policies since
22 that time, and you mentioned annual trainings. Has
23 there been a change to the trainings that are given
24 since Rodney Vicknair's arrest?
25   A. Every year --

**27**

1     MR. ROQUEMORE:
2       I am going to object. We do have
3       somebody to speak to training.
4     MS. PHELPS:
5       Okay. No further questions. Thank
6       you.
7     MR. ROQUEMORE:
8       I do have a few.
9 EXAMINATION BY MR. ROQUEMORE:
10   Q. Your name is Captain Precious Banks,
11 correct?
12   A. Correct.
13   Q. And you work for the New Orleans Police
14 Department's Public Integrity Bureau, right?
15   A. Correct.
16   Q. Explain what the Public Integrity Bureau
17 does.
18   A. The Public Integrity Bureau investigates
19 allegations of misconduct against employees of the
20 New Orleans Police Department. Upon a completion
21 of those investigations, depending on what the
22 findings are, if it's a sustained finding, hearings
23 are scheduled and disciplinary hearings are
24 conducted while recommendations are made.
25   Q. I am going to ask a little bit more about

**28**

1 that. I wanted to talk about you first. As
2 captain, where do you fall within the hierarchy of
3 the PIB, as they call it?
4   A. As a captain assigned to the Public
5 Integrity Bureau, I fall underneath the deputy
6 superintendent of the bureau.
7   Q. Are you the person essentially in charge
8 of the PIB?
9   A. Yes.
10   Q. I did have a question about the steps in
11 the process, so walk us through the steps from the
12 initial complaint to the imposition of discipline,
13 all of the -- there is a number of steps, right?
14   A. Yes.
15   Q. And they all fall under the civil service
16 rules that are applicable to police officers; is
17 that right?
18   A. Correct.
19   Q. There is also protections that are
20 provided for police officers under a police officer
21 bill of rights, which is statutory, right?
22   A. Correct.
23   Q. Walk us through the procedural steps that
24 go into composing a discipline.
25   A. So we start from the beginning with the

### 29

complaint. We receive a complaint. A preliminary investigation is conducted. Upon completion of a preliminary investigation, depending on what the allegation is, is where the complaint is assigned.
    Q. Explain that. Criminal versus civil.
    A. So we have administrative investigations which are only administrative in nature, meaning it's a rule or a policy violation. We have criminal, which means it has a criminal allegation. With our criminal cases, I'm going to start with, because that's a little more complex. When an intake person first receives a complaint, and if it has a criminal allegation, the criminal section is notified immediately, because it's about collecting the evidence and securing the evidence so we won't lose anything.
    If it's a hot call, which means it just happened, you know, it's something we can go out and grab video and things right now, the criminal unit will take over. Then it may possibly turn into a summons or an arrest, but we also still have not only the criminal portion to investigate, you know, but also locate witnesses. I'll be short on the admin part. The admin investigation, once the preliminary investigation is concluded, and the

### 30

intake process is assigned to our administrative unit or out to the field, and those allegations are more like neglect of duty, professionalism, courtesy, things of that nature. We also have a force investigation team which investigate use of force allegations. Talk about the police officer bill of rights. That's something that all police officers within the State of Louisiana have. They have a right to obtain counsel within a certain amount of time, bring forth witnesses, similar to the actual criminal court. Civil service also provides protection which also says they can have a representative, a counsel present during investigations, and they are afforded certain avenues to assist them during their investigation process.
    So with a criminal case, it depends on the allegation, whether it's something dealing with sexual assault, child abuse, homicide or something of the sort. Our criminal unit would work in conjunction with the other units, like Special Victims Unit, which this case will be with sex crimes. They will work jointly together. With a criminal case, as you know, it goes through the court process, and the PIB investigator will

### 31

monitor the case as it goes along to keep everyone abreast, and, also, have contact with the Special Victims Unit to make sure everyone is obtaining the same information. From there, upon the court case being completed, depending on the outcome of the court case, some people may be acquitted, found not guilty, or guilty, maybe sentenced right then and there or nol pros. So let's say that a person is found guilty, as in this case. The case will be completed by the PIB investigator based upon the findings with the court and the findings that the investigator also found, because our findings are a little bit different.
    For PIB it is based upon the preponderance of the evidence where in the court it's based upon beyond reasonable doubt. So with our cases, when you would go -- in this case, it was completed. The investigator found it to be sustained. That's his recommendations and his recommendations only. From here it will go to a bureau chiefs' hearing or the superintendent committee's hearing, which will be a panel of deputy chiefs who will hear this case similar to a court process. The investigator will be present along with the accused and the accused's attorney,

### 32

and the accused have the opportunity to, once again, give their side of the story. From there the panel decides what their recommendation will be as a group, whether sustained, which will be guilty, not sustained, prove or can't prove or disprove. Exonerated. It did happen, but it didn't violate the rules or regulations or unfounded. It didn't happen at all. From there their recommendations go to the superintendent of police, and the superintendent gives the final decision. In this case, this did not go to the superintendent of police, as documented. Also, Vicknair resigned prior to the completion of this case, so --
    Q. Can I ask you to pause? Explain about the significance -- is there any significance to him resigning under --
    A. Investigation?
    Q. -- under investigation?
    A. So for one, with him resigning under investigation, he did not give a statement in this investigation. So the investigator was only able to utilize the information he had given to him and whatever he obtained during it. So there is no statement of Officer Rodney Vicknair.

