**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**REPLY IN SUPPORT OF SHAUN FERGUSON'S AND CITY OF NEW ORLEANS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT (REC. DOC. 126)**</u>

Defendants, Shaun Ferguson and the City of New Orleans ("Defendants") provide this Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (the "Opposition") (Rec. Doc. 135).

<u>**INTRODUCTION**</u>

On June 25, 2021, this Court dismissed Plaintiff's *Monell* claim against Defendants as alleged in her Original Complaint.[1] The Court ruled that Plaintiff "fail[ed] to allege a pattern of similar constitutional violations or any other facts that would place the City Defendants on notice that their training and supervision practices are deficient[;]"[2] "fail[ed] to plausibly allege deliberate indifference[;]"[3] and "Plaintiff has not alleged a pattern of such sexual abuse by NOPD officers and '[t]here is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the [City was] deliberately indifferent' in light of the 'criminal prohibition on sexual assault.'"[4]

---

[1] R. Doc. 36.
[2] *Id.*, pp. 7-8.
[3] *Id.*, p. 8.
[4] Citing *Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915, 917 (11th Cir. 2012) ("The City was entitled to rely on [the police officer's] common sense not to commit statutory rape, so its alleged failure to train him not to commit statutory rape does not show deliberate indifference to the rights of its inhabitants.").

On January 5, 2023, Plaintiff sought reconsideration on the basis of "new evidence."[5] The "new evidence" was a "report" issued by the "Umbrella Coalition," with sensational accusations against the NOPD regarding an alleged pattern of sexual violence by NOPD officers.[6] Plaintiff represented to the Court that if she was permitted to amend her compliant, she would "add pattern and practice evidence based on the data analysis from the Umbrella Coalition report."[7] The Court granted Plaintiff's motion.[8] A year has passed. In her Opposition, Plaintiff now seemingly abandons her claim that there exists a pattern of police sexual violence within the NOPD.[9] Instead, Plaintiff again relies upon the same theories of alleged deficiencies in hiring, supervision, training and retention that this Court previously dismissed.[10] Summary judgment should therefore be granted for the same reasons as stated in the Court's June 25, 2021, Order.[11]

With respect to Plaintiff's state law claims, nothing in Mr. Vicknair's background history or disciplinary history revealed any "red flag" that would put NOPD on notice that Mr. Vicknair

---

[5] Rec. Doc. 66-1, p. 1.
[6] *Id*., p. 4.
[7] Rec. Doc. 78, p. 2 (citing Rec. Doc. 66-1, at 3-4).
[8] *Id*.
[9] The falsity of the "Umbrella Coalition" report is shown in a report filed by the Office of the Consent Decree Monitor ("CDM") in litigation entitled *United States v. City of New Orleans*,12-cv-01924-SM-DPC, Rec. Doc. 727 (July 7, 2023) (the "Consent Decree Litigation"). The CDM is a Court-appointed team with legal and law enforcement expertise "responsible for observing and reporting the policy development, training, and implementation of practices by the NOPD as prescribed in the Court-ordered Consent Decree. See http://consentdecreemonitor.com/about-us (last viewed February 4, 2024). Rec. Doc. 135-11. In the CDM report, the CDM analyzed the data underlying the Umbrella Coalition report and determined that the Umbrella Coalition's report was wrong. The CDM concluded, "***our review did not reveal a pattern of under-investigation, neglect, or concealment with regard to sexual assault and domestic violence cases involving NOPD officers . . . our review strongly suggests the complaints are being taken seriously by the Department, generally investigated fully, and resulting in reasonable dispositions***. Our review likewise identified a high number of false accusations." Rec. Doc. 135-11, 19 (emphasis added).
[10] Rec. Doc. 36, p. 4-9.
[11] Rec. Doc. 36. Based on the law-of-the-case doctrine, the Court's ruling on the instant motion should be the same as the Court's ruling on in Rec. Doc. 36. See *Arizona v. California*, 460 U.S. 605, 618 (1983) (The law-of-the-case doctrine recognizes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *Zarnow v. City of Wichita Falls, Tex*., 614 F.3d 161, 171 (5th Cir. 2010) (The law-of-the-case doctrine is a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues).

was at risk of sexually molesting a teenager or committing sexual violence. Moreover, Defendants had no notice of Mr. Vicknair's misconduct towards Plaintiff. Any tenuous causal connection between Defendant's actions in responding to Plaintiff's May 26, 2020, attempted rape report and any later sexual assault has been superseded by Mr. Vicknair's independent criminal conduct. Further, Mr. Vicknair's criminal conduct was not in the course and scope of his employment with the NOPD. For these reasons, Defendants are entitled judgment as a matter of law on all claims brought by Plaintiff.

