UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, INDIVIDUALLY
AND ON BEHALF OF HER MINOR
DAUGHTER, G.H.

CIVIL ACTION

No. 21-407

VERSUS

RODNEY VICKNAIR, ET AL.

SECTION: "J"(4)

## ORDER AND REASONS

Before the Court are a *Motion for Partial Summary Judgment Against Defendant City of New Orleans* **(Rec. Doc. 125)** filed by Plaintiff, G.H.,[1] and a *Motion for Summary Judgment* **(Rec. Doc. 126)** filed by Defendants Shaun Ferguson and the City of New Orleans. Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Plaintiff's motion **(Rec. Doc. 125)** should be **GRANTED,** and Defendants' motion **(Rec. Doc. 126)** should be **GRANTED IN PART AND DENIED IN PART** as explained herein.

## FACTS AND PROCEDURAL BACKGROUND

On September 23, 2020, Rodney Vicknair,[2] who was then employed as an officer with the New Orleans Police Department ("NOPD"), sexually assaulted G.H., who was then a minor child. The events and failures leading up to and following that tragedy are the bases for the issues presented in the instant motions.

---

[1] On July 12, 2023, after G.H. reached the age of majority, Plaintiff moved to substitute G.H. in place of her mother, Rayne Upton, who had previously filed the instant case. (Rec. Doc. 101). The Court granted the motion. (Rec. Doc. 105). Previous Orders and Reasons referred to Ms. Upton as Plaintiff, but the findings and conclusions also apply to G.H.'s claims as substituted plaintiff.

[2] Rodney Vicknair was formerly named a Defendant in this case but died on January 1, 2024. On January 9, 2024, the Court granted Plaintiff's motion to dismiss all claims against Vicknair with prejudice. (Rec. Doc. 119)

The NOPD hired Vicknair in 2007, and his pre-employment background check included an examination of his criminal history. Vicknair's criminal history as of the 2006 background check included five arrests and one conviction: (1) a 1985 arrest for two counts criminal damage to property and two counts illegal use of a weapon, (2) a 1986 arrest for attempted burglary, (3) a 1987 arrest and conviction for simple battery against a juvenile, (4) a 1990 arrest for disturbing the peace, and (5) a 2005 arrest for simple battery and aggravated assault.[3] (Vicknair Hiring File; Rec. Doc. 135-5; Bill of Information; Rec. Doc. 135-6). The 2005 assault and battery arrest was based on an incident where Vicknair returned home to find a stranger in the house with his girlfriend and threatened the man with a knife. (NOPD Lieutenant Powell Deposition, Rec. Doc. 126-7, at 4). After that incident, the girlfriend gave a statement that Vicknair was her ex-boyfriend, and she was with her boyfriend; however, Vicknair's statement differed, alleging that the woman was his girlfriend. *Id.* at 4-5.

Vicknair had received several complaints against him during his tenure with the NOPD. In 2009, the PIB received a complaint about Vicknair from a woman who claimed that Vicknair had stopped her unnecessarily in a grocery store parking lot. According to the complaint, Vicknair ran the woman's license plate number, which determined she was not wanted, and then used her personal information to call her over to his vehicle by name. Vicknair was charged with inaccurately recording information on his daily activity sheet and suspended for five days. Based on this incident, Vicknair's performance evaluations commending him for conducting many

---

[3] The 2005 arrest was later expunged. (Rec. Doc. 135-7).

vehicle stops, and a study linking vehicle stops with police harassment of female drivers, Plaintiff contends that "a large number of these frequent traffic and pedestrian stops were used by Officer Vicknair to attempt to meet women for the purpose of sexual gratification" and that he "engaged in a pattern of using his police authority and NOPD-provided tools to seek sexual gratification with a member of the public." (Rec. Doc. 79, at 16, 14).

On May 26, 2020, Vicknair responded to a call to the NOPD and escorted then-14-year-old G.H., who was a victim of attempted rape, to the emergency room to undergo a forensic exam (i.e. a rape kit). Vicknair and another NOPD officer, Curtis Carkum, transported the child and her mother to the hospital and remained with them while waiting for the exam. According to a February 19, 2021 NOPD Public Integrity Bureau report regarding Vicknair's conduct, body-worn camera footage taken in the emergency waiting room shows Vicknair telling G.H. that she "could tell him things that she would not tell her mother." (Rec. Doc. 125-4, at 5). Vicknair also showed G.H. what Vicknair was describing as "photos of his daughter scantily clad." *Id.* Vicknair gave G.H. his cell phone number and offered to mentor and speak with the child outside of work. *Id.* At the time, Vicknair was 53-years-old.

In the four months that followed, Vicknair, while in uniform, visited G.H.'s residence unannounced at least ten times, while on- and off-duty. Vicknair also spoke on the phone and exchanged Snapchat messages with G.H. These conversations included communications of a sexual nature, and Vicknair requested and received explicit photos of G.H. and kept them on his cell phone. On one occasion, Vicknair

touched G.H.'s breast under her shirt, and on another occasion, he touched G.H.'s buttocks over her clothes. (Factual Basis, Rec. Doc. 87-3, at 1). G.H. and Vicknair also discussed that G.H. had a sexual relationship with a 50-year-old man named "Jim," and G.H. testified that Vicknair advised G.H. to "keep [her] story straight" and deny that it had happened. (G.H. Deposition; Rec. Doc. 139-2, at 11). Vicknair never informed his supervisor, a Child Abuse Detective, or any other member of NOPD that a 15-year-old girl was having sex with a 50-year-old man. (Rec. Doc. 125-4, at 13).

On September 21, 2020, G.H.'s counselor, Andrea Wright of the New Orleans Children's Bureau, relayed to NOPD G.H's mother's concerns regarding the relationship between Vicknair and G.H. NOPD Sergeant Lawrence Jones   G.H's mother, Rayne Upton's, concerns included three incidents: (1) Vicknair shouted "nice ass" at G.H. while she was jogging and while Vicknair was in uniform and in his NOPD vehicle; (2) Vicknair showed up at G.H.'s residence unannounced at night, entered G.H.'s bedroom with the mother, and stared at G.H.'s breast when G.H. was awakened; and (3) Vicknair took an inappropriate photo with G.H in which he was in uniform, hugging G.H. from behind, and their faces were touching.

