**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

_____

RAYNE UPTON, individually and                    )
on behalf of her minor daughter, G.H.            )
                                                 )
            Plaintiff,            )          Docket No. 2:21-cv-407
    v.                                          )
                                                 )          JUDGE: CARL BARBIER
RODNEY VICKNAIR, SHAUN FERGUSON,                 )
THE CITY OF NEW ORLEANS; DOE                     )
DISTRICT COMMANDER; DOES 1 to 10;                )          MAGISTRATE: KAREN
and XYZ INSURANCE COMPANIES 1 to 10,             )          WELLS ROBY
                                                 )
            Defendants.           )
_____          )

## JOINT PRETRIAL ORDER

### I.    DATE OF PRETRIAL CONFERENCE

Thursday, February 22, 2024, at 2:00 p.m.

### II.    APPEARANCE OF COUNSEL AND PARTY REPRESENTED

| | |
|---|---|
| Plaintiff, G.H. | Defendants, City of New Orleans and |
| Hope Phelps (#37259) | Shaun Ferguson |
| William Most (#36914) | James Roquemore (#40035) |
| Telephone: (504) 509-5023 | Corwin St. Raymond (#31330) |
| Most & Associates | City Attorney |
| 201 St. Charles Ave., Ste. 2500, #9685 | 1300 Perdido St., Room 5E03 |
| New Orleans, LA 70170 | New Orleans, LA 70112 |
| hopeaphelps@outlook.com | Telephone: (504) 658-9815 |
| williammost@gmail.com | Facsimile: (504) 658-9868 |
| | james.roquemore@nola.gov |
| | cmstraymond@nola.gov |

### III.    DESCRIPTION OF PARTIES

Plaintiff, G.H., is an individual of the full age of majority. She formerly resided in Louisiana, and now lives in California.

Defendant, City of New Orleans, is a political subdivision of the State of Louisiana. Defendant, Shaun Ferguson, is the former superintendent of the New Orleans Police Department ("NOPD"). Collectively, all Defendants are referred to as the "City."

IV.     **JURISDICTION**

This court has jurisdiction over this civil matter pursuant to 28 U.S.C. § 1331 and §1343. No party objects to this court's jurisdiction. The City contends that if the Court grants the City's Motion for Summary Judgment (R. Doc. 126) and dismisses all of Plaintiff's federal claims, the remaining state law claims should be remanded to state court.

V.      **PENDING/CONTEMPLATED MOTIONS OR SPECIAL ISSUES FOR DETERMINATION IN ADVANCE OF TRIAL**

   a) Plaintiff filed a Motion for Leave to Designate Superintendent Anne Kirkpatrick as Non-Retained Expert Witness. (R. Doc. 136.)

This motion is currently pending before the court. The parties anticipate filing motions in *limine*, not concerning expert testimony, in accordance with and in advance of the deadline outlined in the Court's Scheduling Order (March 11, 2024).

The parties may file amended exhibit lists and objections pursuant to the Court's ruling on Summary Judgment in R. Doc. 157. That ruling may also alter the contested issues of law and fact.

VI.     **BRIEF SUMMARY OF MATERIAL FACTS CLAIMED**

   a.  **BY G.H.**

On May 26, 2020, Officer Rodney Vicknair met 14-year-old G.H. through his role as an NOPD officer. When Officer Vicknair met G.H., he was responding to a report of First-Degree Rape wherein G.H. was identified as the victim.

Officer Vicknair and Officer Curtis Carkum transported G.H. and her mother to Children's Hospital. Body-worn camera footage shows Officer Vicknair telling the teen that she could tell him things she would not tell her mother. Officers Vicknair and Carkum remained with G.H. and her mother in the emergency room while they waited for the sexual assault examination.

2

While waiting in the emergency room, Officer Vicknair showed G.H. scantily clad photos of a woman. During this time, Office Vicknair also gave G.H. his cell phone number and offered to G.H. and her mother that he could be a mentor to G.H.

Over the next four months, according to the City, Officer Vicknair acted "in his capacity as a police officer to facilitate his conduct to gain [G.H.]'s trust." Officer Vicknair, in his capacity as an NOPD officer, purported to perform welfare checks on G.H. at her residence. Officer Vicknair went over to G.H.'s home at least ten times.

Over those months, Vicknair sexually assaulted G.H. four times. At least two of those times were in his NOPD uniform. The final sexual assault occurred on September 23, 2020, in Vicknair's vehicle. Vicknair also stared at G.H.'s exposed breasts on at least one occasion, hit her with a baton, and solicited child pornography from her.

By September 21, 2020, NOPD had been alerted to Vicknair's misconduct and opened an investigation. NOPD Sgt. Lawrence Jones issued written investigation findings, concluding, beyond a preponderance of evidence, that Defendant Vicknair sexually assaulted G.H. after he "used his position as a public employee to befriend [G.H.] after transporting her to Children's Hospital to have a sexual assault kit completed." Based on these findings, Sgt. Jones recommended that Officer Vicknair be disciplined for "Malfeasance in Office," and arrested him for that crime. The entire NOPD chain of command, including then NOPD Superintendent Shaun Ferguson concurred with Sgt. Jones' findings and recommendations.

In his criminal case, Vicknair plead to a statement of facts that included obtaining sexually explicit photographs of G.H., touching her breasts and buttocks, kidnapping her, and sexually assaulting her.

G.H. has six theories of liability against the City:

- **Section 1983: Improper Hiring:** Before he was hired, Vicknair had a criminal history of five arrests and one conviction, including an arrest and conviction for battery against a juvenile. He therefore met NOPD's definition of a "habitual offender," which multiple City witnesses said should have excluded Vicknair from working as an officer. But NOPD hired him anyway.

- **Section 1983: Failure to Supervise:** The City engaged in improper supervision when it (a) left Vicknair on the street for four days after developing probable cause to arrest him, during which time Vicknair sexually assaulted G.H. a final time; (b) consistently understaffed its Sex Crimes unit so that specially-trained detectives would have to rely on regular patrol officers like Vicknair to fill in; (c) lacked any system whatsoever for spotting when an officer repeatedly returns to the scene of a sex victim's home.

- **Section 1983: Failure to train:** NOPD failed to train officers to identify and report the admitted "red flags" of Vicknair's conduct. Other officers observed that Vicknair's conduct towards G.H., a child and sexual assault victim, violated NOPD policies, but did not report it due to their lack of training. Vicknair likewise received little or no training on how to avoid situations where he might feel impulses to engage in inappropriate behavior.

- **Section 1983: Improper Retention:** Vicknair joined NOPD in 2007. Soon thereafter, he engaged in actions that caused a series of complaints, including complaints in 2008, 2009, 2010, 2011, 2014, and 2016. That misconduct included an incident in which Vicknair used the power of his office to engage in inappropriate behavior with a woman. The City should not have retained Vicknair on the force after these incidents.

- **Respondeat Superior for State Torts**: Vicknair's acts towards G.H. were within the scope of his job, considering that the City arrested him for "malfeasance in office." And in any case, Vicknair's opportunity to rape G.H. undisputedly arose through his role as an officer. *See Latullas v. State*, 658 So. 2d 800, 804-805 (La. App.1st Cir. 1995) (finding vicarious liability for rape of inmate when guard was "acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose.")

