**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTIONS *IN LIMINE***

COMES NOW, Plaintiff, to respectfully request that this Court grant motions *in limine*.

In this Motion, Plaintiff asks the Court to exclude the following:

1. Any testimony or evidence contrary to Defendant's 30(b)(6) testimony without prior notification and argument, as courts have required in *Johnson, Hacker,* and *Imani.*

2. Any opinion testimony by Defendant's witnesses, as Defendant did not designate experts.

3. Any testimony or argument appealing to juror's pecuniary interests as taxpayers.

4. Any evidence or argument that Rayne Upton (who is no longer a party to this action) engaged in alleged criminal or wrongful conduct.

5. Any testimony that G.H., Rayne Upton, or Andrea Wright are not credible, given that Defendant previously determined them to be credible.

6. Any testimony of Rodney Vicknair contrary to the sworn factual basis of his plea agreement, given this Court's summary judgment ruling.

7. Any argument that G.H. consented to any sexual act given that she was a minor, and any evidence regarding other sexual conduct, abuse, or trauma by perpetrators other than Vicknair.

8. Any argument that "Plaintiff's self-harm, hospital admission and multiple serious psychological diagnoses made months before she met Mr. Vicknair" reduce damages.

9. Any testimony or argument that G.H. "knew how to work the system to get what she wanted."

10. Any argument that the battery of a juvenile is not a plainly obvious consequence of the decision to hire a police officer with a conviction for battery of a juvenile, given that the Court already so ruled.

1

11. Any argument that Defendants are immune per "La. R.S. 9:2798.1, or any other statutory or jurisprudential immunities affordable under the law," given that the City's state-law liability has been established and those immunities are no longer plausibly implicated in the narrowed scope of trial.

12. Witnesses Stella Cziment, Curtis Carkum, and Casey Riley, who are no longer relevant given the narrowed scope of trial.

13. Any testimony, argument, or reference to Rodney Vicknair's mental impairment or illness, because multiple cross-checks during deposition confirmed his memory was not impaired.

14. Vicknair's testimony about sexual abuse within his family, his self-perceived role as his "brother's keeper," and his personal religious beliefs.

15. Any evidence or argument of comparative fault, given that the Louisiana Supreme Court found that to be "not appropriate" in the context of a rape intentional tort.

For the reasons described herein, the Motion should be granted.

**A.    Statement Regarding Compliance with this Court's Standing Order to Meet and Confer.**

Pursuant to this Court's standing order, counsel for the parties met by telephone on March 7 and March 8, 2024 to discuss the motions *in limine* urged in this motion. They also conferred by written correspondence on March 7, 8, and 9, 2024. Counsel discussed each of the topics below. Counsel for the City declined to assent to any.

**B.    Legal Standard for Motions *in Limine***

In general, the term "*in limine*" "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."[1]  A ruling on evidence *in limine* "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."[2]  "[It] also may save the parties time,

---

[1] *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).
[2] *Bowden v. Wal-Mart Stores, Inc*., No. CIV. A. 99-D-880-E, 2001 WL 617521 at *1 (M.D. Ala. February 20, 2001) (citations omitted).

effort and cost in preparing and presenting their cases."[3] "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the District Court's inherent authority to manage the course of trials."[4]

## MOTIONS IN LIMINE

1.     **This Court should exclude any testimony or evidence contrary to Defendants' 30(b)(6) testimony without prior notification and argument, as courts have required in *Johnson*, *Hacker*, and *Imani*.**

Plaintiff asks this Court to exclude any testimony or evidence contrary to Defendant's 30(b)(6) testimony without prior notification and argument.

Statements "made by Defendants' corporate representatives during a 30(b)(6) deposition . . . are binding on the party" but are not "judicial admissions that decide an issue with finality or estops the party from, in the discretion of the Court, offering contradictory testimony if there is a reasonable explanation given."[5] For that reason, federal courts will bar corporate or governmental defendants from offering "testimony or evidence contrary to Defendants' 30(b)(6) testimony without prior notification and argument."[6]

For example, in *Imani v. City of Baton Rouge,* 17-cv-00439-JWD-EWD (E.D. La.), Judge DeGravelles ordered that before a city defendant changed its 30(b)(6) testimony at trial, the city would have to articulate "whether there's a good explanation for why [the witness] didn't have the information at the time he gave his deposition."[7] The Court's reasoning, in part, was that it

---

[3] *Id.*

[4] *Luce*, 469 U.S. at 41 n. 4.

[5] *Hacker v. Cain*, 14-cv-00063-JWD-EWD, Doc. 235 (M.D. La., Jan. 17, 2017) (order on motions in limine), *citing Johnson v. Big Lots Stores, Inc*., 04-cv-03201-SSV-SS, R. Doc. 386 (E.D. La., May 2, 2008).

