UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* (R. DOC. 181)**

Defendant moves to exclude six exhibits: Ex. 41 (Chapter 41-8 of the NOPD Operations Manual); Ex. 42 and 43 (transcripts from the sentencing hearings of Rodney Vicknair); Ex. 44, (the report of Plaintiff's expert witness Shannon Smith); Ex. 45, (screenshots of a Snapchat request from Vicknair); and Ex. 47, (threats made to G.H. on Snapchat).

Additionally, Defendant argues that this Court should bar Plaintiff from 1) questioning any witness concerning the term habitual offender, and 2) presenting any evidence, testimony, or argument concerning an alleged *Monell* violation based on hiring Rodney Vicknair.

But the relevance of several of these items was resolved at the summary judgment stage. *See* R. Doc. 157 at 22-23 (holding that Vicknair's status as a NOPD-defined habitual offender was among the facts that "a jury could reasonably find" proved a *Monell* claim). And the City's remaining requests are unsupported by authority or contrary to caselaw. The City's motion should be denied.

**1.   This Court should deny the City's motion with regard to Exhibit 41 because this Court already determined that the City's "habitual offender" definition is relevant to the *Monell* claim.**

The City seeks to exclude Exhibit 41. This exhibit is a chapter from the New Orleans Police Department Operations Manual. It provides NOPD's definition of a "habitual offender," which is

1

any "person with a criminal history of two or more felony convictions or five or more felony or misdemeanor arrests for any offense." Ex. 41 at 2. The "habitual offender" definition is tied to the City's 30(b)(6) testimony, in which 30(b)(6) witness David Barnes testified that the City should not have hired a person who met this definition.[1]

The City objects to the exhibit on the grounds of relevance. But this Court already assessed the relevance of the "habitual offender" definition. In ruling on summary judgment, this Court determined that:

> G.H. has identified additional facts in the record which could allow a reasonable jury to find that the decision to hire Vicknair reflects deliberate indifference to the particular risk that the violation she alleges would follow from his hiring. First, at the time of his hiring, NOPD was aware that Vicknair had five arrests on his criminal record, <u>which qualifies him as a "habitual offender" under the NOPD's own rules</u>. . . .
>
> On these facts, a jury could reasonably find that the harm G.H. alleged was the likely result of the failure of a reasonable supervisor to adequately screen and scrutinize Vicknair's disciplinary history and that the NOPD acted with deliberate indifference to that risk.[2]

The City did not request reconsideration of that ruling. Nor does the City acknowledge the ruling in its Motion in Limine, or articulate any reason why this Court's ruling was wrong.

The City also objects to Exhibit 41 because it is unclear whether the policy was in effect at the time of Vicknair's hiring. But that misses the point; Plaintiff is not offering the exhibit to

---

[1] R. Doc. 135-9 (Dep. of Sgt. David Barnes) at 28:4-19.
   Q.   Right. So the City should not be hiring applicants who meet this Chapter 41.8 6 definition of habitual offender, agreed?
   A.   I would agree that they shouldn't be hiring that -- let me clarify. The City, so to speak, they shouldn't be hiring someone who meets this definition to be a police officer, right.
   Q.   And was that true at the time when you were hired?
   A.   Absolutely.
   Q.   And I don't know if you know this, but were you hired at the same time as Rodney Vicknair?
   A.   I was hired prior to Officer Vicknair from my understanding."

[2] R. Doc. 157 at 22-23 (emphasis added).

2

show that the City violated its own policy; instead, the policy provides a reasonable benchmark for who the City concedes should not be hired – which the City's 30(b)(6) agreed was "absolutely" as true at that time as it is today.[3] The motion in limine should be denied.

2.   **This Court should deny the City's motion with regard to the use of the term "habitual offender," because that term appears in NOPD policy, state law, and thousands of cases, and because multiple courts have found it to be permissible.**

The City argues that the term "habitual offender" is inflammatory and would cause undue prejudice, and may confuse the jury because it is unclear whether the policy that articulated the term in writing was in effect at the time of Vicknair's hiring.

