## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYNE UPTON, individually and** | * | **CIVIL ACTION NO. 21-407** |
| **on behalf of her minor daughter, G.H.** | * | |
| | * | **SECTION: "J"** |
| **VERSUS** | * | **JUDGE BARBIER** |
| | * | |
| **RODNEY VICKNAIR, et al** | * | **MAG. DIV. (4)** |
| | * | **MAGISTRATE JUDGE ROBY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## THE CITY OF NEW ORLEANS' RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Defendant, the City of New Orleans (the "City") opposes Plaintiff's Motion for Reconsideration (R. Doc. 214) (the "Motion") and respectfully submits the following response.[1]

## INTRODUCTION

Plaintiff, in the Motion, seeks to reverse a previous Order of this Court that dismissed Plaintiff's *Monell* claim based on "improper supervision."[2] In the Motion, Plaintiff relies on "new evidence" in the form of a text message and related deposition testimony. Plaintiff claims that the New Orleans Police Department ("NOPD") superintendent, Shaun Ferguson, did not take "any

---

[1] This is Plaintiff's second motion for reconsideration. On February 16, 2023, the Court granted Plaintiff's first motion for reconsideration based on her representation she had discovered "new evidence" in the form of a report issued online by a group calling itself the "Umbrella Coalition," which claimed to have discovered a pattern of "sexual abuse by NOPD officers." See R. Doc. 36, p. 6 (Order & Reasons granting in part the City's Motion to Dismiss). However, Plaintiff's representation turned out to be false; she later abandoned the *Monell* claim and offered **no** evidence to withstand the City's motion for summary judgment; the Court therefore dismissed the claim. See R. Doc. 157 ("Plaintiff now seemingly abandons her claim that a pattern of police sexual violence exists within the NOPD."). Perhaps not coincidentally, the Umbrella Coalition report was provided to the Office of the Consent Decree Monitor in connection to litigation entitled *United States v. City of New Orleans*, 12-cv-01924-SM-DPC. On July 7, 2023, the Consent Decree Monitor issued a report that analyzed data underlying the report and determine that the Umbrella Coalition did not have factual support for its conclusions. See *United States v. City of New Orleans*, 12-cv-01924-SM-DPC, R. Doc. 135-11, p. 19 ("our review did not reveal a pattern of under-investigation, neglect, or concealment with regard to sexual assault and domestic violence cases involving NOPD officers . . . our review strongly suggests the complaints are being taken seriously by the Department, generally investigated fully, and resulting in reasonable dispositions. Our review likewise identified a high number of false accusations.").

[2] R. Doc. 157, p. 27.

action whatsoever to initiate an investigation" when he received the text message from then Independent Police Monitor, Susan Hutson.[3] However, this contention is false.

For example, below is a picture incorporated into Plaintiff's Motion.



And this is a picture containing the entire text conversation.



<hr />

[3] R. Doc. 214-1, pp. 2-3.

The text messages plainly show that Ferguson immediately responded to Hutson's text message. Moreover, Ferguson's telephone logs establish that he called members of NOPD's Public Integrity Bureau ("PIB") following his conversation with Hutson. Further, the surrounding circumstances show that NOPD acted diligently and reasonably in arranging a meeting with OIPM and Plaintiff's mother on the next Monday. These circumstances include: (1) there was no evidence known to the Plaintiff's counselor, the OIPM, or NOPD, to suggest that a sexual assault of a minor by an officer had occurred previously or was a reasonable danger to occur in the future; (2) the Plaintiff did not wish to cooperate in making a report or identifying Rodney Vicknair; and (3) Plaintiff's mother wished remain anonymous and would not meet with NOPD to provide any information or make a report until the following Monday.

