UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


RAYNE UPTON, individually and on
behalf of her minor daughter,
G.H.                              DOCKET NO. 2:21-CV-407
        Plaintiff

V                                 JUDGE: CARL BARBIER

RODNEY VICKNAIR, SHAUN FERGUSON
THE CITY OF NEW ORLEANS; DOE           MAGISTRATE: KAREN WELLS ROBY
DISTRICT COMMANDER; DOES 1 TO 10;
And XYZ INSURANCE COMPANIES 1 to 10,
        Defendants


DEPOSITION OF ARLINDA WESTBROOK, given in the above-entitled cause, pursuant to the following stipulation, before Raynel E. Schule, Certified Shorthand Reporter in and for the State of Louisiana, at the Office of the City Attorney, 1300 Perdido Street, City Hall - Room 5E03, New Orleans, Louisiana, 70112, commencing at 10:10 o'clock a.m., on Tuesday, the 9th day of April, 2024.

```
 1         Deputy of the Independent Police Monitor?
 2    A.   Yes.
 3    Q.   Do you recall if that was on a Monday?
 4    A.   I think it was Monday.
 5    Q.   And so you learned about the potential
 6         issue, Mr. Vicknair, and then you
 7         authorized the opening of a criminal
 8         investigation into Mr. Vicknair.  Is that
 9         correct?
10    A.   No.
11                    MR. ST. RAYMOND:
12                    Object to form.
13   BY MR. MOST:
14    Q.   What part of that is incorrect?
15    A.   No.  There was no potential anything.  It
16         was just that there was an officer, and
17         there was some question about the
18         relationship at the time, but there was
19         nothing criminal, nothing other than
20         administrative that he was talking to a
21         young girl.
22    Q.   Okay.  So on that Monday you learned
23         through an in-person meeting from Stella
24         Cziment that there was some issue involving
25         interactions between this officer and a
```

|    |    |                                                          |
|----|----|----------------------------------------------------------|
| 1  |    | young girl, and so you authored --                       |
| 2  |    | authorized an administrative investigation               |
| 3  |    | into that officer.  Is that correct?                     |
| 4  | A. | No.  We didn't even have an officer name                 |
| 5  |    | when Ms. Cziment was in our office.  We                  |
| 6  |    | didn't know who it was.  We didn't even                  |
| 7  |    | know if it was NOPD at the time.                         |
| 8  | Q. | Did you -- was it determined that day who                |
| 9  |    | the officer was?                                         |
| 10 | A. | I don't know that.  The investigator would               |
| 11 |    | have to -- I'm -- I'm just not sure.  I                  |
| 12 |    | just know in that meeting where I was                    |
| 13 |    | there, the whole reason I was there was for              |
| 14 |    | me to get someone to help figure out who it              |
| 15 |    | was and whether it, in fact, was a NOPD                  |
| 16 |    | officer.                                                 |
| 17 | Q. | Okay, but no one brought to your attention               |
| 18 |    | the situation prior to that in-person                    |
| 19 |    | meeting with Stella Cziment on Monday,                   |
| 20 |    | correct?                                                 |
| 21 | A. | Oh, no.                                                  |
| 22 | Q. | You didn't, for example, get a call from                 |
| 23 |    | Chief Ferguson about that situation prior                |
| 24 |    | to that meeting with Stella Cziment, did                 |
| 25 |    | you?                                                     |

```
 1        enough, but it depends on what type of case
 2        it is.  Everything wasn't surveilled, no.
 3        Most cases didn't have surveillance.  It's
 4        rare.
 5   Q.   So PIB could use surveillance to identify
 6        an unknown officer, correct?
 7   A.   Possibly, yes.
 8   Q.   Or collect information or evidence about an
 9        officer suspected of misconduct, correct?
10   A.   Possibly, yes.
11   Q.   Or if there's a concern that the officer
12        might be a danger to surveil the officer to
13        protect people from potential danger from
14        the officer; agreed?
15   A.   No.  If I know he's a danger, he's pulled
16        off the street immediately.
17   Q.   Okay, and if Chief Ferguson had told you
18        that there was a potential child sexual
19        abuse by an officer situation, that would
20        suggest to you an officer who may be a
21        danger, correct?
22              MR. ST. RAYMOND:
23              Object to form.
24              THE WITNESS:
25              You have to ask that again.  I'm
```