UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| G.H. | CIVIL ACTION |
| VERSUS | NO: 21-407 |
| THE CITY OF NEW ORLEANS, ET AL. | SECTION: "J" (4) |

## Reply in Support of Plaintiff's Motion for Reconsideration

This case is about how a NOPD officer met and groomed a child in the course and scope of his role as an officer, and then repeatedly returned to the child's home to sexually assault her.

Plaintiff moved for Motion for Reconsideration of the dismissal of her improper-supervision *Monell* theory.[1] Plaintiff's motion is premised on the new information that (1) five days before the final sexual assault, NOPD Chief Ferguson received a written warning of "potential sexual abuse of a minor by an officer," a verbal warning of "actual crimes" and a "danger to this child," and information to identify the officer, and (2) Ferguson concedes there is no evidence that he took any action in response to investigate or protect the child.[2]

The City filed an opposition.[3] The City argues that Plaintiff's "contention is false" that Chief Ferguson took no action to initiate an investigation. The City's only evidence, however, is a call log showing that Ferguson called members of NOPD's Public Integrity Bureau ("PIB") on the day and days following the warning from OIPM's Susan Hutson.

But the City has no evidence that those calls were *about the warning from Hutson.* Ferguson has no recollection of those calls.[4] And Westbrook specifically testifies that Ferguson did not speak to her or anyone else at PIB about Hutson's warning.[5] Ferguson even admitted at deposition that he is not aware of <u>any</u> evidence of <u>any kind</u> indicating that he took <u>any</u> action in response to Hutson's warning:

---

[1] R. Doc. 214.
[2] R. Doc. 214-1.
[3] R. Doc. 215 at 1-2.
[4] R. Doc. 214-4 (Ferguson Dep.) at 25:14-25.
[5] R. Doc. 214-6 (Westbrook Dep.) at 52:19-22.

1

> Q. Are you aware of any record or any evidence of any kind anywhere indicating you took any action in response to receiving this text message?
>
> MR. ST. RAYMOND:
>     Object to form.
> THE WITNESS:
>     Not that I can recall.[6]

In short, no one recalls what those calls were about. But given Westbrook's uncontroverted testimony that she would have opened an investigation the same day if Ferguson had conveyed Hutson's warning,[7] there is no reason to think the calls were about Hutson's warning.

The City also offers other evidence about the reasonableness of its actions generally, but that evidence undermines the City's position rather than supports it. For example, the City admits that there were only <u>three</u> NOPD officers with the first name "Rodney" at the time,[8] highlighting how easy it was to identify Vicknair once the City began its belated investigation. And the City proffers testimony that NOPD had a system in place to surveil its officers – but was not willing to do so "to protect people from potential danger from the officer."[9] NOPD's categorical unwillingness to use a tool in its toolbox to protect the public from a dangerous officer supports a finding of deliberate indifference by the City, rather than tending to negate it.

The City also suggests that Vicknair could not have been put on "desk duty" or taken "off the streets" without violating the Police Officer's Bill of Rights and the New Orleans Civil Service Rules. But the City only gestures to those laws generally; it offers no authority whatsoever for the

---

[6] R. Doc. 214-4 (Ferguson Dep.) at 29:1-4.
[7] R. Doc. 214-6 (Westbrook Dep.) at 20:13-22:14.
[8] R. Doc. 215-3. Note that the City suggests that "there were three other Rodneys on the NOPD force." R. Doc. 215 at 4. Not so; there were three Rodney's *total*. R. Doc. 215-3 at ¶ 4.
[9] R. Doc. 215 at 7.

2

proposition that desk duty or being removed from the streets triggers those laws. And case law suggests otherwise.[10]

Also, the City suggests that Ferguson was only warned of "uncorroborated hearsay regarding vague and non-criminal actions." But Hutson testified to the opposite: that the situation was not just "administrative misconduct, but actual crimes," and that there was an "urgent . . . danger to this child."[11]

The City also confuses the *Monell* analysis. It is true that *Monell* requires "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."[12] But when the municipality's final policymaker is directly involved, no written policy is needed – the action or inaction of the final policymaker is the official policy.[13] As the City points out, the standard in that context is whether the need for action is "so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[14]

It is hard to imagine a better fact pattern for that standard than the one here, given that the evidence shows (1) a final policymaker (2) who was directly warned (3) by a "credible person" (4) in writing (5) about "potential sexual abuse of a minor by an officer" (6) along with a verbal warning of "urgent . . . danger to this child" and (7) given information with which to identify the officer. In response to that warning, the final policymaker admits there is no "evidence of any kind anywhere" that he took any action whatsoever. And as a result of the final policymaker's inaction, Vicknair had a window of unsupervised time to sexually assault the minor once again. On these facts, a reasonable jury could find deliberate indifference.

---

[10] *See Goins v. Department of Police*, 570 So. 2d 93, 93 (La. App. 4th 1970) (analyzing officer's termination, but not his assignment to desk duty, under Civil Service rules); *Ned v. Lake Charles Mun. Fire & Police Civil Serv. Bd.*, 721 So. 2d 577, 582 (La. App. 3rd 1998) (same).
[11] R. Doc. 215-5 at 19:13-18, 20:10-16.
[12] *Davis v. Tarrant Cnty, Tex.*, 565 F.3d 214, 227 (5th Cir. 2009)
[13] Anderson v. Larpenter, 2017 WL 3064805, *15 (E.D. La. July 19, 2017) (quoting Burge v. Parish of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999)
[14] Id.

And regarding the City's discovery violation, the City mischaracterizes the exchange that occurred during discovery in this case. The City inaccurately suggests that it stood on its boilerplate objections of vagueness, overbreadth, and undue burden, and Plaintiff chose not to move to compel. That is not what happened. On the contrary, the actual timeline is as follows: in October 2021, Plaintiff requested text messages in discovery. In November 2021, the City objected on many grounds, including law enforcement privilege. In January 2022, the City produced a privilege log that did not include Ferguson's texts. On January 12, 2022, the City's counsel wrote that "[m]y understanding of the law is that the law enforcement privilege can no longer be asserted once a prosecution is instituted, which in this case will likely be by indictment of Vicknair. . . . <u>I do not see any basis in law to withhold after indictment</u>."[15] In June 2023, the City produced responsive documents, but not Ferguson's texts. Thus, the City made clear that it was *not* standing on its objections; it just did not produce the text messages that it had in multiple arms of the City.

The City points out that "bad faith" or "bad conduct" is necessary for sanctions. True. Here, we have bad conduct, given that the City had at least two copies of the text messages in two separate arms of the City, and neither arm turned them over. The City failed to disclose the text messages to Plaintiff at least three times: it failed to disclose them in response to Plaintiff's Requests for Production propounded to the City Attorney; it failed to disclose them in response to Plaintiff's public records request to OIPM; and it failed to disclose them in response to Plaintiff's subpoena to OIPM. The motion should be granted.

Respectfully submitted:

*/s/ William Most*
**WILLIAM MOST (La. Bar No. 36914)**
**HOPE PHELPS (La. Bar No. 37259)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
***Counsel for Plaintiff, G.H.***

---

[15] Ex. A (emphasis added).

4