UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| G.H. | CIVIL ACTION |
| VERSUS | NO: 21-407 |
| THE CITY OF NEW ORLEANS, ET AL. | SECTION: "J" (4) |

**Opposition to Motion for Leave to Take Trial Testimony of Shawn [*sic*.] Ferguson by Contemporaneous Transmission**

In R. Doc. 220-1, Defendant City of New Orleans asks for leave to take the trial testimony of Shaun Ferguson[1] by "contemporaneous transmission (*i.e.*, by video conference)."

Mr. Ferguson resides in Louisiana.[2] As of at least April 2024, he was retired.[3] He has done nothing professionally from December 2022 to at least April 11, 2024.[4] But the City now says (and Plaintiff does not have reason to doubt) that Mr. Ferguson has an "employment obligation with the New Orleans Saints" in California that coincides with the trial of this matter.[5] For that reason, the City asks that Mr. Ferguson be excused from physical appearance at trial.

But the City's motion is a strange one. The City itself "would prefer Mr. Ferguson to appear in person."[6] Plaintiff prefers that too. Given that all parties prefer for Mr. Ferguson to appear in person, and given that Mr. Ferguson *himself* has not made a request to the Court to appear remotely, there is no dispute among the parties to be resolved.

But the City asks this Court nonetheless for what it does not prefer. The City seems concerned that it "has no control over Mr. Ferguson to force him to appear in person at trial."[7] That is somewhat disingenuous, given that as recently as March 20, 2024, the City's counsel

---

[1] Defendant's motion repeatedly refers to Mr. Ferguson as "Shawn Ferguson." Mr. Ferguson's first name is spelled "Shaun." *See* R. Doc. 214-4 (Deposition of Shaun Ferguson).
[2] Ex. A (Corr. with City's Counsel); Ex. B (Dec. of Process Server).
[3] R. Doc. 214-4 (April 11, 2024 Deposition of Shaun Ferguson) ("Q. Are you retired? Q. Yes.")
[4] R. Doc. 214-4 ("Q. When did you leave that role [as chief of NOPD]? A. December of 2022. Q. Did you leave the city's employment after that? A. Yes. Q. What have you done since then in terms of professionally? A. Nothing.")
[5] R. Doc. 220-1 at 2.
[6] R. Doc. 220-1 at 1.
[7] R. Doc. 220-1 at 3.

1

wrote that "the Law Department represents" Mr. Ferguson and instructed Plaintiff's counsel "**not to contact**" him. (Emphasis in original.)[8]

But the City need not worry. After it refused to accept a trial subpoena for Mr. Ferguson, Plaintiff had him served with a trial subpoena and check for an attendance fee by process server on June 17, 2024 pursuant to Fed. R. Civ. Proc. 4(e)(2)(b).[9] The City will not be expected to make Mr. Ferguson appear; it will be the power of subpoena backed by the authority of this Court that will do that.

And it is indeed important for Mr. Ferguson to appear in person. He is a central witness in this case, arguably the second most important after Plaintiff herself. His personal deliberate indifference is core to one of Plaintiff's claims,[10] and so it is important for the jury to be able to see his subtle mannerisms during cross-examination, such as whether his feet are tapping nervously, whether he is sweating – things that might be lost on a videoconference call.

That importance of having Mr. Ferguson appear in person is consistent with how courts treat in-person testimony. The Supreme Court has held that "[t]he very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor a witness face-to-face is accorded great value in our tradition." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). And for that reason, a section of this Court has held that "live, in-person testimony is optimal for trial testimony." *In re Vioxx Products Liability Litigation*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006). Just yesterday Justice Gorsuch noted that the fact that "witnesses must usually testify in person, subject to cross-examination" is one of the key procedural protections of a civil trial. *Securities and Exchange Comm. v. Jarkesy,* 603 U. S. ____, at *3-4 (2024) (Gorsuch, J., concurring).

---

[8] Ex. A.
[9] Ex. B (Dec. of Process Server).
[10] R. Doc. 219 at 15 (Order on Motion for Reconsideration) ("Crucially, the highly predicable consequence of this single incidence of deliberate indifference [by Ferguson] (ignoring a warning regarding a certain officer sexually abusing a certain child) is the subsequent violation that occurred here").

The City cites no authority demonstrating that the inconvenience to Mr. Ferguson outweighs the necessity of his appearance. For example, in *Blue Cross & Blue Shield of Florida, Inc. v. Davita, Inc.*, 2022 WL 18492515 (M.D. Fla., May 27, 2022), the court dealt with "witnesses who reside outside of the jurisdiction." By contrast, Mr. Ferguson lives here in the Eastern District. He is not being asked to travel to an unfamiliar state – he is only asked to return briefly to his own home.

And although that inconvenience is real, it is not unfair. Mr. Ferguson is the beneficiary of an extraordinary windfall in this case. If he had revealed the existence of the text message warning in the early years of this case, when he was still the final policymaker for NOPD, Plaintiff would have named him as a defendant in his individual capacity. Mr. Ferguson would have had to hire a legal team and might have been personally and individually liable for Plaintiff's claims. But for whatever reason – whether a failure of memory or purposeful concealment – he did not reveal the existence of the text messages. They were discovered only days before trial. Given the difficulties of adding a new defendant after discovery is complete, and given the likely associated delays and a plausible interlocutory appeal, Plaintiff has not sought to implead Mr. Ferguson. So although a one-day trip home may be undesirable for Mr. Ferguson, it is a stroke of good fortune compared to how his involvement in this case could have proceeded.

Nevertheless, Plaintiff's counsel will work with the City's counsel to minimize any disruption to Mr. Ferguson's life. He could be called as a witness first thing on the Tuesday or Wednesday morning of trial, such that he could fly in the night before, sleep in his own bed, testify, and return to California that afternoon having missed only a day of work for the Saints.

The motion should be denied.

Respectfully submitted:

**MOST & ASSOCIATES**

*/s/ William Most*
**WILLIAM MOST (La. Bar No. 36914)**
**HOPE PHELPS (La. Bar No. 37259)**
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
*Counsel for Plaintiff, G.H.*

4