1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RAYNE UPTON, individually and                    DOCKET NO.
On behalf of her minor
Daughter, G.H.                                   2:21-cv-407

       Plaintiff,                                JUDGE BARBIER

                                            MAG. ROBY

VERSUS

RODNEY VICKNAIR, SHAUN FERGUSON,
THE CITY OF NEW ORLEANS; DOE
DISTRICT COMMANDER; DOES 1 TO 10;
and XYZ INSURANCE COMPANIES 1 TO 10,

       Defendants.


      DEPOSITION OF RODNEY PAUL VICKNAIR, given in the above-entitled cause, pursuant to the following stipulation, before Sandra P. DiFebbo, Certified Shorthand Reporter, in and for the State of Louisiana, at Guste, Barnett, Schlesinger & Alpaugh, LLP, 639 Loyola Avenue, Suite 2130, New Orleans, Louisiana, on the 9th day of June, 2023, commencing at 12:10 PM.

SOUTHERN COURT REPORTERS, INC.
(504) 488-1112



14

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10        Q.   So this document that is in front of you,
11   it says -- do you see that it says, "Factual Basis"
12   on it?
13        A.   Right.
14
15
16
17
18        Q.   Do you remember signing this document?
19        A.   Yes.
20        Q.   And this is a factual basis document from
21   your criminal case, right?
22        A.   Correct.
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7        Q.    At the very top, in the first sentence,
 8   it says, "The defendant admits that these facts are
 9   true."
10        A.    Okay.  I see it.
11        Q.    Yeah.  So, Mr. Vicknair, are the facts in
12   here true?
13        A.    Okay.  I'm sorry.  Can you say it again?
14        Q.    Are the facts in this document true?
15        A.    Honestly, no.
16        Q.    Okay.  Are most of the facts in here
17   true?
18        A.    No.
19
20
21
22
23
24
25
```

```
12      Q.          All of the times you went to Gabby
13  Hainey's house, did you go to her house as a police
14  officer?
15      A.   I would say -- I would have to say as an
16  official capacity, no.  I wasn't doing it as a
17  police officer.  There was one time I did it just
18  as a friend.
19      Q.   Which time was that?
20      A.   The night that Gabby called and said that
21  her and her friends had been out smoking weed, and
22  she was afraid that her mom was going to be able to
23  smell it all over her, and she asked me if I could
24  pull up in front of her house and let her stand
25  there and talk to me and see if I could smell the
```

```
 1
 2
 3
 4
 5
 6
 7       Q.    So the final time you met Gabby, she got
 8   into your car, correct?
 9       A.    I'm sorry.  What?
10       Q.    The final time you met Gabby, she got
11   into your car?
12       A.    Negative.
13
14
15
16
17
18
19       Q.    Did she ever get into your Toyota Tundra
20   at any time?
21       A.    No.
22       Q.    Did she ever get into your NOPD vehicle
23   at any time?
24       A.    When I transported her to the hospital,
25   yeah.
```

23   Q.   Mr. Most asked you a question about
24   Exhibit C, so I would ask you to pull that in front
25   of you.  We'll start off with that.  You see that

1  is a Factual Basis in your criminal case?
2     A.   Yes, sir.
3     Q.   You've seen this before. You looked at
4  it today, right?
5     A.   Yes.
6     Q.   I remember your testimony being that you
7  disagreed with some or all of it; is that right?
8     A.   Correct.
9     Q.   Is that fair?
10    A.   Correct.
11    Q.   Let's go through this and find out what
12 you have to say about it. The second full
13 paragraph starts, "Rodney Vicknair was a Police
14 Officer with the New Orleans Police Department."
15 You see that?
16    A.   Yes, sir.
17    Q.   Is that a true statement?
18    A.   Yes.
19    Q.   Is it also true that you applied to
20 become a police officer on or about June 21st,
21 2007? Is that your remembrance?
22    A.   Yes.
23    Q.   Is that correct? And before that, what
24 were you doing?
25    A.   I was working at Baptist Hospital with

```
 7      Q.   At some point in time, you gave Gabby
 8   your telephone number; is that right?
 9      A.   No.  I gave her mom my business card.
10      Q.   Did you put that in any report to NOPD
11   that you gave the mom your business card?
12      A.   No.
13      Q.   Did you tell any of your fellow officers
14   at the scene, the detective, for example, that you
15   were giving your business card to Gabby's mother?
16      A.   The only person other than -- the only
17   person that knew was the mental health counselor
18   that came in, because she was -- and the doctor
19   that was talking to her, because they were in the
20   room when I did it.
```

89