Case 2:21-cv-00407-CJB-KWR  Document 138-1  Filed 01/30/24  Page 6 of 9

9 (Pages 33 to 36)

Page 33

1  Q. Before we go forward --
2  A. I'm sorry. There is a statement, but
3  Officer Vicknair did not attend a hearing. He did
4  not attend the hearing. Correction to the record.
5  He did make a statement.
6  Q. Is there a different type of statement, a
7  more formal statement, as part of the PIB process
8  as opposed to a statement to a criminal
9  investigator?
10  A. Yes. So with PIB there is two
11  statements. There is a criminal statement, which
12  can be refused, but there is an administrative
13  statement which you are compelled to give. So it's
14  not something you can elect not to give. You have
15  to give a statement in an administrative nature.
16  With an administrative statement, you cannot use it
17  in the criminal portion, because you are compelled.
18  So Officer Vicknair did give an administrative
19  statement, but he did not attend a hearing.
20  Q. When an officer resigns while an
21  investigation is undergoing, being undertaken, how
22  does that affect the investigation?
23  A. So if there is supplemental information
24  that need to be obtained from the accused, the
25  investigator will not be able to obtain that

Page 34

1  information, because the person is no longer an
2  employee, and we cannot compel that person to come
3  forth with any additional information.
4  Q. But if he resigns while the investigation
5  is going, does the investigation continue to go to
6  the conclusion or how does that work?
7  A. So the investigator have to look at the
8  items they have at that time upon the person
9  resigning, and they come to a conclusion with the
10  information that is obtained.
11  Q. In this case, what happened after
12  Vicknair resigned?
13  A. After he resigned, the case was closed on
14  the department's end.
15  Q. Why was that?
16  A. Because there was no further steps that
17  needed to be taken. Well, that could be taken
18  without Officer Vicknair.
19  Q. How did that affect the punishment that
20  could have been meted out to Officer Vicknair?
21  A. So due to Officer Vicknair no longer
22  being an employee of the New Orleans Police
23  Department, punishment could not be imposed upon
24  him if the superintendent decided to provide any
25  punishment, as per the disciplinary matrix.

Page 35

1  Q. How would that affect Officer Vicknair's
2  future employability as a police officer with the
3  NOPD or other places?
4  A. So according to the allegations that
5  Officer Vicknair was sustained for, he would have
6  been terminated by the police department, and he
7  would not have been able to obtain employment with
8  another agency. I know directly in the State of
9  Louisiana, when you are convicted of something in
10  the State of Louisiana, or you are -- and you are
11  terminated as a law enforcement employee for a
12  criminal matter, you cannot be POST certified
13  within the State of Louisiana.
14  Q. I just want to back up a little bit.
15  Sergeant Jones' investigation report that he
16  signed, that recommendation is reviewed and
17  determined whether it's going to be approved at
18  certain higher levels as it goes up, right?
19  A. Yes. So his report is reviewed by his
20  supervisor, by the PIB captain, the deputy
21  superintendent of PIB, and there's a signature line
22  for the superintendent, but the PIB superintendent
23  is the designee for the department, the police
24  department superintendent, on numerous cases.
25  Q. These signatures on the last page of the

Page 36

1  investigation were -- there is Lieutenant Darryl
2  Watson, Captain Sabrina Richardson, Deputy Chief
3  Arlinda Westbrook, and Shaun Ferguson. These are
4  all approved at what kind of -- is this after a
5  discipline hearing has been held?
6  A. No. This is before the hearing is held.
7  This is a review of the actual investigation, and
8  if the people in the reviewing chain concurs,
9  agrees, with the investigator's findings.
10  Q. So after this step there would be another
11  hearing which evidence is presented and considered,
12  right?
13  A. Correct. There would be a hearing after.
14  Only if the case is sustained would there be a
15  hearing scheduled for the accused.
16  Q. But that didn't happen here?
17  A. No, because Vicknair resigned prior to.
18  Q. So assuming there was -- if it had gone
19  to the next level, and had the hearing, that would
20  be the predisciplinary hearing? Is that right, or
21  is there a captain's panel?
22  A. It's the chiefs' panel. Because of the
23  allegation, it would go in front a panel of chiefs,
24  deputy superintendents.
25  Q. The chiefs' panel. If the chiefs' panel