## I.      THE FACTS DO NOT SUPPORT ANY *MONELL* CLAIM BASED ON HIRING, SUPERVISION, TRAINING OR RETENTION.

### a.   Hiring.

When Mr. Vicknair was hired in 2007 his criminal background included four arrests (one of which was expunged) and one conviction for simple battery (against a juvenile).[12] However, Mr. Vicknair had no criminal history that involved sexual assault.[13]

*Bryan Cnty. v. Brown*[14] is dispositive. In *Bryan Cnty.*, a sheriff hired his nephew without conducting an adequate background check. The nephew's background included a guilty plea for assault and battery, resisting arrest, public drunkenness, and various driving-related offenses. Subsequently, the nephew was involved in a high-speed chase that ended in an unlawful use of force against the plaintiff. The Court held that the failure to conduct a reasonable background check under these circumstances could not support a claim of municipal liability under Section 1983 because no deliberate indifference was shown. The Court recognized the difficulty in predicting the consequence of a single hiring decision, and reasoned that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the

---

[12] Rec. Doc. 135, p. 6.
[13] Rec. Doc. 126-7, pp. 33: - 34:22 (Excerpt of Deposition of Nicole Powell).
[14] 520 U.S. 397 (1997).

**plainly obvious consequence of the decision** to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"[15] In the instant case, as in *Bryan Cnty.*, nothing in Mr. Vicknair's background check made it "plainly obvious" that he would sexually assault a child.  Plaintiff cannot demonstrate the Defendants were deliberately indifferent.

### b. Supervision.

To hold a supervisory governmental official liable for a subordinate's violation of a victim's constitutional the plaintiff must establish:

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the [victim]; and
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the [victim] by failing to take action that was obviously necessary to prevent or stop the abuse; and
> (3) such failure caused a constitutional injury to the [victim].[16]

Plaintiff criticizes Mr. Vicknair's active interaction in the community, which Plaintiff describes as "inappropriate."[17] However, Plaintiff's conclusion that Mr. Vicknair's community activity was inappropriate is supposition not supported by facts.[18] In addition, Plaintiff claims that on May 26, 2020, at the Children's Hospital while waiting for a forensic examination, an officer accompanying Mr. Vicknair observed Mr. Vicknair showing "modeling photos" to Plaintiff, talk to her about "illicit" pictures, and give his phone number to Plaintiff.[19] However, the officer did not report this interaction to NOPD supervisors.[20] These allegations, even if accepted as true, do

---

[15] *Id*. at 398 (emphasis added).
[16] *Doe v. Taylor Indep. Sch. Dist*., 15 F. 3d 443, 454 (5th Cir. 1994).
[17] Opposition, p. 8.
[18] Rec. Doc. 135-2, p. 12, 39:5-9.
[19] Rec. Doc. 135, p. 8. Plaintiff's misstates Officer Curtis Carkum's testimony. Contrary to Plaintiff's suggestion in her Opposition (at p. 8), Mr. Vicknair discussed with Plaintiff how he did ***not*** allow his daughter to do illicit pictures. See Rec. Doc. 135-10, pp. 22:21 – 23:7.
[20] Rec. Doc. 135-2, p. 9, 31:17-20.

not support Plaintiff's *Monell* claim because there is no evidence that any policy-maker at NOPD had notice of any inappropriate behavior by Mr. Vicknair.[21]

Plaintiff also contends that on September 21, 2020, "after" a meeting between NOPD and Plaintiff's mother, "probable cause" existed to arrest Mr. Vicknair for La. R.S. 14:81, relative to Malfeasance in Office, but Mr. Vicknair was permitted to remain free.[22] This is a new claim that was not included in the First Amended Complaint. It should not be considered as a basis of a summary judgment defense because Defendants did not have fair notice of it.[23] That objection notwithstanding, the Supreme Court of Louisiana has held that "before a public officer or employee can be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty upon him."[24] Plaintiff has failed to allege any facts that would support an arrest for malfeasance. Indeed, on September 21, 2020, there was no evidence that Mr. Vicknair had broken any law. Therefore, there was no basis to arrest Mr. Vicknair on September 21, 2020.[25]

Further, in *Whitley v. Hanna,* a minor was used as bait in order to catch a sexual perpetrator. The Court held that complaints about the manner of conducting the investigation did not show

---

[21] See Rec. Doc. 36, p. 7 (Plaintiff has failed to allege that the NOPD policymaker was aware of Mr. Vicknair's interactions with Plaintiff) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (requiring actual or constructive knowledge).