Later in the day on September 21, 2020, Sergeant Jones interviewed Ms. Upton.  Ms. Upton explained that after Vicknair first met G.H., Vicknair would often come to their residence, sometimes unannounced. Ms. Upton reported that Vicknair gave Ms. Upton the impression he was trying to be a positive role model and because of everything G.H. was going through, Ms. Upton thought the relationship would be a good thing. However, Ms. Upton became uncomfortable with him showing up to

4

their residence so often unannounced. She also described in more detail the three concerning incidents she reported to Ms. Wright and allowed Sergeant Jones to view the photos of G.H. and Vicknair.

On September 22, 2020, Sergeant Jones prepared a NOPD Introduction letter informing Ms. Upton of the tracking number of her Public Integrity Bureau complaint and that Sergeant Jones was the investigator.

On September 23, 2020 at around 11:00 a.m., G.H.'s counselor reported to NOPD that G.H. had had sex with a 45 year-old man named "Jim." However, the counselor later requested to cancel that police report because G.H. had threatened self-harm if anything happened to the suspect.

Later that day, on September 23, 2020 at around 11:00 p.m., Vicknair went to G.H.'s house and told G.H. to come outside and get into his vehicle. By this date, G.H. had turned 15 years old. G.H. sat in the passenger's seat, and Vicknair locked the doors so she could not leave. Vicknair leaned over G.H., confined her against her will, and touched her bare breast with his hands. Without G.H.'s consent, Vicknair digitally penetrated her vagina twice. During this incident, Vicknair was off-duty, out of uniform, and in his personal vehicle. However, his vehicle had an NOPD placard in the front window that allows officers to park in law enforcement officer parking.

Critically, the parties dispute whether the September 23, 2020 assault was the first and only time Vicknair sexually assaulted G.H. (Rec. Doc. 135, at 17). Defendants state that Vicknair only assaulted G.H. once, but G.H. testified that he assaulted her four times, including once in her bedroom while carrying his police

radio. *Id.* (citing G.H. Deposition; Rec. Doc. 135-4, at 6) (answering "Yes" to the question "earlier you mentioned that there was four times during the summer of 2020 and September of 2020 that Rodney Vicknair sexually assaulted you. Do you remember all that?).

On September 25, 2020, G.H. was interviewed at Children's Hospital Child Advocacy Center by a trained forensic interviewer. During the forensic interview, G.H. described the September 23 sexual assault. After the forensic interview, Sergent Jones petitioned a magistrate commissioner for an arrest warrant for Vicknair, citing Louisiana Revised Statutes 14:43.1 (Sexual Battery), 14:81 (Indecent Behavior with a Juvenile), and 14:134 (Malfeasance in Office). At 8:48 p.m. the magistrate signed the arrest warrant, and at 1:00 a.m. several NOPD officers arrested Vicknair at his home and transported him to the police station.

That day, Sergeant Jones interviewed Vicknair after advising him of his Miranda rights. Vicknair described his relationship with G.H. as well as the evening of September 23 when G.H. sat in his truck, including the clothing she was wearing at the time. He did not state that he actually assaulted G.H. He also described how he viewed G.H.'s Snapchat selfies and told her that she "had a nice ass for [her] age." (Rec. Doc. 125-4, at 14). After the interview, Jones informed Vicknair that his employment was immediately suspended pending the outcome of the criminal investigation, and Vicknair was arrested. Vicknair resigned from NOPD effective January 13, 2021, prior to the conclusion of the criminal investigation.

G.H.'s mother, Ms. Upton, filed this action on February 24, 2021, bringing

claims under 42 U.S.C. § 1983, 18 U.S.C. § 2255 as well as state law tort claims and vicarious liability claims. Ferguson and the City of New Orleans ("the City Defendants") filed a motion to dismiss pursuant to Rule 12(b)(6) and 12(b)(1), and on June 25, 2021, this Court granted the motion in part and denied the motion in part. The Court dismissed with prejudice Plaintiff's § 1983 and § 2255 claims but retained supplemental jurisdiction over Plaintiff's state law claims. (Rec. Doc. 36). As to the § 1983 claims, the Court concluded that Plaintiff failed to adequately allege a claim for municipal liability regarding eleven alleged policies that Plaintiff claimed caused the deprivation of G.H.'s rights. *Id.* at 5-9. As to the § 2255 claim, the Court held that § 2255 claims are limited to the defendant who committed the offense, so the § 2255 claim against City Defendants was dismissed. *Id.* at 9-11. However, to promote judicial economy and convenience and because Plaintiff maintained § 1983 and § 2255 claims against Vicknair, the Court maintained supplemental jurisdiction over the state law claims against the City as sufficiently related to the claims against Vicknair. *Id.* at 11-12.

On September 22, 2022, Vicknair was criminally charged in federal court with one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242. *United States v. Rodney Vicknair*, No. 22-212 (E.D. La. 9/22/2022). Vicknair entered a plea of guilty on November 16, 2022, agreeing that (1) he deprived G.H. of a right secured by the Constitution or law of the United States, namely her fundamental right to bodily integrity; (2) he acted willfully; (3) he acted under the color of law; and

(4) his conduct included kidnapping. (Plea Agreement, Rec. Doc. 87-6). On the same date, he signed a Factual Basis admitting as true the following facts:

> RODNEY VICKNAIR (VICKNAIR) was a police officer with the New Orleans Police Department (NOPD). In May 2020, VICKNAIR, while working in his capacity as an NOPD officer, escorted a 14-year-old girl (Vl), who was a victim of sexual assault, to the hospital to undergo a forensic exam, i.e. a rape kit. VICKNAIR gave Vl his cell phone number and offered to be her friend and mentor. At the time, VICKNAIR was 53-years old.
>
> During the four months thereafter, all while acting in his capacity as a police officer to facilitate his conduct to gain V1's trust, VICKNAIR and Vl spoke on the phone and exchanged messages on Snapchat. VICKNAIR, while in uniform, often stopped by unannounced at Vl's residence. Over time, VICKNAIR made comments to Vl that were sexual in nature. VICKNAIR requested and received sexually explicit photographs of VI and kept them on his cellphone. On one occasion he touched Vl's breast under her shirt, and on another occasion he touched Vl's buttocks over her clothes.
>
> On the night of September 23, 2020, VICKNAIR arrived at Vl's house, which was located in the Eastern District of Louisiana. By that time, Vl had turned 15-years-old. He told her to come outside and get into his vehicle. V1 got into the passenger's seat while VICKNAIR remained in the driver's seat.
>
> Then, VICKNAIR locked the doors so that Vl could not leave. VICKNAIR leaned over toward Vl, causing her to fear for her physical safety, and confining her against her will, all of which constituted kidnapping. VICKNAIR then engaged in a sexual act with Vl without her consent, when he intentionally touched her genitals under her clothing. VICKNAIR was acting under color of law and his conduct did not have a legitimate law enforcement purpose. He knew his actions were wrong and against the law, but he engaged in such conduct anyway.

(Factual Basis, Rec. Doc. 87-3). The court sentenced him to imprisonment for a term of 168 months. (Sentencing Transcript, Rec. Doc. 87-5).

On January 5, 2023, Plaintiff filed a motion to reconsider the dismissal of Plaintiff's municipal liability claims with prejudice and instead revise the order to dismiss those claims without prejudice. (Rec. Doc. 66). Plaintiff contended that a

dismissal without prejudice would allow her to amend her complaint to add pattern and practice evidence based on data analysis from a previously unavailable report, including data on a pattern of deliberate indifference and sexual abuse by NOPD officers. (Rec. Doc 66-1, at 3-4). The Court granted Plaintiff's motion, allowing Plaintiff to file an Amended Complaint with the revised *Monell* claim of municipal liability against the City Defendants. (Rec. Doc. 79).

In her amended complaint, Plaintiff brought the following claims:

1. 42 U.S.C. § 1983 civil rights violations against all defendants
2. Municipal liability for police misconduct (*Monell* claim) against the City Defendants for failure to supervise and discipline officers
3. State tort claims (assault and battery) against all defendants
4. State tort claims (negligence and negligent infliction of emotional distress ) against all defendants
5. State tort claim (intentional infliction of emotional distress) against Vicknair
6. State tort claim (false imprisonment) against Vicknair
7. State tort claim (negligent hiring and failure to train) against City Defendants
8. Vicarious Liability for damages caused by employee against City Defendants
9. Indemnity for damages of employee against the City of New Orleans
10. Punitive damages for reckless disregard for safety of child against Vicknair
11. Punitive damages for act of child pornography against all defendants
12. Liquidated and punitive damages pursuant to 18 U.S.C. §2255 (civil remedy for personal injuries) against Vicknair. (Rec. Doc. 79).

On May 19, 2023, Plaintiff filed a motion for partial summary judgment against Vicknair, arguing that, because Vicknair pled guilty to violating 18 U.S.C. § 242 for his sexual abuse of G.H., Vicknair's civil liability was established by the doctrine of collateral estoppel as to her state law claims of assault, battery, false

imprisonment, and negligence, as well as her constitutional claim against Vicknair under Section 1983. (Rec. Doc. 87-1, at 1). In granting the motion in part and denying the motion in part, the Court determined that the doctrine of collateral estoppel applies as to Plaintiff's § 1983 claim, battery claim, assault claim, and false imprisonment claim against Vicknair, so Plaintiff was entitled to summary judgment on those claims. *Id.* at 15. However, because the elements for Plaintiff's § 242 claim differed from the elements of negligence, the Court denied the motion as to Plaintiff's negligence claims. *Id.* at 15-19. However, following Vicknair's death in January 2024, Plaintiff dismissed all claims against Vicknair with prejudice. (Rec. Doc. 119).

On January 23, 2024, Plaintiff and the City filed the instant motions. (Rec. Docs. 125, 126). Plaintiff seeks partial summary judgment on her claim for vicarious liability against the City for Vicknair's state-law torts, arguing that the opportunity arose for Vicknair to commit the torts in the course and scope of his employment with NOPD and because Vicknair abused his apparent authority to commit the torts. (Rec. Doc. 125). The City moves for summary judgment dismissal of all of Plaintiff's claims, arguing that Plaintiff is unable to demonstrate the existence of a genuine issue of material fact as to any of her claims. (Rec. Doc. 126). Each party filed opposition memoranda and reply memoranda (Rec. Docs. 135, 139, 150, 151), and after NOPD Superintendent Anne Kirkpatrick was deposed, Plaintiff filed a supplemental opposition brief regarding her testimony (Rec. Doc. 149).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

11

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075

## **DISCUSSION**

### I.  **§ 1983 claims for civil rights violations against Defendant Ferguson and the City**

G.H. claims that all Defendants acted under color of law to deprive her of her Fifth and Fourteenth Amendment due process rights, specifically her protected liberty interest to be free from sexual abuse and bodily intrusions by state actors and her Fourth Amendment right to be free from unlawful seizure of her person. (Amended Complaint; Rec. Doc. 79, at 26). Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Although a municipality may not be held vicariously liable under section 1983 for the acts of its employees, it may be subject to liability pursuant to section 1983 when the municipality maintains an unconstitutional policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691). Defendants argue that there is no evidence

that Superintendent Ferguson took any intentional or reckless acts himself which directly harmed Plaintiff, and Plaintiff's claims against Ferguson are only against him in his official capacity, which are subsumed in her *Monell* claim. (Rec. Doc. 126-1, at 6-7). Defendants also argue that the City cannot be liable for Vicknair's constitutional violations under *respondeat superior*, so this claim should be dismissed. *Id.* at 7.