- **City's Negligence**: The City was negligent in its hiring, supervision, and training of Vicknair and the other officers for the reasons described above.

## b. BY DEFENDANTS, THE CITY OF NEW ORLEANS AND SHAUN FERGUSON

From 2007 to September 25, 2020, Rodney Vicknair worked for the New Orleans Police Department ("NOPD") as a police officer. Prior to being employed, Mr. Vicknair submitted an application and underwent a background check. Nothing in his past indicated that Mr. Vicknair

4

had committed any act of sexual violence or would do so in the future. Previously, Mr. Vicknair was employed as a security guard and Emergency Medical Technician. As a NOPD police officer, Mr. Vicknair received training on child abuse and child abuse investigations, sexual assault and investigations, and community policing. All officers, including Mr. Vicknair, received training regarding policies and regulations concerning, among other things, adherence to the law, reporting fellow-officers for misconduct, and response to reports sexual crimes. Mr. Vicknair undertook additional training regarding crisis intervention and also became qualified to be a field training officer. Indeed, Mr. Vicknair's training history establishes that he knew the commission of an act of sexual violence against a woman or child was wrong, against the law, and prohibited by the policies of NOPD.

On May 26, 2020, Rodney Vicknair and two other NOPD officers responded to a report of an attempted rape at G.H.'s residence. As part of that call, Mr. Vicknair and his partner, also an NOPD officer, transported G.H., a 14 year-old girl and her mother to Children's Hospital.

Over the next four months, on two occasions, Rodney Vicknair was in contact with G.H. while on NOPD police-related business. On no other occasion during the Summer and through September of 2020, did Mr. Vicknair contact G.H. while performing any duty incidental to his work as an NOPD police officer. However, during this time, Mr. Vicknair contacted G.H. and her mother for non-NOPD reasons through telephone, texts, social media and in-person meetings. The NOPD did not know until September 21, 2020, that Mr. Vicknair had kept contact with G.H. and her mother.

On September 21, 2020, in the afternoon, NOPD met with G.H.'s mother regarding concerns that she had regarding Rodney Vicknair. However, the mother did not express concern that Mr. Vicknair had sexually assaulted G.H. or any concern that he was going to do so. In

addition, G.H. was not cooperative with the NOPD's interview of the mother. Following the meeting, NOPD's investigator began an investigation.

On September 25, 2020, when she was interviewed by law enforcement, G.H. reported that Rodney Vicknair sexually assaulted her two days prior, on September 23, 2020. G.H. reported that Rodney Vicknair put his finger inside her vagina twice and took a pair of her underwear on September 23, 2020. According to G.H., Mr. Vicknair did not sexual assault her prior to September 23, 2020.[1] In addition, G.H. reported that the assault occurred after Mr. Vicknair's workday ended, while Mr. Vicknair was off work, out of uniform, and in Mr. Vicknair's personal vehicle, not an NOPD vehicle. After NOPD received the report of Mr. Vicknair's alleged sexual assault, on Friday, September 25, 2020, Vicknair was interviewed by NOPD, arrested, and suspended from employment. Mr. Vicknair resigned while under disciplinary investigation from NOPD effective January 13, 2021.

The Defendants respond to the Plaintiff's theories of liability as follows:

- **Section 1983: Improper Hiring.** The City objects to the inclusion of this claim in the pre-trial order and any submission of this claim to the jury. Plaintiff failed to fairly include this claim in her First Amended Complaint (R. Doc. 79).[2] As a result, contrary to the requirements of Fed. R. Civ. Proc. 8, Plaintiff did not provide City with fair notice of this claim or the grounds upon which it rests.

- **Section 1983: Failure to Supervise.** With respect to Plaintiff's claim that there existed probable cause to arrest Mr. Vicknair on September 21, 2020, this claim is factually inaccurate and misconstrues the deposition testimony of NOPD officers. Further, on September 21, 2020, G.H.'s mother was not concerned that Rodney Vicknair had sexually assaulted Plaintiff or was about to. In addition, G.H. was not cooperative with NOPD's

---

[1] Plaintiff later changed her story about how many times Rodney Vicknair sexually assaulted her. At her deposition in this lawsuit, Plaintiff claimed that Mr. Vicknair sexually assaulted her three additional times during the summer. However, at deposition, she was unable to provide any details as to when or how she was allegedly sexually assaulted. Additionally, Rodney Vicknair, in his federal criminal case, pleaded guilty to only the single incident that occurred on September 23, 2020.

[2] See R.Doc. 79, ¶ 143 ("Had there been more adequate supervision, training, and discipline of misconduct . . . the sexual assault of G.H. would have been prevented.").

investigation. NOPD's investigator's decisions about how to conduct the investigation and how to gather corroborative evidence were not unreasonable. The NOPD's investigator's conduct does not show deliberate indifference on the part of the NOPD as to any risk that Mr. Vicknair would sexually assault G.H. The remaining claims are not supported by facts and do not show deliberate indifference by NOPD to any plainly obvious risk relating to Rodney Vicknair.

- **Section 1983: Failure to train.** The facts do not support Plaintiff's theory of failure to train. NOPD has a substantial training program for its police officers, which includes how to interact with sexual crime victims. In addition, the NOPD has a clear policy to require officers to obey the law and to report officer misconduct. Plaintiff cannot demonstrate that NOPD's training was insufficient or that NOPD knew the training was insufficient or deliberately disregarded a known and substantial threat that Rodney Vicknair would sexually assault a minor sex crime victim. Further, there is no competent evidence to substantiate Plaintiff's claim that NOPD "consistently understaffed its Sex Crimes unit" at any time relevant to this lawsuit.

- **Section 1983: Improper Retention.** None of the complaints made against Rodney Vicknair regarding his conduct as a police officer involved sexual violence against minors or women and thus provided no notice to NOPD that Mr. Vicknair might sexually assault G.H. Further, every instance in which a complaint was made against Mr. Vicknair was appropriately investigated and resolved according to the City of New Orleans Civil Service rules and Police Bill of Rights set forth in Louisiana Revised Statute 40:2531.

- **Respondeat Superior for State Torts.** Rodney Vicknair's criminal acts towards Plaintiff were not within the course or scope of his work as an NOPD police officer. Any sexual assault of Plaintiff was not primarily employment rooted in Mr. Vicknair's employment with the NOPD and was not reasonably incidental to the performance of his duties as a police officer. Further, Plaintiff is incorrect regarding the bases for the "probable cause" for Mr. Vicknair's arrest, which was issued on September 25, 2020. According to Mr. Vicknair's arrest warrant, he was arrested on three charges: (1) sexual battery; (2) indecent behavior with juveniles; and (3) malfeasance in office. The warrant affidavit alleged only one sexual assault, on September 23, 2020. The affidavit for the arrest warrant did not specify what conduct constituted "malfeasance in office" and which facts supported other charges. The elements of the crime of malfeasance in office are different from the elements required to be proved by the Plaintiff for *respondeat superior*. Therefore, Plaintiff's reference to the charges brought against Mr. Vicknair are not probative as to whether vicarious liability exists on the part of the City for Mr. Vicknair's sexual assault. Plaintiff must prove her claim of vicarious liability by testimony of witnesses with personal knowledge, not upon the hearsay and legal conclusions contained in Mr. Vicknair's Arrest Warrant or other derivative legal documents.