[6] *Imani v. City of Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 376 at 3 (M.D. La., Dec. 20, 2022); *see also Hacker.*

[7] *Imani v. City of Baton Rouge*, 17-cv-00439-JWD-EWD (E.D. La.), Transcript of December 20, 2022 hearing on Motions in Limine, at 30-43.

would be "fundamentally unfair for the defendant to be able to surprise the Plaintiff at trial with facts or evidence it previously failed to disclose."[8]

Here, Defendant City of New Orleans made relevant admissions in 30(b)(6) depositions. For example, in the 30(b)(6) depositions, Defendant admitted that if Defendant Rodney Vicknair had five arrests prior to his hiring, he met NOPD's definition of a habitual offender and should not have been hired.[9] Allowing Defendant to change its testimony during trial would constitute trial by surprise, disfavored in the federal courts. But it appears that Defendants intend to do exactly that. The City disputes whether Vicknair's alleged offenses were "sufficiently similar" and whether they had notice.[10]

Thus, just as in *Hacker* and *Imani,* Defendants should be prohibited from offering any testimony or evidence contrary to their 30(b)(6) testimony without prior notification and argument about whether there is a good explanation for why the witness did not have the information at the time he gave their deposition. The motion should be granted.

**2.   The Court should bar opinion testimony by Defendant's witnesses, as Defendant did not designate any experts.**

Defendant's expert reports were due by December 26, 2023.[11] Defendants have not designated any experts to testify at trial, whether retained or not retained. Plaintiff has not been provided with information that would provide qualifications that would make any witness such an expert, or any expert reports.  Thus, the City should be precluded from using lay witnesses to offer expert opinion testimony on any matter.

"Under the Federal Rules of Evidence, speculative opinion testimony by lay witnesses — i.e., testimony not based upon the witness's perception — is generally considered

---

[8] *Id*. at 41-42.
[9] *See* R. Doc. 135-9 (Barnes 30(b)(6) Dep.), pp. 27-29; R. Doc 149-1 (Kirkpatrick Dep.), pp. 6-10.
[10] R. Doc. 167, pp. 9-10.
[11] R. Doc. 84.

inadmissible."[12] Said another way, where opinion testimony focuses on the standard of the objectively reasonable officer, "it is more likely that Rule 702's line between common and specialized knowledge has been crossed."[13]

Additionally, Defense witnesses also may not provide opinion testimony on the ultimate issues in the case. Rule 704 does not allow experts "to tell the jury what result to reach ... Nor is the rule intended to allow a witness to give legal conclusions.[14] "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[15]

Here, because the City did not designate any expert witnesses, the Court should prohibit the City from attempting to elicit expert opinion testimony from any witness. The motion should be granted.

**3.    This Court should bar any testimony or arguments designed to appeal to jurors' pecuniary interests as taxpayers.**

Fed. Rule of Evidence 402 excludes irrelevant evidence, and Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, any arguments appealing to jurors' pecuniary interests as taxpayers should be excluded both as irrelevant and also as misleading to the jury. Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper. *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) (declaring the following argument

---

[12] *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir.1993) (citing FRE 701).
[13] *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir.1993).
[14] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (court properly excluded attorney's question asking expert witness whether plaintiff was contributorily negligent).
[15] *Owen*, 698 F.2d at 240; *see also Erickson v. City of Lakewood*, No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *11 (D. Colo. Sept. 27, 2021) ("The Court … must not allow an expert to testify on matters if his or her testimony would 'usurp [] a critical function of the jury.'") (quotation omitted).

improper: "The city is not a random amorphous entity. It's you. We're talking about tax dollars here."); *United States v. Morris*, 573 F. App'x 712, 725 (10th Cir. 2014) (noting remarks invoking the pecuniary interests of jurors as taxpayers are generally improper); *United States v. Blecker*, 657 F.2d 629, 636 (4th Cir.1981) ("We recognize that appeals to the pecuniary interests of jurors [as taxpayers] are patently improper."); *see also Vidrine v. St. Landry Parish Fire Protection*, Civil Action No. 6:12-cv-02111 (W.D. La. July 11, 2014).  The Fifth Circuit has characterized similar comments as an "unprofessional and highly improper appeal to the passion and prejudices of the juror[s]." *United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir.1977).

All such arguments that appeal to the jurors as taxpayers should be barred under Rules 402 and 403. The motion should be granted.

### 4.    The Court should exclude any argument or evidence of alleged criminal conduct or wrongful conduct by Rayne Upton, who is no longer a party to this action.

Fed. Rule of Evidence 402 excludes irrelevant evidence, and Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, Rayne Upton is the mother of Plaintiff G.H. Ms. Upton was the plaintiff in her capacity as G.H.'s legal guardian until G.H. turned eighteen. At deposition, Defendant's counsel questioned Ms. Upton about a range of allegations of misconduct, including the idea she trafficked or neglected G.H.