The City offers no authority in support of this position. Nor is it reasonable to think the term is inherently inflammatory, given that it appears in NOPD policy, state law (Code. Cr. Proc. Art. 971(4)), and more than 10,000 cases in a LexisNexis search.

In fact, those courts that have reviewed an argument like the City's have rejected it. For example, in *Martin v. Addison*, 2011 U.S. Dist. LEXIS 67492 (W.D. Ok. May 19, 2011), a defendant argued that "prosecutor made improper, prejudicial comments during final closing argument, calling him a 'habitual offender.'" Both the Oklahoma Court of Criminal Appeals and the Oklahoma Western District Court agreed that the use of the term was permissible and "could not have influenced the jury's finding of guilt." *Id.* Here, the City has a far weaker claim to prejudice than the defendant in *Martin,* given that the term "habitual offender" is taken from the City's own policy manual. The motion should be denied.

---

[3] See R. Doc. 135-9 (Dep. of Sgt. David Barnes) at 28:15-19 (the "don't hire habitual offenders" principle was true at the time of Barnes' hiring, which came before Vicknair's hiring).

3

3. **This Court should deny the City's motion with regard to the sentencing transcripts (Exhibits 42 and 43) because that issue was already addressed at the pre-trial conference.**

Defendant moves to exclude portions of the Vicknair's sentencing hearing transcripts. This topic was addressed at the pre-trial conference: Plaintiff understands that this Court would require the redaction of statements made by Judge Africk and persons other than Vicknair (except insofar as to provide the questions Vicknair was answering), and Plaintiff will redact that information. At present, statements made by Vicknair are relevant and not prejudicial as Defendant seeks to introduce contradictory deposition testimony. *See* R. Doc. 177. Additionally, they fall within the unavailable declarant exception to hearsay. Fed. R. Evid. 804(a)(4).

4. **This Court should deny the City's motion with regard to the expert report (Exhibit 44) because it will only be offered if Plaintiff's expert witness becomes unavailable.**

Defendant moves to exclude Exhibit 44, Plaintiff's expert's report, as cumulative to the expert's testimony. Plaintiff will not offer this exhibit as evidence, however, unless the expert becomes unexpectedly unavailable – for example, due to sickness or other accident. For that reason, the motion should be denied.

5. **This Court should deny the City's motion with regard to Vicknair's Snapchat contact with G.H. (Exhibit 45) because it is probative of trauma suffered by Plaintiff.**

Defendant moves to exclude Exhibit 45, a document showing that Vicknair attempted to contact Plaintiff on the social media platform, Snapchat, after his sentencing. Defendant objects to this exhibit under "F.R.E. 401, 402, 403, 702, 801-802" and authenticity. R. Doc. 163 at 13.

Plaintiff has personal knowledge of this exhibit and will give testimony at trial sufficient to authenticate it – she took the screenshots and sent it to undersigned counsel and her mother, who alerted the FBI. The City contends that there is "no evidence that whoever supposedly made contact with Plaintiff via Snapchat at this time was actually Mr. Vicknair." R. Doc. 181-1 at 5.

4

That is incorrect; the second page of the exhibit shows that Snapchat said "Officer Rodney added you as a friend! IN MY CONTACTS" and the third page of the exhibit shows that G.H.'s phone contacts identified Vicknair's phone number as "Officer Rodney." That indicates that a person tried to contact G.H. with Vicknair's phone, which is a piece of evidence tending to indicate that Vicknair tried to contact her.

This exhibit is also relevant to Plaintiff's mental state, distress, suffering and damages, as it is more probative of the trauma and harm inflicted on Plaintiff than it is prejudicial to Defendant. That is because it shows that Vicknair was continuing to try to contact her even after he was convicted and sentenced. That was extremely disturbing to the Plaintiff, who had thought that the criminal proceeding would have been sufficient to prevent any contact. The screenshot is not hearsay because it is not being offered for the truth of the matter asserted, but is being offered to prove Plaintiff's response of experiencing distress and fear. It would also fall within the unavailable declarant exception to hearsay, because Vicknair is dead. Fed. R. Evid. 804(a)(4). The motion in limine should be denied.