For these reasons, it is clear that Plaintiff cannot demonstrate a necessary element of "heightened causation and culpability" for her improper supervision *Monell* claim.[4] The Court's reasoning in its February 20, 2024, Order applies equally here:

> There is no evidence that these alleged polices directly caused Vicknair to assault G.H. There is also no evidence that the City adopted these policies with deliberate indifference to the obvious consequences that this constitutional violation would occur. . . . [T]here is no evidence in the record of a strong connection between Vicknair's choice to sexually assault a minor and the NOPD's failure to arrest him within two days rather than four, failure to monitor the number of times he returned to G.H.'s house, or failure to staff the initial call for service in May 2020 with [a] sex crimes and child abuse specialist."[5]

Alternatively, Plaintiff argues that the City should be punished because it did not produce Susan Hutson's September 18, 2020, text message. As is discussed below, this argument is without merit.

---

[4] See R. Doc. 157, p. 26.
[5] R. Doc. 157, 26-27 (citing *Lewis v. Pugh*, 289 F. App'x. 767, 775-76 (5th Cir. 2008) (rejecting argument that inadequate complaint policy was moving force behind police officer's rape because there was no direct causal link between policy and constitutional violation)).

**RELEVANT FACTS**

The recent discovery in this case showed the following:

- G.H. ***never*** reported that Vicknair sexually assaulted her until Friday, September 25, 2020, when she reported that Vicknair sexually assaulted her on ***one occasion***, which occurred on Wednesday, September 23, 2020.[6]

- On September 16, 2020, G.H. discussed with her counselor "an adult NOPD office who has been making her uncomfortable." At this time and during the next nine days, G.H. did not disclose facts to indicate any criminal behavior by Vicknair, which would have triggered a mandatory report by her counselor.[7]

- On September 16, 17, and 18, 2020, G.H. expressed reluctance to make a report against the "NOPD officer" and "declined to provide [the] officer's full name."[8]

- On September 18, 2020, Dr. Berre Burch, Director of the Children's Bureau and G.H.'s counselor's supervisor, spoke with a member of the Office of the Independent Police Monitor regarding concerns with respect to the NOPD officer's interactions with G.H.; on this call, there was nothing said about a sexual assault having been perpetrated by the officer.[9]

- On September 18, 2020, G.H.'s mother, although previously desiring anonymity, agreed to meet with the OIPM and NOPD on Monday, September 21, 2020, and "did agree for her information to be shared with IPM ***at that time***."[10]

---

[6] Exhibit A, Rough copy of Deposition of Berre Burch, pp. 81:20 – 82:8; 118:22 – 119:1; Exhibit B, Excerpts from Children's Bureau records, CNO 3441-3447.
[7] Exhibit A (Burche Depo.), p 76:16 – 80:4; CNO 3442.
[8] *Id.*, 81:3-9, 84:15 – 85:21,
[9] *Id.*, 90:5 – 91:22.
[10] *Id.*, 97:18 -98:24; CNO 3443 (emphasis added).

- On September 18, 2020, the first name of the NOPD officer, "Rodney," was known to the OIPM, but not his last name.[11] On that day there were three other Rodneys on the NOPD force.[12]

- On September 18, 2020, Susan Hutson, the Independent Police Monitor, sent a text to Shaun Ferguson, the Superintendent of the NOPD, stating that she needed to speak with Arlinda Westbrook, who was the Captain in charge of NOPD's PIB. Hutson wrote, "It's about potential sexual abuse of a minor by an officer." At her deposition, Hutson admitted that when she wrote the text, she had no evidence that any sexual assault had occurred.[13]

- Ferguson responded to Hutson's text by writing, "Hi, I tried calling you back." Hutson replied, "Hey.. Got a call on that same issue. Will holla after." Hutson spoke with Ferguson that day and asked him to "get ahold of PIB and probably Westbrook or Richardson so they can take it and – and handle it."[14]

- Ferguson's telephone logs obtained from Verizon show the following relevant calls on September 18, 2020: Hutson at 5:15 p.m., 5:16 p.m., and 5:26 p.m.; Westbrook at 5:17 p.m.; Sabrina Richardson at 5:44 p.m.[15]

- Westbrook's telephone logs obtained from Verizon show the following relevant calls: September 18, 2020, at 6:16 p.m. (Hutson), and 8:46 p.m. (Richardson); and September 21, 2020, at 2:59 p.m. (Ferguson), and at 7:49 p.m. (Richardson).[16]