```
 1
 2
 3
 4   .
 5        Q.   Is it your testimony that you did not
 6   give Gabby your personal telephone number at all?
 7        A.   No.  Just her mom.
 8        Q.   How did Gabby get your personal phone
 9   number?
10        A.   I guess from her mom. When I handed her
11   mom my business card, she was sitting right next to
12   us.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6        Q.    Let's look at Exhibit C again, this
 7   Factual Basis, just to walk through and keep this
 8   in order.  The second paragraph, second sentence
 9   then.  In May 2020, Vicknair, while working in his
10   capacity as a police officer, escorted a 14 year
11   old girl, who was a victim of sexual assault, to
12   the hospital to undergo forensic exam, i.e, a rape
13   kit.  Is that something you disagree with?
14        A.    No.  I agree with it.
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10        Q.   Next paragraph, next sentence.  During
11   the four months thereafter, all while acting in his
12   capacity as a police officer to facilitate his
13   conduct to gain the victim's trust, Vicknair and
14   the victim spoke on the phone and exchanged
15   messages on Snapchat.  So we are talking about the
16   next four months.  Do you agree with that sentence?
17   Is there any part of that sentence you disagree
18   with?
19             MR. MOST:
20                  Object as to form.
21             THE WITNESS:
22                  No.
23   BY MR. ROQUEMORE:
24        Q.   You agree with that sentence?
25        A.   Yes.
```

```
 1         Q.    You exchanged messages on Snapchat?
 2         A.    Yes.
 3         Q.    Were these exchange of pictures between
 4   Gabby giving you pictures of herself?
 5         A.    Not that I recall.  It was just messages.
 6         Q.    Messages.  Were they messages of a sexual
 7   nature?
 8         A.    Yes.
 9         Q.    These were messages -- sexual messages
10   she sent to you?
11         A.    Yes.
12         Q.    Sexual messages you sent to her?
13         A.    No.
14         Q.    What kind of sexual messages did she send
15   to you?
16         A.    Unless you got the chat log or the -- I
17   wouldn't know what was said.
18         Q.    What do you remember about them other
19   than they were just sexual?
20         A.    I remember she made a comment about she
21   made a video for that guy ███, and I told her that
22   she needed to stop and that would get her in
23   trouble, because if she is doing that kind of
24   stuff, she is basically producing child porn.
25         Q.    A video of a sexual nature?
```

101

1     A.    Of herself.
2     ████████████████████████████
3  ████████████████████████████████████████
4  ████████████████████████████████████████
5  ██████
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

BY MR. ROQUEMORE:

Q.   Mr. Vicknair, we are still on Exhibit C. Pull it in front of you right there. Flip it over to the front page. There you go. Second -- third full paragraph. Last sentence. "On one occasion he touched V1's breast under her shirt, and on another occasion he touched V1's buttocks over her clothes." Is this a statement you disagree with or do you agree with it?

A.   I disagree with it.

Q.   Do you have any comment about it? Is it true in part?

A.   No.

Q.   Not true in any part?

A.   No.

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19        Q.   It says -- the next sentence, at the very
20   -- the last sentence that starts on the bottom of
21   the page, and it continues to the next page.  He
22   asked her to come outside and get in his vehicle.
23   Is that true?
24        A.   No.  I asked her to come outside and
25   stand next to the vehicle.  She wanted me to see if
```

112

1   I could smell weed on her.

24        Q.   The statement on the second page
25   continues.  The victim got into the passenger seat

1   while Vicknair remained in the driver's seat.  I'm
2   assuming you are saying that that is not correct?
3         A.   I'm sorry?
4         Q.   Is that not correct?  That's not correct?
5   She got into the passenger seat --
6         A.   No.
7         Q.   And you remained in the driver's seat. Is
8   that true or false?
9         A.   I was in the driver's seat.
10        Q.   Did she get in the passenger seat?
11        A.   No.
12        Q.   That's a no?
13        A.   No.
14        Q.   The next sentence says, "Vicknair locked
15  the doors so V1 could not leave."  Is that true or
16  false?
17        A.   False.
18        Q.   Vicknair leaned over towards the victim
19  causing her to fear for her physical safety,
20  confining her against her will, all of which
21  constituted kidnapping.  Is that something you
22  agree or disagree with?
23        A.   Disagree with.
24        Q.   Does it have any truth at all?
25        A.   No.

114

1  Q.   Then Vicknair engaged in a sexual act
2  with the victim without her consent. Is that true
3  or false?
4  A.   False.
5  Q.   False?
6  A.   Yes.
7  Q.   Any truth at all?
8  A.   No.
9  Q.   You're not claiming that she consented?
10 A.   No.
11 Q.   Are you claiming that there was no sexual
12 act at all?
13 A.   Correct.
14 Q.   Did you touch her under her shirt?
15 A.   No.
16 Q.   Did you ask -- did you have sexual
17 conversation at all during this time?
18 A.   No.
19 Q.   Intentionally touched her genitals under
20 her clothing. True or false --
21 A.   False.
22
23
24
25

1  Q.  You signed this.  When you signed this,
2  what actions were you thinking that you were saying
3  were wrong and against the law?
4  A.  When I signed this, I was just signing it
5  to hurry up and get all this over with.