SOUTHERN COURT REPORTERS, INC.
(504) 488-1112

### Page 37

1  had determined that there was a violation, as, in
2  your opinion, it probably looks like there would
3  have been, right?
4      A.  Correct.
5      Q.  Then it would have gone forward to --
6  what is the next level?
7      A.  It would have went for the hearing. The
8  chiefs would hear the case just as similar to a
9  trial. Then the chiefs would together come up with
10 a recommendation, and if you was to go by this
11 investigation, it would be sustained, and they make
12 a recommendation of the penalty based upon a
13 penalty matrix. And for these allegations, the
14 penalty matrix would be termination. And from
15 there, they're recommendation go to the
16 superintendent for the final say on the case. The
17 superintendent is the only person who can demote or
18 terminate. Even suspend someone.
19     Q.  So the superintendent would issue the
20 final --
21     A.  The final discipline.
22     Q.  And then, under the civil service rules,
23 the officer would have a right to an appeal before
24 a neutral hearing officer to have the evidence
25 reviewed once again?

### Page 38

1      A.  Correct.
2      Q.  And that recommendation from the hearing
3  officer would then be reviewed by the Civil Service
4  Commission for final determination whether or not
5  the discipline would be approved; is that right?
6      A.  Correct.
7      Q.  Let me back up just a couple of -- well,
8  move forward, I guess. The disciplinary
9  recommendations made by Sergeant Jones. I just
10 want to talk about relative to malfeasance in
11 office, because there is two statements, two items,
12 that he lists under this malfeasance in office that
13 Miss Phelps discussed or asked you about. One was
14 Rodney Vicknair used his position as a public
15 employee to befriend 15-year-old victim after
16 transporting her to Children's Hospital to have a
17 sexual assault kit completed. You're aware that
18 that happened on May 26th, 2020, right? I'll refer
19 you to Page 5.
20     A.  Okay. When he -- the original contact
21 with the victim.
22     Q.  This is from the state. On Page 5, the
23 victim refers -- says, "G███ disclosed that the
24 first responding officer to her sexual assault
25 investigation which happened May 20th."

### Page 39

1      A.  Yeah, and Vicknair was the responding
2  officer.
3      Q.  So, therefore, that indicates that the
4  befriending started in May of 2020, correct?
5      A.  Correct.
6      Q.  And you are also aware that the sexual
7  assault happened on September 23rd of 2020?
8      A.  Correct.
9      Q.  So there is a time period between May and
10 September 23rd that the befriending happened?
11     A.  Correct.
12     Q.  And is it your opinion that that gave
13 probable cause, the befriending, to arrest Rodney
14 Vicknair?
15     A.  Yes. It shows this pattern.
16     Q.  How is it probable -- what crime has
17 occurred when he is befriending the 14-year-old
18 child who then turned 15?
19     A.  So, one, he was on duty, and as an
20 officer, as the mother stated, he was trying to
21 comfort the child somewhere in her statement, and
22 he befriended at the time a 14-year-old child.
23 They began communicating, possibly, according to
24 the report, inappropriately via telephone. Via the
25 cell phone and a social media app.