[22] Rec. Doc. 135, p. 9. Plaintiff's interpretation of Captain Banks' testimony is incorrect in that probable to arrest Mr. Vicknair did not exist until September 25, 2020, "after" September 21, 2020, when Plaintiff provided a forensic interview and disclosed Mr. Vicknair's sexual assault. See Rec. Doc. 138, p. 5-6.

[23] Fed. R. Civ. Proc. 8(a)(2); see *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (A claim which is "not raised in the complaint" but, rather, is raised only in response to a motion for summary judgment is not properly before the court.); *Jackson v. Gautreaux*, 3 F.4th 182, 188-89 (5th Cir. 2021) (holding that a party cannot add an unpled factual theory of negligence by including it in a summary-judgment response).

[24] *State v. Petitto*, 2010-0581, p. 4 (La. March 15, 2011), 59 So.3d 1245.

[25] *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2014). See *Callis v. Sellars*, 931 F.Supp. 504, 516 (S.D. Tex. 1996) (no deliberate indifference due to failure to arrest officer accused of sexual misconduct during pendency of a sting operation).

deliberate indifference.[26] Here, as in *Whitley*, the NOPD's investigator's decision to conduct an investigation after receiving an uncorroborated complaint from Plaintiff's mother was not deliberately indifferent to Plaintiff's constitutional rights.[27]

Plaintiff criticizes NOPD's supervision of officers in the field.[28] However, NOPD required Mr. Vicknair to maintain "Trip Sheets" to log his activities; these were reviewed by supervisors, who followed up on any "trip sheet that has a location that seems familiar[.]"[29] This Court previously ruled that Plaintiff's criticisms of NOPD's supervisory practices cannot support a *Monell* claim unless a pattern is demonstrated, which is not shown here.[30] Without notice that a supervision is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a process of supervision that will cause violations of constitutional rights.[31]

*S.M. v. Lincoln County,*[32] relied upon by Plaintiff, is distinguishable. In *S.M.* a municipality was found to be deliberately indifferent for failure to supervise a police lieutenant who sexually abused Drug Court participants.[33] The lieutenant had removed his victims from the jail in violation of policy and in plain sight of jail staff.[34] In addition, the lieutenant was known to make "derisive sexual comments at Drug Court team meetings about females under his supervision, under-reported hours and trips in his patrol car to the plaintiffs' homes, and was widely perceived as devoting attention to younger women."[35] Under these circumstances, the Court found that repeated

---

[26] *Id*. at 643-644.
[27] See *Callis v. Sellars*, 931 F.Supp. 504, 519 (S.D.Tex.1996) (officers' failure to timely intervene in sting operation amounted to isolated instance of negligence or error of judgment that did not amount to deliberate indifference).
[28] Rec. Doc. 135, p. 10.
[29] Rec. Doc. 126-5 (Deposition of Bruce Haney), pp. 12:8 – 14:1.
[30] Rec. Doc. 36, pp. 7-8
[31] See *Id*. at p. 8 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011).
[32] 874 F.3d 581, 589 (8th Cir. 2017).
[33] *Id*. at 583–84
[34] *Id*., at 588.
[35] *Id*.