Plaintiff fails to address these arguments in her opposition, and the Court previously dismissed this claim with prejudice on Defendants' motion to dismiss. (Rec. Doc. 36, at 4, 13). Although the Court later ordered that Plaintiff could file an amended *Monell* claim, the Court did not revise the order dismissing Plaintiff's first cause of action with prejudice. (Rec. Doc. 78, at 7-8). Further, in her opposition, Plaintiff concedes that a city is not liable on the theory of *respondeat superior* but argues that a city is liable for acts directly attributable to it through some official action or imprimatur. (Rec. Doc. 135, at 4) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Accordingly, this claim remains dismissed.

## II.    Municipal liability claims

In her Amended Complaint, G.H. claims that Ferguson and the City established, condoned, ratified and encouraged customs, policies, patterns and practices that caused the deprivation of her rights. (Rec. Doc. 79, at 27). Plaintiff alleges that the sexual misconduct in this case was caused by Defendant's policies, practices, and customs because data indicates a pattern of NOPD officers regularly engaging in police sexual violence, and the NOPD fails to supervise, investigate, and

13

impose consequences for reported complaints of police sexual violence. *Id.* She also claims that the NOPD officers are allowed to engage in this pattern and practice because Defendants failed to implement sufficient training or oversight for officers. *Id. S*he points to data from a report by the Umbrella Coalition that of the 944 NOPD officers currently employed, at least 189 have at least one formal complaint of sexual or intimate violence, and of those 189, each has on average 18 total misconduct complaints and 26 officers have two or more complaints of sexual or intimate violence. *Id.* at 28-29. In her opposition memorandum, Plaintiff summarizes this claim as four theories of liability under *Monell*: (1) improper hiring, (2) improper supervision, (3) improper training, and (4) improper retention. (Rec. Doc. 135, at 5).

In their motion for summary judgment, Defendants argue that G.H. cannot demonstrate that any policy was the cause of Vicknair's actions. (Rec. Doc. 126-1, at 7). First, Defendants contend that there is no evidence of inadequacy in NOPD's supervision or training of Vicknair and that there is no causal link between NOPD's training and supervision and Vicknair's sexual assault of G.H. *Id.* at 8-9. Second, Defendants argue that Plaintiff's data related to NOPD sexual abuse complaints is based on a report by the Umbrella Coalition that is inadmissible hearsay and cannot support her allegations at the summary judgment stage. *Id.* at 11. Defendants also note that Plaintiff has not designated an expert witness affiliated with the Umbrella Coalition or elsewhere to explain the conclusions in the report, and the report is facially dubious considering the anonymity of the authors, inscrutability of its methodology, and uncertainty of its sources. *Id.* Defendants also argue that the prior

complaints listed are different from Plaintiff's issue, which precludes an inference of deliberate indifference, and this incident does not fit into the single incident exception for *Monell* claims. *Id.* at 12.

In response, G.H. contends that sufficient evidence exists for her four theories of liability. (Rec. Doc. 135). First, she points to (1) NOPD's definition of a habitual offender (any "person with a criminal history of two or more felony convictions or five or more felony or misdemeanor arrests for any offense"); (2) the City's 30(b)(6) witness's testimony that the City should not hire habitual offenders to be a police officer; and (3) NOPD Superintendent Kirkpatrick's testimony that an officer with Vicknair's criminal history should not have been hired. *Id.* at 6-7. Because Defendants knowingly hired a habitual offender with a conviction for violent offenses, G.H. argues that a reasonable jury could conclude that this hiring was likely to result in the violation of constitutional rights such that Defendants were reasonably indifferent and summary judgment should be denied on the improper hiring claim. *Id.* at 7. As to the improper supervision theory, G.H. points to deposition testimony that Defendants had probable cause to arrest Vicknair four days before his actual arrest, during which time he committed a final sexual assault of G.H. *Id.* at 7-10. G.H. also points to deposition testimony that NOPD had no system to monitor (automatic or otherwise) when an officer repeatedly returns to the scene of a sexual assault victim's home. *Id.* at 10. She also cites a report by the Office of the Consent Decree Monitor regarding NOPD Sexual Assault Investigations stating that the NOPD had an excessive caseload for Sex Crimes and Child Abuse detectives,

resulting in patrol officers transporting and communicating with G.H. rather than a Child Abuse detective. *Id.* at 11.

In reply, Defendants state that, although the Court allowed Plaintiff to amend her complaint to add pattern and practice evidence, Plaintiff now seemingly abandons her claim that a pattern of police sexual violence exists within the NOPD. (Rec. Doc. 151, at 2). Instead, in her opposition, they argue, Plaintiff reverts to relying on the same theories of deficiencies in hiring, supervision, training, and retention that this Court previously dismissed. *Id.* (citing Rec. Doc. 36).

As the Court previously explained, Plaintiff's claim against Ferguson in his official capacity is a claim for municipal liability. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). "For municipal liability to arise under Section 1983 from actions by officials that caused a deprivation of the constitutional rights of others, there must be shown a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (citation and internal quotation marks omitted). The policy may consist of (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by" a policymaker; (2) "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy"; and (3) "a final decisionmaker's adoption of a course of action tailored to a particular situation and

not intended to control decisions in later situations." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (internal quotation marks and citations omitted).

To prevail on a claim for municipal liability for failing to train, supervise, or discipline an employee, a plaintiff must show: "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting this deficient policy, and (3) that the inadequate training, supervisory, or disciplinary policy directly caused the violations in question." *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020)). "[T]o show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.' But where a plaintiff does not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). The single-incident exception is extremely narrow and exists only where "the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* An injury is highly predictable if the municipality fails to "train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* (internal citation omitted).