- **Negligence.** The facts do not support the Plaintiff's claim that City was negligent in its hiring, supervision, or training of Rodney Vicknair. In addition, Plaintiff includes in this proposed pre-trial order a claim that the City was negligent for hiring, supervision, or

training of "the other officers." However, Plaintiff did not include a claim based on other officers in her First Amended Complaint and this claim should be stricken.

## VII.   SINGLE LISTING OF UNCONTESTED MATERIAL FACTS

1.  In 2007, Rodney Vicknair submitted an application to be a City of New Orleans Police Department ("NOPD") officer, and underwent a background check.

2.  From 2007 to September 25, 2020, Mr. Vicknair worked for the New Orleans Police Department ("NOPD") as a police officer.

3.  Rodney Vicknair had been arrested before he was hired by NOPD. NOPD considered his arrest history and approved Mr. Vicknair's hire to be an officer.

4.  NOPD has policies and regulations concerning response to and investigation of sexual crimes.

5.  On May 26, 2020, Rodney Vicknair met G.H. through his role as an NOPD officer.

6.  On that day, Rodney Vicknair and two other NOPD officers responded to a call at G.H.'s residence because G.H., a 14-year-old girl, had allegedly been sexually assaulted by a 17-year-old male overnight visitor to G.H.'s residence.

7.  On May 26, 2020, as part of that call, Rodney Vicknair and his partner, also an NOPD officer, transported G.H. and her mother to Children's Hospital for an interview and evaluation.

8.  On September 21, 2020, G.H.'s mother met with Lieutenant Lawrence Jones of the NOPD's Public Integrity Bureau, and she reported that three incidents regarding Mr. Vicknair concerned her: (1) Mr. Vicknair shouted "nice ass" at G.H. while she was jogging; (2) Mr. Vicknair showed up at G.H.'s residence unannounced at night, entered G.H.'s bedroom with the mother, and stared at G.H.'s breast when G.H. was awakened; and (3) Mr. Vicknair took a picture with G.H in which he was hugging G.H. from behind.

9.  On Friday, September 25, 2020, Vicknair was interviewed by NOPD, arrested, and suspended from his employment with the NOPD.

10. Rodney Vicknair resigned from NOPD effective January 13, 2021.

11. On November 16, 2022, Rodney Vicknair plead guilty and was convicted of the federal crime of Deprivation of Rights under Color of Law, in violation of Title 18, United States Code, Section 242.

12. On January 1, 2024, Rodney Vicknair died in federal prison due to a brain tumor.

## VIII. SINGLE LISTING OF KEY CONTESTED MATERIAL FACTS[3]

1.  Whether any event in Rodney Vicknair background or work history was sufficiently similar to a sexual assault upon a minor to show that it was highly predictable that Mr. Vicknair would sexually assault a minor child.

2.  Whether NOPD had notice of facts that indicated that Vicknair was a substantial risk to sexually assault a minor or a woman.

3.  Whether NOPD actually knew that Rodney Vicknair was a substantial risk to sexually assault a minor or a woman.

4.  Whether NOPD's policies with respect to hiring, training, supervising or disciplining Rodney Vicknair were inadequate.

5.  Whether NOPD's policies with respect to hiring, training, supervising or disciplining Rodney Vicknair demonstrate that NOPD was deliberately indifferent to a risk that Vicknair would sexually assault a minor child.

6.  Whether policies with respect to hiring, training, supervising or disciplining Rodney Vicknair directly caused any sexual assault by Vicknair upon G.H.

7.  Whether NOPD acted reasonably in responding to the call for service on May 26, 2020, for a report of an attempted rape against G.H.

8.  Whether Rodney Vicknair remained with G.H. in the emergency room while they waited for the sexual assault examination.

9.  Whether, from May 26, 2020, to September 25, 2020, Rodney Vicknair developed an inappropriate relationship with G.H.

10. Whether G.H.'s mother was aware of G.H.'s relationship with Rodney Vicknair and actively participated in facilitating said relationship.

11. Whether G.H.'s mother provided Rodney Vicknair's personal cell phone number to G.H.

12. Whether G.H.'s mother facilitated other inappropriate relationships between G.H. and other adult men during the relevant time frame.

13. Whether and when NOPD had notice that Vicknair's relationship with G.H. was

---

[3] Plaintiff disputes that all of these facts are truly contested or material, but will raise that issue by motion to the Court.

inappropriate.

14.     Whether NOPD acted reasonably in its investigation of the concerns expressed by
        G.H.'s mother to NOPD on September 21, 2020.

15.     Whether Rodney Vicknair sexually assaulted G.H. before September 23, 2020.

16.     Whether, on September 23, 2020, Rodney Vicknair sexually assaulted G.H. in his
        personal vehicle while off-duty and out of uniform.

17.     Whether, on September 23, 2020, Rodney Vicknair digitally penetrated G.H.'s vagina
        while she was seated in his personal vehicle.

18.     Whether the sexual assault committed by Rodney Vicknair was within the ambit of
        his assigned duties and in furtherance of NOPD's objectives.

19.     Whether any sexual assault by Rodney Vicknair was sufficiently closely connected in
        time, place, and causation to his duties as an NOPD officer as to be regarded as a risk
        of harm fairly attributable to NOPD's business.

20.     Whether, because she was a minor, G.H. did not have the capacity to consent to
        sexual conduct with Rodney Vicknair.

21.     The number of times Vicknair sexually assaulted G.H. and whether he was on or off
        duty during those occasions.

22.     Whether Rodney Vicknair was arrested and suspended from employment on
        September 25, 2020, as a result of G.H.'s report of Vicknair's sexual assault.

23.     The cause and extent of G.H.'s emotional distress.

## IX.     SINGLE LISTING OF CONTESTED ISSUES OF LAW

1.      Whether the Plaintiff can prove a constitutional violation in fact occurred.

2.      Whether the Plaintiff can establish that NOPD's policies and practices in 2007
        concerning hiring officers were inadequate.

3.      Whether the Plaintiff can establish that NOPD's policies and practices concerning
        training police officers were inadequate.

4.      Whether the Plaintiff can establish that NOPD's policies and practices concerning
        supervising police officers were inadequate.

5.      Whether the Plaintiff can establish that NOPD's policies and practices concerning
        disciplining police officers were inadequate.

6.      Whether the Plaintiff can establish that NOPD was aware that a substantial risk existed that NOPD police officers would sexually assault minor victims of sexual crimes due an inadequacy in its policies and practices.

7.      Whether NOPD was deliberately indifferent to a substantial risk of serious harm to minor victims of sex crimes due to NOPD policies and practices.