Any such testimony or argument referencing these allegations should be excluded as irrelevant, unduly prejudicial, and confusing of the issues. That is because allegations of child endangerment are a classically prejudicial area of inquiry. *See, e.g., U.S. v. Freeman,* 20-CR-0142-CVE (N.D. Ok. June 2, 2021) ("information about crimes relating to children" would have a "highly prejudicial effect"), *citing Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab'ys*, No. C

11-4017-MWB, 2013 WL 12140998, at *7 (N.D. Iowa Aug. 13, 2013) (finding that "[t]he specific details of [a child endangerment] conviction are precisely the sort of information that is likely to provoke a jury to make a decision about [defendant's] credibility on an improper, emotional basis . . .").

Such allegations are also misleading. The allegations Defendant seeks to reference arose in the context of a custody case. Ultimately in that case, the administrative law judge, on the motion of the Louisiana Department of Children and Family Services (DCFS), invalidated, overturned, and dismissed all allegations of lack of adequate supervision and passive sexual abuse.[16] Given that Ms. Upton has never been charged with any crime related to this case, and all allegations were deemed invalid and determinations made by DCFS were overturned, there is no relevancy to those allegations in this trial – and so the probative value is completely outweighed by potential prejudice and confusion of the issues.

Additionally, Rayne Upton is no longer a party to this case.[17] Any allegations regarding Ms. Upton, a non-party, are without relevance to any claim or defense, and would risk confusing the jury and potentially tarring G.H. with the alleged actions of a non-party. That is particularly the case because third-party negligence cannot be the basis for comparative fault in an intentional tort rape case like this one. *See* Section 15, *infra*, *citing Veazey v. Elmwood Plantation Assocs*., 650 So. 2d 712 (La. 1993) (holding that it was "not appropriate" in the context of a rape case to apportion comparative fault to a negligent person).

For those reasons, Defendant should be barred from offering any evidence or argument that Rayne Upton neglected, abused, inadequately supervised, trafficked, sexually abused G.H., or engaged in other misconduct.

---

[16] Exhibit A, Order Terminating Adjudication and Judgment of Dismissal.
[17] R. Doc. 105 (Order granting Consent Motion to Substitute Party).

**5.     The Court should bar Defendant from making any argument that Plaintiff G.H., Rayne Upton, or Andrea Wright are not credible, because the City determined that they were credible.**

Rule 403 allows a court to exclude evidence "if its probative value is substantially outweighed" by confusion of the issues.

Here, during Defendant's investigation of the allegations against Rodney Vicknair, the City assessed the credibility of G.H., Rayne Upton, and Andrea Wright, and deemed all three to credible.[18] Specifically, Defendant's witness Lt. Lawrence Jones testified that:

> Q.     And you prepared this credibility assessment, correct?
>
> A.     Yes.
>
> Q.     You deemed the victim [G.H.] to be credible, correct?
>
> A.     Yes.
>
> Q     You found the mother, Rayne, also to be credible?
>
> A.     Yes.
>
> Q.     You found the counselor, Andrea Wright, also to be credible?
>
> A.     Yes[19]

In particular, the City found that statements given by G.H. were credible "because her statement remained consistent throughout the investigation."[20]

Thus, Defendant should be barred from making any argument that G.H., Rayne Upton, and Andrea Wright, whose credibility they evaluated and formally deemed "credible," are not credible. To allow otherwise would risk confusion of the issues. The motion should be granted.

---

[18] Exhibit B, Excerpts from Deposition of Lt. Lawrence Jones, pp. 70:5-71:6.
[19] *Id*. (objections omitted).
[20] R. Doc. 125-4, p. 15 (NOPD Signed Investigation).

**6.      The Court should bar any testimony of Vicknair or reference to such testimony contrary to his plea, given this Court's summary judgment ruling.**

The law of the case doctrine prevents a party from relitigating issues already resolved in a lawsuit.[21] Here, in his criminal case, Rodney Vicknair admitted to sexually assaulting G.H. and plead guilty. Vicknair confessed to his crime in open court, in a signed plea agreement, and in a signed factual basis. In a later civil deposition, however, he recanted his confession.

The City argued that Vicknair's deposition denials should preclude summary judgment in this case.[22] The Court squarely rejected the City's argument, concluding that "each of the elements for Plaintiff's § 1983 claim against Vicknair is conclusively established."[23]

Now, at trial, the City appears to be planning on attempting to relitigate this issue. The City has designated Vicknair's recanting of his confession as part of the testimony that the City intends to offer at trial.[24] In doing so, the City seeks to attack the summary judgment ruling of this Court, that "conclusively established" Plaintiff's claim on these facts. To allow the City to introduce these excerpts at trial would be confusing and misleading to the jury, and violate the law-of-the-case doctrine. The statements undermine the basis for Vicknair's criminal conviction and for this Court's issuance of summary judgment against Vicknair. In granting summary judgment against Vicknair, this court rejected Defendant's argument that they should be allowed to relitigate a matter that was already decided in court at a live hearing where Vicknair was fully heard and entered the guilty plea.[25]

---

[21] *See Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983) ("The law of the case doctrine is closely related to the principle of res judicata. The latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.")