**6.     This Court should deny the City's motion with regard to threats Plaintiff received (Exhibit 47), as they are probative of trauma suffered by Plaintiff.**

Exhibit 47 is a set of threats that anonymous persons made to the Plaintiff after news of Vicknair's rape became public. In one, a person lauds Vicknair's actions. In another, a person threatens to drug Plaintiff, rape her, and leave her in the woods. In a third, a person makes extremely sexually suggestive overtures to Plaintiff. Defendant objected and has moved to exclude this exhibit on grounds of relevance, prejudice, and authenticity. Defendant offers no authority other than a general reference to the applicable Federal Rules of Evidence.

The motion should be denied. Regarding authenticity, Plaintiff has knowledge of this exhibit and will give testimony at trial sufficient to authenticate it, as she took the screenshots.

Regarding relevance, the exhibit is relevant to Plaintiff's mental state, distress, suffering and damages, it is more probative of the trauma and harm inflicted on Plaintiff than it is prejudicial to Defendant. Additionally, the screenshot is not being offered for the truth of the matter asserted – it does not matter whether the anonymous person actually intended to rape the Plaintiff – but is being offered to prove Plaintiff's experience of distress and fear that flowed from Vicknair's actions. Plaintiff was fearful that these threats were sent by Vicknair, who was out on bail for an extended period of time. And such threats are a reasonably foreseeable result of sexual assault. For example, a 2016 study of more than 4,000 comments on 52 articles about rape found that more than <u>one in four</u> comments contained "victim blaming statements," and that "perpetrator support comments were found responding to <u>every article collected</u>, except for one."[4] Given that such threats against sexual trauma victims are so common, they therefore are reasonably foreseeable and relevant to the question of damages flowing from Vicknair's conduct. The motion should be denied.

**7.    This Court should deny the City's motion with regard to the pleading of the *Monell* claim, given that a "complaint need not plead legal theories."**

Finally, the City seeks to use a motion in limine to ask this Court revisit its ruling on summary judgment. The City asks that the court "evidence, testimony or argument of a *Monell* violation based on hiring of Rodney Vicknair" on the idea that the legal theory was not sufficiently plead in the complaint. R. Doc. 181-1 at 5-6.

But as discussed at the pre-trial conference, a "complaint need not plead legal theories." *Hess v. Garcia*, 72 F.4th 753, 757 (7th Cir. 2023). Instead, "a pleading is sufficient if the factual allegations support liability . . . under any legal theory." *Hankins v. Wheeler*, 21-cv-01129-EEF-

---

[4] Zaleski, et al., *Exploring rape culture in social media forums*, Computers in Human Behavior, 63:922-927 (Oct. 2016), available online at https://www.sciencedirect.com/science/article/abs/pii/S0747563216304642 (emphasis added).

JVM, R. Doc. 77 (E.D. La. June 21, 2022). Here, improper hiring is mentioned in paragraphs 16, 18, 179, and 197 of the Amended Complaint. And after briefing by the parties, this Court's ruling on summary judgment allowed Plaintiff's "*Monell* claim as to improper hiring" to proceed. R. Doc. 157 at 34.

Furthermore, the City has been on actual notice of the *Monell* hiring legal theory for more than a year, given that in R. Doc. 72 (filed January 30, 2023), the City directly connected "Plaintiff's claim of municipal liability" to allegations that the City failed "to properly screen, during the hiring process, and supervise thereafter, male officers to eliminate sexually predatory and abusive behavior towards vulnerable populations." R. Doc. 72. Thus, the City has long had fair notice of this legal theory. And it specifically identified exhibits and witnesses to defend itself from the legal theory. *See, e.g.,* R. Doc. 112 at 7 (City's December 2023 witness list, identifying Lt. Nicole Powell to testify about "NOPD policy, procedures, and practices relating to hiring, supervision and termination of NOPD officers and Vicknair.") The motion should be denied.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendant's Motion *in Limine* be denied.

Respectfully submitted,

*/s/ William Most*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 500-7974
Email: hopeaphelps@outlook.com
***Counsel for Plaintiff, G.H.***