---

[11] 96:16-20.
[12] Exhibit C Affidavit of Matthew H. Segraves.
[13] Exhibit D, excerpts of transcript of deposition of Susan Hutson, 54:6 - 59:11
[14] Exhibit D (Hutson Depo.), 21:5 – 13.
[15] Exhibit E, p. 4-5 (Verizon phone logs)
[16] *Id*., p. 11

- On Sunday, September 20, 2020, G.H.'s mother reported to her counselor that G.H. and a 50 year-old man named Jim had sex.[17] A mandatory report was made to the Louisiana Department of Family and Children Services; G.H.'s counselor noted in the mandatory report of Jim that G.H. had "recently disclosed an NOPD officer making her feel uncomfortable, calling nice ass to her, putting arm around her waist. Hugging. And this is planned to be addressed on Monday with IPM."[18]

- On Monday, September 21, 2020, the NOPD Public Integrity Bureau met with G.H.'s mother;[19] based on information received, the NOPD identified Rodney Vicknair as the subject of G.H.'s mother's complaint; and began an investigation regarding her concerns, which included claims that Vicknair took actions that made G.H. "feel uncomfortable" such as "taking a photo with his arms around her and calling out 'nice ass' to her."[20]

- At her deposition, Dr. Burche opined that based on the information known on Friday, September 18, 2020, it was appropriate to wait until the following Monday to meet with NOPD regarding a potential investigation of G.H.'s mother's concerns regarding Vicknair.[21]

- Susan Hutson testified that because it did not appear that there was "anything alarming going on," there was not "anything wrong" with NOPD's actions of scheduling a meeting with G.H.'s mother and counselor on Monday.[22]

---

[17] Exhibit B, CNO 3443; Exhibit A (Burche Depo.), 99:6 – 100:21, 110:7-14.
[18] *Id.*, 106:3 – 20; 109:16 – 110:24
[19] Exhibit F, Transcript of deposition of Arlinda Westbrook, pp. 14:22 - 15:7.
[20] Exhibit B, CNO 3549.
[21] Exhibit A (Burche Depo.), 102:18 - 103:7.
[22] Exhibit D (Hutson Depo.), 69:13 – 24.

- Arlinda Westbrook testified that surveillance could be used to "collect information or evidence about an officer suspected of misconduct," but would not be used "to protect people from potential danger from the officer[.]"[23]

## ARGUMENT AND CITATION OF AUTHORITIES

"Rule 54(b) provides "any order ... that adjudicates fewer than all the claims ... may be revised at any time before the entry of a judgment adjudicating all the claims."[24] "The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment."[25] "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[26] "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction."[27] Reconsideration of an earlier order is an extraordinary remedy that should be granted sparingly.[28]

A. **NO EVIDENCE EXISTS TO SUPPORT A CLAIM THAT NOPD MAINTAINED A POLICY THAT CAUSED VICKNAIR TO SEXUALLY ASSAULT THE PLAINTIFF.**

Plaintiff incorrectly contends that "the involvement of a final policymaker themselves establishes *Monell* liability, even in the absence of a written policymaker or pattern of misconduct."[29] To the contrary, municipal liability under Section 1983 requires proof of three

---

[23] Exhibit F (Westbrook Depo.), 39:5 – 16.
[24] *Cahill v. Faia*, 2023 WL 6795566, *1 (E.D. La. Oct. 13, 2023) (quoting *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013).
[25] *Id.*
[26] *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir.2003) (citations and internal quotations omitted).
[27] *Rosemond v. AIG Ins.*, 2009 WL 1211020, *2 (E.D. La. May 4, 2009) (Barbier) (citations omitted).
[28] *Id.*
[29] R. Doc. 214-1, p. 7.

elements, not just involvement of a final policymaker: "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."[30] The City agrees that Ferguson, as NOPD superintendent, was a "final policymaker" for purposes of municipal liability for purposes of 42 U.S.C. § 1983.[31] However, the City denies that there is any evidence – new or otherwise – to support the other two elements of Plaintiff's *Monell* claim.