### Page 40

1      Q.  How does that give probable cause for a
2  crime?
3      A.  From the inappropriate behavior with a
4  underage juvenile, it almost appears that he used
5  his position as an officer to befriend this young
6  lady where he is supposed to be helping her seek
7  help for the crime that was being reported at that
8  time, but the mother initially says that it appears
9  he was trying to comfort her. I believe she said
10 she didn't have a father figure. She had an absent
11 father.
12     Q.  And you are looking at Page 15 of 19 of
13 the first paragraph?
14     A.  Yeah.
15     Q.  Five of 19?
16     A.  Yeah.
17     Q.  This was reported, according to this
18 report, on September 21st, 2020?
19     A.  Yeah. According to this report, that
20 date may be inaccurate. Lawrence Jones would have
21 to testify to that. It appears in the report he
22 spoke with everyone on the 25th. Things began on
23 the 23rd or 25th of September.
24     Q.  Is there any indication that there was a
25 sexual assault other than on the 23rd of September?

```
                                                             41
 1      A.  No.  Just inappropriate communication.
 2      Q.  So as we're sitting here today, on the
 3  first page where it says, "On Monday, September
 4  21st, Lawrence Jones began a sexual assault
 5  investigation," you're not really sure why he wrote
 6  that?
 7      A.  No.
 8      Q.  To your indication, there was no -- to
 9  your information, there was -- on September 21st,
10  there was no indication that -- to NOPD that there
11  was a sexual assault?
12      A.  No.  Not according to this report.  It
13  appears it was reported on the 25th.  The days are
14  a little confusing, but Lawrence Jones would be
15  able to explain that better as he was the
16  investigator.
17      Q.  Is there anything else you think you want
18  to add?
19      A.  The only thing, I guess, I would like to
20  reiterate, this is similar to a child.  You can't
21  supervise everyone, especially when they're alone.
22  An adult has to be accountable for their own
23  behavior and their moral conducts, and his actions,
24  even though he was an employee of the department,
25  there was no indication of any past history of
```

```
                                                             42
 1  inappropriate conduct that would have alerted
 2  anyone on the department to this incident possibly
 3  occurring or any other incidents.  Mr. Vicknair, as
 4  a human, should have morals, and as far as the New
 5  Orleans Police Department, once notified of these
 6  allegations, the department stepped in and took
 7  action as appropriate, and as we can tell by the
 8  outcome of the investigation, the New Orleans
 9  Police Department did its job.  But as far as an
10  officer being solo and no supervision, officers
11  ride one man, and when they're a one man, they're
12  alone.  So we can't govern a person.  In the
13  academy, and in our annual in-service, you are
14  provided training on how to handle calls for
15  service and what your behavior is to be, especially
16  regarding professionalism and courtesy.  So in this
17  instance, like I said, Officer Vicknair was alone.
18  There was no previous red flags, so this would have
19  not been anything the New Orleans Police Department
20  could have prevented, and that's just my opinion.
21      Q.  Sexual assault on a minor.  The rule
22  violation of an officer for a sexual assault on a
23  violation doesn't depend on whether he is on duty
24  or not?
25      A.  No.
```

```
                                                             43
 1      Q.  And in this case, I know that your
 2  testimony was -- regarded some stuff that he did
 3  while he was on duty, however, I want to ask you
 4  specifically, is there anything in the report that
 5  specifically states that when the sexual assault
 6  occurred on Wednesday, September 23rd, 2020, that
 7  Officer Vicknair was on duty?
 8      A.  No.  Not that I've read.
 9      Q.  There is nothing to indicate that he was
10  on duty when he sexually assaulted, right?
11      A.  Nothing that I've read, no.
12      Q.  In fact, Officer Vicknair was off duty
13  when the sexual assault happened, right?
14      A.  According to what was written.
15      Q.  And he was in his own private vehicle?
16      A.  Correct.
17      Q.  And he was out of uniform?
18      A.  Correct.
19      Q.  And he did not have a gun on him?
20      A.  No.  Not to my knowledge.  Not according
21  to the report.
22      Q.  And he was not acting on police business
23  when he sexually assaulted the victim?
24      A.  No, he was not.
25      Q.  However, it's your opinion that earlier
```

```
                                                             44
 1  in the -- during the summer, when he quote/unquote
 2  befriended the child, some of that was while he was
 3  on duty?
 4      A.  Correct.
 5          MR. ROQUEMORE:
 6               Those are the questions I have.
 7  BY MS. PHELPS:
 8      Q.  To follow up on what you said about him
 9  being alone.  After Sergeant Jones learned that
10  Rodney Vicknair was frequently going over to this
11  residence and making this mother uncomfortable and
12  suspected an inappropriate relationship with a
13  child --
14          MR. ROQUEMORE:
15               Objection.  Form.
16  BY MS. PHELPS:
17      Q.  After Sergeant Jones interviewed this
18  family on September 21st, could NOPD have assigned
19  someone to ride along with Rodney Vicknair while he
20  was investigated?
21      A.  They could have, however, NOPD chose to
22  take him off the streets, and as you can see,
23  eventually, very swiftly, within a short time
24  frame, a matter of a few days, the arrest warrant
25  was issued, and he was arrested.  So to leave him
```

45

1  on the street with allegations of the sort would be
2  improper, so he was removed.
3      Q.  Thank you for your time today.
4      MR. ROQUEMORE:
5          No further questions.  Thank you.
6          [End of deposition, 12:00.]

47

CERTIFICATE

This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

I, SANDRA P. DIFEBBO, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that CAPTAIN PRECIOUS BANKS, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 46 pages;

That the testimony was reported by me in stenotype, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

That the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, that I have acted in compliance with the prohibition on contractual relationships as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board;

That I am not related to Counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

_Sandra P. DiFebbo_
Sandra P. DiFebbo,
Certified Shorthand Reporter
Date: 1/15/24

46

WITNESS CERTIFICATE

I, CAPTAIN PRECIOUS BANKS, have read or have had the foregoing testimony read to me pursuant to Rule 30(e) of the Federal Rules of Civil Procedure and do hereby certify that to the best of my ability and understanding, it is a true and correct transcription of my testimony.

Please check one:

_____Without corrections

_____With corrections (see errata sheet)

_____    _____
CAPTAIN PRECIOUS BANKS        Date