"danger signals" known to multiple staff and Drug Court members made the "specific risk of sexual assault" obvious.[36]

However, here, unlike in *S.M.*, there is no pattern that put Mr. Vicknair's supervisors on notice that Mr. Vicknair constituted a "specific risk of sexual assault." Mr. Vicknair's case is more similar to *Doe v. Fort Zumwat R-II School District*,[37] a case in which a teacher used a hidden camera to videotape elementary school children in the nude inside camp cabins during school sponsored overnight camps.[38] The school district relied upon teenage camp counselors to report inappropriate behavior, and once, a camp counselor observed the teacher in a bunk with a student, but did not report the incident. The Court held that, absent evidence of a pattern of misconduct related to child pornography, the school district did not have notice that its training or supervision was inadequate and was therefore not deliberately indifferent.[39]

### c. Training.

Plaintiff claims that Defendants' training was deficient in that no training was provided about "how to spot and report" "red flags" of Vicknair's behavior.[40] Plaintiff provides no authority for this presumed duty of law enforcement agencies. To the contrary, Captain Bruce Haney, NOPD's Academy commander, testified that in order to be able to identify sexually predatory behavior, special training beyond that of a regular police officer would be required.[41] Plaintiff has failed to show, by pattern evidence or otherwise, that NOPD had any notice that its training of its

---

[36] *Id.* at 589.
[37] 920 F.3d 1184 (8th Cir. 2019).
[38] *Id.*, at 1188
[39] *Id.*, at 1190 (citing *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.")).
[40] Rec. Doc. 135, p. 11.
[41] Rec. Doc. 126-5, pp. 17:7 – 18:6.

officers was deficient in this respect; therefore, NOPD cannot be said to have deliberately chosen a training program that will cause violations of constitutional rights.[42]

      **d.**      **Retention.**

Plaintiff fails to provide facts to support her claim that NOPD did not fully and appropriately investigate and discipline all complaints brought against Mr. Vicknair. Plaintiff points to an incident in a parking lot from 2009. This "parking lot" incident is too dissimilar to the sexual assault of Plaintiff to support an inference that Defendants were deliberately indifferent.[43]

**II.**    **PLAINTIFF'S NEGLIGENCE CLAIMS FAIL BECAUSE DEFENDANTS HAD NO NOTICE THAT MR. VICKNAIR WOULD SEXUALLY ASSAULT A CHILD AND BECAUSE ANY ALLEGED "RED FLAGS" DID NOT RELATE TO A RISK OF SEXUAL ASSAULT.[44]**

Plaintiff's negligent hiring and retention claims fail because nothing in Mr. Vicknair's background or disciplinary history resembled a sexual assault upon a minor.[45] Therefore, Defendants were not on notice that Mr. Vicknair might sexually assault a 15 year-old girl. Further, the isolated instance in which Officer Carkum observed Mr. Vicknair interact with Plaintiff at the Children's Hospital on May 26, 2020, cannot be attributed to Defendants because Officer Carkum was not a supervisor of Mr. Vicknair and did not report the incident to any supervisor.[46]

In her Opposition, Plaintiff asserts a new claim of negligence based upon an alleged failure to arrest Mr. Vicknair after September 21, 2020.[47] As noted above, supra page 5, this claim should

---

[42] See Rec. Doc. 36, p. 8; *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[43] *Id.*

[44] Plaintiff has abandoned her negligence claim based on NOPD's response to Plaintiff's May 26, 2020, report of attempted rape. See Rec. Doc. 79, ¶¶ 159-167, 179-186. As these paragraphs are the only allegations asserting claims of direct negligence against Defendants, all negligence claims against Defendants should be dismissed.

[45] See *Booth v. Orleans Parish School Bd.*, p. 6 2009-CA-15050, (4 Cir. Sept 22, 2010), 49 So. 3d 919 (summary judgment granted school board on claim that school janitor touched daughter inappropriately due to lack of notice).

[46] Rec. Doc. 135-10, p. 31:17-20. See *Id.* (no notice to school board even though evidence showed that some teachers knew of prior incidents, evidence did not show that "the same kind of incident was reported" previously).

[47] See Rec. Doc. 79, ¶¶ 159, 161, 178-186 (in which the only claims of negligence were based on "dispatching Officer Vicknair to handle [Plaintiff's] sexual abuse" in May of 2020).

be ignored as a basis to defend against summary judgment. Nevertheless, Plaintiff's assertion that there existed "probable cause" to arrest Mr. Vicknair for a violation of La. R.S. 14:134, Malfeasance in Office, is legally wrong.[48] As noted above, on September 21, 2020, there was no basis to conclude that Mr. Vicknair broke any law. Therefore, there was not probable cause for violation of La. R.S. 14:134. Further, Plaintiff fails to show causation. Mr. Vicknair's independent criminal misconduct was an independent superseding cause that broke any chain of causation arising from the initial encounter with Plaintiff.[49]