### A. Improper Hiring

In this case, Plaintiff alleges that the City Defendants improperly hired Vicknair because he was a habitual offender, according to NOPD's definition, because

he had been arrested five times. (Rec. Doc. 135, at 5-6). Specifically, she argues that one of his arrests was for simple battery against a juvenile, and this Court previously granted summary judgment on her claim against Vicknair for battery against a juvenile. *Id.* at 6-7. Further, she points to NOPD Superintendent Anne Kirkpatrick's deposition testimony that she would not hire an applicant with Vicknair's criminal history. (Rec. Doc. 149). After reviewing the criminal history of a hypothetical applicant with Vicknair's criminal history, Kirkpatrick testified that his criminal history indicated a risk pattern" that "an applicant with this criminal history might engage in future misconduct along the lines of this criminal history." (Rec. Doc. 149-1, at 8). In reply, the City argues that Vicknair had no criminal history involving sexual assault, so nothing in his background check made it plainly obvious he would sexually assault a child, and therefore Plaintiff cannot demonstrate the City was deliberately indifferent. (Rec. Doc. 151, at 3-4).

Thus, the issue before the Court on this theory of liability is whether the alleged negligent hiring of Vicknair evidences a policy or practice of the NOPD. Although "a cause of action under § 1983 based on a single decision attributable to a municipality" is possible, a single decision policy may be found "only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." *Bd. of Cnty. Comm'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 405 (1997). In a case alleging negligent hiring due to failure to properly vet an applicant, "[t]he fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot

alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410-11. Instead, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411. So, "only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference." *Id.* To establish deliberate indifference in a negligent hiring case, "the connection between the background of the individual and the specific violation alleged must be strong, [and] the plaintiff must show that the hired officer was highly likely to inflict the particular type of injury [she] suffered." *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021) (citing *Brown*, 520 U.S. 397) (internal quotation marks omitted). A plaintiff cannot defeat summary judgment simply because there was a probability that a poorly-screened officer would violate her protected rights. *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir. 2000) (citing *Brown*, 520 U.S. at 412). Instead, a plaintiff must show that the hired officer was highly likely to inflict the particular type of injury suffered. *Id.*

So, although the fact that the instant case is premised on a single hiring decision does not foreclose municipal liability, to defeat summary judgment, G.H. must offer evidence sufficient to create an issue of material fact that the NOPD's

hiring decision was done with deliberate indifference to the obvious consequences of Vicknair's hiring. And she must establish deliberate indifference by showing that adequate scrutiny of Vicknair's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of hiring him would be the deprivation of a third party's federally protected right.

The City points to *Bryan County v. Brown* to support its argument that nothing in Vicknair's background check made it plainly obvious that Vicknair would sexually assault a child. In *Brown*, a sheriff hired his nephew without conducting an adequate background check, but the nephew's background included a guilty plea for assault and battery, resisting arrest, public drunkenness, and various driving-related offenses. 520 U.S. at 400-401. The non-traffic offenses all arose from a single fight on a college campus where he was a student. *Id.* at 413. Later, while he was employed at the sheriff's office, the nephew participated in a high-speed chase ending in an unlawful use of force against the plaintiff, causing the plaintiff severe injuries. *Id.* The plaintiff argued that a single decision to hire the nephew, which was "facially lawful," can "launch a series of events that ultimately cause a violation of federal rights." *Id.* at 405. The Court held that, although a jury could properly find that the assessment of the candidate's background was inadequate, the failure to adequately screen the nephew did not support liability for the municipality under § 1983 because no deliberate indifference was shown. *Id.* at 410-411. The Court emphasized that the "connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412. Because the nephew's use

of excessive force would not have been a plainly obvious consequence of the hiring decision to ignore the nephew's traffic offenses and other misdemeanors, the sheriff's inadequate scrutiny of his nephew's record could not constitute deliberate indifference to the particular right violated in that case: plaintiff's federally protected right to be free from use of excessive force. *Id.* at 414.

In *Gros v. City of Grand Prairie*, the Fifth Circuit reversed a denial of summary judgment on a plaintiff's claim that the chief of police showed deliberate indifference in hiring a police officer (Rogers) who later allegedly sexually assaulted the plaintiffs. 209 F.3d 431 (5th Cir. 2000). In that case, Rogers's pre-employment personnel file included reports from his previous position that he went to a psychologist after incidents where force was used, statements from his previous supervisor that they would monitor his activities, a psychological test result, letter of reprimands, an unsustained complaint that he was harassing during a traffic stop, and other negative commentary. *Id.* at 434. The Court noted that the plaintiffs did not point to any evidence that Rogers had sexually assaulted, sexually harassed, falsely arrested, improperly searched or seized, or used excessive force, and that the record reflected that he never committed a serious crime. *Id.* at 435. The reprimands and complaints that were sustained did not meet the requirement from *Brown* for a strong causal connection between his background and the specific constitutional violations alleged. *Id.* Accordingly, no issues of fact warranted a jury determination, and the Fifth Circuit held that the district court should have granted summary judgment on plaintiffs' *Monell* claim as to improper hiring.

This case is easily distinguishable from *Brown* and *Gros*. Here, unlike the connection between the officer's excessive force and a singular college fight and driving violations in *Brown*, the connection between Vicknair's background and the constitutional violation here is significantly stronger. And unlike Rogers's background which did not include any serious crimes, let alone offenses identical to the one at issue in *Gross*, Vicknair's background included two arrests for battery, including a conviction for simple battery against a juvenile, and the particular risk that the Court already concluded occurred included, *inter alia*, battery of a juvenile. The City cannot reasonably argue that battery of a juvenile is not a plainly obvious consequence of the decision to hire a police officer with a criminal history including a conviction for battery of a juvenile.

Further, G.H. has identified additional facts in the record which could allow a reasonable jury to find that the decision to hire Vicknair reflects deliberate indifference to the particular risk that the violation she alleges would follow from his hiring. First, at the time of his hiring, NOPD was aware that Vicknair had five arrests on his criminal record, which qualifies him as a "habitual offender" under the NOPD's own rules. Second, two of the City's 30(b)(6) witnesses, including the Superintendent of the NOPD, testified that an arrest and conviction background like Vicknair's would be disqualifying. (Powell Deposition; Rec. Doc. 126-7, at 7) ("if a person pled guilty to any misdemeanors, felony, or anything like that. . . that's just an example of an automatic [violation to the hiring criteria]"); (Kirkpatrick Deposition; Rec. Doc. 149-1, at 8) ("These indicate a risk pattern that would not be one I would take on"). On

these facts, a jury could reasonably find that the harm G.H. alleged was the likely result of the failure of a reasonable supervisor to adequately screen and scrutinize Vicknair's disciplinary history and that the NOPD acted with deliberate indifference to that risk. Accordingly, summary judgment is unavailable on this issue.