8.      Whether any sexual assault by Rodney Vicknair upon the Plaintiff was the obvious or highly predictable consequence of NOPD's policies and practices.

9.      Whether NOPD's policies and practices regarding hiring, training, supervision or discipline, were the direct cause of any sexual assault upon the Plaintiff by Rodney Vicknair.

10.     Whether the Plaintiff can establish that Rodney Vicknair's background or criminal history, that was known to NOPD, made a sexual assault upon the Plaintiff the highly predictable consequence of NOPD's hiring of Rodney Vicknair.

11.     Whether the Plaintiff can establish that NOPD's training of Rodney Vicknair made a sexual assault upon the Plaintiff a highly predictable consequence of his training.

12.     Whether the Plaintiff can establish that the supervision or discipline of Rodney Vicknair would make a sexual assault upon Plaintiff a highly predictable consequence.

13.     Whether the plaintiff has evidence to establish that a municipal policymaker authorized a policy or had actual or constructive knowledge of the alleged unconstitutional activity of Rodney Vicknair.

14.     Whether the plaintiff can demonstrate an NOPD policy, pattern, practice, or custom that was the moving force that actually caused the alleged constitutional violation.

15.     Whether the plaintiff can establish NOPD formally implemented a policy that deprived her constitutional rights.

16.     Whether the plaintiff can establish an NOPD policy was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.

17.     Whether the plaintiff pleaded a Section 1983 claim based on improper hiring and if she failed to do so, whether this claim is barred.

18.     Whether the City is liable for Section 1983 improper hiring.

19.     Whether the City is liable for Section 1983 failure to supervise.

20.   Whether the City is liable for Section 1983 failure to train.

21.   Whether the City is liable for Section 1983 improper retention.

22.   Whether the Plaintiff can establish that NOPD failed to exercise reasonable care in hiring Rodney Vicknair.

23.   Whether the Plaintiff can establish that NOPD failed to adequately train Rodney Vicknair.

24.   Whether the Plaintiff can establish that NOPD failed to adequately supervise Rodney Vicknair.

25.   Whether the Plaintiff can establish that NOPD failed to adequately retain Rodney Vicknair.

26.   Whether the Plaintiff can establish that any inadequacy in hiring, training, supervising, or retaining Rodney Vicknair was the cause in fact of any sexual assault of the Plaintiff by Rodney Vicknair.

27.   Whether the risk that Rodney Vicknair might groom and sexually assault a minor child was a risk fairly attributable the performance of Mr. Vicknair's duties as a NOPD police officer.

28.   If Rodney Vicknair committed any sexual assault against the Plaintiff, whether any such sexual assault was committed within the scope of his job as an NOPD officer.

29.   Whether the NOPD illegally possessed child pornography.

30.   Whether and to what extent, if any, G.H. suffered or is entitled to any damages resulting from sexual assault and trauma.

31.   Whether the City is immune from suit with respect to some or all of the Plaintiff's claims for their discretionary acts as set forth in La. R.S. 9:2798.1, or any other statutory or jurisprudential immunities affordable under the law.

32.   Whether the statutory cap on general damages provided by La. R.S. 13:5106 precludes some or part of any award for damages against the City in this case.

33.   Whether Plaintiff's damages were caused by intentional actions of Rodney Vicknair.

34.   Whether the City can be held vicariously liable for the intentional, tortious action of Rodney Vicknair.

35.   Whether Plaintiff's damages were caused by any negligent action by NOPD with respect to hiring Rodney Vicknair.

36.     Whether Plaintiff's damages were caused by any negligent action by NOPD with respect to training Rodney Vicknair.

37.     Whether Plaintiff's damages were caused by any negligent action by NOPD with respect to supervising Rodney Vicknair.

38.     Whether Plaintiff's damages were caused by any negligent action by NOPD with respect to disciplining Rodney Vicknair.

39.     Whether the Plaintiff is entitled any damages attributable to the City.

40.     Whether Plaintiff reasonably mitigated her damages.

41.     Whether any of Plaintiff's damages were caused by the intentional or negligent acts of others, including, but not limited to: Rayne Upton, Rodney Vicknair, Jim Faile, and other parties other than the City.

42.     Whether the doctrines of comparative fault, negligence or fault of these other parties reduces any damages awarded to the plaintiff.

43.     Whether Plaintiff is entitled an award of punitive damages.

## X.     LISTS OF EXHIBITS

### a.  ON BEHALF OF G.H.

| Ex. | DESCRIPTION | Objection to Admissibility | Objection to Authenticity |
|-----|-------------|----------------------------|---------------------------|
| P1 | Excerpts of 271-page production by the FBI subject to the Privacy Act Protective Order; Combined 282B-NO-3342550_ 5.31.2023.pdf. | Objection to portions due to hearsay and relevance. F.R.E. 401, 402, 801-802 | No Objection to authenticity. |
| P2 | NOPD Operations Manual: Chapter-41-8-Affidavits-and-Summons-Effective-1-9-2022-rev.pdf | Objection – F.R.E. 401, 402, 403 (Relevance, policy was not in effect during any relevant time). | No Objection to authenticity. |
| P3 | Records provided by the Office of the Independent Police Monitor in response to subpoena by the City of New Orleans; CNO 551-565 | Objection to page CNO 551 (which references "rape"). F.R.E. 401, 402, 801-802. Remaining pages are not objected to. | No Objection to authenticity. |
| P4 | Intentionally Omitted. | | |

| P5 | Parish Court for Parish of Ascension Bill of Information charging Defendant Vicknair with simple battery on a juvenile (2pgs) | Objection – F.R.E. 401, 402, 403, 404(b). | No Objection to authenticity. |
|---|---|---|---|
| P6 | Rodney Vicknair Sentencing Hearing transcript for March 8, 2023; R. Doc. 87-4. | Objection – F.R.E. 401, 402, 403, 801-802. | No Objection to authenticity. |
| P7 | Rodney Vicknair Sentencing Hearing transcript for March 14, 2023; R. Doc. 87-5 | Objection – F.R.E. 401, 402, 403, 801-802. | No Objection to authenticity. |
| P8 | 14 page Report of Expert Witness Shannon Smith | Objection – F.R.E. 403 (cumulative). See *Vienne v. American Honda Motor Co*., 2001 WL 83260, *3 (E.D. La., Jan. 26, 2001) (excluding expert report as cumulative to testimony at trial); F.R.E. 801-802; *Pizza Hut, LLC v. Ronak Foods*, LLC, 2022 WL 3544403, # 3 (E.D. Tex., June 17, 2022) ("An expert's written report is hearsay to which no hearsay exception applies") (punctuation and citations omitted). | No Objection to authenticity. |
| P9 | 8 page profile of NOPD Officer Rodney Vicknair by NOPD News on 8/15/17. | Objection – F.R.E. 801-802. | Objection - F.R.E. 901. |
| P10 | Screenshots of post-sentencing Snapchat requests from Rodney Vicknair to G.H. | Objection – F.R.E. 401, 402, 403, 702, 801-802. | Objection - F.R.E. 901. |
| P11 | G.H.'s Birth Certificate | No Objection | No Objection to authenticity. |
| P12 | 0727 2023-07-07 Special Report of the Consent Decree Monitor on NOPD Sexual Assault Investigations.pdf | Objection – F.R.E. 402, 403, 702, 801-802. | No Objection to authenticity. |
| P13 | Letter from PIB re Case No. 2009-0405C: NOPD Disciplinary Action against Vicknair for May 19, 2009 Parking Lot Incident; R. Doc. 1-6. | Objection – F.R.E.  402, 403, 404(b). | No Objection to authenticity. |

| P14 | Excerpts from Deposition of Rodney Vicknair. | Objections reserved. | No Objection. |
| P15 | Excerpts from text messages between G.H. and Rodney Vicknair. | No Objection | No Objection. |
| P16 | Any and all documents necessary for rebuttal or impeachment. | Objections reserved. | Objection reserved. |
| P17 | Any and all documents identified for as exhibits by the City. | Objections reserved. | Objection reserved. |