[22] *See* R. Doc. 97 and 97-3 (Vicknair Dep.)

[23] R. Doc. 107 at 15.

[24] Ex F at 63:23-64:10, 112:24-114:21.

[25] R. Doc. 107, p. 13.

Furthermore, the City's lawyers cannot ethically offer this testimony at trial. Rule of Professional Conduct 3.3(a)(b) (Candor Toward the Tribunal) requires that a "lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false." Here, the City's lawyers have stipulated that "Rodney Vicknair sexually assaulted G.H. on September 23, 2020."[26] The City conceded in its pretrial order that Vicknair "assaulted Plaintiff once."[27] Because the City's lawyers concede that Vicknair sexually assaulted G.H. at least once, they cannot ethically put on Vicknair's perjured testimony that he never assaulted G.H.

Accordingly, this Court should bar Defendant from introducing, reading, referencing, or making any argument regarding statements made by Vicknair that are inconsistent with his guilty plea, plea agreement, or factual basis. The motion should be granted.

**7.     This Court should bar argument that G.H. consented to any sexual act given that she was a minor, and any evidence regarding other sexual conduct, sexual abuse, or sexual trauma by perpetrators other than Vicknair.**

In the pre-trial order, Defendant listed as a "key contested material fact" the question of whether "because she was a minor, G.H. did not have the capacity to consent to sexual conduct with Rodney Vicknair."[28] Defendants should be barred from presenting any such evidence. Defendants already admitted in their Answer that "if G.H. was a minor she did not have capacity to consent to sexual conduct with Vicknair."[29] There is also no dispute over G.H.'s age; Plaintiff provided her birth certificate in discovery, and Defendant described her in their uncontested material facts as "a 14 year-old girl."[30] Defendant should be barred from putting on any evidence or argument that G.H. consented to sexual conduct that Defendant has already admitted she did "did not have capacity to consent to."

---

[26] Ex. G.
[27] R. Doc. 163 at 8.
[28] R. Doc. 163 at 10.
[29] R. Doc. 82 at ¶ 147.
[30] R. Doc. 126-3 (Def's SUF) ¶ 13.

Also, pursuant to Federal Rule of Evidence 412(b)(2) and (c), Defendant has filed a motion seeking to introduced evidence of other sexual conduct, sexual abuse, and sexual trauma by perpetrators other than Officer Rodney Vicknair.[31] Defendant contends such evidence is relevant to causation.[32]

In civil cases, the Rule 412(b) test for admitting evidence offered to prove sexual behavior or sexual propensity in civil cases differs in three respects from the general rule governing admissibility set forth in Rule 403.[33] First, it reverses the usual procedure spelled out in Rule 403 by shifting the burden to the proponent to demonstrate admissibility rather than making the opponent justify exclusion of the evidence.[34] Second, the standard expressed in subdivision (b)(2) is more stringent than in the original rule; it raises the threshold for admission by requiring that the probative value of the evidence *substantially* outweigh the specified dangers.[35] Finally, the Rule 412 test puts "harm to the victim" on the scale in addition to prejudice to the parties.[36]

In this case, Plaintiff has not put her reputation in controversy – both the subject sexual abuse and the evidence of other sexual abuse that Defendant seeks to introduce occurred when Plaintiff was a child. It is both highly prejudicial and harmful to victims to allow a defendant to introduce evidence to prove that a child victim of sexual assault had a reputation or some sort of propensity for being a victim of sexual abuse. According to a study published in the International Journal of Child Abuse and Neglect, "one-third of child sexual abuse victims reported

---

[31] R. Doc. 167.
[32] *Id.*
[33] Advisory Committee notes on subdivision(b)(2) of Fed. R. Evid. 412.
[34] *Id.*
[35] *Id.*
[36] *Id.*

experiencing repeated victimization and sexual abuse victims had a two to three times greater risk of adult revictimization than women without a history of child sexual abuse."[37]

In addition, the harm to plaintiff from publicizing additional sexual assaults is not merely speculative. When information was publicized regarding the rape by Vicknair, anonymous people on the internet sexually harassed Plaintiff and <u>threatened to gang-rape her</u>. For example, she received messages saying things like:

- "The cop who did that to you deserves a medal and a cool 20 million."

- "We getting you drugged and goin pass you around then leave you in the middle of the woods"

- "Plz let me hit ur so hot wet pussy nice ass and tits I'm dyin to be inside you princes[.]"[38]

If information regarding *additional* childhood sexual abuse of Plaintiff is published in open court, it is certainly plausible that she will be subjected to further targeted harassment and rape threats.