First, Plaintiff cannot show any "official policy" that led to the sexual assault by Vicknair. In order to show such a policy, Plaintiff must demonstrate that "the need to take some action to control the agents of the local governmental entity [was] so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policy maker can reasonably said to have been deliberately indifferent to the need."[32]

Here, on September 18, 2020, there was no evidence that Vicknair had sexually assaulted Plaintiff or was about to do so. Per the information provided by Plaintiff to her counselor, Vicknair hugged her while posing for a picture, called out "nice ass" to her, and made her uncomfortable. Plaintiff's counselor considered Vicknair's conduct to be ethically problematic, but not illegal.[33] Because Plaintiff refused to cooperate in making a report against "Officer Rodney," and Plaintiff's mother would not meet with the PIB until Monday, a meeting could not be scheduled before Monday, September 21, 2020. None of the professionals involved – Plaintiff's counselors, the OIPM, or NOPD's PIB – considered the timing of this meeting to be in any way inappropriate given the facts known and the family's reluctance to come forward.

---

[30] *Winn v. New Orleans City*, 2014 WL 790870, *9 (E.D. La. Feb. 26, 2014) (quoting *Davis v. Tarrant Cnty., Tex*., 565 F.3d 214, 227 (5th Cir. 2009)).
[31] *Winn*, *9 (finding that an NOPD superintendent is "final policymaker" for purposes of municipal liability).
[32] *Anderson v. Larpenter*, 2017 WL 3064805, *15 (E.D. La. July 19, 2017) (quoting *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999) (punctuation omitted).
[33] Exhibit B (Children's Bureau records), CNO3442.

Plaintiff unreasonably suggests that NOPD should have taken adverse employment actions against Vicknair such as putting him on "desk duty" or taking him "off the streets" without an investigation and based on uncorroborated hearsay regarding vague and non-criminal actions. These actions would be contrary to the Police Officer's Bill of Rights and the New Orleans Civil Service Rules, which protect officers from arbitrary employment actions.[34] As noted previously, Plaintiff's counselor considered the alleged conduct to be possibly an ethical concern but not criminal.[35] In addition, Plaintiff's contention that NOPD could have surveilled Vicknair is irrelevant given that the purpose of surveillance is to gather evidence, not to protect persons from crime.[36]

Based on the testimony of every witness, it is clear that on Friday, September 18, 2020, there was no "obvious" risk that Vicknair was going to sexually assault Plaintiff. Based on these circumstances, it cannot be said that Ferguson or anyone at the NOPD acted with deliberate indifference towards a risk that Vicknair might assault Plaintiff.

Second, Plaintiff can provide no evidence that any policy of the NOPD was a "moving cause" of Vicknair's sexual assault of Plaintiff. It is undisputed that Vicknair assaulted Plaintiff outside of Plaintiff's residence, in Vicknair's private vehicle, after his work shift ended on September 23, 2020. There is simply no "strong connection" between Vicknair's assault and PIB's decision to wait to open an investigation until after meeting with Plaintiff's mother on Monday, September 21, 2020. As in *Lewis v. Pugh*,[37] Plaintiff cannot establish the necessary "direct causal link" between the alleged policy processing complaints of police misconduct and the subsequent sexual assault.

---

[34] See La. Rev. Stat. 40:2531; Rules of the Civil Service Commission, City of New Orleans; NOPD Policy Manual.
[35] Exhibit B (Children's Bureau records), CNO3442.
[36] Exhibit F (Westbrook Depo.), 39:5 – 16.
[37] 289 F. App'x. 767; see R. Doc. 157, p. 27.

Because Plaintiff cannot establish two essential elements of her *Monell* claim of inadequate supervision, the claim should remain dismissed.

B.     **THERE ARE NO GROUNDS FOR SANCTIONS.**

Plaintiff wrongfully claims that the City engaged in "discovery misconduct" and that this Court should therefore impose a sanction of reversal of its improper-supervision dismissal.[38] Plaintiff fails to cite any authority for her request. In any event, Plaintiff's request for sanctions fails for many reasons.