## III.   RESPONDEAT SUPERIOR / CHILD PORNOGRAPHY.

Plaintiff's argument is absurd that Mr. Vicknair was acting as a police officer when he masturbated while in his house and engaged in a social media exchange with Plaintiff. Similarly, it is not reasonable to presume that Mr. Vicknair was acting as a police officer when he carried on the multiple private conversations with Plaintiff about Plaintiff's 50 year-old sexual partner, the problems that Plaintiff was having with her mother, her puppy, her birthday, or other mundane topics.[50] Given the absence of any evidence linking the circumstance of Mr. Vicknair's sexual assault upon Plaintiff to any actual NOPD job functions, no reasonable jury could conclude he was in the course and scope of his work as an office when he committed those criminal acts.[51]

---

[48] See Rec. Doc. 138.

[49] See Rec. Doc. 139-3, CNO 3569, 3574-75, 3584-8535, 3589, 3591, 3594, 3601-02, 3606-07, 3615, 3622; and Rec. Doc. 139-2, pp. 50:1 – 14; 204:19 – 205:20. See *Jackson v. Ferrand*, 658 So.2d 691, 701 (La. App. 4 Cir. 12/28/94) ("when Ms. Jackson voluntarily left the hotel premises with Ferrand, she effectively removed herself from the realm of the hotel's protection, making it impossible for the Hilton Hotel to protect her from the sexual assault.") See e.g., Frederick v. Mobil Oil Corp., 765 F.2d 442, 447–48 (5th Cir.1985); Thomas v. Hartford Ins. Co., 540 So.2d 1068, 1075 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989(superseding cause).

[50] Rec. Doc. 139-3, CNO 3570-3571, 35753576, 3577-78, 3587, , 3593, 3617-3618, 3622-3623.

[51] See *Sanborn v. Methodist Behavioral Resources Partnership*, 2003-0627 (4 Cir. 2004), 866 So.2d 299 (drug abuse counselor who sexually assaulted client was not in course and scope of employment with center when he assaulted the plaintiff because such assault was extraneous to duties and constituted an egregious violation of ethical standards).

## IV.    OBJECTION TO INADMISSIBLE SUMMARY JUDGMENT EVIDENCE

Defendants object to Plaintiff's Exhibits G and J.[52] Exhibit G is a chart with dates and text. The exhibit is unaccompanied by any affidavit or declaration to give the document context or provenance. This document is inadmissible hearsay and should be excluded.[53] Exhibit J is a report filed by the CDM in the Consent Decree Litigation.[54] The report is inadmissible under: (1) Fed. R. Evid. Rule 802 as in admissible hearsay; (2) Fed. R. Evid. Rule 404(a) and (b) as impermissible character evidence; and Rule 403 as being unduly prejudicial. [55]

### CONCLUSION

Summary judgment should therefore be granted in favor of Defendants on all claims.[56]

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868
*Counsel for Shaun Ferguson and the City of New Orleans*

---

[52] Rec. Doc. 135-8 (Exhibit G), Rec. Doc. 135-11 (Exhibit J); Rec. Doc. 135, footnotes 44 and 62.

[53] *Bosarge v. Cheramie*, LLC, 121 F. Supp. 3d 599, 602–03 (E.D. La. 2015)(citing *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987)) ("Unsworn documents are not appropriate for consideration.").

[54] 12-cv-01924-SM-DPC, Rec. Doc. 727 (July 7, 2023). Contrary to Plaintiff's contention that the report demonstrates chronic staffing at NOPD's Special Victims Unit, the report actually stats that from 2019 to 2021, the SVU was "in the green" with regard to its sexual assault investigations. Rec. Doc. 135-11, p. 7.

[55] *Bosarge*, 121 F. Supp. 3d at 603 (citing *Hixson v. Houston Indep. Sch. Dist*., 2011 WL 4860004 at *3 (S.D. Tex. October 12, 2011)) ("Hearsay evidence, because it is inadmissible at trial, is not competent summary judgment evidence")

[56] Alternatively, if the Court grants summary judgment on only the Federal Law claims, remand would be appropriate because Mr. Vicknair has been dismissed and no Federal claims would remain. In addition, remand would secure the protections afforded the City of New Orleans by La. Rev. Stat. 13:5105, which precludes trial by jury as to the City of New Orlean in state court.