## B. Improper Supervision

Defendants argue that the record evidence shows that no NOPD policy was the moving force behind Vicknair's grooming and sexually assaulting G.H. because there is no causal link between NOPD's supervision and Vicknair's criminal acts (Rec. Doc. 126-1, at 9). In response, Plaintiff argues that the City improperly supervised its officers when it (a) left Vicknair on the street for four days after developing probable cause to arrest him, during which time he sexually assaulted G.H. and (b) consistently understaffed its Sex Crimes unit so that specially-trained detectives had to rely on patrol officers to fill in. (Rec. Doc. 135, at 7). In reply,

In support of her argument that NOPD knew of Vicknair's inappropriate behavior, Plaintiff points to Vicknair's deposition testimony answering in the affirmative to the questions, "NOPD knew about how you were interacting with members of the community and making friends whether they were adults or under-age girls, right?" and "[NOPD] knew about [making friendships with adults and with underage girls] and didn't tell you not to do it, agreed?" (Vicknair Deposition; Rec. Doc. 135-2, at 12). Vicknair also testified that he would not say NOPD approved of his friendships, but "they never—I was never told anything about it, so." *Id*. In

support of her argument that NOPD supervision failed, Plaintiff also points to the following deposition testimony from the NOPD's 30(b)(6) witness, Precious Banks:

> Q. After taking the statement from the child's mother and seeing the photograph [on September 21, 2020], did NOPD have probable cause to arrest Vicknair [before the assault on September 23, 2020]?
> MR. ROQUEMORE: Objection. Form.
> THE WITNESS: Yes.

(Banks Deposition; Rec. Doc. 135-3, at 7). Superintendent Kirkpatrick also stated that, after the NOPD saw a "seductive" photo of an officer and a 15-year-old girl, the officer should not be left unmonitored on the streets because "that officer is a potential risk to that girl" and "the photo would inform [her] that this is serious misconduct." (Kirkpatrick Deposition, Rec. Doc. 149-1, at 3-4). Kirkpatrick also testified that NOPD should have a system to spot suspicious patterns of an officer returning to a minor sex crime victim's home 12 or 13 times and a policy for supervisors to look for suspicious behavior in trip sheets. *Id.* at 5-6. Plaintiff also contends that an officer accompanying Vicknair and G.H. to the hospital on May 26, 2020 should have reported to their supervisors the fact that Vicknair showed illicit photos to G.H. and gave her his phone number. *Id.* at 8. In reply, the City argues that on September 21, 2020, there was no evidence Vicknair had broken any law and there is no evidence that any policy-maker at NOPD had notice of inappropriate behavior by Vicknair. (Rec. Doc. 151, at 4-5). The City also notes that NOPD required Vicknair to maintain Trip Sheets to log his activities, which were reviewed by supervisors who followed up. *Id.* at 6. The City argues there was no pattern putting Vicknair's supervisors on notice that he constituted a specific risk of sexual assault. *Id.*

Plaintiff identifies the unwritten NOPD supervision policies or customs at issue here are (1) the NOPD's failure to remove Vicknair from service immediately after G.H.'s mother met reported his behavior (and the photo) to the NOPD Public Integrity Bureau (2) the absence of effective supervision of officers' locations, and more particularly a failure to monitor the location patterns of officers involved in sex crimes investigations; and (3) NOPD's failure to provide adequate staffing for sex crimes and child abuse cases. There are at least three ways in which plaintiffs may meet their burden to show a policy or custom. *Burge v. Par. of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). "The first two involve direct action by a policymaker, either in the form of generally applicable policies or specific, directed actions." *Smith v. Carruth*, No. 15-4570, 2017 WL 785345 (E.D. La. Mar. 1, 2017) (citing *Burge*, 187 F.3d at 371). "The third involves a failure to act by policymakers when the need to take some action to control [its agents] is so obvious, and the inadequacy of existing practice so likely to result in a violation of constitutional rights, that the policymaker. . . can reasonably be said to be deliberately indifferent to the need." *Id.* (internal citations omitted). Here, the policies Plaintiff alleges fit into the third category: a failure to act or take certain action.

Notwithstanding whether Plaintiff has presented evidence of the existence of each of the supervision policies alleged, the Court finds that Plaintiff has failed to present evidence that the failure to supervise in these three ways was the "moving force" behind the deprivation of G.H.'s constitutional rights. "The moving force analysis requires that rigorous standards of culpability and causation. . . be applied

to ensure that the municipality is not held liable solely for the actions of its employee[s]." *Carruth*, 2017 WL 785345, at *7 (citing *Brown*, 520 U.S. at 405; *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (holding that moving force inquiry requires showing of causation and culpability)) (internal quotation marks omitted). First, causation requires a showing of a direct causal connection between the policy and the constitutional deprivation, and this causal connection is higher than "but for" causation. *Mason*, 806 F.3d at 280. Second, culpability requires a showing higher than heightened negligence; instead, a plaintiff must show that the municipality "promulgated the policy with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* (cleaned up).

Here, Plaintiff attempts to satisfy the moving force requirement by arguing "but for" causation (if the NOPD had not failed to take these supervisory steps, Vicknair's crimes would not have occurred), rather than presenting evidence of the heightened causation and culpability requirements for *Monell* claims. There is no evidence that these alleged policies directly caused Vicknair to assault G.H. There is also no evidence that the City adopted these policies with deliberate indifference to the obvious consequences that this constitutional violation would occur. Unlike the improper hiring decision discussed above, there is no evidence in the record of a strong connection between Vicknair's choice to sexually assault a minor and the NOPD's failure to arrest him within two days rather than four, failure to monitor the number of times he returned to G.H.'s house, or failure to staff the initial call for

service in May 2020 with sex crimes and child abuse specialist. *See Lewis v. Pugh*,
289 F. App'x. 767, 775-76 (5th Cir. 2008) (rejecting argument that inadequate
complaint policy was moving force behind police officer's rape because there was no
direct causal link between policy and constitutional violation). Because Plaintiff
cannot present the required evidence of causation and culpability to show that these
supervision policies were the moving force behind Vicknair's violation of her rights,
her § 1983 *Monell* claims for these policies will not withstand summary judgment.