### b. ON BEHALF OF THE CITY

| Ex. | NAME / DESCRIPTION | Bates Nos. | Objection to Admissibility | Objection to Authenticity |
|---|---|---|---|---|
| C1 | NOPD BWC – 5/26/2020 (#1) " AXON BODY 2 X91350159," (13:12 min.) | | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C2 | NOPD BWC – 5/26/2020 (#2) "860_Olga_Street - 5/26/2020, AXON BODY 2 X81315372," (8:52 min.) | | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C3 | NOPD BWC – 5/26/2020 860_Olga_Street-" - 5/26/2020 (1:50 hours) | | Other sexual conduct of victim (Fed. R. Evid. 412). | |
| C4 | NOPD dashcam 860_OLGA_STREET.mp4 (1:50 hours) - 5/26/2020 - GH and Rayne Upton | | Other sexual conduct of victim (Fed. R. Evid. 412). | |
| C5 | NOPD Sex Crime Investigative File - Kimberly Wilson / G.H. | CNO 343-380 | Relevance (Fed. R. Evid. 402). Cumulative of stipulated facts. | |
| C6 | Recording of Rayne Upton interview - Sept. 21, 2020 | | Objection as to hearsay, other sexual conduct of victim (Fed. R. Evid. 412), relevance (Fed. R. Evid. 402). | |

| | | | | |
|---|---|---|---|---|
| | | | Unnecessarily prejudicial and cumulative (Fed. R. Evid. 403). | |
| C7 | Video of forensic interview of G.H. on Sept. 25, 2020 | | Objection as to other sexual conduct of victim (Fed. R. Evid. 412). | |
| C8 | Vicknair - NOPD application and HR summary | CNO 90-95 | No objection to pages listed in Plaintiff's exhibit list; otherwise Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C9 | Vicknair training records | CNO 0001 - 0024 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C10 | OPCD records - 860 Olga - 5/26/2020 #1 | CNO 3408 - 3411 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C11 | NOPD 1st Dist, 2nd Platoon Daily lineup - Aug. 26, 2020 | CNO 286 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C12 | NOPD 1st Dist, 2nd Platoon Daily lineup and trip sheets - Sept. 15, 2020 | CNO 287 - 342 | Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C13 | NOPD Trip Sheets – May 31 | CNO 819- 36 | Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |

| | | | | |
|---|---|---|---|---|
| C14 | NOPD Trip Sheets – June 7-13 | CNO 985-1122 | Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C15 | NOPD Trip Sheets – June 14-20 | CNO 1123-1288 | *Id.* | |
| C16 | NOPD Trip Sheets – June 21-27 | CNO 1289-1446 | *Id.* | |
| C17 | NOPD Trip Sheets – June 28-30 | CNO 1447-1512 | *Id.* | |
| C18 | NOPD Trip Sheets – July 1-4 | CNO 1513-1584 | *Id.* | |
| C19 | NOPD Trip Sheets – July 5-11 | CNO 1585-1656 | *Id.* | |
| C20 | NOPD Trip Sheets – July 19- 25 | CNO – 1805-1962 | Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C21 | NOPD Trip Sheets – July 26-31 | CNO 1963-2102 | *Id.* | |
| C22 | NOPD Trip Sheets – Aug. 1 | CNO 2103-2120 | *Id.* | |
| C23 | NOPD Trip Sheets – Aug. 2-8 | CNO 2121-2272 | *Id.* | |
| C24 | NOPD Trip Sheets – Aug. 9-15 | CNO 2273-2414 | *Id.* | |
| C25 | NOPD Trip Sheets – Aug. 16-22 | CNO 2415-2572 | *Id.* | |
| C26 | NOPD Trip Sheets – Aug. 23-29 | CNO 2573-2414 | *Id.* | |
| C27 | NOPD Trip Sheets – Aug. 30-31 | CNO 2415-2572 | *Id.* | |

| | | | | |
|---|---|---|---|---|
| C28 | NOPD Trip Sheets – Sept. 1-5 | CNO 2573-2762 | *Id.* | |
| C29 | NOPD Trip Sheets – Sept. 6-12 | CNO 2763-2806 | *Id.* | |
| C30 | NOPD Trip Sheets – Sept 13-19 | CNO 2807-2926 | *Id.* | |
| C31 | Records from the Office of the Independent Police Monitor | CNO 553 - 554 | No objection to pages listed in Plaintiff's exhibit list; otherwise Relevance (Fed. R. Evid. 402). Misleading; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C32 | Texts - GH - from May 26, 2020 to Sept. 25, 2020 | CNO 3568 - 3627 | Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C33 | Children's Bureau of New Orleans – Confidential treatment record of GH from January 2020 to March 2021. | CNO 3391 - 3566 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C34 | Children's Hospital Records - GH | CH 0001-2368 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C35 | USA v. Vicknair, 22-cr-212, R. Doc. 50 (March 14, 2023) (Notice of Restitution Hearing) | | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C36 | USA v. Vicknair, 22-cr-212, R. Doc. 54 (May 2, 2023) (Government's Unopposed Motion and Incorporated Memorandum to Cancel Restitution Hearing) | | *Id.* | |

| | | | |
|---|---|---|---|
| C37 | USA v. Vicknair, 22-cr-212, R. Doc. 55 (May 2, 2023) (Order granting Government's Unopposed Motion and Incorporated Memorandum to Cancel Restitution Hearing) | *Id.* | |
| C38 | USA v. City of New Orleans, 12-cv-1924, R. Doc. 38-2 (Memorandum of Understanding Between the NOPD and the IPM) | Relevance (Fed. R. Evid. 402). | |
| C39 | [CONFIDENTIAL] Combined 282B-NO-3342550_ 5.31.2023.pdf [FBI Production] in Response to Privacy Act Protective Order. 271 pages; docs and notes pertaining to FBI investigation | Objection as to hearsay, other sexual conduct of victim (Fed. R. Evid. 412). | |
| C40 | 1A4 CD 11-11-20_Redacted.avi [FBI Production] 49 min 21 secs; 11/11/2020 interview with GH | Other sexual conduct of victim (Fed. R. Evid. 412). | |
| C41 | 1A51 CD 9-25-20 Short Segment Redacted.avi [FBI Production] 4 min 11 secs; 9/25/2020 interview with GH | Other sexual conduct of victim (Fed. R. Evid. 412). | |
| C42 | 1A4 CD 9-25-20_Redacted.avi [FBI Production] | Other sexual conduct of victim (Fed. R. Evid. 412). | |
| C43 | ATT Search Warrant [FBI Production] AT&T Search Warrant Return: ATT_Records_Key.pdf ReportAU_3143057.pdf ReportCAPM_3143057.pdf ReportCT_3143057.pdf ReportLandline_3143057.pdf ReportSIMCARD_3143057.pdf | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | |
| C44 | Images of texts between Rodney Vicknair and Raine Upton / GH | Texts between Vicknair and Rayne Upton objected to on grounds of relevance (Fed. R. Evid. 402), confusion of issues; waste of time (Fed. R. | |