As outlined in their motion and based on their questioning of Plaintiff during her deposition, the City does not simply intend to offer an admission that Plaintiff was the victim of other sexual abuse. This fact is undisputed; the parties have stipulated Officer Vicknair first encountered G.H. when he transported her to the hospital for a sexual assault examination after it was reported that she was the victim of a rape.[39] Rather, Defendant intends to introduce lurid and highly retraumatizing details of that rape and incidents of child sexual abuse and rape involving other perpetrators who have never been arrested or charged.

---

[37] Widom, Czaja, Dutton, "Childhood victimization and lifetime revictimization," The International Journal: Child Abuse and Neglect, Volume 32, Issue 8, August 2008, Pages 785-796, https://www.sciencedirect.com/science/article/abs/pii/S0145213408001336?via%3Dihub.
[38] Exhibit C, Threats from Anonymous Accounts on Snapchat.
[39] R. Doc. 163, p. 9, ¶ 6.

Courts – including this Court – have rejected such attempts. For example, in *J.M. v. Hilldale Indep. Sch. Dist.*, the Tenth Circuit ruled that the district court did not abuse its discretion in excluding evidence of a student's prior sexual history pursuant to Rule 412 in an action alleging claims against her former school district and teacher under 42 USCS § 1983 and state tort law, given the sensitive nature of evidence and the student's age.[40]

In *Rogers v. Smith*, a case from this district court, then-Magistrate Judge Dana Douglas prohibited all questioning "about any alleged sexual abuse as the Court finds that the topic is not relevant or proportional to claims and defenses in this suit."[41] In that case, similar to the issue here, the defendants argued that they should be allowed to investigate prior issues of emotional distress, including childhood sexual abuse, to establish a baseline because the defendant put his mental state in controversy. Magistrate Judge Douglas rejected that argument. The defendants objected to her ruling. Judge Milazzo upheld Magistrate Judge Douglas's ruling.[42] The defendants appealed to the Fifth Circuit. The Fifth Circuit struck defendants' appeal.[43]

Here, the City's argument regarding Plaintiff's mental state and baseline of emotional distress is the same as the defendants' argument in Rogers. However, in this case, Plaintiff does not even dispute that she was already a victim of sexual abuse and in active treatment for this trauma at the time that Officer Vicknair first met her. Any probative value of introducing the salacious details of other sexual abuse and trauma (such as the 38-page investigation included as Defendant's Trial Exhibit C5) does not substantially outweigh the dangers of prejudice and harm to G.H. – the victim. Such details serve to paint G.H. as "damaged goods," already impure, disobedient, and troubled before the sexual assaults by Officer Vicknair. Given the salacious,

---

[40] *J.M. v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 Fed. Appx. 445, 2010 U.S. App. LEXIS 18998 (10th Cir. 2010).
[41] *Rogers v. Smith*, 20-517 (E.D. La. 7/22/21), R. Doc. 129.
[42] *Id.*, R. Doc. 154.
[43] *Rogers v. Smith*, 2023 U.S. App. LEXIS 20871, *1 (5th Cir. 2023) (unpub.).

retraumatizing, and cumulative nature of the evidence Defendant seeks to introduce, and G.H.'s age at the time of the sexual abuse, which occurred when she was 15-years old and younger, this court should grant Plaintiff's motion to exclude such evidence.

**8.    The Court should bar Defendants' argument that "Plaintiff's self-harm, hospital admission and multiple serious psychological diagnoses made months before she met Mr. Vicknair" reduce damages.**

As discussed above, Defendant seeks to introduce evidence of sexual abuse by perpetrators other than Officer Vicknair and G.H.'s trauma and treatment in connection with that abuse. As above, Plaintiff does not dispute that she was the victim of other sexual abuse and rape, from which she suffered trauma, and was in active treatment for that trauma at the time she met Officer Vicknair.

Federal Rule of Evidence 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence"; and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (2014). According to Federal Rule of Evidence 402, "relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402 (2014). Alternatively, relevant evidence should be excluded *in limine* pursuant to Rule 403 of the Federal Rules of Evidence, which provides, in part, that such evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or if the evidence is misleading to the jury, a waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403 (2014).

Here, evidence that G.H. self-harmed, was hospitalized, and diagnosed with psychological conditions in connection with sexual trauma due to abuse by other perpetrators is highly prejudicial in that it is an attempt by Defendant to portray G.H. as already impure, disobedient, and troubled

child – "damaged goods" – before the sexual assaults by Officer Vicknair. Such arguments have rightly received sharp opprobrium from federal courts, particularly in the context of minor victims of sexual abuse. *See, e.g., United States v. Kofalt,* 2012 U.S. Dist. LEXIS 157349, fn. 6 (W.D. Pa. November 2, 2012) ("The Government objects to the defense's characterization of the minor as 'damaged goods.' The Court agrees that such reference is <u>wholly</u> inappropriate, especially when referring to a potential victim of child sexual abuse, and unworthy of the office of Federal Public Defender.") (emphasis in original).