First, Plaintiff cannot demonstrate any discovery misconduct. The relevant discovery request and the City's response were as follows:

> REQUEST FOR PRODUCTION OF DOCUMENT NO. 5 Any correspondence between any NOPD or City of New Orleans employee and any non-NOPD or City employee regarding Defendant Rodney Vicknair, including but not limited to emails, text messages, letters, memoranda, etc., which are in your possession.

> RESPONSE TO REQUEST NO. 5 Defendants object to the form of this Request for vagueness, ambiguity, and as overly broad with no time limitations. Defendants further object on the grounds that this Request calls for documents which are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. To the extent that this information may have any relevancy, Defendants further object that this Request is overly broad and unduly burdensome for Defendants to investigate and respond to and, because of the December 13, 2019 cyber-attack against the City's computer systems and networks, electronic records have not been recovered and any attempted response would require a manual perusal of all paper documents of the City with no proportional relevancy or materiality of any such facts to the issues in suit relative to the costs and burden of determining and admitting or denying same. Finally, to the extents that this Request calls for the production of correspondence to or from the City's Attorneys Defendants invoke their attorney-client privilege and to the extent that this Request calls for the production of any correspondence concerning internal police investigations or an ongoing criminal investigation against Rodney Vicknair Defendants involve the law enforcement privilege.

Plaintiff never sought to resolve the City's objections to this request, other than the objection relating to the objection "concerning internal police investigations or an ongoing criminal

---

[38] R. Doc. 214-1, p. 9.

investigation against Rodney Vicknair." Plaintiff certainly failed to seek an order compelling

discovery, which might have provided a basis for sanctions under Federal Rule of Civil Procedure

37(b). It is too late to now complain that Ferguson's or Westbrook's telephones should have been

searched,[39] when the City made it clear that Plaintiff's discovery request was vague, ambiguous,

overly broad, and unduly burdensome.

Similarly, Federal Rule of Civil Procedure 37(e), regarding preservation of electronically

stored information ("ESI"), does not provide a remedy to Plaintiff. It is unclear as to whether this

rule applies to a case where an objectionable discovery request was made under Rule 34, but no

motion to compel was filed. In any event, the rule only applies in cases where ESI is destroyed

and "cannot be restored or replaced through additional discovery[.]"[40] That is not the case here.

The texts in question were made available to the parties and this ESI rule does not apply. Moreover,

there is no evidence that Plaintiff was prejudiced: she had the opportunity to depose all relevant

witnesses at the cost to the City.

Finally, Plaintiff's request for sanctions is not appropriate. "A culpable state of mind is

necessary for sanctions of adverse inference, dismissal, or default judgment."[41] "An adverse

inference or sanctions are permitted against the spoliator only upon a showing of 'bad faith' or

'bad conduct.'"[42] Given the absence of a showing of intent by the City to deprive the Plaintiff of

any evidence, an adverse inference instruction is not inappropriate.[43] Given the demonstrated

efforts by the City to obtain documents from the OIPM, including public records requests and a

subpoena, it cannot be said that the City acted with any intent to deprive Plaintiff of information

---

[39] The facts are inconclusive as to whether Ferguson or Westbrook were asked to search their telephones.
[40] Fed. R. Civ. Proc. 37(e).
[41] *Owens v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 2023 WL 8440968, at *2 (M.D. La. Sept. 29, 2023) (citing Fed. R. Civ. P. 37(e)(2)).
[42] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)).
[43] Owens v. Board of Supervisors of L*7 (denying request for adverse inference where intent was not shown).

contained in or related to the text messages at issue.[44] Similarly, a sanction of finding that a *Monell* claim existed where the elements are not shown should be rejected.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Reconsider should be denied.

Respectfully submitted:

*/s/ James M. Roquemore*
**JAMES M. ROQUEMORE, LSB #40035**
ASSISTANT CITY ATTORNEY
james.roquemore@nola.gov
**CORWIN ST. RAYMOND, LSB #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
CITY ATTORNEY
1300 PERDIDO STREET, SUITE 5E03
NEW ORLEANS, LOUISIANA 70112
TEL: (504) 658-9800
FACSIMILE: (504) 658-9868

***Counsel for the City of New Orleans***

---

[44] See R. Doc. 202.