### C. Improper Training

Plaintiff also argues that the NOPD training was deficient because it provided
no training to the officers around Vicknair about how to spot the "red flags" of
Vicknair's behavior. (Rec. Doc. 135, at 12).

The failure to train municipal employees may constitute a policy, but only
when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton
v. Harris*, 489 U.S. 378, 389 (1989). Thus, although municipalities are not normally
liable for inadequate training of employees, failure to properly train constitutes an
actionable policy if, "in light of the duties assigned to specific officers or employees
the need for more or different training is so obvious, and the inadequacy so likely to
result in the violation of constitutional rights, that the policymakers of the city can
reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.
Merely proving that an injury could have been avoided with more training does not
suffice to establish municipal liability. *Thompson*, 563 U.S. at 68. Instead, a plaintiff
in a failure to train case can prove deliberate indifference either by (1) establishing

that the need to train is so obvious and so likely to result in the violation of constitutional rights, or (2) by showing a failure to act in response to repeated complaints of constitutional violations. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989).

Here, as in the failure to supervise claims, Plaintiff has not pointed to evidence that the failure to train Vicknair's colleagues or Vicknair would obviously or likely result in the violation of her rights. Further, although Plaintiff amended her complaint to include data regarding pattern and practice evidence of these types of complaints, in response to the motion for summary judgment, Plaintiff did not provide evidence of a pattern that NOPD failed to act in response to similar repeated complaints. Accordingly, Plaintiff has not established deliberate indifference on this theory, and summary judgment is appropriate.

### D. Improper Retention

Plaintiff's final *Monell* theory is that Defendants improperly retained Vicknair on the force even after he used his authority to act "inappropriately" with a woman. The Court previously dismissed this claim for failing to plausibly allege deliberate indifference because the 2009 parking lot incident was simply too different from Vicknair's alleged conduct with G.H. to put the City on notice that retaining Vicknair would lead to the constitutional violation at issue here. (Rec. Doc. 36, at 8-9). The Court allowed Plaintiff to amend this claim, and Plaintiff has failed to provide any evidence in response to the motion for summary judgment that the City was

deliberately indifferent on this issue. Accordingly, summary judgment in Defendants' favor is warranted on the improper retention claim.

### III. Vicarious Liability for Vicknair's State Law Torts

Plaintiff's motion requests partial summary judgment as to the City's vicarious liability for Vicknair's state law torts. (Rec. Doc. 125). Plaintiff's state law tort claims against Vicknair include: assault, battery, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and false imprisonment. (Rec. Doc. 79). The Court previously granted summary judgment as to Plaintiff's claims against Vicknair for battery, assault, and false imprisonment, but denied summary judgment as to negligence. (Rec. Doc. 107). Defendants also move for summary judgment on the issue of the City's vicarious liability for these torts. (Rec. Doc. 126).

Under Louisiana law, an employer is liable for the torts committed by its employees if, at the time, the employee was acting within the course and scope of their employment. La. Civ. Code art. 2320; *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996). To determine whether the employee was acting in the course and scope of their employment in order to determine whether an employer should be held vicariously liable, four factors are relevant, and no single factor is dispositive: (1) whether the tortious act was primarily employment rooted, (2) whether the tort was reasonably incidental to the performance of the employee's duties, (3) whether the act occurred on the employer's premises, and (4) whether it occurred during the hours of employment. *Lebrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974). Thus, the employee's

tortious conduct must be so closely connected "in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employee's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *Id.* However, the fact that the employee's predominant motive is to benefit himself does not prevent the act from being within the scope of employment; if serving the employer's business "actuates the [employee] to any appreciable extent, the [employer] is subject to liability if the act is otherwise within the service." *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 477 (La. 1990).

The "scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the [employee] in performing" his work. *Id.* Therefore, for police cases, courts give "special weight to the authority wielded by on-duty police officers in performing the vicarious liability analysis." *Doe v. Morris*, No. 11-1532, 2013 WL 3933928, at *4 (E.D. La. July 30, 2013) (citing *Applewhite v. City of Baton Rouge*, 380 So. 2d 119 (La. App. 1 Cir. 1979)). However, "officers' duty status is not determinative of the vicarious liability inquiry," because for Louisiana courts that have found "that a law enforcement officer has abused the 'apparent authority' given such persons to act in the public interest, their employers have been required to respond in damages" in cases involving both on- and off-duty officers. *Carruth*, 2017 WL 785345, at *12 (citing *Applewhite*, 380 So. 2d at 122; *Cheatham v. Lee*, 277 So. 2d 513 (La. App. 1 Cir. 1973); *Bourque v. Lohr*, 248 So. 2d 901 (La. App. 1 Cir. 1971)).

In this case, the *Lebrane* factors weigh in favor of a finding of vicarious liability. The first factor (whether the tortious act was primarily employment rooted) has been conclusively established by Vicknair's conviction for deprivation of rights under color of law, in violation of 18 U.S.C. § 242, stemming from Vicknair's willful deprivation of G.H.'s fundamental right to bodily integrity while acting under the color of law, as a police officer for the NOPD. Additionally, as Plaintiff points out, NOPD arrested Vicknair for "malfeasance in office" for using his position as a public employee to develop a relationship with G.H.