| Ex. | NAME / DESCRIPTION | Bates Nos. | Objection to Admissibility | Objection to Authenticity |
|---|---|---|---|---|
| | | | Evid. 403). Objection as to hearsay, other sexual conduct of victim (Fed. R. Evid. 412). | |
| C45 | Metanoia Records | CNO 3391-3514 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403), other sexual conduct of victim (Fed. R. Evid. 412). | |
| C46 | Fee Schedule of Shannon Smith | | Cumulative of asking her to state her hourly rate. (Fed. R. Evid. 403). | |
| | Any and all documents identified for as exhibits by the Plaintiff. Any and all documents necessary for rebuttal or impeachment. | | Objections reserved. | Objections reserved. |
| | Any and all documents identified for as exhibits by the Plaintiff. Any and all documents necessary for rebuttal or impeachment. Any and all documents identified for as exhibits by the Plaintiff. | | Objections reserved. | Objections reserved. |

### c. JOINT

| Ex. | NAME / DESCRIPTION | Bates Nos. | Objection to Admissibility | Objection to Authenticity |
|---|---|---|---|---|
| J1 | NOPD Operations Manual: Chapter-33-4-3-Field-Training-Program-EFFECTIVE-9-2-18.pdf; [CNO 439-445] | CNO 439-445 | No Objection | No Objection. |
| J2 | Policy 436 - Field Training Program - Replaced on 9-2-18.pdf; [CNO 446-449] | CNO 446 - 449 | No Objection | No Objection. |
| J3 | NOPD Operations Manual: Chapter 35.1.9 - INSIGHT - EFFECTIVE 11-15-19 to Current.pdf; [CNO 464-477] | CNO 464 - 477 | No Objection | No Objection. |

| | | | | |
|---|---|---|---|---|
| J4 | NOPD Operations Manual - Ch. 35.1.9 - INSIGHT, Eff. 3/18/2018 | CNO 450 - 463 | | |
| J5 | NOPD Operations Manual: Chapter-35-1-9-INSIGHT-EFFECTIVE-12-12-2021.pdf | | No Objection | No Objection. |
| J6 | NOPD Operations Manual: CNO 494-501 - Chapter 42.19 - Child Abuse - EFFECTIVE 3-12-17 to Current.pdf | CNO 494 - 501 | No Objection | No Objection |
| J7 | NOPD Operations Manual: Child-Abuse-Unit-Standard-Operating-Guidelines-(3).pdf | | No Objection | No Objection. |
| J8 | Officer Rodney Vicknair's Application for Employment with NOPD, Background Investigation Report, Driving Record, NCIC Criminal History Check, criminal records, and hiring determination by NOPD [CNO-0111-0280] | CNO-0111-0280 | No Objection | No Objection. |
| J9 | 156 pages of NOPD Background Investigation of Rodney Vicknair; [CNO 3887 - CNO 4042] | CNO 3887 - CNO 4042 | No Objection | No Objection. |
| J10 | 23 pages of NOPD Employee Summary of Rodney Vicknair 2014 to 2017; [CNO 4043 - CNO 4065] | CNO 4043-4065 | No Objection | No Objection. |
| J11 | 15 pages of NOPD Employee Summary of Rodney Vicknair 2018 to 2020; [CNO 4066 - CNO 4080] | CNO 4066-4080 | No Objection | No Objection. |
| J12 | 10 page Initial Complaint; [CNO 661-670] | CNO 661-670 | No Objection | No Objection. |
| J13 | 2-page Notice of Disposition; [CNO 671-672] | CNO 671-672 | No Objection | No Objection. |
| J14 | 20-page Signed NOPD Investigation; CNO 0673-0692 | CNO 673-692 | No Objection | No Objection. |
| J15 | Exhibit A to Signed NOPD Investigation: PIB Case Investigation Transmittal, Control Tracking No. 2020-0484-P; [CNO0566] | CNO 566 | No Objection | No Objection. |
| J16 | Exhibit B to Signed NOPD Investigation: Initiation of Formal Disciplinary Investigation Form Control Tracking No. 2020-0484-P; [CNO0567-0569] | CNO0567-0569 | No Objection | No Objection. |
| J17 | Exhibit C to Signed NOPD Investigation: PIB Initial Intake | CNO0570-0572 | No Objection | No Objection. |

|  | | | |
|---|---|---|---|
|  | Form (230) for Commendation, Complaint, or Documentation of Minor Violation; [CNO0570-0572] | | | |
| J18 | Original color copy of Exhibit E to Signed NOPD Investigation: Photograph of Rodney Vicknair with his arms around G.H.; 2020-0484-P Exhibit E.pdf | | No Objection | No Objection. |
| J19 | Photograph of G.H. and Rodney Vicknair | CNO 573 | | |
| J20 | Exhibit F to Signed NOPD Investigation: 1 min 50 secs Video taken on 9/21/2020 by Sgt. Jones filming G.H.'s phone screen as she scrolls through texts from Officer Rodney Vicknair, | | No Objection | No Objection. |
| J21 | Exhibit G to Signed NOPD Investigation: Incident Report for item E-32154-20, date was May 26, 2020, and the signal, (42) First Degree Rape; [CNO 0574] | CNO 0574 | No Objection | No Objection. |
| J22 | Exhibit H to Signed NOPD Investigation: 2 hours 14 min video 5/26/2020 – NOPD Officer Rodney Vicknair's Body Worn Camera Video for Item E-32154-20 (Axon Body 2 x81231415); 860_Olga-2 Vicknair Exhibit H.mp4 | | No Objection | No Objection. |
| J23 | Exhibit L to Signed NOPD Investigation: Officer Rodney Vicknair's Arrest Warrant signed by Honorable Magistrate Commissioner Albert Thibodeaux on Sept. 25, 2020; [CNO 0577-0581] | CNO 577-581 | No Objection | No Objection. |
| J24 | Exhibit M to Signed NOPD Investigation: Compliant close out letter for Andrea Wright; [CNO0582-0584] | CNO 582-584 | No Objection | No Objection. |
| J25 | Exhibit Q to Signed NOPD Investigation: NOPD Introduction letter; [CNO 0660] | CNO 660 | No Objection | No Objection. |
| J26 | Excerpts of 1 hour 50 min video of dashcam footage facing the backseat while GH and Rayne Upton are transported to Children's Hospital; 860_OLGA_STREET.mp4 | | No Objection | No Objection. |

| J27 | 2 Hours 14 min NOPD Officer Curtis Carkum Body-Worn Camera footage (Axon Body 2 X81280826) from 5/26/20; 860_OLGA_STREET-3.mp4 | | No Objection | No Objection. |
|---|---|---|---|---|
| J28 | 29 min 19 sec NOPD Officer Michelangelo Carroll's Body-Worn Camera footage (axon body 2 X81369353) from 5/26/2020; 860_Olga.mp4 | | No Objection | No Objection. |
| J29 | Excerpts of Notes from LCSW Andrea Wright, Sept. 16, 2020 through Sept. 28, 2020, contained in Children's Bureau's Confidential Treatment Record; pages 51-58 | | No Objection | No Objection. |
| J30 | Sept. 22, 2020 Email from Andrea Wright to Sgt. Lawrence Jones, contained in Children's Bureau's Confidential Treatment Record; page 159 | | No Objection | No Objection. |
| J31 | Excerpts of Sept. 20, 2020 Submission of DCFS Reporting Concerns for Child Victims by LCSW Andrea Wright, contained in Children's Bureau's Confidential Treatment Record; pages 172-176. | | No Objection | No Objection. |
| J32 | 2021.03.02 Closing letter from the Public Integrity Bureau to Rayne Upton | | No Objection | No Objection. |
| J33 | Screenshots of threats made to G.H. on Snapchat | | No Objection | No Objection. |
| J34 | USA v. Vicknair, 2:22-cr-00212, Factual Basis as to Rodney Vicknair filed by USA;  R. Doc. 25. | | No Objection | No Objection. |
| J35 | USA v. Vicknair, 2:22-cr-00212, Guilty Plea Agreement; R. Doc. 46. | | No Objection | No Objection. |
| J36 | USA v. Vicknair, 2:22-cr-00212, Factual Basis as to Rodney Vicknair filed by USA;  R. Doc. 25. | | No Objection | No Objection. |
| J37 | USA v. Vicknair, 2:22-cr-00212, Guilty Plea Agreement; R. Doc. 46. | | No Objection | No Objection. |
| J38 | June 3, 2020 Trip Sheet signed by Officers Curtis Carkum and Rodney Vicknair; CNO-0889-0890 | | No Objection | No Objection to authenticity. |

| | | | | |
|---|---|---|---|---|
| J39 | July 14, 2020 Trip Sheet signed by Rodney Vicknair; CNO 1707-1708 | | No Objection | No Objection. |
| J40 | September 23, 2020 Trip Sheet signed by Officers Casey Riley and Rodney Vicknair; CNO 3305-3306 | | No Objection | No Objection. |
| J41 | June 3, 2020 Trip Sheet signed by Officers Curtis Carkum and Rodney Vicknair; CNO-0889-0890 | | No Objection | No Objection to authenticity. |
| J42 | July 14, 2020 Trip Sheet signed by Rodney Vicknair; CNO 1707-1708 | | No Objection | No Objection. |
| J43 | September 23, 2020 Trip Sheet signed by Officers Casey Riley and Rodney Vicknair; CNO 3305-3306 | | No Objection | No Objection. |
| J44 | OPCD records - 860 Olga - 5/26/2020 #2 | CNO 283 - 285 | | |
| J45 | OPCD records - 860 Olga -6/3/2020 | CNO 3392-3397 | | |
| J46 | OPCD records - 860 Olga - 9/23/2020 | CNO 3398 - 3407 | | |
| J47 | NOPD Trip Sheets – May 24-30 | CNO 693-818 | | |
| J48 | NOPD Trip Sheets – June 1-6 | CNO 837-984 | | |
| J49 | NOPD Trip Sheets – July 12-18 | CNO 1657-1804 | | |
| J50 | NOPD Trip Sheets – Sept. 20-26 | CNO 2927-3080 | | |
| J51 | NOPD Policy Rule 2 | See CNO 656 | | |
| J52 | NOPD Operations Manual - Ch. 42.2, Rev. 05/27/2018 | CNO 0025 - 0088 | | |
| J53 | NOPD Operations Manual - Ch. 31.1 - Recruitment (Eff. 4/28/201) | CNO 381 - 385 | | |
| J54 | NOPD Operations Manual - Policy 1000 - Recruitment - REPLACED on 4/28/201 | CNO 386-388 | | |
| J55 | NOPD Operations Manual - Ch. 32.1 - Personnel Hiring Selection - Eff. 4/8/2018 | CNO 389 - 390 | | |
| J56 | NOPD Operations Manual - Policy 1001 - PR1001 - Personnel Hiring Selection, REPLACED 4/8/2018, | CNO 391 - 397 | | |
| J57 | NOPD Operations Manual - Policy 1002 - Evaluation of Employees - REPLACED 10/1/2017 | CNO 398 - 401 | | |

| J58 | NOPD Operations Manual - Ch. 33.1 - Training and Career Development - Eff. 6/18/2017 | CNO 402 - 418 | | |
|---|---|---|---|---|
| J59 | NOPD Operations Manual - Policy 208 - PR208 - Training, REPLACED 6/18/2017 | CNO 419 - 438 | | |
| J60 | NOPD Operations Manual - Ch. 42.2 - Sexual Assault - Eff. 5/27/2018 | CNO 478 - 484 | | |
| J61 | NOPD Operations Manual - Ch. 42.2 - Sexual Assault - Eff. 11/1/2015 | CNO 485 - 490 | | |
| J62 | NOPD Operations Manual - Ch. 42.2.1 - Misd. Sexual Battery- Eff. 5/27/2018 | CNO 491 - 493 | | |
| J63 | NOPD Operations Manual - Policy 330 - PR330 - Child Abuse Reporting REPLACED 3/12/2017 | CNO 502 - 510 | | |
| J64 | NOPD Operations Manual - Ch. 44.1 - Child and Dependent Adult Safety, Eff. 4/2/2017 | CNO 511 - 516 | | |
| J65 | NOPD Operations Manual - Policy 380 - PR380  - Child and Dependent Adult Safety, REPLACED 4/2/2017 | CNO 517 - 521 | | |
| J66 | NOPD Operations Manual - Ch. 55.1 - Victim and Witness Assistance, Eff. 12/2016 | CNO 522 - 531 | | |
| J67 | NOPD Operations Manual -Policy 336 - PR336 - Victim and Witness Assistance, RE 12/18/2016 | CNO 532 - 540 | | |
| J68 | NOPD Operations Manual - Ch. 82.3.6 - Criminal History Record Information , Eff.  7/6/2021 | CNO 541- 545 | | |
| J69 | NOPD Operations Manual - Ch. 82.3.6 - Criminal History Record Information , Eff.  12/17/2017 | CNO 546 - 550 | | |
| J70 | Photographs (3) of Rodney Vicknair from FBI file | | | |
| J71 | Statement to NOPD by Rodney Vicknair - Sept. 25, 2020 | CNO 585- 655 | | |
| J72 | Notification of Suspension to Rodney Vicknair - Sept. 25, 2020 | CNO 656- 658 | | |
| J73 | Letter of Resignation of Rodney Vicknair - Jan, 13, 2021 | CNO 659 | | |
| J74 | Identified Timeframe from interview.mp4 | | | |

| | [FBI Production]<br><br>UNREDACTED version of "1A51 CD 9-25-20 Short Segment Redacted.avi" | | | |
|---|---|---|---|---|
| J75 | TikTok video of GH | | | |

## XI.     DEPOSITION TESTIMONY TO BE OFFERED INTO EVIDENCE

Defendant Rodney Vicknair died in prison and will therefore not appear at trial. The Parties propose to offer excerpts of Vicknair's deposition testimony into evidence. Otherwise, none, except any portions used for cross examination, rebuttal, and/or impeachment.

## XII.     LIST OF CHARTS, GRAPHS, MODELS OR SCHEMATIC DIAGRAMS

The parties may project enlarged versions of exhibits and/or use other demonstrative exhibits. G.H. anticipates using a chart demonstrative and enlarged versions of exhibits for opening and/or closing. The Defendants contemplates the same.

## XIII.     LISTS OF WITNESSES

### a.  ON BEHALF OF G.H.

1. Plaintiff, G.H.
   c/o her attorneys of record
   Hope A. Phelps
   William Most
   201 St. Charles Ave., Ste. 2500, #9685
   New Orleans, LA 70170
   hopeaphelps@outlook.com
   william.most@gmail.com

2. Lawrence Jones
   c/o City of New Orleans attorney of record
   James Roquemore
   New Orleans City Attorney's Office
   1300 Perdido St., Room 5E03
   New Orleans, LA 70112
   james.roquemore@nola.gov

3. Kimberly Wilson
   c/o City of New Orleans attorney of record

James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

4. Curtis Carkum
c/o City of New Orleans attorney of record
James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

5. David Barnes
c/o City of New Orleans attorney of record
James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

6. Precious Banks
c/o City of New Orleans attorney of record
James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

7. Bruce Haney
c/o City of New Orleans attorney of record
James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

8. Nicole Powell
c/o City of New Orleans attorney of record
James Roquemore
New Orleans City Attorney's Office
1300 Perdido St., Room 5E03
New Orleans, LA 70112
james.roquemore@nola.gov

9.  Anne Kirkpatrick
    c/o City of New Orleans attorney of record
    James Roquemore
    New Orleans City Attorney's Office
    1300 Perdido St., Room 5E03
    New Orleans, LA 70112
    james.roquemore@nola.gov

10. Shannon Smith
    c/o Plaintiff's counsel
    Hope A. Phelps
    William Most
    201 St. Charles Ave., Ste. 2500, #9685
    New Orleans, LA 70170
    hopeaphelps@outlook.com
    william.most@gmail.com

11. Dr. Berre Burch
    Children's Bureau of New Orleans
    935 Calhoun Street, Ste 101
    New Orleans, LA 70118
    (504) 525-2366

   ***May call list:***

12. Rodney Vicknair (by deposition transcript)

13. Andrea Wright

14. Casey Riley
    1523 Lee St.
    Franklinton, LA
    Caseyriley55@gmail.com
    (985) 205-7408

15. Stella Cziment
    New Orleans Independent Police Monitor (OIPM):
    2714 Canal St.
    New Orleans, LA 70119
    504-309-9799

16. Any witness listed as a witness and/or called by the City.
17. Any witness necessary for authentication of documents.
18. Any witness necessary for impeachment purposes.

**b.  ON BEHALF OF CITY OF NEW ORLEANS**

1. Capt. Lejon Robers, NOPD
   Contact through counsel for Defendants

2. Det. Kimberly Wilson, NOPD
   Contact through counsel for Defendants

3. Rayne Upton

4. Dr. Berre Burch
   Children's Bureau of New Orleans
   935 Calhoun Street, Ste 101
   New Orleans, LA 70118
   (504) 525-2366

5. Curtis Carkum, NOPD
   Contact through counsel for Defendants

6. Casey Riley, NOPD
   Contact through counsel for Defendants

7. Michelangelo Carroll, NOPD
   Contact through counsel for Defendants

8. Sgt. David Barnes, NOPD
   Contact through counsel for Defendants

9. Lt. Nicole Powell, NOPD
   Contact through counsel for Defendants

10. Lt. Lawrence Jones, NOPD
    Contact through counsel for Defendants

**May call:**

11. Superintendent Anne Kirkpatrick, NOPD
    Contact through counsel for Defendants

12. Stella Cziment
    New Orleans Independent Police Monitor (OIPM):
    2714 Canal St.
    New Orleans, LA 70119
    504-309-9799

13. Andrea Wright, contact information unknown / evaded service

14. Any witness listed as a witness and/or called by the Plaintiff.
15. Any witness necessary for authentication of documents.

16. Any witness necessary for impeachment purposes.

## XIV. <u>MODE OF TRIAL</u>

This case has been designated as a jury trial.

## XV. <u>STATEMENT OF TRIAL OF SEPARATE ISSUES</u>

The issue of liability will not be tried separately from that of quantum.

## XVI. <u>OTHER PERTINENT MATTERS</u>

G.H.'s remaining claims in this lawsuit are against the City of New Orleans for deprivation of G.H.'s rights under Section 1983, parallel state law on negligent hiring and inadequate supervision, and vicarious liability for state law torts committed by Vicknair.

## XVII. <u>COMMENCEMENT OF TRIAL</u>

Trial shall commence on Monday, March 18, 2024 at 8:30 a.m. The parties estimate that the trial will require four (4) days.

## XVIII. <u>FORMULATION OF PRETRIAL ORDER</u>

The pre-trial order has been formulated after conference of counsel. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by the Court, or by order of the Court to prevent manifest injustice.

## XIX. <u>POSSIBILITY OF SETTLEMENT</u>

The parties participated in a settlement conference with Magistrate Judge Roby on January 12, 2024, but a settlement was not reached.

*/s/      Hope A. Phelps*
**HOPE PHELPS (La. Bar #37259)**
**WILLIAM MOST (La. Bar #36914)**

**MOST & ASSOCIATES**
Telephone: (504) 509-5023
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Email:          hopeaphelps@outlook.com
                williammost@gmail.com
*COUNSEL FOR PLAINTIFF,*
*G.H.*


*/s/ James M. Roquemore*
JAMES M. ROQUEMORE (LSB #40035)
Assistant City Attorney
CORWIN ST. RAYMOND (LSB # 31330)
Chief Deputy City Attorney
DONESIA D. TURNER (LSB #23338)
City Attorney
1300 Perdido Street
City Hall – Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Fax: (504) 658-9868
Email:          james.roquemore@nola.gov
                cmstraymond@nola.gov
*Attorneys for Defendants, City of New Orleans and*
*Shaun Ferguson, Superintendent of the New Orleans*
*Police Department*


New Orleans, Louisiana, this ___ day of February, 2024


_____
UNITED STATES DISTRICT JUDGE