Also, such evidence is cumulative as it is undisputed that G.H. was a victim of sexual abuse and in active treatment for this trauma at the time that Officer Vicknair first met her.

It would be misleading to the jury to allow Defendant to introduce such evidence in the context of mitigation of damages. This is not a case of a pre-existing mental health condition or alternate source of emotional distress of which a defendant was unaware. In this case, Defendant was on notice that Plaintiff was uniquely psychologically vulnerable as a victim of sexual abuse, that she was hospitalized, that there were concerns that she was susceptible to grooming by older men, and that Officer Vicknair, an older man, had given G.H. his phone number and encouraged her to remain in contact with him.[44] Furthermore, G.H. was a minor – she did not have the same ability to mitigate her trauma through counseling or other care as an adult would. The motion should be granted.

**9.     The Court should bar any testimony and argument that G.H. "knew how to work the system to get what she wanted."**

Fed. Rule of Evidence 402 excludes irrelevant evidence, and Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed" by unfair prejudice.

---

[44] Exhibit D, Excerpts from Deposition of Det. Kimberly Wilson, pp. 35:24-37:4, 38:15-40:1, 41:12-44:22.

During the deposition of Plaintiff's expert Shannon Smith, counsel for Defendant questioned her about whether statements made by Plaintiff would "serve [G.H.'s] purpose" in custody proceedings.[45]

Any testimony or argument regarding the statements made by Plaintiff related to custody proceedings has no connection to any claim or defense in this case. And is both irrelevant and highly prejudicial to suggest a generalized belief that G.H., a child at the time, knew how to and did work the legal system to "serve her purpose." This is an *ad hominem* attack on G.H. that should be excluded as substantially more prejudicial than probative.

**10.     The Court should bar any argument that battery of a juvenile is not a plainly obvious consequence of the decision to hire a police officer with criminal history including a conviction for battery of a juvenile, given this Court's ruling on summary judgment.**

The law of the case doctrine prevents a party from relitigating issues already resolved in a lawsuit. *See Loumar, Inc.*, *supra*.

Here, Defendants intend to try to relitigate at trial the already-decided issue of whether the battery of a juvenile is a plainly obvious consequence of the decision to hire a police officer with a criminal history including a conviction for battery of a juvenile.

That question was already resolved. In the Order and Reasons issued February 20, 2024, this Court determined that "[t]he City cannot reasonably argue that battery of a juvenile is not a plainly obvious consequence of the decision to hire a police officer with a criminal history including a conviction for battery of a juvenile."[46]

If the City cannot reasonably argue that at summary judgment to a judge with a sophisticated understanding of *Monell* doctrine, it cannot argue it at trial to a jury with less

---

[45] Exhibit E, Excerpts from Deposition of Shannon Smith, p. 192:8-14.
[46] R. Doc. 157, p. 22 (Order and Reasons, February 20, 2024).

experience with the legal issues. To do so would confuse the jury and stand in contravention of this Court's ruling. Thus, this Court should exclude any such argument at trial.

11. **The Court should bar any argument or evidence that Defendant is immune per "La. R.S. 9:2798.1, or any other statutory or jurisprudential immunities affordable under the law", because the City's state tort liability has already been established and those immunities are no longer plausibly implicated in the narrowed scope of trial.**

La. Rev. Stat. § 9:2798.1 provides a defense against state tort claims for public entities' "policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Courts have created a two-step process to determine whether a decision is a "policymaking or discretionary act" such as to warrant immunity under this statute.[47] "First, a court must determine whether a state law, regulation, or policy specifically prescribes the officer's course of action."[48] If the public entity or officer's action is thus restrained, then their conduct is not "discretionary," and the defense of discretionary immunity is not available.[49] Alternatively, if the action is discretionary, the court moves on the second step: determining "whether the challenged action is grounded in political, economic or social policy."[50] Discretionary immunity is only available if such a policy consideration motivates the challenged action.[51]

Here, the City contends that a contested issue of law for this trial is "[w]hether the City is immune from suit with respect to some or all of the Plaintiff's claims for their discretionary acts as set forth in La. R.S. 9:2798.1, or any other statutory or jurisprudential immunities affordable under the law."[52] This defense, however, does not apply to any of the claims in this case. First,

---

[47] *Pierre v. Wellpath, LLC*, 21-cv-01043-EEF-DPC, R. Doc. 64 at *6 (E.D. La., June 23, 2022), *citing Glaster v. City of Mansfield*, No. CIV.A. 14-627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015).
[48] *Id*.
[49] *Id*.
[50] *Id*.
[51] *Id*.
[52] R. Doc. 163 at 11.

R.S. 9:2798.1 does not apply to Section 1983 claims.[53] And the City's state tort liability has already been established by this Court.[54] And so the City concedes in the pre-trial order that "Plaintiff has prevailed on her claim of vicarious liability for state law torts committed by Vicknair."[55]

Even if that liability had not been established, there is no plausible R.S. 9:2798.1 defense to the state law claim remaining in the case. That state law claim is the City's vicarious liability for Vicknair's torts of "battery, assault, and false imprisonment."[56] Such a claim fails the first step of the 9:2798.1 test, because battery, assault, and false imprisonment are definitionally proscribed by state laws forbidding battery, assault, and false imprisonment.

And the second part of the City's statement – "any other statutory or jurisprudential immunities affordable under the law" – is a vague catch-all without any specificity. Plaintiff cannot prepare to rebut a defense that is so vague as to be meaningless.

Accordingly, this Court should bar the City from putting on any argument or evidence regarding R.S. 9:2798.1 or "any other statutory or jurisprudential immunities affordable under the law."

## 12.   This Court should exclude witnesses Stella Cziment, Curtis Carkum, and Casey Riley, who are no longer relevant to the remaining trial issues.

Federal Rule of Evidence 402 excludes irrelevant evidence. Here, Defendant's witnesses Cziment, Carkum, and Riley should be excluded as irrelevant to the narrowed scope of trial.

On February 21, 2024, this Court ordered the parties to revise their joint proposed pre-trial order in accordance with the Order and Reasons regarding the parties cross-motions for

---

[53] *Sahota v. Cobb*, 2015 U.S. Dist. LEXIS 151235, *10 (W.D. La., Nov. 6, 2015) ("discretionary acts immunity only applies to state law claims. It does not preclude liability under Section 1983."), *citing Pea v. City of Ponchatoula*, No. 13-542, 2014 U.S. Dist. LEXIS 34335, 2014 WL 1050783 at *4 (E.D. La. Mar. 17, 2014).
[54] R. Doc. 157 (granting Plaintiff's motion for summary judgment on respondeat superior).
[55] R. Doc. 163 at 22.
[56] *Id.*

summary judgment. In the February 20th Order, the Court dismissed Plaintiff's claim of inadequate supervision.

Witnesses Stella Cziment, Curtis Carkum, and Casey Riley are relevant only to the inadequate supervision claim. Ms. Cziment was is the New Orleans Independent Police Monitor, and her testimony was relevant to the timeline of the City was on notice of Vicknair's behavior. That is no longer a trial issue. Curtis Carkum and Casey Riley were officers who rode along with Vicknair; they too were relevant to Plaintiff's supervision claim, but that is no longer a trial issue.

Because the testimony of these witnesses is not relevant to any remaining claim or defense, Plaintiff requests that they be excluded from trial.

**13.    This Court should bar any testimony, argument, or reference to Rodney Vicknair's mental impairment or illness, because multiple cross-checks during deposition confirmed his memory was not impaired.**

Fed. Rule of Evidence 402 excludes irrelevant evidence, and Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed" by confusion of the issues or the risk of misleading the jury.

Here, the City of New Orleans has designated portions of Rodney Vicknair's deposition transcript suggesting that they intend to insinuate that his brain tumor affected his testimony. (In Exhibit F, Defendant's designations are in green, and Plaintiff's are in yellow.) But the City should be barred from offering such evidence, because multiple checks during deposition confirmed that Vicknair's memory was not impaired by his condition.

It is true that at the time of Rodney Vicknair's deposition, Vicknair had been diagnosed with a brain tumor. But because of diagnosis, Plaintiff's counsel engaged in extensive checking throughout the deposition to make sure that Vicknair's cognition and recall were not compromised during the deposition.

First, Plaintiff ensured that Mr. Vicknair was correctly oriented to date, time, and place. Vicknair correctly identified the time, address, and approximate date of the deposition.[57] Then, Vicknair confirmed that his medical condition did not affect ability to "understand the difference between a truth and a lie."[58] Then, Vicknair confirmed that he had not taken any medications, and also that no medications were necessary for him to think clearly.[59] Vicknair confirmed that although his medical condition impaired his memory, he would say so if he could not remember something:

> Q. Does your medical condition impair your memory?
>
> A. Yes.
>
> Q. Will you be able to tell me when you are unable to remember something?
>
> A. Yeah. If I can't remember, I'll tell you.[60]

Vicknair also confirmed that his medical condition did not cause him to "remember things that aren't true."[61] Vicknair's memory was tested with known facts: his birthday, his parent's names, injuries, the name of his high school, his phone number, the location of his wedding, etc.[62] He answered each question correctly. Later in the deposition, Vicknair indicated that he was tired but confirmed that he was not finding it hard to answer "questions truthfully or completely."[63] And later, he confirmed again that neither his medical condition nor any anxiety had made any of the answers "so far not reliable or not truthful."[64]

At no point did Vicknair suggest that his medical condition was impairing his testimony. And multiple cross-checks confirmed that his testimony was *not* impaired. Any attempt by

---

[57] Ex. F at 7:20-8:8.
[58] *Id.* at 9:15-18.
[59] *Id.* at 9:23-10:9.
[60] *Id.* at 10:10-16.
[61] *Id.* at 10:17-19.
[62] *Id.* at 13:7-25.
[63] *Id.* at 36:5-9.
[64] Id. at 60:14-17.

Defendant to suggest otherwise would only mislead and confuse the jury, and should be excluded. Plaintiff does not object to the basic fact in the stipulated facts, that on "January 1, 2024, Rodney Vicknair died in federal prison due to a brain tumor." R. Doc. 163 at 9. The motion should be granted.

**14.     Vicknair's testimony about child abuse within his family, his self-perceived role as his "brother's keeper," and his religious beliefs.**

Fed. Rule of Evidence 402 excludes irrelevant evidence, and Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed" by confusion of the issues, prejudice, or the risk of misleading the jury. Rule 610 states that evidence "of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."

Here, the City has designated almost two pages of Vicknair's deposition transcript regarding the meaning of Vicknair's "brother's keeper" tattoo, child abuse in his family, and his religious beliefs. None of this is remotely relevant to the issues for the trial. Discussion of Vicknair's childhood abuse would only confuse the issues, given his already-established liability and the absence of any claim for punitive damages.

The City might be trying to use Vicknair's professed religious beliefs to suggest that he was telling the truth during his deposition but lying in his plea agreement, conviction colloquy, and factual basis for his conviction. But this use of religious beliefs is forbidden by Fed. R. Evidence 610. *See United States v. Weinland*, 2012 U.S. Dist. LEXIS 73026, *1 (E.D. Ky., May 25, 2012) (granting motion in limine to "prohibit the use of evidence of a witness's religious beliefs or opinions to attack or support his or her credibility.") The motion should be granted.

**15.     This Court should exclude any evidence or argument of comparative fault, given that the Louisiana Supreme Court found that to be "not appropriate" in the context of a rape intentional tort.**

La. C.C. art. 2323(C) restrictions the application of comparative fault in the context of intentional torts. It states that "if a person suffers injury, death, or loss as a result partly of his

own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recover of damages shall not be reduced."

Even before the 1996 passage of Article 2323(c), courts had held that "[c]omparative negligence, which has taken the place of contributory negligence in Louisiana, is likewise not applicable to reduce the damages to which the victim of an intentional tort is entitled." *Dileo v. Horn*, 189 So. 3d 1189, 1199 (La. App. 5th 2016), *quoting Hebert v. First Guar. Bank*, 493 So.2d 150, 155 (La. App. 1 Cir. 1986) ("Our research fails to reveal any Louisiana case law applying either contributory negligence or comparative fault in the context of an intentional tort setting. The case law of most jurisdictions does not allow either contributory negligence or comparative fault as a defense to an intentional tort.")

The caselaw does allow for the apportionment between intentional tortfeasors (*Landry v. Bellanger*, 851 So.2d 943 (La. 2003)), but not between an intentional tortfeasor and a negligent one. In *Veazey v. Elmwood Plantation Assocs.,* 650 So. 2d 712, 719-720 (La. 1993), the Louisiana Supreme Court held that because "we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible."

The court in *Veazey* went on to explain that, given the then-existing statutory scheme, comparative fault law as it existed at the time in Louisiana was broad enough "in an appropriate factual setting to encompass the comparison of negligent and intentional torts," but it questioned "whether such a comparison *should* be made."[65] Ultimately, the court left it to the discretion of the individual courts to determine "in what contexts the doctrine of comparative negligence should be applied," on a case-by-case basis.[66]

---

[65] *Le v. Nitetown, Inc.*, 72 So. 3d 374, 377-378 (La. App. 3rd 2011), *quoting Veazey*.
[66] *Id.*

Here, Defendant added to the "contested issues of law" the question of whether "doctrines of comparative fault, negligence or fault of these other parties reduces any damages awarded to the plaintiff." R. Doc. 163 at 12. But in *Veazey,* the Louisiana Supreme Court specifically concluded that it was "not appropriate" <u>in the context of a rape case</u> to apportion comparative fault to a negligent party. *Id.* at 720.

Given Article 2323(c), this Court may not allow for any evidence or argument of Plaintiff's comparative negligence. And given the closely-on-point nature of *Veazey,* this Court should not allow for any evidence or argument of any third party's comparative negligence. The motion should be granted.

## CONCLUSION

For the reasons above, Plaintiff's motions *in limine* should be granted.

Respectfully submitted,

**MOST & ASSOCIATES**

*/s/ William Most*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
***Counsel for Plaintiff, G.H.***