The second factor (whether the tort was reasonably incidental to the performance of Vicknair's duties) is also satisfied in this case. Vicknair met G.H. while on duty, responding to her family's call for service, and began developing an inappropriate relationship with her while performing his employment duties by continually returning to her residence "as a police officer." (Vicknair Deposition, Rec. Doc. 135-2, at 9). Although the September 23, 2020 assault occurred while he was off-duty, his duty status is not dispositive. Defendants argue that Vicknair's grooming and sexual assault was entirely extraneous to NOPD's interests. (Rec. Doc. 126-1, at 18). However, this factor does not depend on the link between the assault and NOPD's interests; instead, the Court must examine the link between the assault and Vicknair's duties. After meeting G.H. while performing an integral police function imbuing him with public trust (investigating child sexual assault) and four months of subsequent inappropriate contact with the minor child, Vicknair abused his

authority while acting in the public interest such that this Court finds that the torts he committed were incidental to the performance of his duties.

The third factor (whether the tort occurred on the employer's premises) is also satisfied because the assault occurred within the geographic limits of the City of New Orleans and specifically the First District where Vicknair was assigned to patrol. As Plaintiff notes, the authority of a NOPD officer extends to the geographic limits of the City of New Orleans. The fourth factor (whether the act occurred during the hours of employment) is the only factor that weighs slightly against vicarious liability: Vicknair had just clocked out before the September 23, 2020 assault and was off-duty at the time. However, there remain genuine fact issues as to whether Vicknair's previous assaults of G.H. occurred, and whether those assaults occurred while he was on duty. Of course, this factor is not dispositive to the vicarious liability analysis.

Finding three of the four *Lebrane* factors weighing in favor of liability, Plaintiff's motion for partial summary judgment should be granted. As to Defendant's request to dismiss these claims on summary judgment, the motion is denied.

## IV.    Negligent Hiring, Training, and Discipline[4]

Defendants argue that Plaintiff cannot present evidence for her claims for the City's direct negligence in hiring, training, and disciplining Vicknair. (Rec. Doc. 126-1, at 16). In response, Plaintiff points to the same evidence cited in her response to

---

[4] In their motion for summary judgment, Defendants also seek dismissal of Plaintiff's Fourth Cause of Action: Negligence and Negligent Infliction of Emotional Distress. (Rec. Doc. 126-1, at 14-15). In this cause of action, Plaintiff alleged that Defendant breached a duty of care with regard to G.H. by dispatching Vicknair to handle her abuse case. (Rec. Doc. 79, at 30-32). Plaintiff does not provide argument in opposition to dismissal. (Rec. Doc. 135). Finding merit in Defendants' arguments, this claim is dismissed.

the motion for summary judgment regarding her *Monell* claims. (Rec. Doc. 135, at 15). For the negligent hiring claims, she notes Sergeant Barnes's testimony that NOPD should not hire habitual defenders and Lieutenant Powell's testimony that a misdemeanor conviction like Vicknair's would be an automatic exclusion. *Id.* For negligent training, she cites Sergeant Barnes testimony that it could be a training issue to fail to report obvious red flags such as Vicknair's decision to show an underage sex crime victim modeling photos or give her his number. For failure to discipline, Plaintiff points to Captain Banks's testimony that leaving Vicknair on the street with allegations of this sort would be improper after developing probable cause to arrest him. *Id.*

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana:" (1) duty, (2) breach of duty, (3) cause-in-fact, (4) scope of liability, and (5) damages. *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009). For the same reasons outlined regarding causation for Plaintiff's *Monell* claims regarding Defendant's training and supervision, the Court finds that Plaintiff has presented insufficient causation evidence to defeat summary judgment on her claims for negligent training and discipline. As to the negligent hiring claim, the Court finds that the evidence outlined regarding Plaintiff's *Monell* claim regarding Vicknair's hiring (see Section II(A), *supra*) creates a fact issue sufficient to defeat summary judgment on the negligent hiring claim.

## V.     Exemplary Damages for Acts of Child Pornography

Plaintiff seeks punitive damages from Defendants pursuant to Louisiana Civil Code article 2315.3, which states that,

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton and reckless disregard for the rights and safety of the person through an act of pornography involving juveniles, as defined by R.S. 14:81.1, regardless of whether the defendant was prosecuted for his acts.

La. Civ. Code art. 2315.3. Louisiana Revised Statute § 81.1 provides that it is unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles. Plaintiff claims that, through an act of pornography involving G.H. when she was 14-15 years old, Vicknair evinced wanton and reckless disregard for G.H.'s rights and safety. (Amended Complaint, Rec. Doc. 79, at 37).

In their motion, Defendants argue that Plaintiff fails to offer an allegation nor any evidence that the City Defendants themselves possessed pornography involving juveniles or otherwise committed the crime described by La. R.S. § 81.1. (Rec. Doc. 126-1, at 19-20). In response, Plaintiff argues that Vicknair's opportunity to solicit and possess child pornography of G.H. occurred entirely through his role as an officer, so a reasonable jury could conclude that Vicknair's solicitation and possession of child pornography was within the scope of his role as an officer and therefore attributable to the City. (Rec. Doc. 135, at 18-19). Although Plaintiff may be correct that a jury could reach this conclusion, Plaintiff has not come forward with summary judgment evidence of the existence of a genuine dispute of material fact linking Vicknair's

possession of child pornography materials to the NOPD. Mere conclusory allegations are insufficient to defeat a motion for summary judgment, so Defendant's motion must be granted as to this claim.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Partial Summary Judgment Against Defendant City of New Orleans* **(Rec. Doc. 125)** is **GRANTED**. Defendants' *Motion for Summary Judgment* **(Rec. Doc. 126)** is **GRANTED IN PART AND DENIED IN PART.** Defendants Shaun Ferguson and the City of New Orleans are entitled to summary judgment on the following claims, only:

(1) § 1983 claims for civil rights violations
(2) *Monell* claims as to improper supervision, training, and retention
(3) Negligence and Negligent Infliction of Emotional Distress
(4) Negligent training and discipline
(5) Punitive damages pursuant to La. Civ. Code art. 2315.3.

The sole remaining claims are:

(1) *Monell* claim as to improper hiring
(2) Vicarious liability for Vicknair's state law torts
(3) Direct negligence in hiring

New Orleans, Louisiana, this 16th day of February, 2024.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE